UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ANTONIO CABALLERO,　　　　　　　　　　　　　Case No. 1:18-CV-25337-KMM

Plaintiff,

vs.

FUERZAS ARMADAS
REVOLUCIONARIAS DE COLOMBIA, *et al.*

Defendants.
_____/

**ANTONIO CABALLERO'S MOTION TO STRIKE INTERESTED PARTIES' REPLY IN SUPPORT OF THEIR MOTION TO VACATE AND MOTION TO DECLARE THE MOTION TO VACATE MOOT AS TO WRITS UPON, AND COMPLETED SALES OF, PROPERTIES AND INCORPORATED MEMORANDUM OF LAW**

Antonio Caballero ("Caballero") moves to strike the Interested Parties' Reply in Support of their Motion to Vacate [ECF No. 183] (the "Reply"). The Reply is untimely and inappropriately provides declarations that should have been provided months ago or at the very latest with their Motion to Vacate [ECF No. 175] and not, for the first time, in a purported reply memorandum.

Caballero also moves this Court to declare moot the Interested Parties' Motion to Vacate as to the writs that were levied upon, and the completed November 8, 2022 sale of, the "Fisher Island Property" and the "Collins Avenue Property."[1] On November 8, 2022, the U.S. Marshal sold the two properties at an advertised public auction. Caballero (and the general public, *see* **Exhibit 5** at ¶ 7) attended the auction, bid at the auction, and the purchaser paid the U.S. Marshal a commission of $50,000.00, and even recorded the Deeds with Miami-Dade County (all ***before*** even the purported reply). Each property has substantial liens on them, including taxes owed to Miami-Dade County and the new owners (entities in which Caballero has the majority interest, *see* **Exhibit 5** at 2 n.1) will be listing both properties for sale.

---

[1] The "Fisher Island Property" is the property located at Unit 7043, Palazzo del Sol, Fisher Island, Florida, previously owned by Interested Party Planet 2 Reaching, Inc. The "Collins Avenue Property" is located at 18555 Collins Avenue, Unit 4401, Sunny Isles Beach, Florida, previously owned by Interested Party Posh 8 Dynamic, Inc.

Any further challenge under the Interested Parties' Motion to Vacate as to the writs that were levied upon, and the completed November 8, 2022 sale of, the Fisher Island Property and the Collins Avenue Property, will prejudice Caballero and run afoul of the Eleventh Circuit's holding that a district court cannot disturb a completed sale because "a determination that the Claimants are not agents or instrumentalities of a terrorist organization would not rescind the sale." *Stansell v. Revolutionary Armed Forces of Colom.,* 772 F. App'x 772, 773 (11th Cir. 2019) ("*Stansell III*"). The Interested Parties never moved to stay any execution proceedings even though they have: a) been on notice since May 2022 of Caballero's intent to execute upon the Fisher Island Property and the Collins Avenue Property; b) received notice of levy; and c) received notice of sale directly from the U.S. Marshal's Office. The U.S. Marshal (now *seven months* subsequent to the aforementioned May 2022 notice) has sold the properties at public auction after providing the required notice (described below). Because the two properties have been sold, any challenge as to the writs levied upon, or completed sale of, the two properties is moot. The new owners must be permitted to move forward without any cloud on title created by parties who have sat on their rights.

Indeed, doing otherwise would reward agencies or instrumentalities ("A/I") of terrorists who ignored appropriate and applicable procedures in United States courts while punishing a terrorism victim for following such procedures when the Eleventh Circuit has held that Section 201(a) of the Terrorism Risk Insurance Act of 2002, Pub. L. No. 107-297 ("TRIA") is a terrorism victim recovery maximization statute. *See Stansell v. Revolutionary Armed Forces of Colom.*, 771 F.3d 713, 731-32 (11th Cir. 2014) ("*Stansell II*") (quoting *Hausler v. JP Morgan Chase Bank, N.A.,* 740 F. Supp. 2d 525, 531 (S.D.N.Y. 2010)).

## MEMORANDUM OF LAW

### A. This Court Should Declare Moot the Motion to Vacate As to the Writs Regarding the Already Sold Fisher Island Property and the Collins Avenue Property

After receiving notice of these proceedings in May 2022, the Interested Parties failed to appear and move to stay any executions against their property. Indeed, even after appearing in this action through counsel (*five months after* the May 2022 notice) on September 13, 2022 (ECF No. 163), the Interested Parties did not move to stay any execution against their property. On September 22, 2022, *after* counsel for the Interested Parties appeared, the U.S. Marshal filed two Process Receipts and Returns notifying all that the U.S. Marshal had levied upon the Fisher Island

Property and the Collins Avenue Property [ECF Nos. 168, 169]. Even then, the Interested Parties did nothing to stop the execution. And, as set forth below, the U.S. Marshal then directly provided notice of the sale to the Interested Parties and their counsel and published notice of the sale in the *Daily Business Review* for four consecutive weeks. *See* **Composite Exhibit 3**. Pursuant to the law and its notices, the U.S. Marshal sold the Fisher Island Property and the Collins Avenue Property at public auction on November 8, 2022.

In accordance with the law cited below, the Interested Parties failure to move to and obtain a stay moots any challenge to the sale of the Fisher Island Property and the Collins Avenue Property. As set forth in the Declaration of Joseph I. Zumpano attached hereto, the purchaser of the Fisher Island Property paid a $50,000.00 commission to the U.S. Marshal and has recorded the U.S. Marshal's deeds in the public records of Miami-Dade County. *See* **Exhibit 5** at ¶ 8 . Moreover, both properties are burdened by substantial tax liens, and the purchasers of the Fisher Island Property and the Collins Avenue Property, in which Caballero owns the majority interest [*see* **Exhibit 5** at 2 n. 1], plan to list the properties for sale.[2] Thus, any further interference or challenge by the Interested Parties with regard to the sale of the Fisher Island Property and the Collins Avenue Property will prejudice Caballero.

### 1. The Interested Parties' Failure to Stay Moots any Challenge to the Sale

Despite receiving notice from Caballero that he intended to writ the Fisher Island Property and the Collins Avenue Property, receiving notice directly from the U.S. Marshal of its levy of each property, having notice placed on the docket that the properties had been levied [ECF Nos. 168-169], and the U.S. Marshal advertising the sales for four consecutive weeks in the *Daily Business Review* [*see* **Composite Exhibit 3**], the Interested Parties did not—as to the Fisher Island Property, Collins Avenue Property, or any other properties attached by Caballero—move to stay execution proceedings. The Interested Parties had multiple tools at their disposal to stop or pause the execution proceedings, yet none were used. The Interested Parties could have asked this Court to stay the execution proceedings, but did no such thing. Now, after the completion of two execution proceedings and the sales of the properties at public auction, the Interested Parties cannot

---

[2] *See* https://miamidade.county-taxes.com/public/real_estate/parcels/31-2202-050-0360/bills?qid=5fafcf9f44b89ca84dd32a901b5b24c3; *see also* https://miamidade.county-taxes.com/public/real_estate/parcels/02-4210-018-0170/bills?qid=a52f884992215d2c3c8ada8e1e40f323.

be permitted to challenge the appropriate sales of the Fisher Island Property and the Collins Avenue Property. To do so would disregard of the strict adherence to all notice and execution procedures by the terrorist victim, the work of the U.S. Marshal's office, the reliance and participation by the general public in the sales notice, auction, and the payment of a $50,000.00 commission to the U.S. Marshal.

In the absence of any prior motion to stay from the Interested Parties, any attempt to challenge the sales of the Fisher Island Property and Collins Avenue Property would now in essence ask this Court to: (1) impose relief that was never sought by the Interested Parties—a stay of the execution proceedings themselves—now moot as to the properties that have been sold by the U.S. Marshal, and to date not sought as to the properties that are still the subject of execution proceedings; and (2) modify the statutory requirements for execution procedures under Chapters 55 and 56 of the Florida Statutes.

The Eleventh Circuit held in *United States v. Certain Real & Personal Property Belonging to Hayes*, that "**failure to request a stay** or post a supersedeas bond, **combined with the subsequent sale** of the property under court order to a third party, has *deprived this Court of in rem jurisdiction*." 943 F.2d 1292, 1294 (11th Cir. 1991) (emphasis added). Additionally, the failure to request a stay—regardless of any objections or appeals of the underlying judgment—prevents a party from reversing an already completed execution proceeding. For instance, in *Atkins v. Heavy Petroleum Partners, LLC*, the Court noted that:

> [the judgment creditor] applied for and received a Writ of Execution to execute on the property of [the judgment debtor] in order to satisfy the outstanding portion of the judgment. **Although [judgment debtor] objected to the sale, and the case was on appeal to the Tenth Circuit, [the judgment debtor] did not request a stay of execution on the judgment** or post a supersedeas bond. *Thus, the Marshal's Sale was proper*.

86 F. Supp. 3d 1188, 1193 (D. Kan. 2015) (emphasis added). Here, like in *Atkins*, the Interested Parties failed to request a stay of the execution proceedings and as a direct result of that failure the properties have been sold by the U.S. Marshal at public auction. Here, because the Interested Parties ignored their chance to request a stay before the completion of the execution proceedings—of which they were notified under the requirements of Chapter 56 of the Florida Statutes—the Interested Parties are directly at fault for the closure of all roads to meaningful relief.

As a result of the completion of the execution proceedings and the sale of the properties at public auction, any arguments with respect to the writs that were levied upon, and the completed

sales of, the two properties are moot. In *Stansell III*, the Eleventh Circuit determined that the Claimant was not entitled to a hearing as to their A/I status because such point was moot as a result of the sale of the properties. 772 F. App'x 772, 773 (11th Cir. 2019). Unlike here, the Claimant in *Stansell III* sought a stay of the public sale which was eventually denied, appealed, and denied again. *Id.* at 773 n. 2. The Eleventh Circuit determined that the sale rendered the case moot with respect to the properties already sold. *Id.* at 776 ("**Given the sale, it would be fruitless** for us to instruct the district courts to hold a hearing to reconsider the agents or instrumentalities designation. That is, *a determination that the Claimants are not agents or instrumentalities of a terrorist organization would not rescind the sale*") (emphasis added). The Eleventh Circuit was clear that—in future execution proceedings—the Claimant may be afforded an opportunity to be heard to refute an A/I designation. *Id.* at 775. Thus, if the Interested Parties are permitted to proceed, they may continue to attack this Court's A/I determination—but obviously not as to the Fisher Island Property and the Collins Avenue Property.

In short, once a property is sold, any attempt to attack an A/I determination as to such property is moot and the Court cannot rescind the sale. So that the purchasers can proceed to place the two properties on the market without the cloud of this proceeding on title, Caballero respectfully requests that this Court preclude any challenge as to the sale of the two properties as moot.

### 2. Caballero and the U.S. Marshall Provided Appropriate Notice of the Execution and of the Sale at Public Auction

As more fully explained in Caballero's Response to the Motion to Vacate [ECF No. 177 at 12-14, 16-18], in *Stansell II*, the Eleventh Circuit provided an extensive analysis of constitutional, statutory, and procedural due process issues applicable to victims of terrorism attempting to collect under TRIA and concluded that agencies or instrumentalities are not entitled to notice or to be heard until *after* terrorism victim has attached the blocked asset. *Stansell II,* 771 F.3d at 725-730.

After substantial analysis, the Eleventh Circuit concluded: "*In sum, Claimants were entitled to notice and to be heard before execution, though not necessarily before attachment.*" *Id.* at 729 (emphasis added). Put another way, the Eleventh Circuit expressly held that victims of terrorism can proceed *ex parte* to: (i) obtain an A/I determination; (ii) obtain a writ of garnishment or execution; and (iii) attach such writ to the blocked asset of an A/I, all *before* providing notice

5

to the A/I. To comply with due process, notice need only be given to the A/I before turnover of the asset to the victim of terrorism, but not before attachment. *Id.* at 729.

The Interested Parties argue (incorrectly) that the U.S. Marshal's levy on real property by attaching the writ of execution to a conspicuous location on the property is insufficient. ECF No. 183 at 7. The Interested Parties argue that proper notice must include far more because, in *Stansell II,* the Eleventh Circuit found appropriate notice where the U.S. Marshals "levied on the real property by posting notice in conspicuous places ***and providing direct notice to the Partnerships, tenants, and management***. They also published notice of the levy in a local newspaper for four weeks." ECF No. 183 at 7 (citing *Stansell II*).

With their own words, the Interested Parties ratify and affirm Caballero's procedures for notice and execution. Caballero followed every one of the steps that the Interested Parties claim is required. With regard to the Fisher Island Property and Collins Avenue Property, **Exhibit 4** summarizes the multiple and redundant notice provided to the Interested Parties and their counsel, including, without limitation:

- The U.S. Marshal attached the writ of execution to a conspicuous location on each property, *see* ECF Nos. 168-169;
- The U.S. Marshal provided notice directly, no less, to the Interested Parties (including through their registered agents and attorneys), *see* **Composite Exhibit 2-E; Composite Exhibit 2-F; Composite Exhibit 2-G; Composite Exhibit 1-A; Composite Exhibit 1-B; Composite Exhibit 1-D**;
- The U.S. Marshal published the notice of sale in a local newspaper for four weeks, *see generally* **Composite Exhibit 2-E**.

As **Exhibit 4** reflects, the Interested Parties and their counsel have been on notice of these proceedings as early as May of 2022 when Caballero first began sending notices of his intent to seek writs of execution on the Fisher Island and Collins Avenue Property.[3] In fact, counsel for the Interested Parties has already admitted to having received **actual notice** of such notices of intent by June 1, 2022. *See* 06/01/2022 Email from Howard Srebnick to counsel for Caballero, ECF No. 177-1 (reflecting that, as of June 1, 2022, counsel for Interested Parties had actual notice of

---

[3] Such notices could not be any further from a "demand letter" [ECF No. 183 at 2] as mischaracterized by opposing counsel. Such notices are in keeping with this Court's previous instructions in previous notices.

Caballero's Notice of Intent relating to the Fisher Island and Collins Avenue Properties); *see also* Decl. of Robert Dunlap (previously of Black Srebnick), ECF No. 183-1 at ¶ 15 (reflecting counsel's **actual notice** again of Caballero's Notice of Intent relating to the Collins Avenue Property, as well as the Delaware Secretary of State's letter, dated June 13, 2022, to Interested Party Posh 8 Dynamic, Inc.—in the c/o Cosme De La Torriente—enclosing the aforementioned Notice of Intent); *id.* at ¶ 16 (reflecting counsel's **actual notice** as of July 3, 2022, of one of Caballero's Notices of Intent).[4]

Incredibly, despite having been sent notice of Caballero's intent **prior** to the Court's issuance of the writs of execution for the Fisher Island and Collins Avenue Properties, the Interested Parties urge the Court to accept their untenable and incorrect position that they received insufficient notice. **Exhibit 4** lets us count the numerous ways and times notice was sent to the Interested Parties and their counsel. Caballero's Notices of Intent were clear—"appear to defend your interests, if any" [ECF No. 183-1 at 17] or suffer the consequences. Despite such unambiguous warning, counsel for Interested Parties waited until September 13, 2022—over three months from having first received actual notice of these proceedings—to file an appearance in this matter. ECF No. 163.

Notably, even after counsel for Interested Parties filed its belated appearance, the Interested Parties and their counsel had multiple opportunities to apprise themselves of the status-quo and take whatever steps they deemed necessary to protect the Interested Parties' interests. Indeed, for the time period commencing as of opposing counsel first making an appearance on September 13, 2022, and the Interested Parties' Motion to Vacate filed on October 14, 2022, below are just a few events for which such counsel should have taken note:

i) the **unsealed** filing of the U.S. Marshal's Process Receipt and Return (Form 285) for the Fisher Island and Collins Avenue Properties on September 21, 2022, *see* ECF No. 169 and ECF No. 168, respectively;

---

[4] Notably, counsel for Interested Parties **received actual notice of these proceedings <u>one day after the writs of execution relating to the Fisher Island and Collins Avenue Properties were issued.</u>** *See* Writs of Execution, ECF No. 156 (reflecting an issuance date of May 31, 2022) and ECF No. 156-1 (same).

ii) the recording of the Notice of Lis Pendens relating to the Fisher Island and Collins Avenue Properties and corresponding exhibits (including writs of execution) in Miami-Dade County on September 27, 2022, *see* **Composite Exhibits 4 and 7**, respectively;

iii) the recording of the Order Determining Raul Gorrin Belisario ("Gorrin") and Gustavo Perdomo Rosales ("Perdomo") to be FARC A/Is (including corresponding exhibits) in Miami-Dade County on September 27, 2022, *see* **Composite Exhibit 10**;

iv) the U.S. Marshal's mailings of the Notice of Levy, Notice of Sale, and Fla. Stat. § 56.27 Affidavit—relating to the Fisher Island and/or Collins Avenue Properties—on October 3, 2022, to **Howard Srebnick** (counsel for the Interested Parties), **Ed Wilson** (counsel for the Interested Parties), Interested Party Planet 2 Reaching Inc. (in the c/o of **Cosme De La Torriente P.A.**, via substitute Service upon the Delaware Secretary of State, and at the Fisher Island Property), and Interested Party Posh 8 Dynamic Inc. (via substitute Service upon the Delaware Secretary of State and at the Collins Avenue Property), among others;

v) delivery of the mailing referenced in item iv) to **Howard Srebnick** (counsel for the Interested Parties) on October 6, 2022, providing him with additional detail regarding proceedings against the Fisher Island and Collins Avenue Properties, including the then-imminent U.S. Marshal Public Auction date (i.e., the sale date) relating to the Fisher Island and Collins Avenue Properties;

vi) delivery of the mailing referenced in item iv) to **Ed Wilson** (counsel for the Interested Parties) on October 7, 2022, providing him with additional detail regarding proceedings against the Fisher Island and Collins Avenue Properties, including the then-imminent U.S. Marshal Public Auction date relating to the Fisher Island and Collins Avenue Properties;[5]

vii) delivery of the mailing referenced in item iv) to Interested Party Planet 2 Reaching Inc. in the c/o of **Cosme De La Torriente P.A.** on October 7, 2022, providing it with additional detail regarding proceedings against the Fisher Island Property, including

---

[5] In his Declaration, Ed Wilson swears that he never received the writs of execution relating to the Fisher Island and Collins Avenue Properties. ECF No. 183-2 at ¶ 11. However, in light of the proof of mailing and delivery to Ed Wilson of the U.S. Marshal's October 3, 2022 mailing, the implication that Ed Wilson did not have any knowledge of these proceedings relating to the Fisher Island and Collins Avenue Properties is false and untenable.

8

        the then-imminent U.S. Marshal Public Auction date relating to the Fisher Island Property;

viii)    <u>delivery of the mailing referenced in item iv) to Interested Party Planet 2 Reaching Inc. and Interested Party Posh 8 Dynamic Inc. via substitute Service upon the Delaware Secretary of State</u> on October 11, 2022, providing each Interested Party with additional detail regarding proceedings against the Fisher Island and/or Collins Avenue Properties, including the then-imminent U.S. Marshal Public Auction date relating to the Fisher Island and Collins Avenue Properties;

ix)    the first publication of the Notice of Sale relating to the Fisher Island and Collins Avenue Properties in the Daily Business Review on October 3, 2022;

x)    the second publication of the Notice of Sale relating to the Fisher Island and Collins Avenue Properties in the Daily Business Review on October 11, 2022.

Despite having copious notice of these proceedings (including the then-imminent U.S. Marshal Public Auction date relating to the Fisher Island and Collins Avenue Properties), the Interested Parties sat on their rights, waiting until October 14, 2022, to file their Motion to Vacate. ECF No. 175.

Notably, the Eleventh Circuit does not even require that each of the above be accomplished but has instead held that if a person or entity has actual notice prior to the turnover of the asset, due process has been satisfied even if any technical notice requirements found in the Florida Statutes have not been met. *Stansell II*, 771 F.3d at 741-742 ("Any failure by the district court to conform to Florida's notice procedures was harmless because the Partnerships received actual notice and were able to contest the allegations as provided in § 77.07; they merely failed to succeed on the merits."). Here, the Interested Parties had actual notice of these proceedings and appeared long before the November 8, 2022 sale of the Fisher Island Property and the Collins Avenue Property and, therefore, have had many opportunities to move to present evidence and/or stay the sale of the properties. Indeed, it was only ***after*** the November 8, 2022 sale that the Interested Parties even bothered to provide untimely declarations.

Based on all of the above, Caballero respectfully requests that this Court order moot any challenge under the Interested Parties' Motion to Vacate as to the writs levied upon, and the completed sale of, the Fisher Island Property and the Collins Avenue Property because, as the

9

Eleventh Circuit held, "a determination that the Claimants are not agents or instrumentalities of a terrorist organization would not rescind the sale." *Stansell III*, 772 F. App'x at 776.

### B. The Reply Is Untimely and Should be Stricken

The Reply was filed on November 14, 2022—three days after the extended deadline of November 11, 2022, requested by the Interested Parties in their Unopposed Motion [ECF No. 180] and granted by this Court [ECF No. 181]. Having failed to meet the deadline that they asked to be set, the Interested Parties have no, and have not provided any, excuse for the late filing.

The Interested Parties reply was originally due on November 4, 2022. ECF No. 180 at 1. On November 2, 2022, the Interested Parties requested, and Caballero did not oppose, an extension of time until November 11, 2022, to file their reply. ECF No. 180 at 1. On November 3, 2022, this Court granted the unopposed motion and ordered: "Interested Parties shall file their Reply on or before November 11, 2022." ECF No. 181. That same day, the Clerk sent out a notice that the deadline for the reply had been reset to November 11, 2022. The Interested Parties did not move for further extension of time and filed their reply three days later on November 14, 2022 [ECF No. 183].

Although Friday, November 11, 2022, was Veterans Day and a Court holiday, it was still the requested, agreed upon, and ordered deadline for the reply. The rule that deadlines falling on a holiday or weekend are extended until the next business day is applicable only to deadline computations—***not*** to deadlines set for a specific day. The law on this is clear and unequivocal.

Local Rule 7.1(c)(1) provides that time is to be computed in accordance with Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(a) of the Federal Rules of Civil Procedure is applicable to "computing any time period specified in these rules . . . ." The Committee Notes on Rules to the 2009 Amendment makes clear that Rule 6's time computation provisions, which include extending deadlines that fall on a holiday or weekend, are not applicable "where the court has established a specific calendar day as a deadline." The comments provide:

> The time-computation provisions of subdivision (a) apply only when a time period must be computed. They ***do not*** apply when a fixed time to act is set. The amendments thus carry forward the approach taken in *Violette v. P.A. Days, Inc.*, 427 F.3d 1015, 1016 (6th Cir. 2005) (holding that Civil Rule 6(a) "does not apply to situations where the court has established a specific calendar day as a deadline"), and reject the contrary holding of *In re American Healthcare Management, Inc.*, 900 F.2d 827, 832 (5th Cir. 1990) (holding that Bankruptcy Rule 9006(a) governs treatment of date-

10

> certain deadline set by court order). If, for example, the date for filing is "no later than November 1, 2007," subdivision (a) does not govern. But if a filing is required to be made "within 10 days" or "within 72 hours," subdivision (a) describes how that deadline is computed.

Committee Notes on Rules – 2009 Amendment (emphasis added).

Following the 2009 Amendments, courts have recognized that Rule 6 does not apply to fixed deadlines such as the fixed deadline of November 11, 2022, set here. *See, e.g.*, *X/Open Co. Ltd. v. Gray (In re Gray)*, 492 B.R. 923, 926 (Bankr. M.D. Fla. 2013). The Interested Parties' deadline to file their Reply was November 11, 2022—a fixed deadline they chose. The Interested Parties filed their Reply after such deadline without seeking leave of Court and without providing any valid excuse. The Eleventh Circuit has held that attorney error based on a misunderstanding of the plain language of a rule cannot constitute excusable neglect. *Advanced Estimating Sys., Inc. v. Riney*, 130 F.3d 996, 998 (11th Cir. 1997).

This Court has the discretion to strike the late filed reply. *See, e.g.*, *Stovall v. Select Portfolio Servicing, Inc. (In re Stovall)*, Nos. 11-70974-TOM-13, 11-00412-TOM, 2012 Bankr. LEXIS 2233 at *10-14 (Bankr. N.D. Ala. May 18, 2012) (granting motion to strike response to motion for summary judgment that was filed two days late). Doing so will not prejudice the Interested Parties because, as argued below, their arguments and declarations related to this Court's A/I determination were required to be made in their motion, not in a reply brief. Allowing the Interested Parties to file late and particularly, to file declarations that should have been filed with their Motion to Vacate, will prejudice Caballero—who based his Response to the Motion to Vacate [ECF No. 177] on the matters set forth in the Interested Parties' Motion to Vacate.

### C. The Interested Parties' Arguments and Declarations Inappropriately Address Issues that Were Required to be Raised in the Motion

Local Rule 7.1(c)(1) of the Southern District of Florida has two principles applicable to this Motion to Strike. First, Local Rule 7.1(c) mandates that reply memorandums "shall be strictly limited to rebuttal of matters raised in the movant's initial memorandum of law without reargument of matters covered in the movant's initial memorandum of law." Second, Rule 7.1(c)(1) provides that "[a] reply memorandum may not raise new arguments or evidence, particularly where the evidence was available when the underlying motion was filed and the movant was aware (or should have been aware) of the necessity of the evidence." *Lage v. Ocwen Loan Servicing LLC*, 145 F.

11

Supp. 3d 1172, 1181 (S.D. Fla. 2015) *aff'd*, 839 F.3d 1003 (11th Cir. 2016). The Interested Parties' Reply violates both of the above principles contained in the Local Rules.

### 1. The Interested Parties Inappropriately Reargue Matters

The portions of the Reply addressing notice, sealing, and *ex parte* procedures, including the declaration of Robert Tully Dunlap, inappropriately rehash, in more detail, the very same arguments made in the Motion about notice, sealing, and *ex parte* procedures. As Caballero noted in his Response, all of such arguments are irrelevant. The Interested Parties received ***actual notice before*** any execution sale and ***appeared*** before this Court ***before*** any execution sale. ECF No. 177 at 12-14. The Eleventh Circuit has unequivocally stated that in such circumstances due process has been satisfied.

In *Stansell II*, the plaintiffs used the *ex parte* procedures to obtain and serve writs. In that case, none of the appellants received either notice or an opportunity to be heard prior to the attachment of writs to their blocked assets. In every instance, the Eleventh Circuit found that each had received sufficient due process, in part, because each case before the district court with the opportunity to provide evidence and argument. *Stansell II,* 771 F.3d at 736, 739-741, 744-45, 746 (affirming judgment against Herrera who received no notice of the proceedings against him; affirming judgment against the Partnerships who received no notice prior to the issuance of the writs attaching their real estate; affirming judgment against Jamce Investments as "no pre-deprivation hearing was warranted"; affirming judgment as to the Individual Claimants, none of whom had notice of the writ proceedings until after garnishment).

Instead of rebutting Caballero's legal arguments regarding the application of *Stansell II* and the other *Stansell* cases cited in Caballero's Response, the Interested Parties re-hash, in more detail, their incomplete view of the notice provided in this action. Any such detail, including any declaration, should have been provided in the Motion. Moreover, the Interested Parties' recitation of such detail is *embarrassingly* contradicted by the record in this action.

To keep the record straight, Caballero has attached hereto as **Exhibit 4** a timeline showing all of the (multiple and redundant) notice received by the Interested Parties regarding the Fisher Island Property and the Collins Avenue Property. Caballero followed the same procedures with regard to the other properties under writ in this District. ECF No. 177 at 18.

## 2. The Interested Parties Inappropriately Attach Declarations on Subjects that Should Have Been Covered in Their Motion to Vacate

As explained more fully in Caballero's response, the Eleventh Circuit has held that the Interested Parties were required to provide evidence rebutting this Court's A/I determination with their Motion to Vacate. ECF No. 177 at 9-11, 15. The Interested Parties did not do so. Instead, with their Reply, the Interested Parties filed three declarations (D.E. Wilson, Jr. ("Wilson"), Perdomo, and Gorrin) addressing the substance of this Court's A/I determination. The filing of these declarations with the Reply not only run counter to the Eleventh Circuit's precedent, but such filing also violates the Local Rules of this District, which do not permit parties to file declarations with their reply memorandums on subjects that should have been covered in their motions.

The Eleventh Circuit has held that the Interested Parties' opportunity to be heard and to provide evidence is with the filing of their motion to vacate. *Stansell II,* 771 F.2d at 741-42 (rejecting arguments of claimants, who failed to supply evidence on the A/I determination); *Stansell et al. v. Revolutionary Armed Forces of Colombia (FARC), et al.*, No. 8:09-cv-02308 (M.D. Fla., Aug. 31, 2018), ECF No. 1144 at 1 (rejecting A/I motion to vacate that was not supported by any evidence), affirmed by *Stansell III*; *Stansell v. Revolutionary Armed Forces of Colom,* 802 Fed. Appx. 445, 447 (11th Cir. 2010) ("*Stansell IV*") (affirming denial of motions challenging writs on various properties because the motion was not supported by any evidence).

The Interested Parties rely on the Eleventh Circuit's recent opinion in *Stansell v. Revolutionary Armed Forces of Colom,* 45 F.4th 1340 (11th Cir. 2022) ("*Stansell V*"). But, in that case, the movants filed lay and expert affidavits ***with*** their motions to dissolve the writs ***not*** with any reply memorandum. As the Eleventh Circuit explained: "Upon receiving notice of the *ex parte* proceeding, the Lopez appellants filed motions – **<u>with supporting lay and expert affidavits</u>** – to dissolve the writs of garnishment." *Id.* at 1347 (emphasis added). Based on the combination of such lay and expert affidavits and other testimony at an evidentiary hearing, the Eleventh Circuit found a sufficient issue of fact to warrant a jury trial. *Id.* at 1360.

Attaching the declarations to the Reply not only runs afoul of Eleventh Circuit precedent, but it also violates Local Rule 7.1(c)(1) of the Southern District of Florida because "[a] reply memorandum may not raise new arguments or evidence, particularly where the evidence was available when the underlying motion was filed and the movant was aware (or should have been aware) of the necessity of the evidence." *Lage v. Ocwen Loan Servicing LLC*, 145 F. Supp. 3d

13

1172, 1181 (S.D. Fla. 2015) *aff'd*, 839 F.3d 1003 (11th Cir. 2016); *TCC Air Servs. v. Schlesinger*, No. 05-80543-CIV-Ryskamp, 2009 U.S. Dist. LEXIS 21010 at *19-20 (S.D. Fla. Mar. 5, 2009) (party who has the burden must file necessary evidence with their motion, not their reply). As Judge Ryskamp noted, "[i]f this Court were to consider this evidence now, defendants would be prejudiced by not having an opportunity to determine the reasonableness of plaintiffs' costs in light of the records supporting plaintiffs' claims." *Id.* at *20.

Put simply, "[b]ringing up new facts in a reply brief is also improper if no good reason exists for why the party could not have introduced the facts in its original motion." *Giglio Sub s.n.c. v. Carnival Corp.*, No. 12-21680-CIV-Rosenbaum, 2012 U.S. Dist. LEXIS 144140 at *7 (S.D. Fla. Sept. 26, 2012). The Rule does not preclude the filing of declarations with a reply memorandum if such declarations are true rebuttal declarations, but a reply memorandum may not contain new "particularly where the evidence was available when the underlying motion was filed and the movant was aware (or should have been aware) of the necessity of the evidence." *Lage*, 145 F. Supp. 3d at 1181. As discussed below, the declarations of Gorrin, Perdomo, and Wilson violate this rule.

The Interested Parties attach the Declarations of Wilson,[6] Gorrin, and Perdomo.[7] Each of those declarations addresses the substance of this Court's A/I determination and Caballero's

---

[6] The Wilson Declaration draws a distinction between "blocked assets" located in the United States that are subject to execution and "designated" property located wholly outside the United States that, in his view, is not subject to execution. ECF No. 183-2 at 2-4. We will fully brief such issues if they become relevant. They are not, but we will note that the distinction is irrelevant as to the real property executed upon in this District and, with regard to shares or interests in companies located outside the United States, any distinction between "designated" and "blocked" becomes irrelevant if a person owning a designated asset comes into the United States.

Wilson also takes issue with Caballero executing upon "substitute property" described in the Gorrin indictment, arguing that "substitute property" by its very nature is not alleged to be derived from or traceable to the charged offenses Again, the argument is irrelevant. The U.S. government did not charge Gorrin with being an A/I of the FARC such that the designation of "substitute property" could have any relevance. The U.S. government charged with Gorrin with specific behavior that occurred in this District. In any event, Caballero is entitled to go after any blocked asset of an A/I and does not need to trace the asset back to conduct benefiting the FARC.

[7] Gorrin and Perdomo do not dispute that they own and control the Interested Parties and the other entities subject to the A/I Order. They merely deny that any of the funds used to finance any of the entities or any of the real properties listed in this Court's A/I Order in which they have an ownership or controlling interest were derived from or traceable to criminal activity. Of course, that is not the test. Caballero is entitled to any blocked asset of the A/I–under TRIA.

14

execution efforts. Each of the issues addressed in the declarations should have been raised in the Interested Parties' October 14, 2022 Motion to Vacate. ECF No. 175. The Interested Parties' argument that they could not do so because Caballero proceeded *ex parte* or because certain entries have been or remain under seal is simply not supported by the record.

On September 20, 2022, the Clerk unsealed Caballero's A/I Motion and this Court's A/I Order. *See* ECF No. 166. The A/I Motion [ECF No. 150] specifically noted that it is supported by the previously filed declarations of McBrien found at ECF Nos. 73-2, 81-1 and 81-2. ECF No. 150 at 7 n.7. Moreover, this Court's A/I Order [ECF No. 151], which is the subject of the motion to vacate, also references McBrien's declarations [ECF No. 151 at 4-5]. Likewise, the Court's A/I Order specifically references Gorrin and Perdomo. ECF No. 151 at 4-5.

The first declaration of McBrien had been unsealed for ***more than a year and a half***— since December 14, 2020 [ECF No. 83], and the second had been unsealed for ***almost a year*** since October 22, 2021 [ECF No. 127].[8] Thus, when filing their October 14, 2022 Motion to Vacate, the Interested Parties had this Court's unsealed A/I Order, the unsealed A/I Motion, and the supporting declarations. The Interested Parties complain that when unsealing Caballero's A/I Motion, the Clerk did not unseal the exhibits thereto. But Exhibits 1 through 4 of the A/I Motion ***do not*** contain any facts that would need to be reviewed and rebutted—they simply do the

---

[8] The Interested Parties renew their attack on McBrien, ignoring the eight courts that have accepted McBrien's declarations: (i) *Caballero v. FARC, et al.,* No. 20-mc-00249 (S.D.N.Y.), expert materials at ECF Nos. 9-1 through 9-5 and 29-4 through 29-5; (ii) *Caballero v. FARC, et al.*, No. 20-cv-07602 (C.D. Cal.), expert materials at ECF Nos 6-3 through 6-6; (iii) *Caballero v. FARC*, No. 20-mc-00040-LJV (W.D.N.Y), expert materials at ECF Nos. 10-3 through 10-4; (iv) *Caballero v. FARC*, No. 20-mc-00045-PJS-DTS (D. Minn.), expert materials at ECF Nos. 10 through 13; (v) *Caballero v. FARC*, No. 20-cv-01939-RNC (D. Conn.), expert materials at ECF Nos. 28-2 through 28-4; (vi) *Caballero v. FARC*, No. 20-mc-00105-VMC-THG (M.D. Fla.), expert materials at ECF Nos. 6-2 through 6-3; (vii) *Caballero v. FARC*, No. 20-09-11744 (Tex. Montgomery County) [284th Dist]; and (viii) *Caballero v. FARC*, No. 2020-CP-40-03495 (S.C. Ct. Comm. Pleas Richland County). The Interested Parties cite to a Magistrate Judge's report and recommendation finding McBrien's declarations insufficient to declare Cesar Alvarez Montelongo to be an A/I. ECF No. 183 at 11. The Interested Parties fail to disclose the United States District Court Judge Holcomb of the Central District of California reviewed the same McBrien declarations and found Mr. Alvarez to be an A/I. *See Caballero v. FARC, et al.*, No. 20-cv-07602 (C.D. Cal.) (the "C.D. Cal. Case"), at ECF No. 39. The Interested Parties also fail to disclose that Judge Holcomb entered several substantive rulings against Mr. Alvarez and thereafter, the case settled. C.D. Cal. Case, ECF Nos. 124, 151.

following: Ex. 1 – list Gorrin and Perdomo and their aliases; Ex. 2 – list the entities associated with Gorrin and Perdomo; Ex. 3 – list the real estate owned by the entities on Ex. 2; and Ex. 4 - provide a proposed order.

Because the Gorrin, Perdomo, and Wilson declarations each address McBrien's unsealed conclusions and this Court's unsealed A/I Order, the Eleventh Circuit's precedent and this Court's Local Rules required the Interested Parties to file such declarations with their motion to vacate – not with their reply memorandum. The prejudice to Caballero is obvious. In May 2022, he provided notice to the Interested Parties of these execution proceedings and since then has provided the Interested Parties with repeated notice of these execution proceedings. The Interested Parties had the opportunity to appear in this case for five months and when they did so, they failed to file any evidence. A terrorism victim should not have to start the case over just because an A/I sat on its hands and did nothing—particularly when the U.S. Marshal has sold two of the properties and caused the payment to the U.S. Marshal of a $50,000.00 commission.

### D. A Jury Trial Would be Futile if Gorrin and Perdomo do not Agree to Appear Before this Court

There is another reason to strike the Reply and deny the Motion to Vacate. Nowhere in the Interested Parties Motion to Vacate, its Reply, or in the Declarations of Gorrin or Perdomo have Gorrin or Perdomo agreed to appear for a jury trial in this District. Gorrin and Perdomo have been willing to attempt to create an issue of fact by providing Declarations. ECF No. 183-3; ECF No. 183-4. Gorrin and Perdomo have been willing to challenge in their respective Declarations that each of them is not an A/I of the FARC. ECF No. 183-3 at ¶¶ 1-10; ECF No. 183-4 at ¶¶ 1-10. Indeed, the only factual record regarding the Interested Parties activities have been provided by Gorrin and Perdomo. Yet, nowhere in the record is there any agreement or acknowledgment by Gorrin and Perdomo that both will appear in this District for the jury trial that the Interested Parties have requested.

To the contrary, in each of their Declarations, Gorrin and Perdomo specifically (in a clear attempt to refute this Court's jurisdiction over them) note that they are citizens and residents of Venezuela and are not lawful permanent residents of the United States. ECF No. 183-3 at ¶ 12; ECF No. 183-4 at ¶ 12. In their attestations, each also takes pains to inform this Court that no United States Court or law enforcement agency has jurisdiction over them. Each attests to be "physically located outside the geographic boundaries of the United States, Puerto Rico, the United

16

States Virgin Islands, and any territory or insular possession subject to the jurisdiction of the United States." ECF No. 183-3 at 3; ECF No. 183-4 at 2.

Caballero noted in his response that Gorrin has been indicted in this District and is a fugitive from United States law enforcement. ECF No. 177 at 1-2.  The Fugitive Disentitlement Doctrine precludes Gorrin, a fugitive, to attempt to avoid a jury in his criminal trial, but at the same time obtain relief from this Court and a jury trial as to his status as an A/I of the FARC.  Likewise, Perdomo cannot abuse this Court's process by secreting assets into the United States, but refusing to subject himself to this Court's jurisdiction and appear for the jury trial requested by the Interested Parties.  If that were the rule (and it is not), A/Is hiding in the mountains of Afghanistan (or in this case Venezuela) could seek to protect assets located in the United States without subjecting themselves to United States law enforcement agencies, other civil enforcement agencies, or the power of this Court to enforce sanctions for perjury or discovery violations.

Because Gorrin and Perdomo have filed "naked" declarations—that is declarations that attempt to create an issue of fact for a jury trial that they have not agreed to attend, the declarations should be stricken.

## Conclusion

For the reasons set forth herein, Caballero respectfully requests that this Court strike the Reply [ECF No. 183] as untimely and in violation of Local Rule 7.1(c).  Caballero also requests that this Court order that any challenge by the Interested Parties to the sale of the Fisher Island Property and the Collins Avenue Property is moot.

Respectfully submitted,

*/s/ Joseph I. Zumpano*
Joseph I. Zumpano
Fla. Bar. No. 0056091
jzumpano@zplaw.com
Leon N. Patricios
Fla. Bar No. 0012777
lpatricios@zplaw.com
ZUMPANO PATRICIOS, P.A.
312 Minorca Ave.
Coral Gables, FL 33134
Tel: (305) 444-5565

*Attorneys for Plaintiff Antonio Caballero*

## CERTIFICATE OF CONFERENCE

I HEREBY CERTIFY that undersigned counsel has conferred with counsel for the Interested Parties regarding the relief set forth herein and that the Interested Parties object to such relief.

*/s/ Leon N. Patricios*
Leon N. Patricios

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 16th day of November, 2022, the undersigned electronically filed the foregoing document with the Clerk of the Courts by using the CM/ECF system.

*/s/ Leon N. Patricios*
Leon N. Patricios