# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:18-cv-25337-KMM/Becerra

ANTONIO CABALLERO,

      Plaintiff,

v.

FUERZAS ARMADAS
REVOLUCIONARIOS DE COLOMBIA,
etc. *et al.*,

      Defendants.

_____/

## REPORT AND RECOMMENDATION ON INTERESTED PARTIES'[1] EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER[2]

THIS CAUSE came before the Court on the Interested Parties' Emergency Motion For (1) A Temporary Restraining Order Restraining Plaintiff, His Entities And Agents From Dissipating, Conveying, Encumbering or Otherwise Transferring Ownership of the "Fisher Island" And "Collins Avenue" Properties, (2) A Stay of Any Further Executions And Sales of Levied Properties; And (3) An Order Setting Aside Sales (the "TRO Motion"), ECF No. [187].  Plaintiff Antonio Caballero ("Plaintiff") filed a Response in Opposition to the TRO Motion (the

---

[1] Originally, eight Interested Parties were identified: Planet 2 Reaching, Inc., Posh 8 Dynamic Inc., RIM Group Investments Corp., RIM Group Investments I Corp., RIM Group Investments II Corp., RIM Group Investments III Corp., RIM Group Properties of New York II Corp., and Tindaya Properties of New York.  ECF No. [163].  Magus Holding LLC and Tindaya Properties of NewYork II Corp., have now appeared, ECF No. [185], and joined in the instant TRO Motion such that these ten entities are the "Interested Parties."

[2] This matter was referred to the undersigned by the Honorable K. Michael Moore, United States District Judge.  ECF No. [188].

"Opposition to the TRO Motion"), ECF No. [192], and the Interested Parties filed a Reply, ECF (the "Reply to the TRO Motion"), No. [196].  Counsel appeared before the undersigned for a status hearing on the TRO Motion on November 29, 2022 (the day after the TRO Motion was filed) in order to set a date for the evidentiary hearing on the matter.  *See* ECF No. [190].  The parties agreed to set the matter for a hearing on December 2, 2022 (the "Hearing").  *See id.*  At the Hearing, both counsel agreed that an evidentiary hearing was not necessary given certain representation made by Plaintiff's counsel in his Opposition to the TRO Motion.  Instead, counsel for the parties presented extensive argument to the Court, with the aid of demonstrative exhibits that are now part of the Court record.  *See* ECF Nos. [197], [199], [200].  After a review of the instant Motion, the arguments of the Parties, the pertinent portions of the record, and the relevant authorities, and for the reasons stated below, it is hereby **RECOMMENDED** that the TRO Motion be **GRANTED IN PART AND DENIED IN PART**.

## I.   PROCEDURAL BACKGROUND

Plaintiff, whose father was a victim of two criminal narco-terrorist organizations, the Fuerzas Armadas Revolucionarias de Colombia ("FARC") and the Norte de Valle Cartel ("NDV"), brought the underlying action pursuant to 18 U.S.C. § 2333, part of the Anti-Terrorism Act ("ATA").  ECF No. [1] ¶ 1.  On May 20, 2020, the District Court entered default final judgment against Defendants, as follows:

> [f]orty-five million dollars ($45,000,000.00) in actual, compensatory non-economic damages, which is further trebled pursuant to 18 U.S.C. § 2333; one million, seven hundred and twenty-nine thousand, six-hundred and sixty-seven dollars ($1,729,667.00) in actual, compensatory economic damages, which is further trebled pursuant to 18 U.S.C. § 2333; and post-judgment interest at the rate of 0.15% from May 20, 2020 the date of final judgment, on the above-awarded trebled economic and non-economic damages, for which sum let execution issue.

(the "Final Default Judgment"), ECF No. [63].  The total amount, therefore, is $135,000,000.00 for non-economic damages, and $5,189,001.00 for economic damages, plus interest.  *Id.*  The factual and procedural background leading to the Final Default Judgement was previously summarized by the Court, s*ee, e.g.,* ECF No. [62], and is not at issue.

From the time the Final Default Judgement was entered on May 20, 2020, Plaintiff began his efforts to satisfy the judgment against various parties.  The procedural history in this case from Final Default Judgment until April 8, 2022, is not relevant to the issue at hand, and therefore, the undersigned will proceed to review only the collection effort against the Interested Parties.

### A.  Plaintiff Begins Collection Efforts Against The Interested Parties

Plaintiff's collection efforts as to the Interested Parties began on April 8, 2022, when Plaintiff filed an *Ex Parte* Expedited Motion for Agency or Instrumentality Determination with Incorporated Memorandum of Law (the "A/I Motion").  ECF No. [150].  Plaintiff argued that under the ATA, and the Terrorism Risk Insurance Act ("TRIA"), Pub. L. No. 107-297, § 201(a), 116 Stat. 2322 (codified at 28 U.S.C. § 1610 note), "a victim holding an unsatisfied judgment against a terrorist party can collect" so long as: (1) the victim "has obtained a judgment against a terrorist party"; (2) the judgment is "either for a claim based on an act of terrorism," or "for a claim for which a terrorist party is not immune"; and (3) the assets at issue are "'blocked assets' within the meaning of TRIA".  ECF No. [150] at 4 (citing *Weininger v. Castro*, 462 F. Supp. 2d 457, 459 (S.D.N.Y. 2006)).  Plaintiff also argued that the Final Default Judgment could be collected as against any agency or instrumentality of a terrorist party.  *Id.*

Plaintiff further argued that he needed an expedited determination as to the individuals and entities he alleged were agencies and instrumentalities so that he could "file a lis pendens against and start the execution process upon the blocked assets."  *Id.* at 1.  Exhibit 1 to the A/I Motion

3

contained a list of individuals that Plaintiff proffered were agencies and instrumentalities of the FARC. ECF No. [150-1]. Raul Gorrin Belisario ("Gorrin") was one of two individuals listed. *Id.* at 2. Exhibit 2 to the A/I Motion contained a list of entities Plaintiff proffered as agencies and instrumentalities of the FARC. ECF No. [150-2]. Posh 8 Dynamic, Inc. and Planet 2 Reaching, Inc., as well as the other Interested Parties herein, were among the twenty-three entities listed. *Id.* Exhibit 3 to the A/I Motion contained a list of blocked assets, purportedly owned by these individuals and entities, that Plaintiff sought to attach in execution of the Final Default Judgment. ECF No. [150-3]. The property located at 7043 Fisher Island Drive, Miami Beach, Florida, purportedly owned by Planet 2 Reaching, Inc. (the "Fisher Island Property") and the property located at 18555 Collins Avenue, Sunny Isles, Florida, purportedly own by Posh 8 Dynamic Inc. (the "Collins Avenue Property"), were two of ten assets listed in Exhibit 3. *Id.* at 2.

As to the *ex parte* and sealed nature of the request, Plaintiff argued, citing to the Court's previous Orders as to other parties in this case and to Eleventh Circuit case law, that the Interested Parties were "not entitled to a hearing before the issuance of a writ of attachment, but only before turnover." ECF No. [150] at 5. In sum, Claimants were entitled to notice and to be heard before execution, though not necessarily before attachment. *Id.* And, as to the need for an expedited request, Plaintiff reiterated that:

> [g]iven the fleeting nature of these blocked assets, Caballero has filed this expedited motion in order to place lis pendens on such blocked assets listed on Exhibit 3 pending application for and issuance of writs of execution in accordance with the procedures previously used with this Court. [citation omitted] Significantly, the Eleventh Circuit has opined that TRIA favors "immediate attachment" and that "[m]ere attachment is a minimally intrusive manner" of reducing the risks of fleeting assets. *See Stansell*, 771 F. 3d at 729-30. Accordingly, Caballero respectfully requests expedited review under SDFL Local Rule 7.1(d)(2) and relief by [date] certain—April 22, 2022 (14 days after filing) to promptly attach these assets and perfect his judgment lien under Florida law.

4

*Id.* at 20.  Finally, in support of the A/I Motion, Plaintiff also referenced a prior submission of a declaration and supplement of John Robert McBrien, the former Associate Director for Global Targeting in the Office of Foreign Asset Control ("OFAC").  *Id.* at 7; ECF Nos. [73-2]; [81-1]– [81-2].  Mr. McBrien opined, based on his experience and review of public documents, that the listed individuals and entities were agencies and instrumentalities of the FARC.  *See* ECF Nos. [73-2]; [81-1]–[81-2].

### B. The Court Finds That The Interested Parties (And Others) Are Agencies And Instrumentalities Of The FARC

On April 25, 2022, the District Court granted the A/I Motion (the "A/I Order").  ECF No. [151].  Accordingly, the individuals listed in Exhibit 1 to the A/I Motion and the entities listed in Exhibit 2 to the A/I Motion were deemed agencies or instrumentalities of the FARC, and the properties listed in Exhibit 3 were now subject to attachment in satisfaction of the Final Default Judgment.  *See* ECF Nos. [151]; [150-1]; [150-2]; [150-3].  Although the A/I Motion, its Exhibits, and the A/I Order were all filed under seal, the Court instructed the Clerk of Court to unseal the A/I Motion and the A/I Order on the earlier of thirty days after entry of the A/I Order, or upon the filing of Plaintiff's notice of attachment of all assets therein.  ECF No. [151] at 6.  No notice of attachment appears to have been filed.  However, the A/I Motion and A/I Order would have been unsealed, in any event, by May 25, 2022.  Given that the Court ordered that the A/I Motion and A/I Order be unsealed without further order or showing necessary, it appears that the Court contemplated what Plaintiff had argued would be the process: that notice and a hearing would be had before any properties were turned over.[3]

---

[3]  Although the Interested Parties take issue with the *ex parte* and sealed nature of some of these proceedings, there was sufficient cause alleged in the A/I Motion to have justified the filing in this fashion, and in any event, the Court permitted the filing.  However, as the Court's A/I Order (as

**C. Plaintiff's *Ex Parte* Expedited Motion for Writs of Execution Against Real Property in the Putative Name Of Two Of The Interested Parties, Planet 2 Reaching, Inc. and Posh 8 Dynamic, Inc.**

On May 27, 2022, Plaintiff filed an *Ex Parte* Expedited Motion for Writs of Execution Against: (1) Real Property in the Putative Name of Planet 2 Reaching, Inc.; and (2) Real Property in the Putative Name of Posh 8 Dynamic, Inc. (the "Motion for Writs of Execution"). ECF No. [155]. Again, the filing was under seal. Plaintiff assured the Court again that "Planet 2 Reaching, Inc., Posh 8 Dynamic. Inc., and Gorrin would receive additional notice of the execution proceedings against them as required under the Florida Statutes." *Id*. at 10. Plaintiff requested that the matter continue to be under seal because he had not yet attached all the assets listed in the attachment to the A/I Order. *Id.* at 15.

Without further order from the Court, on May 31, 2022, the Clerk of Court issued two writs of execution *under seal*: one for the Fisher Island Property, ECF No. [156], and one for the Collins Avenue Property, ECF No. [156-1] (collectively, the "Writs of Execution").

Although thirty days has already passed from the entry of the A/I Order, which required that the A/I Motion and the A/I Order be unsealed, both documents remained sealed. In addition, the Writs of Execution were also filed by the Clerk under seal. *See* ECF Nos. [156]; [156-1].

**D. Notice of Intent**

Before filing the Motion for Writs of Execution, Plaintiff prepared a document entitled "Notice of Intent to Apply for Writ of Execution Against Real Property In the Putative Name of Posh 8 Dynamic, Inc." and another entitled "Notice of Intent to Apply for Writ of Execution Against Real Property In the Putative Name of Planet 2 Reaching, Inc.," both dated May 4, 2022

---

well as other subsequent orders) made clear, the A/I Motion and the A/I Order were not to remain sealed. Indeed, they should have been unsealed no later than May 25, 2022.

(the "Notices of Intent").  *See* ECF No. [177-1].  These Notices contained the instant case number although the Notices of Intent were not part of the Court record.  Plaintiff served the Notices of Intent to the Secretary of State of Delaware, as well as a law firm (not the Interested Parties' counsel), and tendered the Notices of Intent to the U.S. Marshal's Service ("USMS") who posted them on Fisher Island Property and Collins Avenue Property on May 13, 2022.  *Id.* at 3, 6–7, 10.  The only indication of when those Notices of Intent were posted comes from a notation on the notices themselves, which Plaintiff filed as an attachment to a separate filing in October 2022.  *Id.*

Of relevance are two statements in the Notices of Intent: (1) "It is the position of Mr. Caballero that Gorrin is an agency or instrumentality of the FARC"; and (2) "Notice is hereby given that after the expiration of twenty-one (21) days from the date of service of this Notice, Mr. Caballero will file his application for a writ of execution."  *Id.* at 4–5.  Of course, those representations were not accurate.  Plaintiff had in fact *already* sought and *received* an Order from the Court designating Gorrin as an agency or instrumentality of the FARC, and Plaintiff proceeded to seek the writ of execution before the expiration of twenty-one days after the service on May 13, 2022.  *See* ECF No. [155] (dated May 27, 2022).  It is unclear why these Notices of Intent, as opposed to notices that accurately stated the record, were provided by Plaintiff.

### E.   Counsel For The Interested Parties Contacts Plaintiff's Counsel

On June 1, 2022, counsel for the Interested Parties, Mr. Howard Srebnick, contacted counsel for Plaintiff because he had received the Notice of Intent that was posted on the Fisher Island Property, ECF No. [177-1].  Although the case number for this matter was on the Notice of Intent, Mr. Srebnick only had access to the public docket, and as such, was only able to review those docket entries that were public.  In doing so, he was not able to identify *any* proceeding against the Interested Parties, or Gorrin, because *all of the filings related to Gorrin and the*

*Interested Parties were under seal*. Indeed, what was available to counsel on the public docket at that time was captured in a screen shot by Mr. Srebnick and provided to the Court during the Hearing. ECF No. [200-1] at 16. A review of the docket shows that it failed to contain any information that could have alerted counsel that there were already proceedings (of any kind) against any of his clients. Specifically, counsel could not (nor could anyone else) view the A/I Motion, the A/I Order, the Motion for Writs of Execution, or the Writs of Execution. *See* ECF Nos. [150] (still sealed as of this Report and Recommendation); [151] (unsealed on September 20, 2022); [155] (unsealed in part on September 20, 2022); [156] (unsealed on September 26, 2022). In addition, the Notice of Intent described future action that Plaintiff was prepared to take, but did not state that any action against the property had been initiated. *See generally* [177-1].

Although the A/I Motion and A/I Order should have already been unsealed at the time that Mr. Srebnick contacted Plaintiff's counsel, Plaintiff's counsel did not disclose to him that the agency and instrumentality designation had been made or that the Writs of Execution had already been issued. Plaintiff's counsel at the Hearing noted that Mr. Srebnick had not yet made an appearance in the case at the time, and therefore, it would not be his practice to discuss anything about the case with Mr. Srebnick. Although that might have been his practice, Plaintiff's counsel also did not contact the Court or the Clerk of Court to have the A/I Motion and the A/I Order unsealed, which of course, meant that Mr. Srebnick would have no basis to know that proceedings had *already begun* against his clients.

### F.    A Writ Of Execution Is Posted On The Fisher Island Property and the Collins Avenue Property

On June 6, 2022, Plaintiff (through the USMS) posted the Writs of Execution on the Fisher Island Property and the Collins Avenue Property. *See* ECF Nos. [168]; [169]. Plaintiff did not file anything in the Court record at that time indicating that the properties had been attached, or

that the writs had been posted.  There is nothing in the record that indicates that counsel for the Interested Parties received the writs, nor is there anything in the record that indicates that either of the Interested Parties received them at that time.  Instead, the Interested Parties have submitted affidavits from Gorrin stating that no one had been in the properties for some time.  *See* ECF Nos. [183-3] at 3; [196-1] at 3.

On July 4, 2022, counsel for the Interested Parties again e-mailed counsel for Plaintiff.  *See* ECF No. [200-1] at 17.  Counsel's email stated, in part, "[i]n the event that Plaintiff intends to file a Motion for Issuance of Writ of Execution prior to our call, please note for the Court that it is opposed and that the parties have not yet conferred per Local Rule 7.1(a)(3)." *Id.*  At this time, of course, *all filings related to the Interested Parties were still under seal*.  Counsel for the Interested Parties could not view the A/I Motion, the A/I Order, the Motion for Writs of Execution, or the issued Writs of Execution for the properties.  *See* ECF Nos. [150] (still sealed as of this Report and Recommendation); [151] (unsealed on September 20, 2022); [155] (unsealed in part on September 20, 2022); [156] (unsealed on September 26, 2022).  Again, Plaintiff's counsel did not disclose to the Interested Parties' counsel that the agency and instrumentality designation had been made or that the Writs of Execution had issued, nor did he contact the Court or the Clerk of Court to have the A/I Motion and the A/I Order unsealed (as they should have been on May 25, 2022).

### G.    Plaintiff Moves To Unseal Portions Of The Docket And Interested Parties' Counsel Enters An Appearance In This Action

On August 15, 2022, Plaintiff finally moved to unseal portions of the docket (the "First Motion to Unseal").  ECF No. [162].

While the First Motion to Unseal was still pending, on September 12, 2022, counsel for the Interested Parties e-mailed counsel for Plaintiffs again, this time referencing a writ of execution that he had received, but for a property in New York (the "Baccarat Property") and asking to

discuss.  *See* ECF No. [183-1].  This was the first writ of execution that counsel for the Interested Parties received in this case.

The following day, on September 13, 2022, counsel for the Interested Parties filed a Notice of Appearance, ECF No. [163], and then filed a Response in Support of the First Motion to Unseal, ECF No. [164].

On September 19, 2022 the District Court granted the First Motion to Unseal and ordered the following filings to be unsealed by the Clerk of Court: the A/I Motion and all exhibits thereto, ECF Nos. [150]–[150-4]; the A/I Order, ECF No. [151]; the Motion for Writs of Execution and all exhibits thereto, ECF No. [155]–[155-6]; a writ of garnishment on a property not at issue herein, ECF No. [157]; a writ of execution regarding a property not at issue herein, ECF No. [159]; and a writ of execution regarding a property not at issue herein, ECF No. [161].

Despite the Clerk of Court's Notice of Compliance with the Order, ECF No. [166], some of the filings were still not unsealed.  Specifically, as of September 20, 2022, the following documents remained sealed: the A/I Motion and all exhibits thereto, ECF Nos. [150]–[150-4]; and Exhibits 1 through 5 of the Motion for Writs of Execution, ECF Nos. [155-1]–[155-5].[4]  In addition, although the A/I Order was now part of the public docket, the A/I Order did not list the persons entities or properties it had designated as agencies and instrumentalities of the FARC. Instead, the A/I Order incorporated them by referring to the exhibits in the A/I Motion, all of which were still under seal.  In short, anyone looking at the docket as of this date would know that there had been a finding as to some persons, entities, and properties, but would not know which persons, entities, or properties were involved.

---

[4] The Writs of Execution, ECF Nos. [156] and [156-1], were inadvertently omitted from the order granting the First Motion to Unseal.

10

On September 21, 2022, the Interested Parties filed a motion to unseal the entire court file (the "Second Motion to Unseal"), which was unopposed by Plaintiff.  ECF No. [167].

Later that same day, the Returns on the Writs of Execution that had been executed on June 6, 2022 were filed with the Court.  ECF Nos. [168], [169].  Those two filings on September 21, 2022 were the *first* unsealed filings reflecting that Writs of Execution had issued as to the two properties at issue here, and the first notice on the docket that any proceedings as to these properties had been authorized by the Court.

Two days later, on September 23, 2022, the District Court granted the Second Motion to Unseal, and ordered that all sealed portions of the docket be unsealed.  ECF No. [170].  Despite the Clerk of Court's Notice of Compliance with the order to unseal, ECF No. [171], again some of the filings were not unsealed.  Specifically, as of September 26, 2022, the following documents remained sealed: the A/I Motion and all exhibits thereto, ECF Nos. [150]–[150-4]; and Exhibits 1 through 5 of the Motion for Writs of Execution, ECF Nos. [155-1]–[155-5].

Indeed, it was not until October 31, 2022 that Plaintiff provided counsel for the Interested Parties with a copy of the exhibits that had been incorporated by the A/I Order.  *See* ECF No. [183-1] at 30.  There is no explanation on the record as to why this was not sent the day counsel for the Interested Parties entered his appearance in September 2022.

Finally, it should be noted that the lis pendens on the properties at issues were not filed until September 27, 2022, five months *after* the A/I Motion was filed.  *See* ECF No. [183] at 7 n.2.

## H.    **Plaintiff Sells *And* Buys the Fisher Island Property and the Collins Avenue Property**

On October 3, 2022, Plaintiff published his first Notice of Sale in the Daily Business Review ("DBR") as to the sale of the Fisher Island Property and the Collins Avenue Property. ECF No. [184-3]. The scheduled sale of the Fisher Island Property and the Collins Avenue

Property was to take place on November 8, 2022.  *Id.*  Plaintiff published the same Notice of Sale in the DBR each week for a consecutive four weeks.  *Id.*

On October 4, 2022, the USMS sent packages to the counsel of record in this case.  *See* ECF No. [187-1].  Counsel for the Interested Parties received the packages on October 6, 2022. *Id.*  The packages contained a copy of the Final Default Judgment against the FARC, copies of the Writs of Execution for the Fisher Island and Collins Avenue Properties (the "return" sections of which were completely blank, thereby indicating that no levy had occurred), and an affidavit of Plaintiff's counsel dated June 2, 2022, which contained no mention of impending levy or sale of the property. *See generally id.*  The packages undisputedly lacked a notice of sale.  *See* ECF No. [192] at 6 n.10.

Without any hearing on the matter, the Fisher Island Property and the Collins Avenue Property, were sold by Plaintiff at a USMS sale on November 8, 2022.  ECF No. [184] at 1. Specifically, Plaintiff purchased the Fisher Island Property, valued at over $34 million, with a $10 million credit bid from his judgment, and purchased the Collins Avenue Property, valued at over $14 million, with a $10,000 credit bid from his judgment. *See* ECF Nos. [187] at 2–3; [192-1].

## I.    The Motion to Vacate The A/I Order

While Plaintiff was moving forward with the sale of the two properties, the Interested Parties filed a Motion to Vacate the A/I Order and to Issue a Scheduling Order on Their Jury Trial Demand (the "Motion to Vacate").  ECF No. [175].  Specifically, the Interested Parties filed the Motion to Vacate on October 14, 2022, only twenty-three days after the returns of the Writs of Execution for the Fisher Island and Collins Avenue Properties were filed.  Notably, the Motion to Vacate was filed even *prior* to the unsealing of the A/I Motion and exhibits thereto.  At the time of filing, the Interested Parties had access to the A/I Order, which was unsealed on September 20,

2022, but *not* to the A/I Motion itself or the list of individuals, entities, and properties therein, as it had yet to be unsealed despite two Court Orders, ECF Nos. [151] and [165].

It is clear from the Motion to Vacate that the Interested Parties were not aware that Plaintiff had begun the process of selling the Fisher Island and Collins Avenue Properties, and therefore, the Motion to Vacate addressed the lack of notice and the right to be heard on the agency and instrumentality designation. *See* ECF No. [175]. The Interested Parties argued that that they were not given "'notice and a fair hearing where both sides [we]re permitted to present evidence' and the [Interested Parties] 'never ha[d] an opportunity to dispute [their] classification as an agency or instrumentality'" because the process occurred *ex parte* and under seal. *Id.* at 4 (citing *Stansell v. Revolutionary Armed Forces of Colom.*, 771 F.3d 713, 727 (11th Cir. 2014) (hereinafter, "*Stansell II*"[5])). They also argued that they were deprived of constitutional due process, and were entitled to a jury trial pursuant to the Eleventh Circuit's decision, citing *Stansell V*. *Id.* at 5 (citing *Stansell V*, 45 F.4th at 1340). Finally, the Motion to Vacate challenged the credibility of Plaintiff's proffered expert and noted that the Interested Parties were prepared to file a competing affidavit, if required, which would create material issues of fact necessitating a jury trial. *Id.* at 6.

On October 28, 2022, Plaintiff filed a Response in Opposition to the Motion to Vacate (the "Opposition to Motion to Vacate"). ECF No. [177]. Therein, Plaintiff argued that: (1) the Motion

---

[5] Throughout the relevant filings in this matter, both Plaintiff and the Interested Parties refer to a series of "cases from the Southern District of Florida, the Middle District of Florida, and the Eleventh Circuit referred to as the *Stansell* cases. For ease of reference, the undersigned will also refer to the cases as the "*Stansell* cases" and use the same shorthand as the parties have used, namely: "*Stansell II*" shall refer to *Stansell v. Revolutionary Armed Forces of Colom.*, 771 F.3d 713, 727 (11th Cir. 2014); "*Stansell III*" shall refer to *Stansell v. Revolutionary Armed Forces of Colom. (FARC)*, 772 F. App'x 772 (11th Cir. 2019); "*Stansell IV*" shall refer to *Stansell v. Lopez Bello*, 802 F. App'x 445 (11th Cir. 2020); "*Stansell V*" shall refer to 45 F.4th 1340 (11th Cir. 2022); the "*Stansell SDFL Action*" shall refer to *Stansell v. Revolutionary Armed Forces of Colom.*, Case No. 1:19-cv-20896-RNS; and the "*Stansell* MDFL Action" shall refer to *Stansell v. Revolutionary Armed Forces of Colom.*, Case No. 8:09-cv-02308-RAL-MAP.

to Vacate should be denied because the motion itself was the Interested Parties' only opportunity to be heard by the Court and the Interested Parties failed to put forth evidence within the motion; (2) the Interested Parties were not entitled to notice or hearing prior to the agency and instrumentality determination but only prior to sale; (3) the Motion to Vacate was untimely because the Interested Parties did receive actual notice that Plaintiff sought writs of execution (the Notice of Intent) and did not act until five months later; and (4) the opinion of Plaintiff's expert Mr. McBrien was well supported and properly formed the basis of the A/I Order. *Id.* at 3–4. Plaintiff made no mention of the upcoming sale of the Fisher Island Property or Collins Avenue Property. *See id.*

On November 14, 2022, the Interested Parties filed a Reply in Support of the Motion to Vacate (the "Reply to Motion to Vacate"). ECF No. [183]. The Interested Parties argued that the untimeliness issue is without merit because the Interested Parties did not receive proper notice prior to execution, outlining the timeline of events as stated above. *Id.* The Interested Parties noted that it was not until October 31, 2022, after the filing of their Motion to Vacate and the filing of Plaintiff's Response to the same, that Plaintiff sent the Interested Parties the still-sealed exhibits to the A/I Motion listing the affected individuals, entities, and properties therein (ECF Nos. [150-1]–[150-3]). *Id.* at 5.

The Interested Parties also attached four declarations to their Reply to Motion to Vacate: two from counsel for the Interested Parties, one from Gorrin, and one from Gustavo Perdomo Rosales (another individual affected by the A/I Order). ECF Nos. [183-1]–[183-4]. The Interested Parties argued that the statements within those declarations created a dispute of material fact such that summary judgment would be improper on the issue of whether the individuals and entities are agencies and instrumentalities of the FARC. *Id.* The Interested Parties also argued that despite

14

Plaintiff's representation in the A/I Motion that the A/I Order's expeditious determination was necessary in order to file a lis pendens, Plaintiff did not file any such lis pendens on the properties at issue until September 27, 2022—five months later. *Id.* at 7 n.2.

On November 16, 2022, Plaintiff filed a Motion to Strike the Interested Parties' Reply to the Motion to Vacate (the "Motion to Strike"). ECF No. [184]. Therein Plaintiff argued that the Reply to the Motion to Vacate was untimely, and the declarations attached thereto should be stricken as they only appeared with the reply and not with the Motion to Vacate, itself. *Id.* at 1. In his Motion to Strike, Plaintiff also argued that the Court should find the Motion to Vacate moot because the sale of both the Fisher Island Property and the Collins Avenue Property had *already occurred* on November 8, 2022, at public auction. *Id.* Plaintiff argued that the Interested Parties had proper notice prior to the sale of the properties and should have moved to stay execution proceedings contending that it was too late to do so now as the properties have been sold and the Court is divested of jurisdiction over the properties. *Id.* at 2–4. Finally, Plaintiff asserted that a jury trial would be futile because the individual(s) controlling the Interested Parties are fugitives who would likely refuse to appear for such a trial, citing to the fugitive disentitlement doctrine ("FDD"). *Id.* at 16.

The Interested Parties maintain that the first time that they were given notice that the properties were going to be sold was on November 16, 2022, when Plaintiff's counsel informed the Interested Parties' counsel that the sale had *already* occurred. ECF No. [187] at 2 n.2.

The Interested Parties filed a Response in Opposition to the Motion to Strike on November 30, 2022 (the "Opposition to Motion to Strike"). ECF No. [193]. Therein, the Interested Parties defended their inclusion of the declarations in the Reply to Motion to Vacate as proper and characterized the Motion to Strike as an improper sur-reply filed without leave of Court that

addressed many arguments within the Reply to Motion to Vacate. *Id.* at 2, 17. Next, the Interested Parties argued that the Motion to Vacate was not moot with respect to the Fisher Island Property and the Collins Avenue Property, as both are still in the possession of Plaintiff, albeit in a new role as a purchaser, and are the issue of the instant TRO Motion. *Id.* at 3. The Interested Parties maintained that the Court does have continuing jurisdiction over the properties and that a stay is an appropriate remedy. *Id.* at 6–9. The Interested Parties also disputed the application of the FDD, arguing that any fugitive status that may apply to Gorrin does not have a sufficient connection to the instant action and cannot bar relief for the entities that own the two properties that were sold. *Id.* at 17. Finally, the Interested Parties raised an argument, first raised days earlier in the TRO Motion, regarding whether the Interested Parties' prior designation by the Court as agencies and instrumentalities of the FARC should stand given that the FARC was delisted as a terrorist organization by the U.S. Government before the proceedings to attach the two properties at issue began. *Id.* at 9. Although the United States listed FARC-EP at the time they delisted the FARC, the Interested Parties claimed that the Final Default Judgment is against the FARC, not FARC-EP, such that the judgment is no longer subject to collection using the TRIA. *Id.*

On December 7, 2022, Plaintiff filed a Reply in Support of the Motion to Strike (the "Reply to Motion to Strike"). ECF No. [201]. Therein, Plaintiff countered that the Interested Parties' notice arguments are merely "tak[ing] advantage of an alleged technical mistake of the U.S. Marshal Service ('USMS'), who may have unintentionally omitted from their certified mail package the notice of sale that [Plaintiff] instructed to send," which was harmless because the Interested Parties had actual notice of the proceedings by way of the levy. *Id.* at 3. Plaintiff restated that the Interested Parties' declarations, attached to the Reply to Motion to Vacate, are insufficient to create a material question of fact because the Motion to Vacate itself contained no

such evidence.  *Id.* at 5.  Plaintiff then argued, incorporating his earlier FDD arguments, that the declarations are also meaningless if the Interested Parties fail to appear for deposition and trial, so the granting of a trial would be an exercise in futility.  *Id.*  Next, Plaintiff argued that the Interested Parties have no standing to launch a collateral attack on the Final Default Judgment as they have tried to do in their Response to Motion to Strike by putting forth the FARC-EP argument.  *Id.* at 7.  Finally, Plaintiff reiterated that the sale of the Fisher Island and Collins Avenue Properties has mooted the Motion to Vacate and all arguments stemming therefrom.  *Id.* at 8–11.

## II.  THE INSTANT MOTION

On November 28, 2022, twenty days after Plaintiff sold the Fisher Island Property and the Collins Avenue Property to himself, and while the Motion to Vacate was still being briefed, the Interested Parties filed the instant TRO Motion.  ECF No. [187].  The Interested Parties allege that the two properties were sold without the notice of sale required by Florida law, and as such, they seek a Court order to: (1) "restrain" Plaintiff  and "his entities and agents from dissipating, conveying, encumbering or otherwise transferring ownership" of the Fisher Island Property and the Collins Avenue Property; (2) "stay all further executions and sales of the levied properties of the Interested Parties" until the Court adjudicates the pending Motion to Vacate; and (3) "set aside" the sale of the Fisher Island Property and the Collins Avenue Property.  *Id*. at 19.

The only remedy addressed by this Report and Recommendation is the first: an order restraining Plaintiff from any further transactions relating to the Fisher Island and Collins Avenue Properties.  At the Hearing, counsel for the Interested Parties phrased the request as a "pause" until the Motion to Vacate can be heard by the District Court.[6]  As to the request for a stay, the second

---

[6] The Motion to Vacate was not ripe at the time that the TRO Motion was filed; indeed, it became ripe three days before the filing of this Report and Recommendation, when Plaintiff filed the Reply to the Motion to Strike.  ECF No. [201].

remedy sought, counsel for the parties agree that it is not urgent as Plaintiff's counsel has now agreed to give the Court and Interested Parties' counsel at least seventy-two-hours' notice before any sale on any other executed property.  Therefore, the undersigned makes no recommendation as to the second request.[7]  In addition, the Interested Parties specifically note in the TRO Motion that the third remedy, setting aside the sale, is not subject to the request for TRO, as this issue will effectively be determined when (and if) the Motion to Vacate is granted.  Therefore, the undersigned makes no recommendation as to the third request.

The arguments in the TRO Motion, the Response to the TRO Motion, and the Reply to the TRO Motion all apply to the first request for relief.  However, it should be noted that many of the arguments at issue are also found in the Motion to Vacate (as well as its Response and Reply).  In addition, the Motion to Strike (and its Response and Reply) also contain arguments that are also addressed in the TRO Motion.  In short, there are nine different filings that contain arguments that overlap between the issues raised in the Motion to Vacate (which the undersigned is not considering here), and the first remedy requested in the TRO Motion.

---

[7] The Court notes that the standard for placing a stay is more relaxed than the TRO standard given that a court has "general discretionary power to stay proceedings before it in the control of its docket and in the interests of justice."  *Marti v. Iberostar Hoteles y Apartamentos S.L.*, No. 21-11906, 2022 WL 17090059, at *6 (11th Cir. Nov. 21, 2022) (quoting *Hines v. D'Artois*, 531 F.2d 726, 733 (5th Cir. 1976)).  Indeed, "[t]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Valdes v. Accounts Receivable Res., Inc.*, No. 19-cv-80673, 2020 WL 13444021, at *1 (S.D. Fla. Jan. 7, 2020) (quoting *Landis v. North Am. Co.*, 299 U.S. 248, 254–55 (1936)).  Where appropriate, a stay may "promote judicial economy, reduce confusion and prejudice, and prevent possibly inconsistent resolutions."  *Snyder v. Green Roads of Florida LLC*, 430 F. Supp. 3d 1297, 1302 (S.D. Fla. 2020) (quoting *Lopez v. Miami-Dade Cnty.*, 145 F. Supp. 3d 1206, 1208 (S.D. Fla. 2015)).

A. **The Interested Parties' Request For A Temporary Restraining Order Prohibiting Further Sale By Plaintiff Of The Fisher Island Property And The Collins Avenue Property Until The Motion To Vacate Is Heard**

The Interested Parties argue that there is a substantial likelihood of success on the merits of their arguments to set aside the sales of the Fisher Island and Collins Avenue Properties because Plaintiff failed to provide notice of the sale of the two properties as required by Florida Statute § 56.21 *prior* to the sale of the Fisher Island Property and the Collins Avenue Property. *Id.* at 8–12. Florida law requires two forms of notice: (1) by the publication in a newspaper in the county of sale for four consecutive weeks—which the Interested Parties do not dispute occurred; and (2) by certified mail to the attorney of record of the property owner of record. § 56.21, FLA. STAT. The Interested Parties concede that Plaintiff did publish a notice as required, but they contend that they never received a notice of sale, the second type of notice, whether by certified mail or otherwise. *Id.* at 9.[8] Had proper notice of the sale been provided, the Interested Parties contend that they would have been able to move for a stay of the sale. *Id.* The Interested Parties argue that the lack of notice deprived them of their due process rights to be heard not only as to the sale of the property, but also as to their designation as agencies and instrumentalities of the FARC.

Second, the Interested Parties argue that without a TRO, they are threatened with irreparable injury. *Id.* at 12. Although Plaintiff sold and purchased the property *to himself*, Plaintiff intends to place the Fisher Island Property and the Collins Avenue Property on the market for further sale. *Id.* The Interested Parties contend that they would suffer irreparable injury should a TRO not issue, because any further sale of the properties to a *bona fide* purchaser for value would

---

[8] The Interested Parties submitted a number of affidavits in support of their argument that they had not received the notice required by Florida Statute § 56.21. *See* ECF Nos. [187-1]–[187-5]. Plaintiff conceded that the notice of sale had not been sent to counsel for the Interested Parties and so these affidavits are not at issue and no evidentiary hearing was required. *See* ECF No. [192] at 6 n.10.

moot the Motion to Vacate, as the properties would no longer be owned or controlled by any party in the case.  *Id.* at 10.

Third, the Interested Parties argue that any "downside" to Plaintiff is outweighed by the threat of irreparable injury to the Interested Parties should the properties be further conveyed.  *Id.* at 13.  The Interested Parties characterize the only "burden" on Plaintiff as simply refraining temporarily from sale of the properties, which he purchased at a severe discount from the market value.  *Id.*  Thus, they argue that the harm that would arise from complete loss of the properties (including their inability to pursue the Motion to Vacate at least as to these two properties) outweighs the minimal burden on Plaintiff to temporarily hold those properties.  *Id.*

Finally, the Interested Parties argue that the public interest weighs in favor of protecting the Interested Parties' due process rights. *Id.* at 14.  The Interested Parties argue that it is in the public interest that they be allowed to challenge their prior designation as agencies and instrumentalities of the FARC, noting that the FARC was delisted in 2021 as a foreign terrorist organization by the Secretary of State and that Plaintiff's efforts to collect on his judgment after the delisting were not valid.  *Id.* at 14–17.

### B.      Plaintiff's Response To The TRO Motion

Plaintiff filed his Response to the TRO Motion on November 30, 2022.  ECF No. [192]. Plaintiff argues that several issues preclude relief altogether, and that in any event, the Interested Parties cannot meet their burden to obtain a TRO because they fail to show that they meet any of the four elements.  *See id.*  First, Plaintiff cites to Chapter 56 of the Florida Statutes for the proposition that the Interested Parties must post a bond in the sum of double the value of the properties at issue, which Plaintiff calculated as $155,775,586.44 as well as an affidavit outlining the purported illegality of the Writs of Execution that have been issued.  *Id.* at 9–10; ECF No.

[192-1]. The Interested Parties have not done so, and Plaintiff claims that the failure is fatal to their request for a TRO. ECF No. [192] at 10.

Second, Plaintiff argues that Gorrin, who controls the entities that own the two properties at issue, is a fugitive who has yet to appear before this Court on pending criminal charges. *Id.* at 10–16. Because Gorrin is a fugitive, Plaintiff argues that he and the entities he controls should be barred from relief under the FDD, a doctrine that bars fugitives from seeking affirmative relief from a court. *Id.*

Third, Plaintiff argues that the TRO Motion is untimely. *Id.* at 16. Although Plaintiff concedes that counsel for the Interested Parties was not given notice of the sale by certified mail, Plaintiff attributes the error to an unintentional omission by the USMS. *Id.* However, Plaintiff argues that regardless of any noncompliance, the Interested Parties had *actual* notice of the proceedings. *Id.*

Finally, Plaintiff argues that the Interested Parties' distinction between the FARC and FARC-EP and their argument that the delisting of the FARC invalidates their collections efforts is of no moment. *Id.* at 18. Plaintiff asserts that the argument fails, as a matter of fact and law, because Plaintiff does have a judgment against FARC-EP, because FARC-EP was named in the State Court proceedings as an "a/k/a" designation of the FARC. *Id.* at 19.

C.    **The Interested Parties' Reply To The TRO Motion**

The Interested Parties filed their Reply to the TRO Motion on December 1, 2022. ECF No. [196]. First, the Interested Parties argue that Plaintiff no longer has a judgment against a "terrorist party" because the FARC has since been delisted. *Id.* at 2. The Interested Parties maintain that the FARC and FARC-EP distinction is a meritorious argument that should be heard by the District Court. *Id.* Second, the Interested Parties argue that they are not statutorily required

to provide an affidavit and bond because they are not moving to stay the property sales in the first instance. *Id.* Without notice of the sales, the Interested Parties note that they had no reason or opportunity to move to stay the sales at the time when an affidavit and bond would have been necessary. *Id* Further, even if a bond were necessary, the Interested Parties argue that the Court has the authority to waive such a bond. *Id.* at 9. Finally, the Interested Parties argue that the FDD is inapplicable because they are defending their property rights, rather than seeking affirmative relief from the Court. *Id.* at 3.

## III.   ANALYSIS

In order to prevail in their request for a temporary restraining order ("TRO"), the Interested Parties must establish: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the [non-Interested Parties]; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005). "[A] motion for a temporary restraining order is an 'extraordinary remedy not to be granted unless the [Interested Parties] clearly establish[] the 'burden of persuasion' as to each of the four prerequisites.'" *Liberty Mut. Ins. Co. v. Aventura Eng'g & Constr. Corp.*, No. 06-cv-22494, 2007 WL 9702145, at *1 (S.D. Fla. May 11, 2007) (quoting *Four Seasons Hotels & Resorts v. Consorcio Barr, S.A.,* 320 F.3d 1205, 1210 (11th Cir. 2003)). For the reasons stated below, the undersigned finds that the Interested Parties have met their burden.

### A.    The Interested Parties Have Shown A Substantial Likelihood Of Success On The Merits

To show a substantial likelihood of success on the merits, the Interested Parties must show "only *likely* or probable, rather than *certain,* success." *Schiavo*, 403 F.3d at 1232 (citation omitted) (emphasis in original). Here, the Interested Parties must show that they are likely to succeed in

setting aside the sales of the Fisher Island and Collins Avenue Properties by showing that they were not given the requisite notice of the sales.  The undersigned finds that they have met their burden.  Indeed, the evidence that the Interested Parties were not given notice of the sales is strong.

**1.  The Interested Parties Did Not Have Either the Required Statutory Notice or Actual Notice of the Sales.**

The parties do not dispute that the applicable notice requirements for the sale of the properties is governed by Section 56.21 of the Florida Statutes.  *See* ECF Nos. [187] at 2 n.2; [192] at 6.  Section 56.21, titled "Execution Sales; Notice" requires two distinct forms of notice.  First, the statute requires that "[n]otice of all sales under execution shall be given by advertisement once each week for 4 successive weeks in a newspaper published in the county in which the sale is to take place."  § 56.21, FLA. STAT.  In this case, Plaintiff published his first Notice of Sale in the Daily Business Review ("DBR").  ECF No. [184-3].  The scheduled sale of the Fisher Island Property and the Collins Avenue Property was to take place on November 8, 2022.  *Id.*  Plaintiff published the same Notice of Sale in the DBR each week for a consecutive four weeks total, with the final publication on October 24, 2022.  *Id.*  Therefore, there is no dispute that Plaintiff met this first notice requirement.

The second requirement is that "[w]hen levying upon real property, notice of such levy and execution sale and affidavit required by Section 56.27(4) shall be made to the property owner of record in the same manner as notice is made to any judgment debtor pursuant to this section[.]"  § 56.21, FLA. STAT.  This requires that "[o]n or before the date of the first publication or posting of the notice of sale, a copy of the notice of sale shall be furnished by the sheriff by certified mail to the attorney of record of the judgment debtor, or to the judgment debtor at the judgment debtor's last known address if the judgment debtor does not have an attorney of record."  *Id.*  It is undisputed that Plaintiff did *not* comply with the second form of notice required.  *See* ECF Nos. [187] at 2

23

n.2; [192] at 2.  Although the Interested Parties did receive a package from the USMS, the packages did not contain any notice of sale or otherwise reference an impending sale.  ECF No. [187] at 4. Plaintiff does not argue that the notice of sale was provided but does point to letters Plaintiff sent to the USMS as evidence that Plaintiff requested that a notice of sale be provided to counsel for Interested Parties.  ECF Nos. [192-1]–[192-2].  That, of course, is not sufficient and Plaintiff does not argue otherwise.  The statutory notice requirements were not met.

Instead, Plaintiff argues that the Interested Parties had *actual* notice, and that in a TRIA case, actual notice is sufficient.  ECF No. [192] at 16 (citing *Stansell II*, 771 F.3d at 742).  Plaintiff is correct that there is precedent in this Circuit finding actual notice sufficient in a TRIA case.  *See Stansell II*, 771 F.3d at 741; *Stansell IV*, 802 F. App'x at 449.  There are four documents that Plaintiff contends constituted actual notice of the sale.

First, Plaintiff argues that the Notice of Intent provided actual notice.  *See* ECF Nos. [177-1]; [192] at 4–5.  The Interested Parties concede that on June 1, 2022, Mr. Howard Srebnick contacted Plaintiff's counsel because he was in receipt of the Notice of Intent that was posted on the Fisher Island Property.  *See* ECF No. [177-1].  A review of the language of the Notice of Intent makes clear that it was not actual notice of the sale.  *See id.*  The Notice of Intent makes no mention of a sale, nor of the Court's A/I Order which was the necessary to put any execution or sale in motion.  *Id.*  Instead, the Notice of Intent stated that "[i]t is the *position* of Mr. Caballero that Gorrin is an agency or instrumentality of the FARC" without noting that that designation had already been sought by Plaintiff and made by the Court.  *Id.* at 4.  The plain language of the Notice of Intent clearly left the impression that no proceedings against the Interested Parties had even begun, much less a proceeding to sell the property.

24

Putting aside what the Notice of Intent said or did not say, it *might* have been sufficient to the extent it contained the case number for the instant matter if a review of the case docket would have given the Interested Parties the information necessary to conclude that Plaintiff had in fact begun the process of executing on the properties.  However, *all the filings with respect to the Interested Parties were under seal* when the Notice of Intent was received by counsel.  Specifically, Counsel could not view the A/I Motion or the A/I Order, nor was there *any* filing in the public record that would have alerted the Interested Parties of any proceedings against them, much less of a sale of the property.  *See* ECF Nos. [150]–[151].  All they knew or could have known from the Notice of Intent, is that a proceeding *could* begin at *some point* in the future.

In any event, Interested Parties' counsel did act.  He contacted Plaintiff's counsel who of course knew the A/I Order had issued, knew that it should not have been under seal given that the thirty days had already passed, knew that the Interested Parties had a right to notice and a right to be heard, and yet, Plaintiff's counsel provided no such information to counsel.  Given that, what were the Interested Parties to do at that time?  There was nothing in the docket to show any activity or any action pending against them *at all*.  If Plaintiff believed that the Notice of Intent was actual notice, his counsel would have had no issue with disclosing the A/I Motion and the A/I Order to the Interested Parties' counsel.  Indeed, not only did the A/I Order *direct* that the two documents be unsealed by May 25, 2022—Plaintiff's counsel would have had no basis to request that the filings continue to be sealed if he believed that actual notice of the proceedings or the sale had already been given.  Instead, months passed before Plaintiff first moved to unseal the documents in the case.

Second, Plaintiff argues that the Interested Parties had actual notice of the sale because the USMS posted the Writs of Execution on the properties on June 6, 2022.  ECF No. [192] at 7.  The

writs themselves, of course, did not provide *notice of the sale*, nor is there any evidence that the Interested Parties or their counsel received them when they were posted given that the properties were not occupied. *See* ECF Nos. [183-3] at 3; [196-1] at 3. Posting the Writs of Execution on the property might be sufficient notice for some purpose of course, but the issue here was whether that gave the Interested Parties *actual* notice of the sale. Indeed, on June 6, 2022, both the Motion for Writs of Execution and the issued Writs of Execution were still under seal and could not be viewed by the Interested Parties. *See* ECF Nos. [155]; [156]. Moreover, the return on the execution of these writs, which would have put counsel on notice, were not filed until September 2022. ECF Nos. [168]; [169].

The fact that the Interested Parties did not have actual notice of any sale, or even of these Writs of Execution, is emphasized by the July 4, 2022 e-mail sent to counsel for Plaintiff by counsel for the Interested Parties. *See* ECF No. [200-1] at 17. The e-mail stated, in part, "[i]n the event that Plaintiff intends to file a Motion for Issuance of Writ of Execution prior to our call, please note for the Court that it is opposed and that the parties have not yet conferred per Local Rule 7.1(a)(3)." *Id.* Indeed, the e-mail made it obvious that the Interested Parties did not have actual notice of the Writs of Execution. In response, Plaintiff's counsel did not disclose to the Interested Parties' counsel that the agency and instrumentality designation had already been made or that the Writs of Execution had issued *and* been posted, nor did he contact the Court or the Clerk of Court to have the A/I Motion and the A/I Order unsealed (as they should have been at least as far back as May 25, 2022). On this record, it appears that the first writ that Interested Parties' counsel did have notice of was the one executed in New York on the Baccarat Property, after which counsel for the Interested Parties promptly entered his appearance. The posting of the Writ of Execution on the properties, therefore, cannot be said to constitute *actual* notice of the sale.

26

Indeed, if doing so were sufficient, *actual* notice (whether by virtue of full compliance with the statute or otherwise) would be unnecessary.

Third, Plaintiff argues that counsel for the Interested Parties had actual notice because he received a package from USMS with pertinent documents on October 6, 2022. ECF No. [192] at 7. To be sure, the USMS package did put the Interested Parties on notice that there was a proceeding against them in federal court. However, there is no dispute that by that time the Interested Parties were well aware of that fact, as their counsel appeared in the case on September 13, 2022. ECF No. [163]. The package did not however put them on notice of the sale. The packages contained a copy of the Final Default Judgment against the FARC, copies of the writs of execution for the Fisher Island and Collins Avenue Properties (the "return" sections of which were completely blank, thereby indicating that no levy had occurred), and an affidavit of Plaintiff's counsel dated June 2, 2022, which contained no mention of impending levy or sale of the properties. *See* ECF No. [187-1]. The packages undisputedly lacked a notice of sale. ECF Nos. [187] at 4 ("As the recipients of those envelopes attest under oath, not one of the packages mailed to counsel of record[], the Interested Parties[], and attorney D.E. Wilson[], contained the required 'notice of sale.'") (emphasis removed); ECF No. [192] at 6 n.10. While Plaintiff argues that the omission of a notice of sale from the package was inadvertent (and due to no fault of his own because he requested that a notice of sale be included in the package), such an argument is inapposite when discussing *actual* notice. ECF No. [192] at 7. The *intention* to send a notice of sale is meaningless. The required notice was not sent.

Finally, Plaintiff contends that the continuous publication of the notice of sale in the DBR constituted actual notice to the Interested Parties. *Id.* Plaintiff asserts that the publication was conspicuous enough that "several members of the public, attorneys for potential bidders, and even

counsel for a bidder who fought [Plaintiff] in the bid process" received notice. *Id.* The publication of the notice, however, has nothing to do with the actual notice of the Interested Parties. The Florida Statutes are clear: Plaintiff was required to *both* publish *and* mail the notice of sale. *See* §56.21, FLA. STAT. Plaintiff may have complied with the first requirement (as he argues herein) but he failed to comply with the second requirement. Such an error may be excused only if it is clear that the Interested Parties received *actual* notice. The proposition that compliance with only one of two requirements, without more, constitutes actual notice would undermine the plain reading of the statute that requires both elements.

Because there was no actual notice, Plaintiff's argument that the Interested Parties waived their rights or were otherwise untimely in their challenge fails. The Interested Parties did not wait or "choose to do nothing" as Plaintiff complains. ECF No. [192] at 1. It is clear from reading this record that the Interested Parties did not file a motion to stay the sale because they had *no notice of the sale*. The Court cannot find any document in the record, or any document received by the Interested Parties, that would have, with the exercise of any due diligence, given them actual notice of the sale.

Moreover, even if any of the above alone or even as a whole constituted actual notice, the Court cannot find that the Interested Parties waived any rights or proceeded in an untimely fashion because they filed the Motion to Vacate almost a month *before* the sale. ECF No. [175]. Although not a motion to stay the sale (which they could not have filed given that they did not know of the sale), the Motion to Vacate sought to set aside the very order without which no levy or sale could be possible. The sale went forward not because the Interested Parties failed to act in time, it went forward because Plaintiff not only failed to give statutory or actual notice but when the failure

became evident to Plaintiff (as any reading of the Motion to Vacate would do), he did nothing and proceeded to sell the property to himself.

The timeline and the facts here contrast sharply with *Stansell V* and *Stansell II*, cases that Plaintiff cites in support of his argument that the Interested Parties did not move promptly to protect their rights. *See* ECF No. [199-1]. Plaintiff argues that the Interested Parties had notice as of either May or June 2022 but did not move to vacate until October 2022, a five-to-six-month delay. *Id.* They argue that in *Stansell V* the USMS posting at the property occurred four months before the motion to intervene was filed and relief was denied as untimely, and in *Stansell II*, the interested parties learned of the proceedings and then waited five months to take any action, a time period which the Eleventh Circuit found to be excessive. *Id.* First, neither case involved the notice of sale issue, but rather, whether the intervention in the case itself was timely. *Stansell V*, 45 F.4th at 1346; *Stansell II*, 771 F.3d at 743. Second, the proceedings against the interested parties were not under seal when the levy was posted at the property in *Stansell V*, and in *Stansell II* the Court had already found that the interested party had notice. *See Stansell V*, 45 F.4th at 1340; *Stansell II*, 771 F.3d at 741. Here, of course, the action was sealed and the Notice of Intent actually suggested (incorrectly) that the proceeding had not even begun. *See* ECF No. [177-1].

Plaintiff conflates whether the Interested Parties had notice of a pending action, and whether they had actual notice of a sale. These are different things in any case, but especially here, where the properties were already blocked assets, the Interested Parties are not the judgment debtors, and their properties could not be sold (as Plaintiff repeatedly assured the Court) without the opportunity to be heard on the agency and instrumentality finding, notice of some proceeding against them or even of the Writ of Execution does not amount to notice of sale, especially given that the Motion to Vacate was *pending at the time of the sale*. And although notice of a proceeding

might easily lead one to conclude that a sale is on the horizon, such an assumption would have been impossible here where the key filings were sealed and remained sealed even after counsel for the Interested Parties entered an appearance and even after the Motion to Vacate was filed. Indeed, it was not until October 31, 2022, that Plaintiff's counsel sent the Interested Parties the improperly sealed A/I Motion. *See* ECF No. [183] at 4. Indeed, the time from which the Interested Parties received actual notice of the sale (which was after the sale on November 14, 2022), to the filing of the instant Motion (on November 28, 2022), was only two weeks, and it appears from the record that the parties were meeting and conferring about the matter in that time frame. The timeline in this case does not suggest waiver or failure by the Interested Parties to act diligently to protect their interests.[9]

---

[9] Plaintiff suggests in his Opposition to the TRO Motion that the Notice of Intent was part of a process established by the District Court. ECF No. [192] at 4-5. Plaintiff claims that he followed the "process previously established by Judge Moore, no less in this case" citing ECF Nos. [79] at 6; [82]. ECF No. [192] at 4. However, in no prior order has the District Court ordered or even referenced a "Notice of Intent to Apply for a Writ of Execution," as part of its "process." The only procedure or process the undersigned can discern is one where the orders of the District Court were to be unsealed given the Court's repeated finding that notice and an opportunity to be heard must be provided. *See, e.g.,* ECF No. [111] ("The Court finds that foreclosing Dellan's opportunity to respond to the Motion for TRIA judgment, despite Plaintiff's compliance with Florida garnishment laws, would not comport with due process under *Stansell* [*II*]."); ECF No. [114] ("'Without notice and a fair hearing where both sides are permitted to present evidence, the third-party never has an opportunity to dispute its classification as an agency or instrumentality.'") (quoting *Stansell II*, 771 F.3d at 727). Moreover, this insistence that Plaintiff "did exactly what he was supposed to do under Judge Moore's protocol," ECF No. [192] at 6, is curious given that Plaintiff did little to ensure that the A/I Order and other key filings be unsealed *after the Court had clearly ordered them to be*, did not file the lis pendens for months after he asked the Court for the Writs of Execution for that very purpose, and proceeded to sell himself the two properties at issue while the Motion to Vacate was pending.

**2. The Fugitive Disentitlement Doctrine Does Not Bar The Interested Parties From Filing The TRO Motion.**

Plaintiff argues that the Interested Parties are barred from the relief sought under the FDD. ECF No. [192] at 10.  Plaintiff asserts that Gorrin is a fugitive from a criminal proceeding instituted against him.  *Id.*  Because Gorrin owns and controls the companies at issue (the two entities that own, respectively, the two properties at issue), Plaintiff contends that the companies should receive the same fugitive status for purposes of the FDD.  *Id.*  Plaintiff urges this Court to use the discretion afforded by the FDD to prohibit the Interested Parties from seeking the relief sought herein, which Plaintiff categorizes as "affirmative relief."  *Id.*

The Interested Parties argue that the FDD is inapplicable here, based on both the nature of the proceedings and the relief sought.  ECF No. [196] at 4.  The Interested Parties assert that they are not seeking affirmative relief, but rather are defending themselves in a collection action instituted against them.  *Id.*  Additionally, the Interested Parties contend that the criminal proceedings involving Gorrin have no nexus with the instant civil action, because the United States did not charge Gorrin with being an agency or instrumentality of the FARC in the criminal action that is pending.  *Id.*

The FDD is an equitable doctrine, and is based upon "the principle that a fugitive demonstrate[s] such disrespect for the legal process[ ] that he has no right to call upon the court to adjudicate his claim."  *Id.* at 1331–32 (quoting *Ortega-Rodriguez v. United States*, 507 U.S. 234, 246 (1993)).  As such, the FDD "empowers courts to dismiss the lawsuits or appeals of fugitives from the law."  *Ener v. Martin*, 987 F.3d 1328, 1331 (11th Cir. 2021).  It also allows a district court to "sanction or enter judgment against parties based on their fugitive status," including the denial of affirmative relief requested by the fugitive.  *United States v. Shalhoub*, 855 F.3d 1255, 1259 (11th Cir. 2017); *see also Stansell SDFL Action*, 2022 WL 7030665, at *2.

31

There are three main requirements for application of the FDD. First, the party against whom the FDD is invoked must be a fugitive. *Ener*, 987 F.3d at 1332. A fugitive is one who "intentionally avoids arrest by fleeing, hiding within, or remaining absent from the jurisdiction." *Id.*; *see also Shalhoub*, 855 F.3d at 1261 ("[S]o long as he refuses to appear in court, Shalhoub has no right to avoid being labelled a fugitive."). Second, the party's fugitive status must have a sufficient connection to the present action. *Ener*, 987 F.3d at 1331. Finally, dismissal (or sanction) must be necessary to effectuate the concerns underlying the doctrine. *Id.*

As an initial matter, the FDD does not bar Gorrin or the Interested Parties from appearing to defend against the agency and instrumentality designation, specifically, their right to petition the Court to vacate the A/I Order. Indeed, in his Response to Motion to Vacate, Plaintiff notes that he "leave[s] the fugitive disentitlement doctrine for another day, and do[es] not rely upon it[.]" ECF No. [177] at 3. Plaintiff's position is not surprising given that courts have repeatedly noted that the FDD is limited in its scope, and its role should not extend to the point of prohibiting fugitives to *defend* themselves in other civil proceedings. *See Degen v. United States,* 517 U.S. 820, 828 (reversing grant of summary judgment on FDD grounds and noting, "[a] court-made rule striking Deegan's claims and entering summary judgment as a sanction, however, would be an arbitrary response to the conduct it is supposed to redress or discourage."); *FDIC v. Pharaon*, 178 F.3d 1159, 1163 (11th Cir. 1999) ("We conclude that the application of the fugitive disentitlement doctrine in this case to bar Appellant, a fugitive in a criminal case, from defending himself in a civil case, albeit a related one, would not be 'a reasonable response to the problems and needs that provoke[d]' the doctrine."). Moreover, Courts in this District have declined to use the FDD to prevent fugitives from defending the agency and instrumentality designation. *See, e.g., Stansell SDFL Action*, 2022 WL 11287345, at *2 (S.D. Fla. Oct. 19, 2022).

Instead, Plaintiff's objection here is that the FDD bars the Interested Parties from seeking the TRO at issue (the first remedy) because it is affirmative relief and not merely defensive. Plaintiff argues that barring such relief would serve the purposes of the FDD—namely, avoiding gamesmanship in the court system by fugitives absconding from punishment while seeking relief. ECF No. [192] at 15.  The Interested Parties characterize the TRO Motion as defensive and note that the FDD is not meant to prevent a fugitive in a criminal case from defending himself in a civil case, which would be the effect of barring them from seeking a TRO.  ECF No. [196] at 4.

The Court finds that the Interested Parties have the better argument here because even if the first and second prong of the FDD were met, the third prong could not be satisfied.[10]  Although seeking a TRO in another context might very well be affirmative relief, herein it is not.  Barring the Interested Parties from this remedy *is* barring them from their ability to defend against the agency and instrumentality finding.  Of course, the District Court may ultimately deny the Motion to Vacate, but to reject the Interested Parties' right to seek this relief would deny them the right to defend themselves *at all* because any further conveyance or sale of the two properties by Plaintiff to a third party would moot the Motion to Vacate as to these properties.  In short, the relief

---

[10] Because the Court finds that applying the FDD would run counter to the doctrine itself and the well-established right the Interested Parties have to be heard, the Court does not make any findings as to the first two prongs of the FDD.  As to the first prong, the Court notes that it is unclear whether the Interested Parties even dispute whether Gorrin is a fugitive, although they do argue that Gorrin is not one of the Interested Parties that owns the property.  ECF No. [196] at 3–4. Although Plaintiff correctly points out that the fact that the entities are owned and controlled by a fugitive may make it practically impossible for the entities to *adequately* defend themselves, the case is simply not yet at that posture.

The second prong is that the fugitive status must have a sufficient connection to the present action. *Ener*, 987 F.3d at 1332.  Here, too, the record on the TRO is limited because both the nature of the agency and instrumentality determination and whether Gorrin exclusively controls the entities that own the properties has not been established.  In any event, because the final prong cannot be met at this time, the Court declines to make a finding as to this prong.

requested here should be permitted because failing to do so would completely deprive the Interested Parties of the ability to defend the action, which would not be consistent with the principles of this equitable doctrine.

A similar issue was addressed by Judge Scola in the *Stansell SDFL Action*, where a fugitive was defending against a motion to find him, and entities he controlled, to be agencies and instrumentalities of a terrorist group.  2022 WL 11287345, at *1 (S.D. Fla. Oct. 19, 2022).  The Court rejected the request to use the FDD to enter judgment against the defendants, finding that the FDD cannot "completely bar the Defendants from asserting their defenses in this matter on the basis of the fugitive disentitlement doctrine."  *Id.* at *3 (citing *Ener*, 987 F.3d at 1333).  However, the Court did use the FDD to deny a request for a protective order that the defendant sought in order to avoid discovery.  *See id.* at *1.  The Court reasoned that the defendant was entitled to defend himself, but not entitled to ask the Court for relief that would excuse him from the obligations of discovery, noting that such efforts were "gamesmanship" that causes "prejudice to the [non-fugitive party]." *Id.* at *3.  The Court concluded that "[r]egardless of the formal specifics of [the fugitive defendant] (and his companies') roles in this matter, they are defending Plaintiff's efforts to garnish their property . . . [and the Court] cannot . . . completely bar the Defendants from asserting their defenses in this matter on the basis of the fugitive disentitlement doctrine."  *Id.*

The order sought by the Interested Parties is not sought for the purposes of hiding or avoiding any obligation, as the defendant attempted to do before Judge Scola in the *Stansell SDFL Action*.  *Id.*  To the contrary, the order they seek would allow them only the right to defend the action.  As such, the relief they seek is not an affirmative relief that would relieve them of any obligation—a result that should not stand.  The relief sought here is simply a necessary element to the ability to defend a civil action.  Plaintiff initiated the levy and sale of the Fisher Island and

Collins Avenue Properties in short order and without the requisite notice.  The Interested Parties are now catching up in an attempt to defend their property rights, which they are *entitled* to do. They may not (especially given Gorrin's status) ultimately be able to succeed in that effort, but the law allows them the opportunity to be heard.  Without an order restraining further conveyance of the properties, they will have no such opportunity.

### 3.   At This Procedural Posture, A Bond Is Not Required.

Plaintiff argues that the Interested Parties are precluded from seeking relief because they failed to provide a bond and an affidavit, as required by Chapter 56 of the Florida Statutes.  ECF No. [192] at 3.  Plaintiff references four sections of Chapter 56, Sections 56.12, 56.15, 56.16, and 56.17.  *See* ECF No. [192] at 2.  Although the applicability of each varies based on whether the interested parties are considered judgment debtors or non-judgment debtors, the bond and affidavit requirements are the same.  Plaintiff contends the Interested Parties were required to post a bond in the amount of $155,775,586.44, equal to double the value of the properties at issue.  *Id.*; ECF No. [192-1] at 3.  Such a requirement, Plaintiff asserts, is not waivable and precludes any challenge to the sale.  *See* ECF No. [192] at 2.

The Interested Parties respond that the statutory bond requirement does not apply to this case because there has already been a sale and the bond requirement only applies to challenges that seek to stay a sale conducted pursuant to the statute.  ECF No. [196] at 2.  The Interested Parties maintain that the sale that did happen (the sale from Plaintiff to himself) happened outside the requirements of the statute in that they did not receive notice in the period between levy and sale.  Because the Florida Statutes cited apply only to the procedure of staying a sale after levy, and not to any subsequent challenge or restriction to any sale thereafter, the provision requiring the bond is not applicable.

The plain language of the statute which requires an affidavit and bond be posted applies *after* levy (or "execution"), but *prior* to the date of sale. *See* §§ 56.16, 56.17, FLA. STAT. Here, the sale of the two properties has already taken place, and so, the question is whether those statutes extend to a challenge of any sale or encumbrance of the property after the sale that is addressed in the statute. To be sure, this situation is unique since in most cases the levied property would have been sold to a *bona fide* third party and such a sale would moot the issue as the Court would not have any jurisdiction to restrict the *bona fide* buyer from disposing of the property. Here, of course, the buyer is not a *bona fide* third party, rather Plaintiff (through an entity he created) purchased the property himself.

Thus, the question is whether the statutory bond requirements extend beyond their plain reading and into the post-sale challenge. Specifically, whether a bond is required to file either the TRO Motion or the Motion to Vacate. Plaintiff cites only to a 2020 decision in the *Stansell SDFL Action*, for the proposition that the Interested Parties were required to provide an affidavit and bond prior to any challenge of the sale. ECF No. [192] at 3 (citing *Stansell SDFL Action*, 2020 WL 5552778, at *1 (S.D. Fla. July 6, 2020)). In the *Stansell SDFL Action*, a plaintiff sought to enforce a judgment against the FARC by seizing blocked assets including real property from agencies and instrumentalities of the FARC. *Id.* The interested parties there challenged the constitutionality of those statutes requiring an affidavit and bond as applied to TRIA cases, an argument which the Court ultimately rejected. *Id.* at *2. The interested parties moved to waive the bond requirement, which the Court declined to do in that instance. *Id.* at *5 ("None of these arguments [regarding OFAC licensing] convince us to waive the bond provision."). However, the interested parties there sought to stay the case *after levy* but *prior to sale* from the plaintiff to a third party—the scenario specifically addressed by the Florida Statutes. *Id.* Moreover, the

interested parties there had been given notice of the A/I designation, litigated the matter, and were given notice of the execution and sale.  *Id.*  Of course, that is not the case here.

In the instant case, the Interested Parties seek to pause any further sale of the two properties until such time as the Court can hear the Motion to Vacate.  There appears to be no authority that would require the bond to be posted now.[11]  Under these circumstances, where Plaintiff not only failed to provide the statutory notice but failed to take reasonable action to give actual notice (*i.e.*, failing to ensure that the docket was unsealed, failing to inform counsel of record that the Writs of Execution had been sought, issued, and executed, and that the process to sell was underway), requiring the Interested Parties to post a bond merely to pause the matter to allow the Court to hear their Motion to Vacate is not required by statute or case law, and would appear to require more of the Interested Parties only because Plaintiff failed to provide notice.[12]  Indeed, if the Interested

---

[11] Plaintiff argues that the affidavit and bond requirements cannot be waived and cites to the *Stansell SDFL Action* for this proposition.  ECF No. [192] at 9 n.13 As noted, the Court in the *Stansell SDFL* action declined to waive the bond requirement in a pre-sale challenge, and in doing so, made clear that the arguments regarding OFAC licensing were insufficient to merit a waiver not that waiver was prohibited. *Id.* at *5.  Interested Partiess instead cite the *Stansell MDFL Action*, as an illustration of waiver of the pre-sale bond requirement in a TRIA collection action.  ECF No. [196] at 9 (citing *Stansell MDFL Action*, 2013 WL 12132057, at *4 (M.D. Fla. Apr. 29, 2013).  The Court in the *Stansell MDFL Action* did issue a stay of the sale at issue without requiring the interested parties to first post a bond, although notably such a stay was issued only pending a related appeal. *Id.* ("Also, aside from the six years of notice to Grenada, the Claimants had notice, and the Court issued a stay of the sale and enforcement of the writs without requiring claimants to post the statutory bond.").  Thus, even if the matter involved a stay of the sale, it may be waived in the Court's discretion, and has been waived in other TRIA cases.

[12] In response to Plaintiff's argument during the Hearing that the Interested Parties were unwilling to post a bond, counsel for the Interested Parties clarified that they had not taken such a position but rather, were arguing that one was not required.  If the Court required a bond, counsel requested that they be given some time to consider whether they would or could place the bond in question.

In addition, should the District Court consider that a bond at this juncture is necessary, "[t]he posting of a bond or security is not mandatory and can be waived in the Court's discretion if waiver is justified by 'extraordinary circumstances.'" Order Denying Motion for Stay Pending Appeal, *Stansell SDFL Action*, No. 19-cv-20896 (S.D. Fla. June 3, 2020), ECF No. [358] at 2 (quoting

Parties had been given notice of the A/I Order when they contacted Plaintiff's counsel on June 1, 2022, when the A/I Order required the filings to have already been unsealed, or on June 6, 2022, when Plaintiff argues the Interested Parties were given actual notice, the Interested Parties could have moved then for a stay or could have challenged the Writs of Execution, and in neither procedural posture would the bond have been necessary.

### 4. The Case Is Not Moot.

Plaintiff also argues that because the sale has already taken place, any challenge now is moot. ECF No. [192] at 20. As support for that proposition, Plaintiff cites three cases, all of which are distinguishable from the instant case. *Id.* Plaintiff first cites *United States v. Certain Real & Personal Property Belonging to Hays*, 943 F.2d 1292 (11th Cir. 1991). In *Hays*, the Eleventh Circuit held that it lacked jurisdiction over an appeal regarding a completed property sale to a third party. *Hays*, 943 F.2d at 1294. The Court's reasoning is inapplicable here. There, the Court stated, "when the property is sold after judgment *pursuant to a valid decree of the court*, the power of the court over the property is lost [because the] release or sale of the property to *individuals over whom the court has no control* severs the link with the initial service of process and deprives the court of jurisdiction." *Id.* at 1295 (emphasis added). Similarly, the Eleventh Circuit in *Stansell V* held that "[b]ecause that sale took place and the property was sold *to a third party*, we cannot grant the requested relief (i.e., preventing the sale)." *Stansell V*, 45 F.4th at 1360. Here, Plaintiff sold the property to himself.

---

*Suntrust Bank v. Ruiz*, No. 14-cv-21107, 2015 WL 11216713, at *3 (S.D. Fla. Nov. 6, 2015)). "In order to meet this standard, the Defendants must adequately show either: (1) that 'their ability to pay the judgment is plain' and the cost of the bond would be a waste of time or (2) 'the bond requirement would put Defendants' other creditors in undue jeopardy.'" *Id.* (quoting *Suntrust Bank*, 2015 WL 11216713, at *3). Again, the Interested Parties requested that they be given some opportunity to respond and or post a bond should that be the District Court's determination.

Finally, Plaintiff relies on *Stansell III*. 772 F. App'x at 772. In *Stansell III*, the interested parties therein appealed the District Court's order denying their motion to set aside the final judgment, arguing that they were not afforded an opportunity to be heard on their agency and instrumentality argument "before execution on their properties". *Id.* at 773. The Eleventh Circuit dismissed the appeal as moot because "[g]iven the sale, it would be fruitless for us to instruct the district court to hold a hearing to reconsider the agen[cies] or instrumentalities determination." *Id.* at 776. *Stansell III* is similar to the instant case to the extent that the plaintiff therein also sold the property to himself. *Id.* However, the interested parties therein did receive proper notice of the sale and actually challenged the sale prior to its occurrence. *Id.* at 775. Indeed, the interested parties were in a completely different procedural posture because they actually did receive a brief stay of the sale as a result of their emergency motion for stay. *Id.* Additionally, the appellants in *Stansell III* lodged only one argument to overcome the mootness of the appeal: capable of repetition, yet evading review. *Id.* at 777. The Eleventh Circuit therefore dismissed the appeal as moot, while considering and denying only that exception to mootness. *Id.*

Here, the Court still has jurisdiction over Plaintiff and accordingly has the authority to restrain further action on a property he controls. At least as to the issue of the matter being moot, the stated arguments presented are insufficient.

### B. Given the Unique Nature Of The Real Property At Issue, Irreparable Injury Will Be Suffered If The Relief Is Not Granted

The second prong of the TRO standard requires the Interested Parties to show that "irreparable injury" will be suffered if the TRO is not granted. *See Schiavo*, 403 F.3d at 1225–26. The irreparable injury shown "must be neither remote nor speculative, but actual and imminent." *Winmark Corp. v. Brenoby Sports, Inc.*, 32 F. Supp. 3d 1206, 1223 (S.D. Fla. 2014)

(quoting *Anago Franchising, Inc. v. CHMI, Inc.*, No. 09-cv-60713, 2009 WL 5176548, at *11 (S.D. Fla. Dec. 21, 2009)).

The Interested Parties argue that the sale of both the Fisher Island Property and the Collins Avenue Property resulted in Plaintiff retaining possession of each property. ECF No. [187] at 7. Since that time, however, Plaintiff has represented to the Court that he intends to "place the two properties on the market without the cloud of this proceeding on title[.]" *Id.* at 12 (quoting ECF No. [184] at 5). If Plaintiff does move forward with a further sale to a *bona fide* third-party purchaser for value, the Interested Parties argue that their claims here would be mooted. *Id.* Such a result would cause irreparable injury because "the unique character of real property ownership, cannot be recompensed by a monetary award." *Id.* at 13 (quoting *Ebsco Gulf Coast Dev., Inc. v. Salas as Tr. of Salas Tr. dated Sept. 28, 2009*, No. 3:15-cv-586MCR, 2016 WL 11189984, at *4 (N.D. Fla. Sept. 29, 2016)). Additionally, the Interested Parties argue that if they are not given notice and opportunity to be heard prior to any further sale of the properties at issue they will suffer a violation of their due process rights. ECF No. [187] at 13. The Interested Parties argue that the violation of their due process rights, in and of itself, also constitutes irreparable harm. *Id.*

Plaintiff argues that he, and not the Interested Parties, will suffer irreparable injury if the TRO issues. ECF No. [192] at 9. Plaintiff asserts that the Interested Parties will not suffer any irreparable harm if a further sale proceeds as to the Fisher Island Property and Collins Avenue Property, because the Interested Parties "at best have a 'de minimus' interest in the 'blocked assets' (and frankly no interest in the properties that have been sold—as Gorrin has already lost the Fisher Island and Collins Avenue Properties)." *Id.* Plaintiff argues that instead he is the one who will suffer irreparable harm if the TRO *does* issue because his interest in the property will be held "hostage," while one of the lienholders may force a tax deed sale leaving Plaintiff with less than

the value he obtained from his judgment.  *Id.*  Further, Plaintiff asserts that he has already suffered harm in that he paid the USMS a $50,000.00 commission that may not be returned should the challenge to the sales succeed.  *Id.*

The undersigned finds that the Interested Parties have made a sufficient showing of irreparable injury.  Plaintiff has made multiple representations to the Court that he intends to sell the property in short order.  *See* ECF No. [184] at 5 ("So that the purchasers can proceed to put the two properties on the market without the cloud of this proceeding on title, [Plaintiff] respectfully requests that this Court preclude any challenge as to the sale of the two properties as moot."); ECF No. [192] at 9 ("For example, if [Plaintiff] does not immediately place the Fisher Island Property on the market and sell it promptly, one of the lienholders could force a tax deed sale[.]").  If another sale to a non-party occurs, the Interested Parties' right to defend that agency and instrumentality designation would be lost because the sale would render it moot.  Without a TRO to pause a sale pending the resolution of the Motion to Vacate, the Interested Parties are likely to suffer irreparable harm by mooting their challenges to property ownership and depriving them of their due process rights.  The Court is not particularly persuaded by the Interested Parties' ownership interest given that the properties are already blocked assets.  The Court is concerned, however, that declining to pause these proceedings would moot the Interested Parties' challenges in violation of due process, which the Eleventh Circuit has repeatedly defined and guaranteed to include notice and an opportunity to be heard.

### C.  The Threatened Injury Outweighs The Harm The Relief Would Inflict On The Non-Interested Parties, Which In This Case Is Only A Short Delay

The next prong of the TRO standard requires the Interested Parties to show that "the threatened injury outweighs the harm the relief would inflict on [Plaintiff.]"  *Schiavo*, 403 F.3d at

1225–26. The arguments put forth by both the Interested Parties and Plaintiff largely mirror the arguments related to irreparable injury.

Specifically, Plaintiff contends that he will suffer irreparable harm if the TRO issues because he faces the risk that one of the properties' lienholders may force a tax deed sale leaving Plaintiff with less than the value he obtained from his judgment. ECF No. [192] at 9. Plaintiff also asserts that his harm stems from the $50,000.00 commission already paid to the USMS to execute the sales that may not be returned should the TRO issue and the challenge to the sales succeed. *Id.*

As discussed above, the Interested Parties face an immediate irreparable injury if a TRO does not issue, the loss of their due process rights, whereas the harm to Plaintiff would be minimal. Indeed, Plaintiff would be required only to hold onto the property, which he chose to purchase, until the Motion to Vacate is ruled upon. The loss of the commission would only be lost if the Interested Parties also prevailed on the Motion to Vacate. Of course, that would have been a harm entirely avoidable if the required notice had issued. Indeed, the harm that Plaintiff complains of is of his own doing and is not related to his status a victim of terror. Plaintiff went forward to buy the property for pennies on the dollar knowing that the agency and instrumentality designation had been ordered without notice, and that the Motion to Vacate so that the Interested Parties could be heard was still pending at the time of sale (indeed, it was not yet fully briefed). The risk he now runs should not outweigh the harm faced by the Interested Parties who did not receive the notice to which they were entitled under the law.[13]

---

[13] Indeed, in the event that the Motion to Vacate is granted and case is set for trial, the time to trial or final resolution on the issue of whether the Interested Parties should be designated as agencies and instrumentalities of the FARC is not likely to be long. *See Stansell V*, 45 F.4th at 1340 (time between setting the matter and judgment in the action was five months).

**D.**     **Entry Of The Relief Would Serve The Public Interest Because The Relief Is Only To Provide The Court With Sufficient Time To Consider The Due Process Rights Of The Interested Parties**

The final prong of the TRO standard requires the Interested Parties to show that "entry of the relief would serve the public interest." *Schiavo*, 403 F.3d at 1225–26. The Interested Parties' argument is simple: it is in the public interest to protect constitutional due process rights. ECF No. [187] at 14. As part of the analysis on this prong, the Interested Parties argue that it is in the "public interest to see that proceedings are conducted fairly to achieve the proper outcome." *Id.* From there, the Interested Parties argue that they "have nothing to do with the FARC" and that "[a]llowing for the *ex parte* exploitation and abuse of the Terrorism Risk Insurance Act to profiteer off of the plight of blocked persons is not in the public interest and harms U.S. foreign policy objectives." *Id.* And then, from that statement, they add an argument that later spills over to the briefing on the Motion to Strike—that because the FARC was delisted as a foreign terrorist organization by the Secretary of State before Plaintiff commenced the execution proceedings against the Interested Parties, the proceedings against the Interested Parties are essentially void. *Id.* Plaintiff disputes this argument in his Response to the TRO Motion, arguing that Plaintiff *did* obtain a judgment against FARC-EP. Plaintiff argues that the entities are one in the same and in fact, he listed the FARC-EP as an "a/k/a" designation of the FARC in the underlying state court action. ECF No. [192] at 4, 19.

The public always has an interest the resolution of any dispute where a party claims it was not given due process. The Court agrees with that much, and not much else is required. The issue before the Court here is whether the Interested Parties had a right to the notice of sale. They did, and they did not receive it. The solution they now seek is not a permanent restraint nor a set aside of these sales at this time. Instead, they seek a limited restraint so that they may be heard on an

issue to which they have a right to notice and the opportunity heard, namely, their right to have the Motion to Vacate be heard by the Court.  Allowing them to do so is in the public interest.

Now, as to the merits of the delisting argument, the fundamental issue, as the undersigned sees it, is whether Plaintiff can commence collection proceedings on the Final Default Judgment, as it did here, after the FARC has been delisted.  The Interested Parties argue that the FARC and FARC-EP are different entities and so the answer is no.  However, if FARC-EP was part of the FARC at the time of the Final Default Judgment, delisting of the FARC may not have an effect on whether Plaintiff can execute, given that FARC-EP is listed.

Although the parties devote some time to this argument, the fundamental question, at least as the undersigned sees it, is not sufficiently addressed: were the FARC and FARC-EP one in the same at the time of the Final Default Judgement?  The Court does not find that there is sufficient evidence in the TRO Motion, its Response or its Reply to conclude that this argument is likely to succeed, and therefore, does not find that the argument (alone) would be sufficient to grant the relief requested.  Moreover, the bulk of this argument is now raised as part of the Motion to Strike, which is not before the undersigned.

The undersigned pauses here to note that the lineage of *Stansell* cases from the Eleventh Circuit make clear that the Interested Parties are entitled to both notice *and* an opportunity to be heard, most recently finding that the due process rights involved in these findings include a right to a jury trial.  *Stansell V*, 45 F.4th at 1363.

The first iteration of the due process rights involved in the agency and instrumentality determinations comes from *Stansell II*.  771 F.3d at 713–48.  There, the Eleventh Circuit found that "parties whose assets are under threat of execution pursuant to TRIA § 201 are entitled to *notice and opportunity to be heard* in order to rebut the allegations and preserve their possessory

interest in blocked assets." *Id.* at 726 (emphasis added).  Specifically, claimants in a similar position to the Interested Parties herein, were "entitled to be heard on their challenge to the agency or instrumentality determination," prior to a sale of their properties.  *Id.* at 727.  The Court in *Stansell II* noted that a stay pending the sale of properties "standing alone, is not sufficient to provide Claimants with due process," but where that stay is paired with an "*actual opportunity* to be heard, it may satisfy due process." *Id.* (emphasis added).  The Court assessed this notice and hearing issue prior to the sale, holding that "Claimants were entitled to notice and to be heard *before execution*, though not necessarily before attachment." *Id.* at 729.

Six years later, in *Stansell IV*, the Eleventh Circuit again addressed what process was due in TRIA execution proceedings.  *Stansell IV*, 802 F. App'x at 445.  In *Stansell IV*, the claimants were interested parties who the District Court determined to be agencies and instrumentalities of the FARC in *ex parte* proceedings.  *Id.* at 447.  The District Court therein ordered the USMS to levy upon and sell the blocked assets belonging to the interested parties.  *Id.*  The interested parties moved to amend that order, seeking a stay of the proceedings, and arguing that they had not had an opportunity to be heard on the agencies and instrumentalities determination.  *Id.*  The Eleventh Circuit affirmed the District Court's denial of the motion because the interested parties had received actual notice of the writs of execution prior to the sale and were able to challenge the sale prior to its occurrence by way of the motion to amend the order directing levy and sale.  *Id.* at 449.  In denying that motion, the District Court reasoned that the interested parties had presented neither argument nor evidence that the interested parties were not A/Is of the FARC.  *Id.* at 448.  The facts here, of course, are starkly different in the Interested Parties were not able to challenge the sale prior to its occurrence.

This year the Eleventh Circuit had yet another opportunity to review the scope of the due process rights afforded to parties defending am agency and instrumentality designation in *Stansell V.* 45 F.4th at 1340. Therein, the interested parties were also determined to be agencies and instrumentalities of the FARC in *ex parte* proceedings. *Id.* at 1347. Upon receiving notice of those proceedings, the interested parties filed motions with supporting affidavits to dissolve the writs of garnishment that had been issued against their assets and stay the pending property sales. *Id.* Therein, the interested parties argued that the District Court violated their due process rights by denying them a hearing on the A/I determination. *Id.* On appeal, the Eleventh Circuit addressed "whether the evidence presented created issues of material fact as to [the interested parties'] agency or instrumentality status" because "[i]f so, a *jury trial was required.*" *Id.* at 1356. Ultimately, the Court reversed the turnover judgments because there were issues of fact as to whether the interested parties were agencies and instrumentalities of the FARC. *Id.* at 1363. The interested parties thus had a right to a trial on the issue by jury. *Id.*

In the Motion to Vacate, the Interested Parties explicitly request a jury trial on the agency and instrumentality determination. *See* ECF No. [175]. While that motion is not currently before the undersigned, the Interested Parties' due process rights guarantee them notice and the opportunity to be heard. They may not ultimately succeed, but without the relief they seek here, the Interested Parties will not get that opportunity. The undersigned finds that the strength of the arguments weigh in favor of the "pause" that Interested Parties seek in order to be heard on the Motion to Vacate.

## IV.   CONCLUSION

For the reasons noted above the Court **RECOMMENDS** that the first remedy be **GRANTED** until the Court has ruled on the Motion to Vacate, **RECOMMENDS** that the second remedy be

**DENIED WITHOUT PREJUDICE** given Plaintiff's representation that it will provide notice to the Court and to the Interested Parties in the event that any other properties be listed for sale, and **RECOMMENDS** that the third remedy be **DENIED WITHOUT PREJUDICE** as the parties agree that there is less urgency to this remedy, a set aside will be considered if the Motion to Vacate is granted, and further relief is granted.

## V. OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the United States District Judge for the Southern District of Florida, no later than **FRIDAY, DECEMBER 16, 2022**. In addition to the expedited nature of the TRO Motion, the parties have had ample opportunity to present their arguments in writing and in a three-hour hearing before the undersigned. No additional time should be required to respond. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Report and Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1)(C); *Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida on December 10, 2022

_____
**JACQUELINE BECERRA**
**UNITED STATES MAGISTRATE JUDGE**