UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:18-cv-25337-KMM

ANTONIO CABALLERO,

    Plaintiff,

v.

FUERZAS ARMADAS REVOLUCIONARIOS
DE COLOMBIA, *et al.*,

    Defendants.
_____/

**ORDER**

THIS CAUSE came before the Court upon the Interested Parties'[1] Emergency Motion. ("Mot.") (ECF No. 187). Therein, the Interested Parties seek (1) an order restraining Plaintiff Antonio Caballero ("Plaintiff"), his entities, and agents from dissipating, conveying, encumbering, or otherwise transferring ownership of the Fisher Island and Collins Avenue properties (collectively, the Properties), (2) a stay of any further executions and sales of levied properties, and (3) an order setting aside sales. Plaintiff filed a response in opposition ("Resp.") (ECF No. 192), and the Interested Parties filed a reply ("Reply") (ECF No. 196).

The Court referred the above-captioned cause to the Honorable Jacqueline Becerra, United States Magistrate Judge, "to take all necessary and proper action as required by law with respect to the Motion for a Temporary Restraining Order." (ECF No. 188). Magistrate Judge Becerra issued a Report and Recommendation recommending that the Interested Parties' Motion be GRANTED IN PART. ("R&R") (ECF No. 202). Plaintiff filed objections to the R&R, ("Objs.")

---

[1] As the R&R states, originally, eight Interested Parties were identified: Planet 2 Reaching, Inc., Posh 8 Dynamic Inc., RIM Group Investments Corp., RIM Group Investments I Corp., RIM Group Investments II Corp., RIM Group Investments III Corp., RIM Group Properties of New York II Corp., and Tindaya Properties of New York. ECF No. [163]. Magus Holding LLC and Tindaya Properties of NewYork II Corp., have now appeared, ECF No. [185], and joined in the instant Motion such that these ten entities are the "Interested Parties."

(ECF No. 205), and the Interested Parties responded. ("Objs. Resp.") (ECF No. 208). The matter is now ripe for review. As set forth below, the Court ADOPTS the R&R IN PART.

As a threshold matter, the Court notes that while the Motion requests three forms of relief, the R&R only addresses one—the temporary restraining order.[2] This Order will first address Magistrate Judge Becerra's findings, and Plaintiff's Objections to those findings. Then, the Court will turn to the other forms that the Interested Parties request.

I. **BACKGROUND**

This case arises out of an underlying action in which Plaintiff brought a case againt Fuerzas Armadas Revolucionarias de Colombia (FARC) pursuant to 18 U.S.C. § 2333, part of the Anti-Terrorism Act (ATA) (the "Underlying Action"). *See* ECF No. 1 ¶ 1. The District Court in the Underlying Action entered final default judgment against FARC and NDV. See ECF No. 63. The District Court awarded Plaintiff $135,000,000 for non-economic damages, and $5,189,001 for economic damages, plus interest. *Id*.

As part of Plaintiff's collection efforts, Plaintiff attempted to collect from the Interested Parties and filed an *Ex Parte* Expedited Motion for Agency or Instrumentality Determination (the "A/I Motion") (ECF No. 151). Therein, Plaintiff argued he could collect the final judgment from the Interested Parties under the ATA and the Terrorism Risk Insurance Act (TRIA), Pub. L. No. 107-297, § 201(a), 116 Stat. 2322 (codified at 28 U.S.C. § 1610 note). *See generally, id*.

The TRIA provides that:

> Notwithstanding any other provision of law, and except as provided in subsection (b), in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not

---

[2] Although the R&R states that it is only addressing the request for injunctive relief, the section on mootness relates to Plaintiff's argument that there is no basis to set aside the sales that have already occurred. R&R at 38–39. Because, as discussed below, the Court is dismissing without prejudice the Interested Parties request to set aside the sales, the Court, without expressing any view as to the merits of the R&R's findings, declines to adopt the R&R's findings as to mootness. Accordingly, the Court declines to address Plaintiff's objections related to mootness.

> immune under section 1605A or 1605(a)(7) . . . , the blocked assets of that terrorist party **(including the blocked assets of any agency or instrumentality of that terrorist party)** shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

TRIA § 201(a) (emphasis added).

To execute against a terrorist party's "agency or instrumentality," the victim "must further establish that the purported agency or instrumentality is actually an agency or instrumentality."[3] *Stansell II*, 771 F.3d at 723. Accordingly, Plaintiff sought a Court order finding that the Interested Parties were agencies or instrumentalities of FARC. *See generally,* A/I Motion. As to the *ex parte* and sealed nature of Plaintiff's request, he argued that the Interested Parties were "not entitled to a hearing before the issuance of a writ of attachment, but only before turnover." *Id*. at 5. Plaintiff argued that the Interested Parties were entitled to notice and to be heard before execution, though not necessarily before attachment. *Id*.

This Court granted the A/I Motion in an Order (the "A/I Order") (ECF No. 151) on April 25, 2022. The A/I Order found that the individuals listed in Exhibit 1 of the A/I Motion and the Entities listed in Exhibit 2 of the A/I Motion—including the Interested Parties—were agencies or instrumentalities of FARC, and the properties listed in Exhibit 3 of the A/I Motion were now subject to attachment in satisfaction of the judgement. *See* A/I Order. The A/I Motion and A/I Order were filed under seal, per the Plaintiff's request. However, this Court instructed the Clerk of Court to unseal the A/I Motion and A/I Order no later than May 25, 2022. *See* A/I Order at 6.

---

[3] Throughout relevant filings in this matter, Plaintiff and the Interested Parties refer to a series of "cases from the Southern District of Florida, the Middle District of Florida, and the Eleventh Circuit referred to as the *Stansell* cases. For ease of reference, this Order will also refer to the cases as the "*Stansell* cases" and use the same shorthand as the parties have used, namely: "*Stansell II*" shall refer to *Stansell v. Revolutionary Armed Forces of Colom.*, 771 F.3d 713, 727 (11th Cir. 2014); "*Stansell III*" shall refer to *Stansell v. Revolutionary Armed Forces of Colom.* (FARC), 772 F. App'x 772 (11th Cir. 2019); "*Stansell IV*" shall refer to *Stansell v. Lopez Bello*, 802 F. App'x 445 (11th Cir. 2020); "*Stansell V*" shall refer to 45 F.4th 1340 (11th Cir. 2022).

On May 27, 2022, Plaintiff filed, under seal, an *Ex Parte* Expedited Motion for Writs of Execution Against: (1) Real Property in the Putative Name of Planet 2 Reaching, Inc.; and (2) Real Property in the Putative Name of Posh 8 Dynamic, Inc. (the "Motion for Writs of Execution"). ECF No. 155. Plaintiff assured the Court that "Planet 2 Reaching, Inc., Posh 8 Dynamic. Inc., and Gorrin would receive additional notice of the execution proceedings against them as required under the Florida Statutes." *Id*. at 10.

On May 31, 2022, the Clerk of Court issued two writs of execution under seal: one for the Fisher Island Property, ECF No. 156, and one for the Collins Avenue Property, ECF No. 156-1 (collectively, the "Writs of Execution"). Although thirty days had already passed from the entry of the A/I Order, which required that the A/I Motion and the A/I Order be unsealed, both documents remained sealed.

Thereafter, Plaintiff prepared notices of intent ("Notices of Intent") which contained the instant case number and stated:

> NOTICE IS HEREBY GIVEN that after the expiration of twenty-one (21) days from the date of service of this Notice, Mr. Caballero will file his application for a writ of execution. Your failure to appear to defend your interests, if any, in the above-captioned action, may result in a writ of execution being issued by the Court or Clerk of Court to Mr. Caballero to execute upon the Gorrin Fisher Island Condo Unit: 7043.

*See* ECF No. 177-1. Plaintiff served the Notices of Intent to the Secretary of State of Delaware and a law firm (not the Interested Parties' counsel) and tendered the Notices of Intent to the U.S. Marshal's Service ("USMS") who posted them on Properties on May 13, 2022. *Id*. at 3, 6–7, 10.

Although the Notices of Intent included the case number for this matter, the Interested Parties' counsel only had access to the public docket and was not able to "identify *any* proceeding against the Interested Parties, or Gorrin, because *all of the filings related to Gorrin and the Interested Parties were under seal*." R&R at 7–8. The Interested Parties contacted Plaintiff's counsel regarding the Notices of Intent and Plaintiff's counsel "knew the A/I Order had issued,

4

knew that it should not have been under seal given that the thirty days had already passed, knew that the Interested Parties had a right to notice and a right to be heard, and yet, Plaintiff's counsel provided no such information to counsel." *Id*. at 8. Plaintiff's counsel also did not contact the Clerk of Court to have the A/I Motion and A/I Order unsealed. *Id*.

On June 6, 2022, Plaintiff (through the USMS) posted the Writs of Execution on the Properties. ECF Nos. 168; 169. As the R&R states, "[t]here is nothing in the record that indicates that counsel for the Interested Parties received the writs, nor is there anything in the record that indicates that either of the Interested Parties received them at that time." R&R at 9.

Then, in October 2022, Plaintiff published four consecutive Notices of Sale of Properties in the Daily Business Review. *See* ECF No. 184-3. On October 4, 2022, the USMS sent packages including (1) a copy of the Final Default Judgment against FARC, (2) copies of the Writs of Execution for the Properties (the return sections of which were blank, indicating that no levy had occurred), and (3) an affidavit of Plaintiff's counsel. *See* ECF No 187-1. The packages did not include a notice of sale. *See* ECF No. 192 at 2 n.10.

On October 14, 2022, the Interested Parties filed a Motion to Vacate the A/I Order and to Issue a Scheduling Order on their Jury Trial Demand. ECF No. 175. Therein, the Interested Parties challenged their designation as an agent or instrumentality of a terrorist organization and requested a jury trial on the matter. *Id*. Plaintiff filed a Response in Opposition, and the Motion has now been fully briefed.

Then, without any hearing on the matter, the Properties were sold by Plaintiff at a USMS sale on November 8, 2022. ECF No. 184 at 1. Specifically, "Plaintiff purchased the Fisher Island Property, valued at over $34 million, with a $10 million credit bid from his judgment, and purchased the Collins Avenue Property, valued at over $14 million, with a $10,000 credit bid from his judgment." R&R at 12 (citing ECF Nos. 187 at 2–3; 192-1).

On November 28, 2022, while the Motion to Vacate was still being briefed, the Interested Parties filed the instant Motion. Therein, the Interested Parties seek (1) an order restraining Plaintiff, his entities, and agents from dissipating, conveying, encumbering, or otherwise transferring ownership of the Properties, (2) a stay of any further executions and sales of levied properties, and (3) an order setting aside sales.

## II.   LEGAL STANDARD

### A.  Report and Recommendation

The Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). The Court "must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). A *de novo* review is therefore required if a party files "a proper, specific objection" to a factual finding contained in the report. *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006). "It is critical that the objection be sufficiently specific and not a general objection to the report" to warrant *de novo* review. *Id.*

When the objecting party has not properly objected to the magistrate judge's findings, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b) advisory committee's note to 1983 addition; *see Lopez v. Berryhill*, No. 1:17-CV-24263, 2019 WL 2254704, at *2 (S.D. Fla. Feb. 26, 2019) (stating that a district judge must "evaluate portions of the R & R not objected to under a clearly erroneous standard of review.").

### B.  Temporary Restraining Order/Preliminary Injunction

Pursuant to Federal Rule of Civil Procedure 65, the Court may enter a preliminary injunction or a temporary restraining order (TRO). Fed. R. Civ. P. 65(a)-(b). To obtain a TRO or a preliminary injunction, a party must demonstrate: "(1) a substantial likelihood of success on the

merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–1226 (11th Cir. 2005) (citation omitted).

### III.   DISCUSSION

#### 1. *The Request for Injunctive Relief*

As an initial matter, while the Interested Parties requested a TRO, the Motion also requests "injunctive relief . . . to preserve the status quo." Mot. at 7. Federal Rule of Civil Procedure 65(b) permits a court to enter injunctive relief. The standard for granting a TRO is the same as the standard for granting a preliminary injunction. *See Schiavo ex. rel Schindler*, 403 F.3d at 1306.

The difference between a TRO and a preliminary injunction is that a TRO can be issued without notice to the adverse party, whereas a court may only issue a preliminary injunction on notice to the adverse party. Fed. R. Civ. P. 65(a)-(b). For a preliminary injunction, Rule 65's notice requirement is to provide the party opposing the preliminary injunction with a "fair opportunity to oppose the application and to prepare for such opposition." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 432 n.7 (1974). Because Plaintiff, the party opposing the request for injunctive relief, has had a full opportunity to be heard, including a full evidentiary hearing in front of Magistrate Judge Becerra, the Court construes the Interested Parties' request for injunctive relief as a request for a preliminary injunction.

In the R&R, Magistrate Judge Becerra recommends that the Court grant the requested injunctive relief and restrain Plaintiff, his entities, and agents from dissipating, conveying, encumbering, or otherwise transferring ownership of the Properties. *See generally*, R&R. Magistrate Judge Becerra finds that: (1) the Interested Parties have shown a substantial likelihood of success on the merits; (2) given the unique nature of the real property at issue, irreparable injury

will be suffered if the relief is not granted; (3) the threatened injury outweighs the harm the relief would inflict on Plaintiff; and (4) entry of the relief would serve the public interest because the requested relief would provide the Court sufficient time to consider the due process rights of the Interested Parties. *Id*. at 39–47. After a *de novo* review, the Court agrees.

Plaintiff filed several objections to the R&R. *See generally* Objs. First, Plaintiff argues that the R&R erred in its conclusion that the Interested Parties have shown a substantial likelihood of success on the merits. *Id*. at 4–17. Then, Plaintiff asserts that the R&R erroneously concluded that (1) the Interested Parties would suffer irreparable injury and (2) that the threatened injury to the Interested Parties outweighs the harm the injunctive relief would inflict on Plaintiff. *Id*. at 17–19. Lastly, Plaintiff argues that the R&R improperly concluded that the injunctive relief would serve the public interest. *Id*. at 19–20. The Court addresses each objection in turn.

### A. Likelihood of Success on the Merits

In the R&R, Magistrate Judge Becerra found that the Interested Parties have shown a substantial likelihood of success on the merits because: (1) they did not have either the required statutory notice or actual notice of the sales; (2) the fugitive disentitlement doctrine does not bar the Interested Parties from filing their Motion; and (3) at this procedural posture a bond is not required. R&R. at 23–39. Plaintiff objects to Magistrate Judge Becerra's finding and argues: (1) the R&R made errors of fact and law with respect to its due process analysis; (2) the R&R wrongfully blames Plaintiff for errors made by the U.S. Marshals Service and the Clerk of Court; and (3) the R&R wrongfully declines to apply the statutory bond requirement. *See* Objs. at 4–17.

#### 1. The Interested Parties Lacked the Requisite Notice

Plaintiff argues that the R&R contains errors of law and fact regarding notice provided to the Interested Parties. Objs. at 6–14. As discussed in more detail below, Florida law requires two forms of notice for sales under execution. *See* Fla. Stat. § 56.21. However, the Eleventh Circuit

has held that if the statutory notice requirement is not met, such a failure is harmless where a third-party claimant whose property was subject to garnishment pursuant to the TRIA received actual notice and was able to contest the allegations against it.  *Stansell II*, 771 F.3d at 742.

Section 56.21 of the Florida Statutes governs the applicable notice requirements for the sale of properties under execution.  *See* Fla. Stat. § 56.21.  The law requires two distinct forms of notice.  *Id*.  First, the statute requires that "[n]otice of all sales under execution shall be given by advertisement once each week for 4 successive weeks in a newspaper published in the county in which the sale is to take place."  *Id*.  The Parties do not contest that Plaintiff complied with this portion of the law.

The statute further requires that, "[o]n or before the date of the first publication or posting of the notice of sale, a copy of the notice of sale shall be furnished by the sheriff by certified mail to the attorney of record of the judgment debtor, or to the judgment debtor at the judgment debtor's last known address if the judgment debtor does not have an attorney of record."  *Id*.  As the R&R notes, it is undisputed that Plaintiff did not comply with the second form of notice required because the packages furnished by the USMS did not include a notice of sale.  R&R at 23.

Instead, Plaintiff argued that the Interested Parties had *actual* notice, which, in this case, would make harmless the failure to comply with the statutory notice requirement.  *See* ECF No. 192 at 16.  To determine whether the Interested Parties had actual notice, the Court finds instructive the Eleventh Circuit's holding in *Stansell II*.

For background, in *Stansell II*, the Eleventh Circuit held that third-party claimants whose property was subject to garnishment pursuant to the TRIA, on basis that they were alleged agencies and instrumentalities of a terrorist organization against which judgment had been won under the ATA, were entitled to due process in garnishment proceedings, including actual notice of the postjudgment proceedings against them.  771 F.3d at 727.  The Eleventh Circuit further held that

9

"because an agency or instrumentality determination carries drastic results—the attachment and execution of property—it undeniably implicates due process concerns." *Id*. (citing *United States v. Bissell*, 866 F.2d 1343, 1352 (11th Cir.1989) ("[Due process] is implicated when, as here, persons are deprived of their possessory interests in property.")). Therefore, the Court held that "parties whose assets are under threat of execution pursuant to TRIA § 201 are entitled to notice and an opportunity to be heard in order to rebut the allegations and preserve their possessory interest in blocked assets." *Id*. (citing *Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("[I]ndividuals whose property interests are at stake are entitled to notice and an opportunity to be heard." (internal quotation marks omitted))).

In *Stansell* II, the Eleventh Circuit held that failure to comply with Florida's statutory notice requirement was harmless where the third parties had actual notice of the proceedings against them and were able to defend themselves. *Id*. Regarding notice, the Court held that:

> [t]he third party can move to dissolve the writ of garnishment by "stating that any allegation in plaintiff's motion for writ is untrue." [*See* Fla. Stat. § 77.07(2)]. If the relevant allegation—here, agency or instrumentality status—is found to be untrue, the court dissolves the writ. *Id*. The Partnerships followed this procedure, and the district court, after due consideration of their argument, concluded that the agency or instrumentality allegation was "proved to be true." *See id*. It therefore properly denied the motion to dissolve the writ. Any failure by the district court to conform to Florida's notice procedures was harmless because the Partnerships received actual notice and were able to contest the allegations as provided in § 77.07; they merely failed to succeed on the merits.

*Id*. at 742.

Based on *Stansell II*, the question here turns on whether the Interested Parties had actual notice such that they were able to contest the allegations against them. The Court notes that here, unlike in *Stansell II*, the Interested Parties have not yet had an opportunity to challenge the agency or instrumentality determination against them. Accordingly, the R&R finds that the Interested Parties lacked actual notice.

Plaintiff argues that Magistrate Judge Becerra's reasoning is "based on the faulty premise that actual notice of the sale, as opposed to actual notice of the execution proceedings, is the proper standard." Objs. at 8.  Plaintiff also asserts that the Notice of Intent and the USMS packages levied upon the Properties provided the Interested Parties with actual notice of the allegations against them, yet the Interested Parties failed to timely challenge the agency or instrumentality determination. *Id*. at 6.  The Court disagrees.

First, Magistrate Judge Becerra finds that the Interested Parties lacked actual notice of the execution proceedings.  *See e.g.*, R&R at 9 ("There is nothing in the record that indicates that counsel for the Interested Parties received the writs, nor is there anything in the record that indicates that either of the Interested Parties received them at that time."); *id.* at 26 ("The fact that the Interested Parties did not have actual notice . . . of these Writs of Execution, is emphasized by the July 4, 2022, e-mail sent to counsel for Plaintiff by counsel for the Interested Parties.").

Further, the Eleventh Circuit held in *Stansell II* that failure to provide statutory notice was harmless where a party had "actual notice of the execution proceedings and simply failed to disprove the agency or instrumentality allegations over the months between their receipt of notice and the district court's denial of their motions."  771 F.3d at 742.  The crux of the issue was not whether the affected parties in *Stansell II* had notice of the execution proceeding, as opposed to notice of the sale; the issue was whether the affected parties were able to contest the allegations against them after an ex parte determination that they were an agent or instrumentality of a terrorist organization.  *Id*.  Here, the Court finds that there was not actual notice because the Interested Parties were not able to contest the allegations against them.

Further, the Interested Parties received the Notice of Intent on June 1, 2022, which stated:

> NOTICE IS HEREBY GIVEN that after the expiration of twenty-one (21) days from the date of service of this Notice, Mr. Caballero will file his application for a writ of execution. Your failure to appear to defend your interests, if any, in the above-captioned action, may result in a writ of execution being issued by the Court

11

   or Clerk of Court to Mr. Caballero to execute upon the Gorrin Fisher Island Condo Unit: 7043.

*See* ECF No. 177-1.

  As the R&R points out, while the Notice of Intent might have been sufficient to the extent it contained the case number for the instant matter if a review of the case docket would have given the Interested Parties the information necessary to combat the charges against them. R&R at 25. However, all relevant filings remained under seal at the time the Interested Parties received the Notice of Intent. *Id*. Specifically, counsel for the Interested Parties were unable to view Plaintiff's sealed A/I Motion or the Court's subsequent A/I Order. R&R at 25. There was no "filing in the public record that would have alerted the Interested Parties of any proceedings against them." *Id*. The Notice of Intent did not inform the Interested Parties that any proceeding had been initiated against them, which would have put them on notice of the need to defend themselves. Accordingly, the Notice of Intent was insufficient to give the Interested Parties actual notice such that they could defend the allegations against them.

  The very day the Interested Parties received the Notice of Intent, their counsel contacted Plaintiff's counsel to inquire about the Notice of Intent. R&R at 25. Importantly, Plaintiff's counsel "knew the A/I Order had issued, knew that it should not have been under seal given that the thirty days had already passed, knew that the Interested Parties had a right to notice and a right to be heard, and yet, Plaintiff's counsel provided no such information to counsel." *Id*. The Court notes that Plaintiff does not object to this finding—that when the Interested Parties attempted to contest the allegations against them, Plaintiff's counsel concealed pertinent information.

  Plaintiff states that he "intentionally and appropriately did not refer to a sealed order." Objs. at 14. Yet, this conversation occurred on June 1, 2022. The sealed order Plaintiff referenced clearly states that "the Clerk of Court is INSTRUCTED to unseal this Motion (ECF No. 150), its attachment (ECF Nos 150-1, 150-2, 150-3, 150-4), and this Order" no later than May 22, 2022.

12

ECF No. 151 at 6. At the very least, the Court would expect Plaintiff's counsel to promptly reach out to the Clerk of Court when contacted by opposing counsel regarding an *ex parte* sealed order that—on its face—clearly should have been unsealed. Plaintiff's counsel apparently did no such thing. Instead, Plaintiff's counsel relied on a mistakenly sealed order to conceal the agency and instrumentality proceedings from counsel for the Interested Parties.

Plaintiff cannot rely on a technical error that the Order accidentally was still sealed, in support of his decision to conceal information from the Interested Parties. The Interested Parties lacked statutory notice or actual notice such that they could contest the allegations against them and, to the extent that the Interested Parties attempted to contest the allegations against them, Plaintiff's counsel thwarted such efforts. The Court finds that the Interested Parties lacked the requisite notice and dismisses Plaintiff's objections.

### 2. The R&R Does Not Wrongfully Blame Plaintiff for Technical Errors

Plaintiff argues that the R&R wrongfully blamed Plaintiff, a victim of terrorism, for technical errors made by the USMS and the Clerk of Court. *Id*. at 4. The Court disagrees. As previously, Florida law required Plaintiff to give two distinct forms of notice prior to the execution of sale. *See* Fla. Stat. § 56.21. Alternatively, the Eleventh Circuit has held that failure to comply with the statutory notice requirement is harmless error where third-party claimants whose property was subject to garnishment pursuant to the TRIA, on basis that they were alleged agencies and instrumentalities of a terrorist organization against which judgment had been won under the ATA, has actual notice and can defend themselves against the proceedings. 771 F.3d at 742.

Magistrate Judge Becerra found that Plaintiff failed to give requisite statutory notice, and the Interested Parties lacked actual notice. R&R at 23–30. Regarding actual notice, the question is not who caused the Interested Parties to lack actual notice—the question is whether the Interested Parties had actual notice such that they can contest the allegations against them.

13

Regardless of fault, the Court finds that the Interested Parties lacked actual notice. The Court dismisses Plaintiff's objection.

### 3. Bond Is Not Required

Plaintiff next objects to Magistrate Judge Becerra's finding that, at this procedural posture, the Interested Parties are not required by Florida law to post a bond before challenging the sale. *See* Objs. at 14–15.

Florida law requires an affidavit and bond be posted after levy (or execution) but prior to the date of sale. *See* Fla Stat. §§ 56.16–17("On receipt of the bond and affidavit the officer shall deliver the property to the claimant and desist from any further proceedings under the execution until the right of property is tried."). Accordingly, Magistrate Judge Becerra found that a bond is not required where, as here, the sale of the Properties has already occurred. R&R at 37.

Plaintiff objects. Yet, Plaintiff cites to no authority suggesting that such a bond is proper in this procedural poster. Based on a clear reading of the statute, and without any authority to support Plaintiff's position, the Court dismisses Plaintiff's objection.

### B. Injury

In the R&R, Magistrate Judge Becerra finds that (1) the Interested Parties will suffer irreparable injury if injunctive relief is not granted and (2) the threatened injury outweighs the harm the relief would inflict on the non-interested parties. R&R at 39–42.

Plaintiff first objects to Magistrate Judge Becerra's finding that the Interested Parties will suffer a due process violation in the absence of injunctive relief because they have not had an opportunity to be heard regarding the Court's agent and instrumentality determination. Objs. at 17. As discussed above, and in line with the Eleventh Circuits holding in *Stansell II*, this Court disagrees. Accordingly, this objection is dismissed.

Next, Plaintiff objects to the R&R's conclusion that any harm to Plaintiff would be minimal if the injunctive relief were entered. *Id.* at 18. He argues that he will suffer irreparable harm if the injunctive relief is entered because he has already paid a $50,000 commission to the USMS and he may face potential foreclosure action by the Properties' respective lienholders. *Id.*

As an initial matter, the Court agrees with the R&R's finding that going forward with Plaintiff's execution and sales proceedings would rob the Interested Parties of their guaranteed right to notice and opportunity to be heard. R&R at 41; *see also Stansell II*, 771 F.3d at 726. As the Eleventh Circuit held in *Stansell II*, "because an agency or instrumentality determination carries drastic results—the attachment and execution of property—it undeniably implicates due process concerns," which therefore entitles parties whose assets are under threat of execution to "notice and an opportunity to be heard in order to rebut the allegations and preserve their possessory interest in blocked assets." 771 F.3d at 726.

The injury to the Interested Parties outweighs the potential injury to Plaintiff. Absent injunctive relief pending an opportunity to be heard in this matter, to which the Interested Parties are entitled, the Interested Parties would lose all rights to the Properties. If the Court grants the injunctive relief, Plaintiff will not be permanently enjoined from transferring his interest in the Properties. Rather, he will only face a short delay pending a hearing and decision on the agency and instrumentality designation. Accordingly, the Court dismisses Plaintiff's objection.

C. **Public Interest**

Magistrate Judge Becerra finds that entry of injunctive relief will serve the public interest because it provides the Court with sufficient time to consider the due process rights of the Interested Parties. R&R at 43. Plaintiff argues that the R&R "glosses over his arguments regarding the public's interest in avoiding roadblocks to collection by a victim of terrorism." Objs. at 19. The Court disagrees. While the public has an interest in avoiding such roadblocks, public interest

15

favors injunctive relief. Namely, a short delay will not prevent Plaintiff from collecting his judgment. Rather, it will provide all Parties with a full opportunity to be heard on the matter, as due process requires. If Plaintiff is ultimately successful, he will be free to collect against the Interested Parties.

The Court agrees with the R&R's finding that injunctive relief is appropriate. Accordingly, the Court ADOPTS IN PART the R&R.

### 2. *The Other Forms of Relief Requested*

In the Motion, the Interested Parties also request an Order (1) staying all further executions and sales of the levied properties of the Interested Parties pending adjudication of their Motion to Vacate (ECF No. 175), and (2) setting aside the U.S. Marshal's sales of the "Fisher Island" and "Collins Avenue" properties. Mot. at 1. The Interested Parties add that "the set-aside need not be decided on an emergency basis provided that Caballero and his entities are restrained in the interim from further conveying the properties." *Id*.

As previously discussed, the Court finds that injunctive relief is appropriate. Because Plaintiff and his entities are restrained from further conveying those properties, the Interested Parties' request to set aside the U.S. Marshal's sale is dismissed without prejudice.

Regarding the Interested Parties request for a stay, this court has "general discretionary power to stay proceedings before it in the control of its docket and in the interests of justice." *Marti v. Iberostar Hoteles y Apartamentos S.L.*, No. 21-11906, 2022 WL 17090059, at *6 (11th Cir. Nov. 21, 2022) (quoting *Hines v. D'Artois*, 531 F.2d 726, 733 (5th Cir. 1976)). Indeed, "[t]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Valdes v. Accounts Receivable Res., Inc.*, No. 19-cv-80673, 2020 WL 13444021, at *1 (S.D. Fla. Jan. 7, 2020) (quoting *Landis v. North Am. Co.*, 299 U.S. 248, 254–55 (1936)). Where

16

appropriate, a stay may "promote judicial economy, reduce confusion and prejudice, and prevent possibly inconsistent resolutions." *Snyder v. Green Roads of Florida LLC*, 430 F. Supp. 3d 1297, 1302 (S.D. Fla. 2020).

The Court finds that a stay is warranted. As discussed above, the Interested Parties are entitled to—and due process requires—an opportunity to be heard in this matter. Until the Interested Parties have such an opportunity, a stay of any further executions and sales of levied properties is appropriate.

## IV.  CONCLUSION

Accordingly, UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that the Interested Parties' Emergency Motion (ECF No. 187) is GRANTED IN PART. Accordingly, it is further ORDERED AND ADJUDGED that Plaintiff, his entities, and agents are hereby RESTRAINED from dissipating, conveying, encumbering, or otherwise transferring ownership of the Fisher Island and Collins Avenue properties as described in the R&R.

Further, the Interested Parties' Motion to Stay [187] is GRANTED. All further executions and sales of the levied properties of the Interested Parties are hereby STAYED pending an adjudication of the Motion to Vacate. By separate order, the Court will issue a scheduling order regarding the Motion to Vacate.

DONE AND ORDERED in Chambers at Miami, Florida, this 15th day of January, 2023.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

c: All counsel of record

17