# EXHIBIT D

## (Authorities Provided by Antonio Caballero)

**Index to Exhibit D of Authorities Provided by Antonio Caballero**

1.  Rule 69, Fed. R. Civ. P.

2.  Memorandum Opinion and Order Regarding Pending Motions, ECF No. 124 at 24-25, *Caballero v. FARC*, No. 2:20-cv-07602-JWH (denying non-fugitive agency or instrumentality's motion to compel the deposition of Antonio Caballero on the grounds that "it appears that there is no testimony that Caballero could provide that would be relevant to the determination of whether Alvarez is an agency or instrumentality of the FARC.")

with 28 U.S.C. §§ 2041 and 2042 and any like statute. The money must be deposited in an interest-bearing account or invested in a court-approved, interest-bearing instrument.

(As amended Dec. 29, 1948, eff. Oct. 20, 1949; Apr. 28, 1983, eff. Aug. 1, 1983; Apr. 30, 2007, eff. Dec. 1, 2007.)

## Rule 68. Offer of Judgment

(a) MAKING AN OFFER; JUDGMENT ON AN ACCEPTED OFFER. At least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued. If, within 14 days after being served, the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service. The clerk must then enter judgment.

(b) UNACCEPTED OFFER. An unaccepted offer is considered withdrawn, but it does not preclude a later offer. Evidence of an unaccepted offer is not admissible except in a proceeding to determine costs.

(c) OFFER AFTER LIABILITY IS DETERMINED. When one party's liability to another has been determined but the extent of liability remains to be determined by further proceedings, the party held liable may make an offer of judgment. It must be served within a reasonable time—but at least 14 days—before the date set for a hearing to determine the extent of liability.

(d) PAYING COSTS AFTER AN UNACCEPTED OFFER. If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made.

(As amended Dec. 27, 1946, eff. Mar. 19, 1948; Feb. 28, 1966, eff. July 1, 1966; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 30, 2007, eff. Dec. 1, 2007; Mar. 26, 2009, eff. Dec. 1, 2009.)

## Rule 69. Execution

(a) IN GENERAL.

(1) *Money Judgment; Applicable Procedure.* A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.

(2) *Obtaining Discovery.* In aid of the judgment or execution, the judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located.

(b) AGAINST CERTAIN PUBLIC OFFICERS. When a judgment has been entered against a revenue officer in the circumstances stated in 28 U.S.C. § 2006, or against an officer of Congress in the circumstances stated in 2 U.S.C. § 118,[1] the judgment must be satisfied as those statutes provide.

---

[1] Now editorially reclassified 2 U.S.C. 5503.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**O**

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

ANTONIO CABALLERO,

Plaintiff,

v.

FUERZAS ARMADAS
REVOLUCIONARIAS DE
COLOMBIA, and
NORTE DEL VALLE CARTEL,

Defendants,

and

JULIO CESAR ALVAREZ
MONTELONGO,

Intervenor.

Case No. 2:20-cv-07602-JWH

**MEMORANDUM OPINION AND
ORDER REGARDING PENDING
MOTIONS [ECF Nos. 89–94]**

# I. INTRODUCTION

Plaintiff Anthony Caballero's father—a Colombian politician and diplomat—was kidnapped, tortured, and killed by forces from the Ejercito de Liberacion (the "ELN") and Fuerzas Armadas Revolucionarias de Colombia (the "FARC").[1]  The FARC and the ELN committed those heinous acts to facilitate their distribution of illicit drugs throughout the United States.[2]  FARC forces subsequently threatened Caballero, causing him to abandon his family farm and to flee Colombia.[3]  Caballero successfully sued the ELN in a Florida state court for the abuse that his father suffered, and Caballero received an award of millions of dollars in damages.[4]  Caballero then sued the FARC in the United States District Court for the Southern District of Florida under the Anti-Terrorism Act (the "ATA"), 18 U.S.C. § 2333, for the FARC's terrorist acts against him.[5]  On May 20, 2020, Caballero prevailed again, and the Southern District of Florida entered judgment in his favor in the amount of $45 million.[6]  This Court now confronts issues pertaining to Caballero's efforts to collect that judgment.

Caballero commenced this enforcement action in August 2020.[7]  A few days later, Caballero moved *ex parte* for a writ of execution pursuant to § 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA"), Pub. L. No. 107-297, § 201(a), 116 Stat. 2322 (codified at 28 U.S.C. § 1610 note), for post-judgment execution on the blocked assets of four non-parties:  Julio Cesar Alvarez

---

[1]     *See* Judgment, *Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, No. 18-25337 (S.D. Fla. May 20, 2020) (the "ATA Action"), ECF No. 63 (the "ATA Judgment").

[2]     *Id.*

[3]     *Id.*

[4]     *Id.*

[5]     *Id.*

[6]     *Id.*

[7]     *See* Registration of J. from Another District [ECF No. 1].

Montelongo ("Alvarez"); Noryban Productions, S.A. de C.V.; JCAM Editora Musical, S.A. de C.V.; and J.C.A.M. Publishing, LLC.[8]  The Court granted that Application in January 2021.[9]  In doing so, based upon the evidence that Caballero submitted in support of his Application, the Court determined that Alvarez and the other non-parties were "agencies or instrumentalities" of the FARC.[10]  *See* TRIA § 201(a).  Accordingly, the Court directed the Clerk to issue a writ of execution and thereby authorized "Caballero to attach any assets within this Court's jurisdiction in the putative names of, held for the benefit of, or that were blocked due to their association with" Alvarez and the other non-parties.[11]  In March 2021, Alvarez moved to intervene in this action;[12] the Court granted that motion a month later.[13]

Presently before the Court are five motions through which Alvarez seeks the following relief:

- an order dissolving the writ of execution because Caballero has not established that Alvarez is an agency or instrumentality of the FARC;[14]

- an order vacating the Order Re Writ of Execution and dismissing this action because the subject assets are not blocked and because Caballero's judgment is already satisfied;[15]

---

[8]     Pl.'s *Ex Parte* Mot. for Issuance of Post-J. Writ of Execution Pursuant to Section 201(a) of TRIA (the "Application") [ECF No. 6].

[9]     *See* Order Granting the Application (the "Order Re Writ of Execution") [ECF No. 39].

[10]    *See id.* at ¶ 4(b).

[11]    *Id.* at ¶ 6.

[12]    *See* Mot. to Intervene [ECF No. 57].

[13]    *See* Order Granting Mot. to Intervene [ECF No. 75].

[14]    *See* Mot. for Order Dissolving Writ of Execution Because Pl. Has Not Established Alvarez Is an Agency or Instrumentality of the FARC (the "TRIA Motion") [ECF No. 89]; Pl.'s Opp'n to the TRIA Motion (the "TRIA Opposition") [ECF No. 100]; Reply in Supp. of the TRIA Motion (the "TRIA Reply") [ECF No. 105].

[15]    *See* Mot. to Vacate Order Re Writ of Execution and to Dismiss Because Assets Are Not Blocked and J. Is Satisfied (the "Motion Re Blocked Assets")

- an order vacating the Order Re Writ of Execution and dismissing this action because the underlying judgment is void;[16]

- an order vacating the Order Re Writ of Execution and dismissing this action for lack of personal jurisdiction and for failure to comply with California law;[17] and

- leave of Court for Alvarez to take reciprocal depositions of Caballero and his witnesses.[18]

Also pending before the Court is a motion by Caballero to compel the deposition of Alvarez in this District.[19]

The Court conducted a hearing on the six pending motions on July 23, 2021. The Court addresses each motion in turn.

## II. DISCUSSION

### A.   Alvarez's Motion Regarding Blocked Assets

TRIA § 201(a) authorizes a terrorism victim to execute upon the "blocked assets" of a terrorist party or its agency or instrumentality. Section 201(a) of TRIA provides:

---

[ECF No. 90]; Pl.'s Opp'n to the Motion Re Blocked Assets (the "Assets Opposition") [ECF No. 101]; Reply in Supp. of the Motion Re Blocked Assets (the "Assets Reply") [ECF No. 106].

[16]   *See* Mot. to Vacate Order Re Writ of Execution and to Dismiss Because J. is Void (the "Motion Re Judgment") [ECF No. 91]; Pl.'s Opp'n to the Motion Re Judgment (the "Judgment Opposition") [ECF No. 102]; Reply in Supp. of the Motion Re Judgment (the "Judgment Reply") [ECF No. 107].

[17]   *See* Mot. to Vacate Order Re Writ of Execution and to Dismiss for Lack of Personal Jurisdiction and Failure to Comply with Cal. Law (the "Jurisdiction Motion") [ECF No. 92]; Pl.'s Opp'n to the Jurisdiction Motion (the "Jurisdiction Opposition") [ECF No. 103]; Reply in Supp. of the Jurisdiction Motion (the "Jurisdiction Reply") [ECF No. 108].

[18]   *See* Mot. for Leave to Take Reciprocal Deps. (the "Discovery Motion") [ECF No. 93]; Pl.'s Opp'n to the Discovery Motion (the "Discovery Opposition") [ECF No. 104]; Reply in Supp. of the Discovery Motion (the "Discovery Reply") [ECF No. 109].

[19]   *See* Pl.'s Mot. to Compel Alvarez Dep. (the "Motion to Compel") [ECF No. 94]; Opp'n to the Motion to Compel (the "MTC Opposition") [ECF No. 99]; Pl.'s Reply in Supp. of the Motion to Compel (the "MTC Reply") [ECF No. 110].

1    Notwithstanding any other provision of law, and except as provided

2    in subsection (b), in every case in which a person has obtained a

3    judgment against a terrorist party on a claim based upon an act of

4    terrorism, or for which a terrorist party is not immune under

5    section 1605(a)(7) of title 28, United States Code, the blocked assets

6    of that terrorist party (including the blocked assets of any agency or

7    instrumentality of that terrorist party) shall be subject to execution

8    or attachment in aid of execution in order to satisfy such judgment

9    to the extent of any compensatory damages for which such terrorist

10    party has been adjudged liable.

11 Alvarez seeks to dissolve the Writ of Execution and to dismiss this action on the

12 grounds that Alvarez's assets are not "blocked" for the purposes of TRIA and

13 that Caballero's judgment is already satisfied.

14    **1.**    **"Blocked" Assets**

15    Alvarez concedes that in 2017 the United States Office of Foreign Assets

16 Control ("OFAC") designated Alvarez as a Specially Designated Narcotics

17 Trafficker ("SDNT") pursuant to the Foreign Narcotics Kingpin Designation

18 Act (the "Kingpin Act"), Pub. L. No. 106-120, § 801 *et seq.*, 113 Stat. 1606

19 (codified at 21 U.S.C. §§ 1901 *et seq.*).[20]  However, Alvarez contends that in

20 2017, individuals designated—and assets blocked—under the Kingpin Act did

21 not qualify as "blocked" for the purposes of TRIA.[21]

22    In 2017, when Alvarez was designated as an SDNT under the Kingpin

23 Act, TRIA § 201 defined a "blocked asset" to mean only assets "seized or

24 frozen by the United States under section 5(b) of the Trading With the Enemy

25 Act [Trading Act] . . . or under sections 202 and 203 of the International

26

27    [20]   *See* Motion Re Blocked Assets 3:1–4.

28    [21]   *See id.* at 3:5–18.

1   Emergency Economic Powers Act [Economic Powers Act] . . . ."  TRIA

2   § 201(d)(2)(A); *see also Stansell v. Revolutionary Armed Forces of Colombia*, 704

3   F.3d 910, 915 (11th Cir. 2013) ("*Stansell I*").  In 2018, Congress amended the

4   ATA (the statute upon which Caballero's judgment is based) for the express

5   purpose of redefining the term "blocked asset" to include the assets of a party

6   designated under the Kingpin Act. Pub. L. No. 115-253, § 3(a), 132 Stat. 3183

7   (the "2018 Amendment") (codified at 18 U.S.C. § 2333(e)).  As amended, the

8   ATA provides, in pertinent part, the following:

9         [F]or purposes of section 201 of the Terrorism Risk Insurance Act of

10         2002 (28 U.S.C. [§] 1610 note), in any action in which a national of

11         the United States has obtained a judgment against a terrorist party

12         pursuant to this section, the term "blocked asset" shall include any

13         asset of that terrorist party (including the blocked assets of any

14         agency or instrumentality of that party) seized or frozen by the

15         United States under section 805(b) of the Foreign Narcotics Kingpin

16         Designation Act (21 U.S.C. [§] 1904(b)).

17   18 U.S.C. § 2333(e).  Congress further established that the 2018 Amendment

18   "shall apply to any judgment entered before, on, or after the date of enactment

19   of this Act."  2018 Amendment § 3(b).

20        Alvarez does not meaningfully contest the plain language of the

21   2018 Amendment or the fact that Congress expressly stated its intent for the

22   2018 Amendment to apply retroactively to judgments previously obtained under

23   the ATA.[22]  Indeed, in view of the plain text of the 2018 Amendment, Alvarez's

24   assets, which were "blocked" after Alvarez was designated under the Kingpin

25   Act, are subject to execution under TRIA.  In this regard, however, Alvarez

26

27     —————————————————

     [22]    *See id.* at 3:19–22; Assets Reply 1:23–2:14 ("The fact that Congress

28   intended the law to apply retroactively does not cure the Ex Post Facto problem, it gives rise to that problem.").

1    contends that the application of the 2018 Amendment to his assets would violate

2    the *Ex Post Facto* Clause of the United States Constitution, Art. I, § 10, cl. 1.[23]

3        The *Ex Post Facto* Clause of the Constitution "flatly prohibits retroactive

4    application of penal legislation." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 266

5    (1994). It "not only ensures that individuals have 'fair warning' about the effect

6    of criminal statutes, but also 'restricts governmental power by restraining

7    arbitrary and potentially vindictive legislation.'" *Id.* at 266–267 (quoting *Weaver*

8    *v. Graham*, 450 U.S. 24, 28–29 (1981) (citations omitted)). However, as the

9    Supreme Court has recognized, the Clause's restrictions "are of limited scope."

10    *Id.* at 267. "Retroactivity provisions often serve entirely benign and legitimate

11    purposes, whether to respond to emergencies, to correct mistakes, to prevent

12    circumvention of a new statute in the interval immediately preceding its passage,

13    or simply to give comprehensive effect to a new law Congress considers

14    salutary." *Id.* at 267–268. The *Ex Post Facto* Clause thus applies only to civil

15    statutes that are "so punitive in either purpose or effect as to negate [Congress']

16    intention to deem it civil." *Smith v. Doe*, 538 U.S. 84, 92 (2003) (internal

17    quotations omitted). Here, Alvarez contends that 18 U.S.C. § 2333 is punitive

18    in nature and, therefore, that the retroactive application of the 2018 Amendment

19    to Alvarez's blocked assets would violate the *Ex Post Facto Clause*. The Court is

20    not persuaded.

21        Alvarez focuses his argument on the treble damages provision of the

22    ATA, 18 U.S.C. § 2333(a), which Alvarez contends is "overwhelmingly

23    punitive."[24] That argument, however, misses the mark. The ATA establishes a

24    claim for relief for victims of terrorism ***against foreign terrorist organizations***.

25    *See* 18 U.S.C. § 2333(a) & (d)(2). Caballero is not seeking a judgment (or treble

26

27    ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
[23]    *See* Motion Re Blocked Assets 3:19–6:10.

28    [24]    *Id.* at 4:14–15 (quoting *Estates of Ungar v. Palestinian Auth.*, 304
F. Supp. 2d 232, 238 (D.R.I. 2004).

1   damages) against Alvarez—he is seeking only to ***enforce*** and collect upon the

2   ATA judgment that he previously obtained against the FARC, a designated

3   foreign terrorist organization.   Thus, 18 U.S.C. § 2333(a) is only peripherally

4   relevant here.   Moreover, the TRIA does not shift "liability from a terrorist

5   party to its instrumentality."   *Bennett v. Islamic Republic of Iran*, 927 F. Supp. 2d

6   833 (N.D. Cal. 2013), *aff'd*, 799 F.3d 1281 (9th Cir. 2015), *opinion withdrawn and*

7   *superseded*, 817 F.3d 1131 (9th Cir. 2016), and *aff'd*, 817 F.3d 1131 (9th Cir. 2016),

8   and *aff'd*, 825 F.3d 949 (9th Cir. 2016).   In this regard, 18 U.S.C. § 2333(e)

9   merely defines the category of assets that are executable; it does not determine

10  liability.   Accordingly, to the extent that the ATA is punitive, its punitive

11  provisions do not apply to Alvarez.   And 18 U.S.C. § 2333(e), specifically, is not

12  "so punitive in either purpose or effect as to negate [Congress'] intention to

13  deem it civil."   *Smith*, 538 U.S. at 92.

14          In sum, the Court concludes that Alvarez's assets are "blocked" pursuant

15  to 18 U.S.C. § 2333(e) and that the application of the 2018 Amendment to

16  Alvarez's assets does not violate the *Ex Post Facto* Clause.

17          **2.      Satisfaction of Caballero's Judgment**

18          Caballero admits that he has collected more than $11 million in damages;[25]

19  Alvarez regards that sum as excessive.   Alvarez argues that Caballero is entitled

20  to collect upon his judgment for "actual compensatory, and economic

21  damages," in the amount of only $5,189,001.[26]   The remainder of the judgment,

22  including the award of $45 million for "non-economic damages," according to

23  Alvarez, is void because no "U.S. National" was ever "injured in his or [*sic*]

24  person."[27]   This argument is closely related to Alvarez's argument in his

25  separate motion regarding the ATA Judgment, in which Alvarez argues that the

26

27  _____

28  [25]    Assets Opposition 20:19-20.

    [26]    *See* Motion Re Blocked Assets 8:1–8.

    [27]    *See id.* at 8:9–17.

1    ATA Judgment is void and unenforceable.  For the reasons discussed in more

2    detail below, the Court concludes that Alvarez's attack on the validity of the

3    ATA Judgment is without merit.  Putting that issue aside for the moment, in his

4    instant motion, Alvarez does not cite any authority or evidence in support of his

5    argument that Caballero is entitled to collect only the $5,189,001 in damages

6    awarded for actual compensatory and economic damages, nor is there any

7    support for that argument under the plain text of either 18 U.S.C. § 2333(a) or

8    TRIA § 201(a).  Accordingly, the Court is not persuaded that Caballero's ATA

9    Judgment is satisfied or that the ATA Judgment is unenforceable against

10   Alvarez's blocked assets.[28]

11        For the foregoing reasons, the Court **DENIES** Alvarez's Motion Re

12   Blocked Assets in its entirety.

13   **B.    Alvarez's Motion Re Judgment**

14        The Federal Rules of Civil Procedure provide that "[o]n motion and upon

15   such terms as are just, the court may relieve a party or his legal representative

16   from a final judgment, order, or proceeding for the following reasons: . . . (4) the

17   judgment is void." Fed. R. Civ. P. 60(b)(4).  A judgment may be set aside on

18   voidness grounds under Rule 60(b)(4) "only if the court that rendered judgment

19   lacked jurisdiction of the subject matter, or of the parties, or if the court acted in

20   a manner inconsistent with due process of law." *In re Center Wholesale, Inc.*, 759

21   F.2d 1440, 1448 (9th Cir. 1985).

22        Alvarez contends that the ATA Judgment is void because the Southern

23   District of Florida lacked both subject matter jurisdiction over the action and

24   personal jurisdiction over the defendants.

25

26

---

27   [28]    The Court's ruling on this point is subject, of course, to its final
determination of whether Alvarez is an agency or instrumentality of the FARC,
28   which the Court addresses in the final section of this Order.

### 1.     Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction.  "The character of the controversies over which federal judicial authority may extend are delineated in Art. III, § 2, cl. 1" of the United States Constitution, and the jurisdiction "of the lower federal courts is further limited to those subjects encompassed within a statutory grant of jurisdiction." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982); *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (federal courts "possess only that power authorized by Constitution and statute").  "[T]he rule, springing from the nature and limits of the judicial power of the United States is inflexible and without exception"; thus, courts of the United States must deny their jurisdiction "in all cases where such jurisdiction does not affirmatively appear in the record." *Mansfield, C. & L. M. R. Co. v. Swan*, 111 U.S. 379, 382 (1884); *see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006).

Alvarez contends that the Southern District of Florida lacked subject matter jurisdiction because, under the plain language of 18 U.S.C. § 2333(a), Caballero did not qualify as a victim of international terrorism.[29]  That argument, however, is not jurisdictional.  The jurisdictional provision of the ATA, 18 U.S.C. § 2338, provides that federal district courts have exclusive jurisdiction over claims under the ATA.  It was through that statutory provision that Caballero invoked the federal court's subject matter jurisdiction in the

---

[29]     *See* Motion Re Judgment 7:3–13:11.  Alvarez does not appear to challenge the validity of the prior judgment entered in Caballero's action in Florida state court.  Even if he did, Rule 60(b)(4) does not allow a federal-court litigant "to raise an untimely argument that the state-court orders and final judgments are void, essentially asking this court to sit as an appellate court over those orders and judgment." *Mather v. First Hawaiian Bank*, 2014 WL 7334880, at *3 (D. Haw. Dec. 19, 2014).  In other words, Rule 60(b)(4) does not authorize this Court to vacate as void state court orders or judgments. *Id.*; *see also Schroeder v. Bank of Am.*, 2012 WL 6929272, at *4 (M.D. Pa. Nov. 19, 2012) (same).

1    underlying action.[30]  To that end, it is well-established law that the "presence or

2    absence of federal-question jurisdiction is governed by the well-pleaded

3    complaint rule, which provides that federal jurisdiction exists only when a

4    federal question is presented on the face of the plaintiff's properly pleaded

5    complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

6        By focusing on 18 U.S.C. § 2333, Alvarez effectively argues that Caballero

7    failed to state a claim in the underlying action.  However, that alleged defect

8    does not relate to whether the federal court had subject matter jurisdiction over

9    that claim in the first instance.  That is an important distinction in the context of

10    Rule 60(b)(4)—a judgment is not void merely because it is somehow erroneous.

11    *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010).  As

12    relevant here, 18 U.S.C. § 2333(a) provides that "[a]ny national of the United

13    States injured in his or her person, property, or business by reason of an act of

14    international terrorism, or his or her estate, survivors, or heirs, may sue therefor

15    in any appropriate district court of the United States . . . ."  While that provision

16    does have a jurisdictional component—"may sue therefor in any appropriate

17    district court of the United States"—that jurisdictional component merely

18    confirms what is plainly set forth in 18 U.S.C. § 2338:  federal district courts

19    have exclusive jurisdiction over claims brought pursuant to the ATA.  *See* 18

20    U.S.C. §§ 2333(a) & 2338.

21        Alvarez's argument—that Caballero did not qualify to assert a claim

22    under the ATA because neither Caballero nor his father was a U.S. national at

23    the time that his father was tortured and killed—is not persuasive.[31]  As the

24

---

25    [30]    *See* Pl.'s Compl. (the "<u>ATA Complaint</u>") [ATA Action, ECF No. 1] ¶ 9
26    ("This Court has jurisdiction pursuant to 18 U.S.C. § 2338, which provides for
      exclusive federal jurisdiction for ATA claims."); *see also id.* at ¶ 8 ("Plaintiff in
27    this action sues Defendants for damages pursuant to 18 U.S.C. § 2333 of the
      ATA."); *id.* at ¶¶ 12–14 (pleading claim for relief under 18 U.S.C. § 2333).
28    [31]    *See* Motion Re Judgment 8:12–10:15.

1  court in the ATA Action correctly observed, 18 U.S.C. § 2333(a) "does not

2  explicitly require that the claimant be a U.S. national at the time of the injury,

3  only that he is currently a U.S. national and that he was injured by an act of

4  international terrorism at some time in the past."[32] *See, e.g.*, *Linde v. Arab Bank,*

5  *PLC*, 384 F. Supp. 2d 571, 589 (E.D.N.Y. 2005) (holding that "U.S. citizens

6  suing for various non-physical injuries, such as emotional distress and loss of

7  consortium, after their family members, who were not U.S. nationals, became

8  victims of acts of international terrorism" could assert a claim under the ATA);

9  *Biton v. Palestinian Interim Self–Government Authority*, 310 F. Supp. 2d 172, 181–

10  82 (D.D.C. 2004) (holding that a woman whose husband (a non-U.S. citizen)

11  died in a Gaza Strip bus bombing could maintain an ATA lawsuit even though

12  she was not personally on the bombed bus nor injured in the blast); *Weinstock v.*

13  *Islamic Republic of Iran*, 2019 WL 1993778, at *4 (S.D. Fla. May 6, 2019).

14  Moreover, even if the statute did require Caballero to be a U.S. national at the

15  time of his injury, as Alvarez argues, Caballero explicitly alleged a continuing

16  injury in his person by reason of the acts of international terrorism.[33] Thus, even

17  accepting Alvarez's interpretation of the statute, a federal question appears on

18  the face of Caballero's well-pleaded ATA Complaint. *See Caterpillar*, 482 U.S.

19  392.

20      Therefore, the Southern District of Florida had subject matter jurisdiction

21  over the ATA Action.

22      **2.    Personal Jurisdiction**

23      Alvarez next argues that the ATA Judgment is void because the district

24  court did not have personal jurisdiction over the defendants.[34] Unlike subject

25

_____

26  [32]    Order on Mot. for Default J. (the "<u>Default Order</u>") [ATA Action, ECF
No. 62] 5.

27  [33]    *See* ATA Complaint ¶ 14.

28  [34]    *See* Motion Re Judgment 13:12–23:7.

1    matter jurisdiction, which "is an Art. III as well as a statutory requirement" that

2    "functions as a restriction on federal power," the "requirement that a court

3    have personal jurisdiction flows not from Art. III, but from the Due Process

4    Clause." *Ins. Corp. of Ireland*, 456 U.S. at 702. As such, the "personal

5    jurisdiction requirement recognizes and protects an ***individual*** liberty interest."

6    *Id.* (emphasis added). It therefore "represents first of all an individual right,"

7    and, like other such rights, it can be waived. *Id.* at 703.

8         Alvarez was not a defendant in the ATA Action. Because the

9    requirement of personal jurisdiction is "a legal right protecting the individual,"

10   *id.* at 704, other district courts in this circuit and elsewhere have held that

11   objections to personal jurisdiction can be raised only by the individual defendant

12   who is protected by that right, *see, e.g., Verrecchia v. Aviss*, 2017 WL 9486151, at

13   *3–*4 (C.D. Cal. Nov. 8, 2017) (co-defendant did not have standing to object to

14   personal jurisdiction over another defendant); *Jenkins v. Smead Mfg. Co.*, 2009

15   WL 3628100, at *3 (S.D. Cal. Oct. 28, 2009) (same); *In re Grana y Montero

16   S.A.A. Sec. Litig.*, 2019 WL 259778, at *3 (E.D.N.Y. Jan. 9, 2019), *report and

17   recommendation adopted*, 2019 WL 1046627 (E.D.N.Y. Mar. 5, 2019); *Zhaoyin

18   Wang v. Beta Pharma, Inc.*, 2015 WL 5010713, at *12 (D. Conn. Aug. 24, 2015)

19   (collecting cases); *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265

20   F.R.D. 106, 114 (S.D.N.Y. 2010) ("[c]o-defendants do not have standing to

21   assert improper service claims on behalf of other defendants," citing *Farrell v.

22   Burke*, 449 F.3d 470, 494 (2d Cir. 2006) ("Federal courts as a general rule allow

23   litigants to assert only their own legal rights and interests, and not the legal

24   rights and interests of third parties.")).

25        In this regard, Alvarez cites no authority to show that he has standing to

26   attack the ATA Judgment for lack of personal jurisdiction over the named

27   defendants in the ATA Action. Therefore, the Court concludes that Alvarez

28

1    lacks standing to object to personal jurisdiction on behalf of the named

2    defendants in the ATA Action.

3         For the foregoing reasons, the Court **DENIES** Alvarez's Motion Re

4    Judgment in its entirety.

5    **C.    Alvarez's Jurisdiction Motion**

6         Through this motion, Alvarez seeks to dissolve the Writ of Execution

7    because Caballero has not established that this Court has personal jurisdiction

8    over Alvarez and because Caballero failed to comply with the relevant notice

9    requirements under California law.  The thrust of Caballero's response is that he

10   does not have to establish personal jurisdiction over Alvarez because this is a

11   post-judgment collection proceeding against the blocked assets that are located

12   in this district, not Alvarez personally.  Caballero also contends that he complied

13   with all applicable notice requirements under California law.

14        **1.    Requirements Under California Law**

15        The Federal Rules of Civil Procedure provide that a money judgment is

16   "enforced by a writ of execution . . . ."  Fed. R. Civ. P. 69(a)(1).  That Rule

17   further instructs that the procedure on execution "must accord with the

18   procedure of the state where the court is located . . . ."  *Id.*  Thus, here,

19   California law governs the procedure on execution.  Alvarez previously argued

20   that the term "execution," in the context of this case, was being misapplied

21   based upon (1) the manner in which that term was used by the Eleventh Circuit

22   in *Stansell v. Revolutionary Armed Forces of Colom. (FARC)*, 771 F.3d 713 (11th

23   Cir. 2014) ("*Stansell II*"), with reference to Florida law; and (2) how that term

24   is used in the context of the California Code of Civil Procedure.[35]

25

26

---

[35]    *See generally Ex Parte* Appl. by Alvarez to Stay Execution Against His
Assets (the "Application") [ECF No. 58]; *see also* Objection in Supp. of the
Appl. (the "Alvarez Objection") [ECF No. 63] 2:1–3:25.

-14-

1    In *Stansell II*, under Florida law, "execution" was synonymous with

2  "turnover" of blocked assets to the judgment creditor. *See Stansell II*, 771 F.3d

3  at 725–26. In contrast, under California law, a "Writ of Execution" is the

4  exclusive vehicle for the enforcement of a judgment, *see generally*

5  Cal. Civ. Proc. Code §§ 680.010–720.430, whereas a "Writ of Attachment" is

6  used in the pre-judgment context (in cases involving commercial law), *see id.* at

7  §§ 481.010, *et seq.*; *see also Writ of Execution*, Cal. Prac. Guide Enf. J. & Debt

8  Ch. 6D-2 [6:311] (May 2020 update).

9    The parties agree that the "procedure on execution" must accord with

10  the procedures used in California.[36] Under California law, post-judgment

11  collection procedure, such as Caballero's action before this Court, is set forth in

12  Title Nine of the Code of Civil Procedure: "Enforcement of Judgments Law."

13  *See* Cal. Civ. Proc. Code § 680.010 ("This title shall be known and may be cited

14  as the Enforcement of Judgments Law."). Enforcement of money judgments is

15  accomplished through the service of a Writ of Execution and Notice of Levy.

16  *See id.* at § 699.510–540. Such writs may be served on third persons. *Id.* at

17  § 701.010(a). That is the procedure that Caballero employed in this case.[37]

18  Upon receiving service of a Writ of Execution, a third person has an obligation

19  to "deliver to the levying officer any of the property levied upon that is in the

20  possession or under the control of the third person at the time of levy unless the

21  third person claims the right to possession of the property." *See*

22  Cal. Civ. Proc. Code § 701.010(b)(1). The Notice of Levy that Caballero served

23  with the Writ of Execution confirms as much, regardless of whether the Writ

---

[36] *See* Pl.'s *Ex Parte* Mot. to Strike the Alvarez Objection (the "Motion to Strike") [ECF No. 64].

[37] *See* Pl.'s *Ex Parte* Mot. for Issuance of Post-J. Writ of Execution Pursuant to Section 201(a) of TRIA [ECF No. 6] 13–14; Proof of Service [ECF No. 43-1] 35.

1    and Notice are served on a defendant or a third party.[38]  Accordingly, Caballero

2    complied with the applicable provisions of California law.  Furthermore,

3    Alvarez's intervention in this case confirms that he received notice of this

4    action.

5          **2.**      **Types of Jurisdiction**

6        At the outset, it is helpful to understand the distinctions between the

7    three types of potential jurisdiction in federal cases:  *in personam*, *in rem*, and

8    *quasi in rem.*

9           **a.**      ***In Personam* Jurisdiction**

10        "*In personam* jurisdiction, simply stated, is the power of a court to enter

11    judgment against a person."  *SEC v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007).

12    As noted in the preceding section, the "requirement that a court have personal

13    jurisdiction" flows from the Due Process Clause.  *Ins. Corp. of Ireland*, 456 U.S.

14    at 702.  It is "a legal right protecting the individual."  *Id.* at 704.

15           **b.**      ***In Rem* Jurisdiction**

16        *In rem* jurisdiction, by contrast, "is the court's power to adjudicate rights

17    over property."  *United States v. Obaid*, 971 F.3d 1095, 1098 (9th Cir. 2020)

18    (citing *Ross*, 504 F.3d at 1138).  "Jurisdiction *in rem* is predicated on the fiction

19    of convenience that an item of property is a person against whom suits can be

20    filed and judgments entered . . . ."  *United States v. Approximately $1.67 Million*

21    *(US) in Cash, Stock & Other Valuable Assets*, 513 F.3d 991, 996 (9th Cir. 2008)

22    (citation and internal quotation marks omitted).

23           **c.**      ***Quasi in Rem* Jurisdiction**

24        Finally, a *quasi in rem* action falls in between *in rem* and *in personam*

25    jurisdiction:

26

27    ———————————
      [38]    *See* Notice of Levy [ECF No. 54] 2 (sections entitled "Information for

28    Judgment Debtor" and "Information for Person Other than Judgment Debtor").

1    The action is not really against the property; rather, the action

2    involves the assertion of a personal claim against the defendant of the

3    type usually advanced in an *in personam* action and the demand

4    ordinarily is for a money judgment, although in some contexts the

5    objective may be to determine rights in certain property.  The basis

6    for transforming the suit from one *in personam* to an action against

7    the defendant's property is the attachment or garnishment of some

8    or all of the property the defendant may have in the jurisdiction.

9    *Ventura Packers, Inc. v. F/V Jeanine Kathleen*, 424 F.3d 852, 860 n.4 (9th Cir.

10    2005), *as amended* (citations and alteration omitted).

11        There are two types of *quasi in rem* jurisdiction.  "In the first type the

12    plaintiff asserts an interest in property and seeks to have his interest established

13    as against the claim of a designated person or designated persons."  Restatement

14    (First) of Judgments § 32 cmt. a (1942).  The first type includes, for example,

15    actions to recover possession of land or to quiet title.  *See id.*

16        "In the second type of proceeding *quasi in rem* the plaintiff does not assert

17    that he has an interest in the property, but asserts a claim against the defendant

18    personally, and seeks to compel to the satisfaction of his claim the application of

19    property of the defendant, by attachment or garnishment."  *Id.*; *see also Off.*

20    *Depot Inc. v. Zuccarini*, 596 F.3d 696, 699–700 (9th Cir. 2010).  Type two *quasi in*

21    *rem* is sometimes called "attachment jurisdiction."  *Zuccarini*, 596 F.3d at 699.

22        A district court can obtain *quasi in rem* jurisdiction over property situated

23    within its geographical borders.  *See Pennington v. Fourth Nat'l Bank*, 243 U.S.

24    269, 272 (1917); Fed. R. Civ. P. 4(n)(2) ("[T]he court may assert jurisdiction

25    over the defendant's assets found in the district.  Jurisdiction is acquired by

26    seizing the assets under the circumstances and in the manner provided by state

27    law in that district.").  Due process is satisfied when there is a constitutionally

28    sufficient relationship between the defendant, the forum, and the litigation.

1   *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977).  "In an action to execute on a

2   judgment, due process concerns are satisfied, assuming proper notice, by the

3   previous rendering of a judgment by a court of competent jurisdiction."

4   *Zuccarini*, 596 F.3d at 700 (citing *Shaffer*, 433 U.S. at 210 n.36 ("Once it has

5   been determined by a court of competent jurisdiction that the defendant is a

6   debtor of the plaintiff, there would seem to be no unfairness in allowing an action

7   to realize on that debt in a State where the defendant has property, whether or

8   not that State would have jurisdiction to determine the existence of the debt as

9   an original matter."))

10      **3.    Application to This TRIA Case**

11      Because TRIA establishes a unique procedure for post-judgment

12   execution and attachment proceedings, this case does not fit neatly within any of

13   the traditional jurisdictional paradigms.  Indeed, the parties do not cite any case

14   addressing the specific jurisdictional basis for post-judgment execution

15   proceedings under TRIA, nor has the Court discovered any such authority

16   through its independent research.  Thus, this case appears to present an issue of

17   first impression.  Here, although Alvarez was not named as a defendant in the

18   ATA Action and Caballero does not assert a claim against Alvarez personally,

19   the plain language of TRIA mandates that the Court's jurisdiction over this

20   post-judgment collection proceeding is type two *quasi in rem*.

21      In view of the traditional *quasi in rem* framework, the issue that stands out

22   here is that Alvarez was not a defendant against whom the ATA judgment was

23   entered.  The bridge to that gap, however, is found in the plain text of TRIA,

24   which provides, in relevant part, as follows:

25          Notwithstanding any other provision of law, and except as provided

26          in subsection (b), in every case in which a person has obtained a

27          judgment against a terrorist party on a claim based upon an act of

28          terrorism, or for which a terrorist party is not immune under

-18-

1    section 1605(a)(7) of title 28, United States Code, the blocked assets

2    of that terrorist party (***including the blocked assets of any agency or***

3    ***instrumentality of that terrorist party***) shall be subject to execution

4    or attachment in aid of execution in order to satisfy such judgment

5    to the extent of any compensatory damages for which such terrorist

6    party has been adjudged liable.

7    TRIA § 201(a) (emphasis added).

8         In the underlying ATA Action, judgment was entered against the FARC.

9    It is undisputed that the FARC is a "terrorist party" as defined by TRIA

10   § 201(d)(4), and it is further undisputed that Alvarez's assets are "blocked"

11   under the Kingpin Act.  This Court has, therefore, concluded that Alvarez's

12   assets are subject to execution pursuant to 18 U.S.C. § 2333(e).[39]  Accordingly,

13   the only issue remaining is whether Alvarez is an agency or instrumentality of

14   the FARC for the purposes of TRIA § 201(a).  The Court already made a

15   preliminary determination that Alvarez is an agency or instrumentality of the

16   FARC,[40] although that determination is currently pending further proceedings,[41]

17   as discussed below.  Subject to the Court's final determination of that issue,

18   however, the plain language of TRIA § 201(a) makes clear that "in *every* case in

19   which a person has obtained a judgment against *a terrorist party* . . . , the blocked

20   assets of that terrorist party (*including* the blocked assets of *any agency or*

21   *instrumentality of that terrorist party*) shall be subject to execution or attachment

22   . . . ." *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 49 (2d Cir. 2010)

23   (emphasis in original).  Under Alvarez's interpretation of the statute—that the

24   court in the ATA Action first had to have personal jurisdiction over Alvarez

25   (*i.e.*, the alleged agency or instrumentality) before this Court can properly

26   _____

27   [39]   *See* Sec. II(A)(1), *supra*.

     [40]   *See* Order Re Writ of Execution ¶ 4(b).

28   [41]   *See* TRIA Motion.

1    exercise *quasi in rem* jurisdiction over this action[42] — "the agency or
2    instrumentality would itself have been a 'terrorist party' against which the
3    underlying judgment had been obtained" and "the parenthetical language in
4    Section 201(a) of the TRIA that permits attachment of funds from agencies and
5    instrumentalities would be rendered superfluous." *Id.*

6          Instead, the plain language of the statute "clearly differentiates between
7    the party that is the subject of the underlying judgment itself, which can be any
8    terrorist party . . . , and parties whose blocked assets are subject to execution or
9    attachment, which can include not only the terrorist party but also 'any agency
10   or instrumentality of that terrorist party.'" *Id.* (quoting TRIA § 201(a)).  In
11   effect, TRIA § 201(a) constitutes an independent grant of jurisdiction over the
12   blocked assets of "any agency or instrumentality" of the terrorist party for the
13   purpose of execution and attachment of a valid ATA judgment.  Due process is
14   satisfied by the underlying judgment against the terrorist party as well as the
15   requirement under TRIA § 201(a) that the blocked assets subject to execution
16   are the assets of an agency or instrumentality of the terrorist party.  Of course, if
17   the Court were to decide that Alvarez is not an agency or instrumentality of the
18   FARC, then the jurisdictional question would be moot.

19         By way of analogy, the Court's conclusion finds support in cases where a
20   creditor seeks to satisfy its debt out of property transferred by one corporation
21   (the original judgment debtor) to a second, successor corporation.  In those
22   cases, the district court applies state law to determine whether the transferee
23   corporation is merely a successor to, and continuation of, the former
24   corporation.  *See Christiansen v. Mechanical Contractors Bid Depository*, 404 F.2d
25   324, 325 (10th Cir. 1968), *cited with approval in In re Merrill Lynch Relocation
26   Mgmt., Inc.*, 812 F.2d 1116, 1120 (9th Cir. 1987) (in actions to enforce a judgment
27
28   _____
     [42]    *See* Jurisdiction Motion 10:8–28.

1   under Rule 69, state law applies to determine liability of a successor

2   corporation).  If the court finds that the transferee corporation is the successor

3   to the transferor corporation and that state law imposes liability upon a

4   successor corporation for the transferor's debts, then the judgment creditor can

5   execute upon the assets of the successor corporation, notwithstanding that the

6   successor corporation is not the judgment debtor in the underlying action.  *See*

7   *id.*  Similarly, here, TRIA § 201(a) provides that the judgment creditor may,

8   upon a proper showing, satisfy his judgment against the blocked assets of any

9   agency or instrumentality of the terrorist-party judgment debtor.  The agency or

10  instrumentality is an analog to the successor corporation in the aforementioned

11  example.  Due Process is satisfied because the agency-or-instrumentality finding

12  establishes a relationship with the judgment debtor and the underlying litigation,

13  and with the forum where the blocked assets of the agency or instrumentality are

14  located.  *See Shaffer*, 433 U.S. at 204.

15        Courts have also adopted similar reasoning in examining the basis for

16  federal subject matter jurisdiction over actions to enforce a judgment obtained

17  against a foreign state under the Foreign Sovereign Immunities Act ("<u>FSIA</u>"),

18  28 U.S.C. §§ 1602 *et seq.*  While this Court recognizes that there are important

19  distinctions between the instant action and actions against a foreign state under

20  FSIA,[43] the analytical framework in the FSIA context is instructive with regard

21  to the issue presently before this Court.

22        Like TRIA, FSIA contains provisions requiring an "agency or

23  instrumentality" determination.  Specifically, the statute's definition of the term

24  "foreign state" includes "a political subdivision of a foreign state or an agency

25  or instrumentality of a foreign state."  28 U.S.C. § 1603(a).  Based upon that

26  language, courts have held that Rule 69 authorizes a garnishment action against

---

27

28  [43]    Those distinctions include issues of subject matter jurisdiction over the action and jurisdiction over individuals and their assets (as Alvarez argues here).

1    the assets of an agency or instrumentality of the judgment debtor. *See, e.g., IFC*

2    *Interconsult, AG v. Safeguard International Partners, LLC*, 438 F.3d 298 (3d Cir.

3    2006); *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d

4    380 (D. Del. 2018), *aff'd and remanded*, 932 F.3d 126 (3d Cir. 2019).  In *IFC*, for

5    example, the Third Circuit reasoned that "[a]lthough garnishment actions are

6    new actions in the sense that there is a new party and a new theory for that

7    party's liability, they are not new actions in the sense of a new direct claim."

8    *IFC*, 438 F.3d at 314.  Applying *IFC*, the district court in *Crystallex* determined

9    that the judgment creditor's collection action against a Venezuelan state-owned

10   oil company to collect on the creditor's judgment against the Bolivarian

11   Republic of Venezuela was part of the action giving rise to the judgment and that

12   Venezuela was subject to the court's jurisdiction under an exception to FSIA.

13   *See Crystallex*, 333 F. Supp. 3d at 390–392.  That court reasoned that the

14   collection action was part of the "same lawsuit" that gave rise to the judgment

15   and that the judgment creditor did not seek to impose any new obligation on the

16   agency or instrumentality, but rather sought only to attach property that

17   nominally belonged to the agency or instrumentality but effectually belonged to

18   the judgment debtor.[44]  *See id.* at 392.  The court in *Crystallex* proceeded to

19   explain that the crucial distinction in such cases is that the judgment creditor

20   seeks only to collect a judgment, not "to impose personal liability for an existing

21   judgment on a new party."  *See id.* at 393 (quoting *Gambone v. Lite Rock Drywall*,

22   288 Fed. App'x 9, 12 (3d Cir. 2008)); *see also id.* at 392–393 (citing cases).

23

24

---

25   [44]    Although Alvarez's argument in the instant action is somewhat
     different—Alvarez is contesting this Court's jurisdiction over him and his
26   assets, and Caballero does not appear to contend that Alvarez is an alter ego of
     the FARC, *cf. Crystallex*, 333 F. Supp. 3d at 390–392—as this Court explained,
27   TRIA § 201(a) effectively constitutes an independent grant of jurisdiction over
     the blocked assets of "any agency or instrumentality" of the terrorist party for
28   the purpose of execution and attachment of a valid ATA judgment.  The
     arguments and analysis are, thus, very similar.

-22-

1    As in those FSIA cases, here Caballero is not seeking to impose personal

2    liability against Alvarez; Caballero seeks only to enforce his judgment against

3    Alvarez's blocked assets based upon the theory that Alvarez is an agency or

4    instrumentality of the FARC.  Thus, Due Process is satisfied by the underlying

5    judgment and by the implicit requirement under TRIA that the Court make a

6    finding that Alvarez is an agency or instrumentality of the judgment debtor

7    before Caballero can obtain the turnover of Alvarez's blocked assets.

8    Accordingly, the Court concludes that it has *quasi in rem* jurisdiction over

9    this action, pending a final determination of whether Alvarez is an agency or

10   instrumentality of the FARC.

11   Therefore, for the foregoing reasons, the Court **DENIES** Alvarez's

12   Jurisdiction Motion in its entirety.

13   **D.    Discovery Motions**

14   Caballero and Alvarez each filed separate, but related, motions pertaining

15   to discovery in this action.  The Court addresses them in that order.

16   **1.    Caballero's Motion to Compel**

17   Caballero seeks an order compelling Alvarez to provide a deposition in

18   person in this District.[45]  Caballero contends that absent an order compelling

19   Alvarez to appear for a deposition in this District, Caballero "would be deprived

20   of one of the strongest weapons in this Court's arsenal to punish perjury—that

21   is, the risk of arrest."[46]  Alvarez objects only to the extent that Caballero seeks to

22   depose Alvarez outside of Mexico.[47]  Because Alvarez is a designated SDNT, he

23   cannot obtain a visa to travel to the United States.[48]  Moreover, Alvarez

24

25

---

26   [45]  *See generally* Motion to Compel.

27   [46]  *Id.* at 7:17–21.
     [47]  MTC Opposition 1:11–12.

28   [48]  *See id.* at 1:12–2:3 & 3:24–4:25.

1   contends that the Federal Rules of Civil Procedure expressly allow for foreign

2   depositions.[49]

3   　　　　The Federal Rules of Civil Procedure provide as follows:

4   　　(1) *In General.*  A deposition may be taken in a foreign country:

5   　　　　　(A) under an applicable treaty or convention;

6   　　　　　(B) under a letter of request, whether or not captioned a

7   　　　　"letter rogatory";

8   　　　　　(C) on notice, before a person authorized to administer oaths

9   　　　　either by federal law or by the law in the place of examination; or

10   　　　　　(D) before a person commissioned by the court to administer

11   　　　　any necessary oath and take testimony.

12   Fed. R. Civ. P. 28(b)(1).  The Rules further provide that "[t]he parties may

13   stipulate—or the court may on motion order—that a deposition be taken by

14   telephone or other remote means."  Fed. R. Civ. P. 30(b)(4).

15   　　　　The Court does not share Caballero's concern that unless Caballero takes

16   Alvarez's deposition in person, in the Central District, Caballero "would be

17   deprived of one of the strongest weapons in this Court's arsenal to punish

18   perjury—that is, the risk of arrest."[50]  District courts routinely handle cases in

19   which depositions are taken remotely, outside of the district.  The Court is also

20   concerned that if it grants Caballero's Motion to Compel, it would create a

21   situation in which Alvarez's inevitable failure to appear in this District would

22   lead to Alvarez's loss of the agency-or-instrumentality determination by default,

23   rather than on the merits.

24   　　　　In view of those Rules, the Court concludes that Caballero may depose

25   Alvarez, in person or remotely, at an appropriate venue in Mexico.

26

27   　[49]　*See id.* at 5:1–8:22.

28   　[50]　*Id.* at 7:17-21.

1   Accordingly, the Court **GRANTS** the Motion to Compel **in part**, to the

2   extent that Caballero seeks to compel the Alvarez's deposition, and **DENIES**

3   the motion **in part**, to the extent that Caballero seeks to compel Alvarez to

4   appear in person in this District for his deposition.  The Court **DIRECTS** the

5   parties to meet and confer regarding the timing, sequence, and other logistics

6   pertaining to Alvarez's deposition.

7   **2.     Alvarez's Discovery Motion**

8   Alvarez seeks an order compelling reciprocal depositions of Caballero and

9   Caballero's witnesses.[51]  Caballero opposes that motion only to the extent that

10  Alvarez seeks to take Caballero's deposition.[52]

11  The Federal Rules of Civil Procedure provide, in pertinent part, as

12  follows:

13      Unless otherwise limited by court order, the scope of discovery is as

14      follows:  Parties may obtain discovery regarding any nonprivileged

15      matter that is relevant to any party's claim or defense and

16      proportional to the needs of the case, considering the importance of

17      the issues at stake in the action, the amount in controversy, the

18      parties' relative access to relevant information, the parties'

19      resources, the importance of the discovery in resolving the issues,

20      and whether the burden or expense of the proposed discovery

21      outweighs its likely benefit.  Information within this scope of

22      discovery need not be admissible in evidence to be discoverable.

23  Fed. R. Civ. P. 26(b)(1).  The Court is required to limit "the frequency or extent

24  of discovery" if it determines that:

25

26

27  ――――――――――
    [51]   *See generally* Discovery Motion.
28  [52]   *See* Discovery Opposition 2:19–3:27.

-25-

1    (i) the discovery sought is unreasonably cumulative or duplicative,

2    or can be obtained from some other source that is more convenient,

3    less burdensome, or less expensive;

4    (ii) the party seeking discovery has had ample opportunity to obtain

5    the information by discovery in the action; or

6    (iii) the proposed discovery is outside the scope permitted by

7    Rule 26(b)(1).

8    Fed. R. Civ. P. 26(b)(2)(C).

9    Here, in view of the Court's other rulings herein, and for the reasons set

10   forth in the subsequent section, it appears that there is no testimony that

11   Caballero could provide that would be relevant to the determination of whether

12   Alvarez is an agency or instrumentality of the FARC.  Therefore, the Court

13   finds that Caballero's testimony is not relevant to "any party's claim or

14   defense."  Fed. R. Civ. P. 26(b)(1).  Accordingly, pursuant to

15   Rule 26(b)(2)(C)(3), the Court finds that Alvarez is not entitled to take

16   Caballero's deposition.

17   For those reasons, the Court **GRANTS** the Discovery Motion **in part**, to

18   the extent that Alvarez seeks to take reciprocal depositions of Caballero's

19   witnesses regarding the agency-or-instrumentality issue, and **DENIES** the

20   Discovery Motion **in part**, to the extent that Alvarez seeks to take Caballero's

21   deposition.  The Court further **ORDERS** that Caballero shall have the right to

22   depose Alvarez's witnesses regarding the agency-or-instrumentality issue.  The

23   Court **DIRECTS** the parties to meet and confer regarding the timing, sequence,

24   and other logistics for that discovery.

25   **E.    Alvarez's TRIA Motion**

26   In view of the foregoing, after discovery is completed, the Court will

27   conduct an evidentiary hearing on the TRIA Motion.  At the hearing on the

28   pending motions, the parties renewed their respective requests for the Court to

-26-

1    decide the applicable legal standard for the agency-or-instrumentality

2    determination.  Alvarez contends that, because TRIA does not have its own

3    definition of "agency or instrumentality" and because TRIA § 201 is codified as

4    a note to 28 U.S.C. § 1610, the Court should apply the FSIA definition of

5    "agency or instrumentality," 28 U.S.C. § 1603(b), which applies to the entire

6    "chapter" including 28 U.S.C. § 1610, *see* 28 U.S.C. § 1603 ("For purposes of

7    this chapter . . .").[53]  In contrast, Caballero urges this Court to apply the so-

8    called "Assistance Standard" adopted by the Eleventh Circuit in *Stansell II*,

9    which Caballero contends is supported by the plain text of TRIA § 201(a).  The

10   Court regards those requests as motions *in limine* pertaining to the upcoming

11   evidentiary hearing and, accordingly, provides its guidance below.

12            Alvarez correctly observes that TRIA § 201(a) is codified as a note to 28

13   U.S.C. § 1610 and that the FSIA definition of "agency or instrumentality"

14   applies to 28 U.S.C. § 1610.  In a typical case involving a question of statutory

15   interpretation, the Court's analysis would end there.  However, "[s]tatutory

16   construction is a 'holistic endeavor.'"  *Koons Buick Pontiac GMC, Inc. v. Nigh*,

17   543 U.S. 50, 60 (2004) (quoting *United Sav. Ass'n v. Timbers of Inwood Forest

18   Associates, Ltd.*, 484 U.S. 365, 371 (1988)).  "A provision that may seem

19   ambiguous in isolation is often clarified by the remainder of the statutory

20   scheme—because the same terminology is used elsewhere in a context that

21   makes its meaning clear, or because only one of the permissible meanings

22   produces a substantive effect that is compatible with the rest of the law."  *United

23   Sav. Ass'n*, 484 U.S. at 371.  Here, importing the FSIA definition into TRIA

24   § 201 is inconsistent with the plain text of both statutes, and such an importation

25   would produce an anomalous result that is incompatible with the plain language

26   of the statute.

27

28   _____

     [53]      TRIA Motion 13:3–12.

1    The ambiguity arises in the first instance from Congress's decision to
2    codify TRIA § 201(a) as a "note" to 28 U.S.C. § 1610 instead of an amendment
3    to that section. In other words, TRIA § 201(a) is an independent enactment
4    separate from the statutory text of 28 U.S.C. § 1610. In making that legislative
5    decision, Congress appears to have recognized that although the two statutes are
6    related in a general sense (*i.e.*, both statutes have a similar purpose), they are
7    directed at different subjects. The plain text of the respective statutes makes
8    that distinction crystal clear.

9    FSIA concerns the activities of "foreign states" (*i.e.*, sovereign countries,
10   *see Stansell II*, 771 F.3d at 732) and the agencies or instrumentalities of those
11   foreign states. *See* 28 U.S.C. § 1603(a). Regarding the latter, FSIA provides, in
12   relevant part, as follows:

13       An "agency or instrumentality **of a foreign state**" means any
14       entity—

15           (1) which is a separate legal person, corporate or otherwise,
16           and

17           (2) which is an organ of a foreign state or political subdivision
18           thereof, or a majority of whose shares or other ownership
19           interest is owned by a foreign state or political subdivision
20           thereof, and

21           (3) which is neither a citizen of a State of the United States as
22           defined in section 1332(c) and (e) of this title, nor created
23           under the laws of any third country.

24   28 U.S.C. § 1603(b) (emphasis added). In contrast, the subject of TRIA
25   § 201(a) is a "terrorist party," and TRIA's definition of that term
26   unambiguously includes both state and non-state actors:

27       The term "terrorist party" means a terrorist, a terrorist organization
28       (as defined in section 212(a)(3)(B)(vi) of the Immigration and

1   Nationality Act (8 U.S.C. [§] 1182(a)(3)(B)(vi))), or a foreign state

2   designated as a state sponsor of terrorism under section 6(j) of the

3   Export Administration Act of 1979 (50 U.S.C. App. [§] 2405(j)) or

4   section 620A of the Foreign Assistance Act of 1961 (22 U.S.C.

5   [§] 2371).

6   TRIA § 201(d)(4).

7       Alvarez contends that the distinction between "foreign state" in FSIA

8   and "terrorist party" in TRIA § 201(a) is trivial and, therefore, that this Court

9   should simply substitute "foreign state" with "terrorist party."[54] However,

10  "our constitutional structure does not permit this Court to 'rewrite the statute

11  that Congress has enacted.'" *Puerto Rico v. Franklin California Tax-Free Tr.*, 136

12  S. Ct. 1938, 1949 (2016) (quoting *Dodd v. United States*, 545 U.S. 353, 359

13  (2005)).  Furthermore, as the Eleventh Circuit explained in *Stansell II*, the

14  statutory construction that Alvarez proposes "would create an absurd result and

15  leave TRIA § 201 nearly meaningless." *Stansell II*, 771 F.3d at 731. "[A]pplying

16  FSIA's definition of agencies or instrumentalities to TRIA would leave only

17  terrorist states as potential sponsors of agencies or instrumentalities under

18  TRIA § 201, eviscerating TRIA's effectiveness vis-à-vis non-state terrorist

19  organizations." *Id.*  Such an erroneous result would not comport with the plain

20  text of the statute which unambiguously makes nonstate judgment debtors

21  subject to TRIA execution.  *See id.*

22      The so-called "assistance standard," on the other hand, utilizes the plain

23  and ordinary meaning of the terms "agency" and "instrumentality." *See*

24  *Stansell II*, 771 F.3d at 732; *Kirschenbaum v. 650 Fifth Ave. and Related Properties*,

25  830 F.3d 107, 135 (2d Cir. 2016) (for the purposes of TRIA, construing the

26  terms "agency or instrumentality" according to their ordinary meaning),

27

28  ---
    [54]   TRIA Motion 13:13–20.

1  *abrogated on other grounds by Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816

2  (2018).  As the Second Circuit explained in *Kirschenbaum*:

3        "Instrumentality" is a means through which a function of

4        another entity is accomplished, analogous to a branch of a governing

5        body.  *See Black's Law Dictionary* (10th ed. 2014) (defining

6        "instrumentality" as "a means or [a]gency through which a function

7        of another entity is accomplished, such as a branch of a governing

8        body"); *Webster's Third New International Dictionary* 1172 (1993)

9        (defining instrumentality as "something that serves as an

10       intermediary or agent through which one or more functions of a

11       controlling force are carried out: a part, organ, or subsidiary branch

12       esp. of a governing body"); *OED Online, Oxford University Press*,

13       June 2016 (defining instrumentality as "[t]hat which serves or is

14       employed for some purpose or end; a means, an agency"); *Merriam–*

15       *Webster Collegiate Dictionary* 22 (10th ed. 1993) (defining

16       instrumentality as a "means" or an "agency").

17       "Agency" is an entity acting on another's behalf or providing

18       a particular service on another's behalf.  *See OED Online, Oxford*

19       *University Press*, June 2016 (defining agency as "[a] person or

20       organization acting on behalf of another, or providing a particular

21       service"); *Webster's Third New International Dictionary* 1172 (1993)

22       (defining agency as "a person or thing through which power is

23       exerted or an end is achieved"); *Merriam–Webster Collegiate*

24       *Dictionary* 22 (10th ed. 1993) (defining agency as "a person or thing

25       through which power is exerted or achieved").  As ordinarily

26       understood, an entity that is an "agency" or an "instrumentality" is

27       distinct from, even if a part of, the entity for which the agency or

28       instrumentality is acting.

1     *Kirschenbaum*, 830 F.3d at 135.

2         Accordingly, this Court concludes that to demonstrate that Alvarez is an

3 "agency or instrumentality" of the FARC under TRIA § 201(a), Caballero must

4 show that Alvarez: "(1) was a means through which a material function of the

5 terrorist party is accomplished, (2) provided material services to, on behalf of, or

6 in support of the terrorist party, *or* (3) was owned, controlled, or directed by the

7 terrorist party." *Id.* (emphasis in original) (citing *Stansell II*, 771 F.3d at 723); *see*

8 *also Stansell v. Revolutionary Armed Forces of Colombia (FARC)*, 2013 WL

9 12156399, at *2 (M.D. Fla. Apr. 25, 2013), *aff'd sub nom. Stansell II*, 771 F.3d

10 713.

## III.  CONCLUSION

12         For the foregoing reasons, the Court hereby **ORDERS** as follows:

13       1.     Alvarez's Motion Re Blocked Assets is **DENIED**.

14       2.     Alvarez's Motion Re Judgment is **DENIED**.

15       3.     Alvarez's Jurisdiction Motion is **DENIED**.

16       4.     Alvarez's Discovery Motion is **GRANTED in part**, to the extent

17 that Alvarez seeks to take the depositions of Caballero's witnesses regarding the

18 agency-or-instrumentality issue, and **DENIED in part**, to the extent that

19 Alvarez seeks to take Caballero's deposition.  The Court further **ORDERS** that

20 Caballero shall have the right to depose Alvarez's witnesses regarding the

21 agency-or-instrumentality issue.

22       5.     Caballero's Motion to Compel is **GRANTED in part**, to the extent

23 that Caballero seeks to compel the Alvarez's deposition, and **DENIED in part**,

24 to the extent that Caballero seeks to compel Alvarez to appear for deposition in

25 person in this District.

26       6.     The Court will conduct an evidentiary hearing on the TRIA

27 Motion.

28

7.      The parties are **DIRECTED** to confer regarding the timing, sequence, and logistics of discovery; the schedule for further briefing, if any, on the TRIA Motion; and the schedule for the evidentiary hearing on the TRIA Motion.  The parties are **DIRECTED** to file a Joint Status Report no later than 12:00 noon on January 14, 2022, regarding those issues

8.      A video Status Conference is **SET** for 11:00 a.m. on January 21, 2022.

**IT IS SO ORDERED.**

Dated: December 29, 2021

_____
John W. Holcomb
UNITED STATES DISTRICT JUDGE