# EXHIBIT D

### Interested Parties' Index of Authorities

- *Dude v. Cong. Plaza, LLC*, 17-80522-CIV, 2019 WL 3937974 (S.D. Fla. Aug. 20, 2019)

- *Synopsis* of Responses to the Country Profile Questionnaire on the Taking of Evidence by Video-Link Under The Hague Convention of 18 March 1970 on The Taking of Evidence Abroad In Civil Or Commercial Matters (Evidence Convention), July 2018, HAGUE CONFERENCE ON PRIVATE INTERNATIONAL LAW.

2019 WL 3937974
Only the Westlaw citation is currently available.
United States District Court, S.D. Florida.

Dietmar DUDE, Plaintiff/Counterclaim-Defendant,

v.

CONGRESS PLAZA, LLC, et al.,
Defendants/Counterclaim-Plaintiffs.
Congress Plaza, LLC, et al., Third-Party Plaintiffs,

v.

Congress Management, LLC,
et al., Third-Party Defendants.

Civil No. 17-80522-CIV-Marra/Matthewman
|
Signed 08/20/2019

## Attorneys and Law Firms

Aldo Beltrano, Aldo Beltrano PA, Jupiter, FL, Monique Roberts, Albany, NY, for Plaintiff/Counterclaim-Defendant.

Aldo Beltrano, Aldo Beltrano PA, Jupiter, FL, for Third-Party Defendant Harald Dude.

Barry G. Roderman, Barry G. Roderman & Associates, P.A., Fort Lauderdale, FL, for Third-party Defendants Congress Management, LLC 1450 Enclave Circle West Palm Beach, FL 33441, Congress Plaza, LLC, Congress 1010.

Harald Dude, West Palm Beach, FL, pro se.

Barry G. Roderman, Barry G. Roderman & Associates, P.A., Fort Lauderdale, FL, for Defendants/Counterclaim-Plaintiffs/Third-Party Plaintiffs Congress 1010 c/o Barry G. Roderman & Associates PA 633 SE Third Avenue Suite 4R Fort Lauderdale, FL 33301-2296, Congress Plaza, LLC c/o Barry G. Roderman & Associates PA 633 SE Third Avenue Suite 4R Fort Lauderdale, FL 33301-2296, Congress 1010, Thomas R. Farese 126 NE 4th Avenue Delray Beach, FL 33483 561-452-0022.

David Michael Goldstein, Law Offices of David M. Goldstein PA, North Miami, FL, Barry G. Roderman, Barry G. Roderman & Associates, P.A., Fort Lauderdale, FL, for Defendants/Counterclaim-Plaintiffs/Third-Party Plaintiffs Congress 1010, LLC, Congress Plaza, LLC, David M. Goldstein, P.A., David M. Goldstein, Barry G. Roderman, Suzanne Farese.

## ORDER DENYING COUNTERCLAIM-PLAINTIFF CONGRESS PLAZA'S AMENDED MOTION TO COMPEL DEPOSITION [DE 318] AND GRANTING COUNTERCLAIM-DEFENDANT DIETMAR DUDE'S MOTION FOR A PROTECTIVE ORDER [DE 320]

WILLIAM MATTHEWMAN, United States Magistrate Judge

**\*1 THIS CAUSE** is before the Court upon Counter-Claim Plaintiff, Congress Plaza, LLC's ("Congress Plaza") Motion to Compel Deposition [DE 318] and Counter-Claim Defendant, Dietmar Dude's ("Dude") Motion for a Protective Order [DE 320]. These matters were referred to the undersigned by United States District Judge Kenneth A. Marra. *See* DE 21. No timely responses were filed. The motions are now ripe for review.

The issue here is whether Dude, the Counterclaim-Defendant in this case and a citizen of Germany, should be required to travel to the Southern District of Florida for his deposition or whether the deposition should have been taken through an alternative method, such as web conferencing.

## I. Motions

The Court has carefully reviewed the two opposing motions. In its motion to compel, Congress Plaza argues that the logistics of conducting Dude's deposition via an alternative method (such as video conferencing) would actually prevent the deposition altogether. [DE 318, p. 2]. Congress Plaza asserts that it would have to obtain a court reporter from the American Embassy or Consulate to travel to the deposition to administer the oath, would be required to have all of the exhibits translated into German and sent to the court reporter, and would have to obtain a certified translator in German to travel to the deposition site. *Id.* at pp. 2-3. Congress Plaza maintains that Dude's deposition is important because Congress Plaza believes that "the underlying debt was never transferred to Dietmar Dude", and Dude "rendered a letter, that has been made part of the record in this matter, to the extent that he knows nothing about the underlying facts, and was essentially used to prosecute this matter." *Id.* at p. 3. Finally, Congress Plaza seeks additional time to take Dude's deposition as the discovery cutoff has passed. *Id.*

Case 1:18-cv-25337-KMM   Document 226-2   Entered on FLSD Docket 03/02/2023   Page 4 of 93

**Dude v. Congress Plaza, LLC, Not Reported in Fed. Supp. (2019)**

Dude, on the other hand, asserts in his motion for protective order that he is 77 years old and resides in Hamburg, Germany. [DE 320, p. 3]. He maintains that "a lengthy oversees [sic] flight could jeopardize his health because he has a heart condition." *Id.* Dude further argues that traveling to South Florida for his deposition would be unduly burdensome "because the permitted discovery is of a very limited scope." *Id.* Dude represents that his deposition was previously scheduled for August 6, 2019, in Boca Raton, Florida, and that he was to be deposed using electronic means so that he did not need to travel to Florida. *Id.* at 2. However, Congress Plaza later changed its mind and decided that it would not depose Dude "electronically due to logistical challenges." *Id.* Dude requests that this Court deny Congress Plaza's request for an enlargement of time to conduct discovery. *Id.* at p. 7.

## II. **Relevant Case Law**

"While the party noticing a deposition usually has the right to choose the location, there is a rebuttable presumption that, absent special circumstances, the deposition of a defendant will be held where the defendant resides." *Cavalieri v. Avior Airlines C.A.*, No. 17-CV-22010, 2018 WL 4193690, at *1 (S.D. Fla. Apr. 25, 2018) (citing *Securities and Exchange Commission v. Aly*, 320 F.R.D. 116 (S.D.N.Y. 2017)). "However, where parties cannot agree on the location of a deposition, 'courts retain substantial discretion to determine the site of a deposition.' " *Id.* "Factors guiding the Court's discretion include cost, convenience, and litigation efficiency of the designated location." *Id.*

**\*2** "[M]odern discovery practice requires a plaintiff to conduct a deposition of a defendant, if possible, at the defendant's place of residence or business." *Partecipazioni Bulgari, S.p.A. v. Meige*, No. 86-2516-CIV-Ryskamp, 1988 WL 113346, at *1 (S.D. Fla. May 23, 1988); *see also Siegel v. Sw. Airlines, Co.*, No. 12-61845-CIV, 2013 WL 11971264, at *1 (S.D. Fla. Sept. 12, 2013). "Because the Plaintiff has greater influence over the choice of forum, courts are more willing to protect defendants from having to come to the forum for the taking of his or her deposition than they are in the case of plaintiffs.' " *DeepGulf, Inc. v. Moszkowski*, 330 F.R.D. 600, 607 (N.D. Fla. 2019) (quoting *O'Sullivan v. Rivera*, 229 F.R.D. 187, 189 (D. N.M. 2004)). "[B]ecause a non-resident defendant ordinarily has no say in selecting a forum, an individual defendant's preference for a situs for

his or her deposition near his or her place of residence— as opposed to the judicial district in which the action is being litigated—is typically respected." *In re Outsidewall Tire Litig.*, 267 F.R.D. 466, 471 (E.D. Va. 2010) "And this presumption applies with no less force when the defendant is domiciled in another country." *Id.* at 471. Because a "foreign defendant may be more inconvenienced by having to travel to the United States than a defendant who merely resides in another state or in another judicial district, the presumption that the deposition should occur at a foreign defendant's place of residence may be even stronger." *Id.*

In *Siegel v. Sw. Airlines, Co.*, No. 12-61845-CIV, 2013 WL 11971264, at *1 (S.D. Fla. Sept. 12, 2013), a relatively recent case from this District, the Court noted that there is a "strong presumption that a deponent who did not choose the forum be deposed in the vicinity where he resides or works." The court then found that the plaintiff has not provided a sufficient basis to overcome this presumption. *Id.* at *2. Finally, the court noted that the parties could agree to conduct the deposition either telephonically or via video conference. *Id.*

Federal Rule of Civil Procedure 26(c) provides that a court "for good cause shown ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense...." Fed. R. Civ. P. 26. "While Rule 26(c) articulates a single standard for ruling on a protective order motion, that of 'good cause,' the federal courts have superimposed a somewhat more demanding balancing of interests approach under the Rule." *Farnsworth v. Center for Disease Control*, 758 F.2d 1545, 1547 (11th Cir. 1985) (citations omitted). In evaluating whether a party has satisfied the burden of "good cause," "a court should balance the non-moving party's interest in obtaining discovery and preparing for trial against the moving party's proffer of harm that would result from [discovery]." *Barrata v. Homeland Housewares, LLC*, 242 F.R.D. 641, 642 (S.D. Fla. 2007) (citing *Farnsworth*, 758 F.2d at 1547). "Generally, a party moving for a protective order must make a specific demonstration of facts in support of the request, as well as of the harm that will result without a protective order." *Fargeon v. Am. Nat'l Prop. & Cas. Co.*, No. 08-60037-CIV, 2008 WL 11332027, at *4 (S.D. Fla. July 8, 2008) (citing *Dunford v. Rolly Marine Service, Co.*, 233 F.R.D. 635, 636 (S.D. Fla. 2005)).

### III. Analysis

#### A. The Procedural Posture of Discovery in This Case Weighs Against Compelling the In-Person Deposition of Dietmar Dude

The procedural posture of this case is quite unique. On March 18, 2019, the Honorable Kenneth A. Marra, United States District Judge, entered an Order Permitting Limited Discovery [DE 302]. That Order delineated four specific topics for the limited discovery: (1) whether or not Dude had a duty to disclose his assignment to the Court in this case; (2) if Dude had a duty to disclose the assignment, whether the secrecy of the assignment by Dude manifests fraud on the Court; (3) why the assignment was not disclosed to the Court; and (4) whether the assignment was a sham. *Id.* at p. 4. On June 5, 2019, Judge Marra granted Congress Plaza and Congress 1010's Motion for Enlargement of Time to Complete Discovery and gave them an additional 60 days to complete the limited discovery the Court had previously allowed. *See* DE 309. Thus, the time for the limited discovery ended on August 5, 2019. Therefore, in a case in which limited additional discovery was permitted in March 2019, Congress Plaza waited until the very last minute to conduct depositions. This constitutes dilatory behavior on the part of Congress Plaza, which conduct factors into the Court's decision in this case.

**\*3** Additionally, according to the motion for protective order, Congress Plaza deposed Harald Dude and Aldo Beltrano in early August 2019. [DE 320, p. 2]. It seems to the Court, based on the lengthy history of this case and the filings on the docket, that Harald Dude and Aldo Beltrano are the best sources for the discovery permitted by Judge Marra's March 18, 2019 Order.

#### B. The Court's Prior Rulings Vis-à-vis the Pending Motion

The Court notes that, in the past, when Dude was the Plaintiff in this case, and pursuant to the case law about the depositions of plaintiffs, the Court required Dude to appear in this District for his deposition and penalized him when he refused to travel to this District. *See* DEs 158, 210, 241, 242, 259. In fact, when Dude was the plaintiff in this case, his claims were dismissed by the Court due to his failure to appear in this District for a deposition. [DE 259]. However, the law for defendants is different than for plaintiffs, as specified above.

Dude is now a defendant, not a plaintiff. This case is somewhat unusual because Dude did initially choose to litigate in this forum when he filed the action. However, now that his claims have been dismissed, he is solely a defendant. Moreover, the Counter-Claim Plaintiffs affirmatively elected to maintain their counterclaim [DE 258] and decided to file an Amended Counterclaim [DE 271] after Dude's case was dismissed. There is no case law specific to these factual circumstances where a party who was once a plaintiff, but is now solely a defendant, claims he is unable to come to this jurisdiction for his deposition. Thus, the Court must exercise its discretion based on all relevant factors, including cost, convenience, and litigation efficiency, and balance the interests under Rule 26(c).

#### C. The Balancing of Factors and Determination of Good Cause

Upon careful review of the relevant case law and the motions at issue, and balancing all relevant factors and equities, the Court finds that Counter-Claim Defendant Dietmar Dude has shown good cause for a protective order. He resides in Germany. He is not seeking to bar his deposition completely and was willing to appear for a previously scheduled deposition by remote means. Given that Dude is currently a defendant (and not a plaintiff) in this case, given that he resides in Germany, given the costs of travel from Germany to Florida and Dude's claimed health problems, and given that the scope of discovery is currently very limited, it would be unduly burdensome to require Dude to travel to the Southern District of Florida for his deposition in a case where he is solely a defendant.

The Court further notes that Congress Plaza's rationale underlying its motion to compel is flawed. The costs and burden involved in obtaining a particular type of court reporter, having exhibits translated, and obtaining a translator are substantially less than requiring a 77-year-old defendant who is a citizen of Germany to travel to Florida for a short, limited deposition. Counsel for Congress Plaza also could have traveled to Germany but opted not to. Moreover, Congress Plaza will need to have documents translated and obtain a translator and court reporter whether the deposition occurs in this District or in Germany.

#### D. Congress Plaza's Request for an Extension of the Discovery Period Contained Within Its Motion to Compel Deposition

**\*4** Finally, the Court notes that Congress Plaza has inserted a request to extend the now-passed discovery cutoff date within its motion to compel. [DE 318, pp. 3-4]. The undersigned has considered Congress Plaza's request for an extension of the cutoff for limited discovery and finds that it is due to be denied. Congress Plaza had Dude's deposition scheduled for early August and decided unilaterally to cancel it and file a motion to compel rather than conduct the scheduled deposition by electronic means. The Court finds that Congress Plaza should have proceeded with the scheduled deposition of Dude and, if it was unsatisfactory, should have filed an appropriate and timely motion. However, Congress Plaza instead chose to unilaterally cancel Dude's deposition. Under these facts, an extension of the discovery cutoff seems inappropriate. Congress Plaza has failed to establish good cause for its required extension of the discovery cutoff. Moreover, Congress Plaza had failed to file a separate motion on its requested extension and instead improperly buried its request within its motion to compel.

## IV. <u>Conclusion</u>

Based on the foregoing, it is hereby **ORDERED** as follows:

1. Counter-Claim Plaintiff, Congress Plaza, LLC's Motion to Compel Deposition [DE 318] is **DENIED**.

2. Congress Plaza's request for an additional extension of the discovery period is DENIED. This denial is without prejudice to Congress Plaza's ability to present such request to the Honorable Kenneth A. Marra, United States District Judge, for his consideration. In this regard, the undersigned notes that Judge Marra has scheduled a hearing in this case on August 28, 2019, at 1:30 p.m., where counsel for all parties must appear in person at said hearing.

3. Counter-Claim Defendant, Dietmar Dude's Motion for a Protective Order [DE 320] is **GRANTED**. Dietmar Dude is not required to travel to the Southern District of Florida to sit for a deposition in his capacity as a Counter-Claim Defendant in this case.

**DONE and ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 20<u>th</u> day of August, 2019.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 3937974

---

**End of Document** © 2023 Thomson Reuters. No claim to original U.S. Government Works.

EVIDENCE / PREUVES

July / juillet 2018

**(E/F)**



### SYNOPSIS OF RESPONSES TO THE COUNTRY PROFILE QUESTIONNAIRE
### ON THE TAKING OF EVIDENCE BY VIDEO-LINK UNDER THE
### *HAGUE CONVENTION OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE ABROAD*
### *IN CIVIL OR COMMERCIAL MATTERS*
### (EVIDENCE CONVENTION)

*drawn up by the Permanent Bureau*

\* \* \*

### APERÇU DES RÉPONSES AU QUESTIONNAIRE SUR LE PROFIL D'ÉTAT
### POUR L'OBTENTION DE PREUVES PAR LIAISON VIDÉO EN VERTU DE LA
### *CONVENTION DE LA HAYE DU 18 MARS 1970 SUR L'OBTENTION DES PREUVES*
### *À L'ÉTRANGER EN MATIÉRE CVILE OU COMMERCIALE*
### (CONVENTION PREUVES)

*établi par le Bureau Permanent*

Churchillplein 6b, 2517 JW The Hague - La Haye | The Netherlands - Pays-Bas
☎ +31 (70) 363 3303 🖨 +31 (70) 360 4867 | secretariat@hcch.net | www.hcch.net

Regional Office for Asia and the Pacific (ROAP) - Bureau régional pour l'Asie et le Pacifique (BRAP)
S.A.R. of Hong Kong - R.A.S. de Hong Kong | People's Republic of China – République populaire de Chine | ☎ +852 2858 9912
Regional Office for Latin America and the Caribbean (ROLAC) - Bureau régional pour l'Amérique latine et les Caraïbes (BRALC)
Buenos Aires | Argentina – Argentine | ☎ +54 (11) 4371 1809

| Legal Basis |
|---|
| **a) Does your State, in the application of Article 27 (*i.e.* internal law or practice), allow for a foreign Court to directly take evidence by video-link?** |

| <u>**Yes**</u>. Please specify: | [16] |
|---|---|
| <u>China (Honk Kong SAR):</u> Section 76(2) (a) of the Evidence Ordinance (Cap.8) provides for the examination of witnesses by any means, including by way of a live television link.<br><br><u>Czech Republic:</u> If the judicial authority of the requesting State requests the use of video-links, the Czech Central Authority will request the Czech judicial authority to consider such a request.<br><br><u>Estonia:</u> Under certain circumstances. § 15 (4) of Code of Civil Procedure: "Unless otherwise provided by law or an international agreement, an Estonian court provides procedural assistance in performance of a procedural act at the request of a foreign court if, pursuant to Estonian law, the requested procedural act belongs to the jurisdiction of the Estonian court and is not prohibited by law. A procedural act may also be performed or a document may be issued pursuant to the law of a foreign state if this is necessary for the conducting of proceedings in the foreign state and the interests of the participants in the proceeding are not damaged thereby". The law can be found in English: https://www.riigiteataja.ee/en/eli/510012017004/consolide.<br><br><u>Israel:</u> In addition to directly taking evidence, Israel allows the foreign country to send a representative that can take the evidence.<br><br><u>France:</u> Cette possibilité est déjà offerte aux tribunaux d'autres Etats membre de l'Union européenne en application de l'article 17 du règlement CE n°1206/2001 sur l'obtention des preuves en matière civile et commerciale. Par ailleurs, le décret n° 2017-892 du 6 mai 2017 récemment adopté portant diverses mesures de modernisation et de simplification de la procédure civile permet désormais, pour les demandes transmises en application du | China (Hong Kong SAR), Cyprus, Czech Republic, Estonia, Finland, France, Israel, Latvia, Malta, Portugal, Romania, Singapore, Slovenia, Sweden, United States of America and United Kingdom (England and Wales) |

chapitre I de la Convention, et uniquement en ce qu'elles sollicitent l'audition de témoins, à l'autorité judiciaire requérante de solliciter auprès de l'autorité centrale française l'autorisation d'y procéder directement, notamment par voie de vidéoconférence.

Romania: The law applicable in this case is Law No. 189/2003 regarding the international legal assistance in civil and commercial matters, namely art. 25, paragraphs 1 and 3 and art. 35, paragraph 3.

The requested Romanian judicial authority requested may consider, upon request submitted by the requesting judicial authority, to use a special procedure, provided that such procedure does not contravene the Romanian law. The Romanian court will inform the requesting judicial authority on the date and venue where the letter rogatory is to be made and it may allow, upon request, participation thereto of foreign magistrates. Based on art. 3, paragraph 3 of the Council's Regulations (CE) No. 1206/2001 of May 28th, 2001, the Ministry of Justice is the authority that has to make a decision as regards the requests submitted based on art. 17 of the aforementioned regulations.

The videoconference should take place in the presence of the Judge from the Court within whose territorial range of competence the evidence is to be taken, assisted, as the case may be, by an interpreter. The said judge must verify the identity of the person heard and has the obligation to see that the fundamental principles of the Romanian law are duly observed.

Slovenia: Article 114a of the Civil Procedure Code (hereinafter CPC)

Sweden: Under certain circumstances in accordance with national law and international agreements. However, not within the application of the 1970 Convention.

United States of America: It is permissible for a voluntary witness located in the United States to directly provide evidence by video-link to a foreign court. See 28 U.S.C. § 1782(b).

| | |
|---|---|
| Although U.S. procedure allows an interested party to file a 28 U.S.C. § 1782(a) motion to request that a U.S. district court issue an order to compel a witness to provide evidence in aid of a foreign proceeding, it is unlikely a U.S. court will compel a witness to directly provide evidence by video-link to a foreign court. Neither of these options involve the United States Central Authority.<br><br>United Kingdom: Evidence (Proceedings in Other Jurisdictions) Act 1975; Civil Procedure Rule 32.3. | |
| **No**. Please specify:<br><br>China (Macao SAR): Under the Macao SAR law, only indirect taking of evidence is allowed. Therefore, only lawyers and magistrates of the Macao SAR can raise questions against witnesses (Article 539 of the Macao Civil Procedure Code (CPC), Law No. 10/1999 and Decree-law No. 42/95/M).<br><br>Croatia: If it is not agreed otherwise by an international agreement, courts shall proceed on requests for legal assistance from foreign courts only if they are delivered through diplomatic channels and if the request and enclosures are written in one of the languages in official use in the court or if an authorized translation in that language is enclosed (Article 183.of the Civile Procedure Act ("Official Gazzete" 53/91, 91/92, 58/93, 112/99, 88/01, 117/03, 88/05, 02/07, 84/08, 123/08, 57/11, 148/11, 25/13 and 89/14; further in the text: CPA).<br><br>Germany: Germany does not allow foreign courts to directly take evidence in Germany, even by video-link.<br><br>Greece: All procedures must pass through the control of the relevant court.<br><br>Hungary: Direct taking of evidence is only allowed on the basis of EU law or international agreement.<br><br>Latvia: Not Applicable Art.27. | [15]<br><br>Belarus, Brazil, China (Macao SAR), Croatia, Germany, Greece, Hungary, Korea (Republic of), Latvia, Lithuania, Mexico, Poland, South Africa, Switzerland and Venezuela |

| | |
|---|---|
| <u>Lithuania:</u> Lithuania has not made a declaration in favour of application of Article 27. There is not that much practice on direct taking of evidence by video-link under the Convention, but in accordance with analogues EU instruments on taking of evidence in civil cases, foreign courts' request for direct taking of evidence shall be accepted by the Ministry of Justice, which usually does so by setting the following condition, *i.e.* Ministry usually assigns the competent national court to take part in the performance of the direct taking of evidence by telephone/videoconference in a relevant case.<br><br><u>South Africa:</u> Process must be through the Central Authority.<br><br><u>Switzerland:</u> Soumis à autorisation.<br><br><u>Venezuela:</u> Our State only allows indirect intervention of evidence. | |

*Comments*

<u>Australia:</u> This depends on each Australian State and Territory:

- <u>NSW:</u> Under NSW law, a foreign court is not entitled to directly take evidence from a witness located in NSW by video-link. However, NSW law does not prevent a witness, who is located in NSW, from voluntarily giving evidence from NSW by video-link in proceedings in a foreign court. Such request is ordinarily arranged privately between the parties outside of the Convention, and NSW courts have no role to play in the giving of such evidence (except on a case by case basis, lending the use of its AVL IT facilities, if requested to do so by a foreign court, in the interests of judicial comity). That is, in the above circumstances, the law of NSW does not govern the giving of that evidence.
- <u>WA:</u> Yes. For the purposes of proceedings not relating to the commission of an offence or an alleged offence, a person nominated by a requesting court or tribunal or, if no such person is nominated, the Attorney General, may make an application to the Supreme - - - Court of Western Australia under section 116 of the *Evidence Act 1906* (WA) (Act) for an order for evidence to be obtained in Western Australia. The application must be made pursuant to a request issued by or on behalf of a foreign court or tribunal, and the evidence to which the application relates must be obtained for the purpose of proceedings either instituted before the requesting court or whose institution is contemplated.
  - Upon such an application, the Court then has the power make an order to obtain evidence in Western Australia as may appear to the Court to be appropriate for the purpose of giving effect to the request in pursuance of which the application was made: subsection 117(1) of the Act (See sections 115-118A of the Act and Order 39 of the Rules of the Supreme Court 1971 (WA) (Rules).
  - Further, a court or tribunal of a participating jurisdiction that is authorised by legislation of that jurisdiction to direct that evidence be taken by video-link may, for the purposes of a proceeding in or before it, take evidence from a person in Western Australia under section 123 of the Act. However, unless the jurisdiction is prescribed to be a participating jurisdiction, this is confined to the courts

or tribunals of the States or Territories comprising the Commonwealth of Australia. At the time of writing, there were no jurisdictions prescribed for this purpose (See sections 120-130 of the Act.).

- <u>QLD:</u> There is no legislative basis for a Foreign Court to take evidence in Queensland. The evidence must be taken by Queensland Courts in legal proceedings in Queensland commenced for the purposes of giving effect to any foreign evidence request.
- <u>SA:</u> Section 59F of the *Evidence Act 1929 (SA)* permits taking of foreign evidence. SA was not aware of any agreements with other Contracting States that would impede taking evidence by video-link.
- <u>VIC:</u> Taking of video-link evidence is subject to a Court order. Where video-link has been expressly requested, a judge will need to make an order for evidence to be taken via video-link. The party requesting the video-link on behalf of the Requesting State/Authority Court would, through the Requested State, be responsible for organising a video-link if required. A judge will need to approve the video-link and Court Registry will require an order from a judge to proceed with any video-link.

<u>Bulgaria:</u> There is not explicit rule in the national legislation arranging the possibility for a foreign Court to directly take evidence by video-link.

<u>Croatia:</u> As a matter of fact, a requesting foreign Court must, as a rule, address a request to the requested court in which it will propose which person to examine and to which circumstances.

<u>Mexico:</u> Mexico has a federal system of 32 states, which don't allow a foreign court to take evidence (statements) directly through the use of electronic media, nonetheless the Federal Civil Procedure Code does consider the use of videoconferences to take evidence, as well as Mexico´s city and the State of Mexico.

<u>Slovenia:</u> Article 114a of the CPC stipulates that the court may allow videoconference if the parties agree.

<u>Switzerland:</u> Dans le cadre de la CLaH70, deux cas de figure peuvent être envisagés pour la participation du juge étranger. 1) En théorie, on peut imaginer une participation des autorités étrangères à une audition des parties et/ou de tiers effectuée par un juge suisse (art. 8 CLaH70 ; soumise à autorisation). Cette possibilité n'est cependant pas envisageable en pratique. 2) L'autorisation d'une vidéoconférence dans le cadre du Chapitre II de la ClaH70 avec la participation du juge étranger est soumise aux mêmes conditions que les cas classiques d'autorisation. En dehors du cadre de la CLaH70, l'audition par vidéoconférence n'est pas possible, sauf cas très exceptionnels. Voir Lignes directrices de l'OFJ.

https://www.rhf.admin.ch/dam/data/rhf/zivilrecht/wegleitungen/wegleitungzivilsachen-f.pdf

<u>Venezuela:</u> In Venezuelan legislation there are no express prohibitions for foreign courts to obtain evidence by videoconference. In our judicial system, operates the principle of freedom of evidence, unless they are expressly prohibited. In the case of the presentation of evidence through videoconferences, both jurisprudence and doctrine, have pointed out its legality.

Article 857 of the Venezuelan Code of Civil Procedure establishes that the examination of witnesses, examinations, oaths, interrogations, summonses, notifications, and other acts of mere instruction to be carried out in the country shall be processed by the national courts, without are required by Letters Rogatory or diplomatic channel. The latter case is covered by Article 27 of the Convention.

### Plaintiff's Index of Authorities

1. United States State Department Publication on Venezuela Judicial Assistance Information

2. County Profile for Venezuela – Taking Evidence by Video Link under the Hague Convention

3. Hague Convention

4. Status Table for Hague Convention

5. Pending Motion to Strike Fugitive Raul Gorrin's Denials Relating to the Criminal Charges Pending Against Him and to Bar Raul Gorrin from Denying Such Allegations in this Civil Matter While he is a Fugitive (ECF No. 222) (raising the fugitive disentitlement doctrine).

6. United States v. $343,726.60 in United States Currency, 27 1 Fed. Appx. 972, 973 (11th Cir. 2008) (affirming dismissal of fugitive's claim to property pursuant to fugitive disentitlement doctrine and because the fugitive failed to appear for deposition in the United States as ordered by the Court).

7. United States v. Kokko, No. 06-CR-20065-Lenard, 2007 U.S. Dist. LEXIS 54885 at* 18 (S.D. Fla. July 30, 2007) (denying request of claimant that deposition be taken outside of the United States and noting government's objection to foreign location on grounds that included obtaining permission of the foreign government to take the deposition in that country).

8. United States v. One Parcel of Real Estate, 121 F.R.D. 439, 440-41 (S.D. Fla. 1988)(requiring directors of claimant corporations to appear for deposition in Miami).

9. Doe v. Successfulmatch.com, No. 13-cv-03376 LHK, 2014 U.S. Dist. LEXIS 156663 at* 6 (N.D. Ca. 2014) (declining to order video deposition of deponent in foreign country because of the "sovereignty and comity issues that are implicated when a court orders that a deposition proceed overseas).

10. United States v. $160,066.98.from Bank of A.m., 202 F.R.D 624,627 (S.D. Ca. 2001) (with regard to the forfeiture of assets placed by the fugitive in the jurisdiction, denying fugitive's motion for protective order requesting that depositions noticed for the United States be taken in person or remotely while he remained in Pakistan).

11. In re Vitamin Antitrust Litig., Misc. No. 99-197, 2001 U.S. Dist. LEXIS 25070 at *53 (D.D.C 2001) (analyzing compliance with foreign law regarding overseas depositions and noting "I find no inconsistency between arguing on the one hand that the Federal rules should apply because the Hague Convention could not ensure adequate and efficient discovery, and arguing on the other hand that depositions within a foreign nation's borders must comply with the local laws notwithstanding any federal court order providing that discovery proceed under the Federal Rules.").

Case 1:18-cv-25337-KMM   Document 226-2   Entered on FLSD Docket 03/02/2023   Page 14 of 93

**Venezuela**
Bolivarian Republic of Venezuela

---

## Hague/Inter-American

**Party to Hague Service Convention?**

Yes

**Party to Hague Evidence Convention?**

Yes

**Party to Hague Apostille Convention?**

Yes

**Party to Inter-American Convention?**

Yes

**Service of Process by Mail?**

No

---

## DISCLAIMER

**DISCLAIMER: THE INFORMATION IS PROVIDED FOR GENERAL INFORMATION ONLY AND MAY NOT BE TOTALLY ACCURATE IN A SPECIFIC CASE. QUESTIONS INVOLVING INTERPRETATION OF SPECIFIC FOREIGN LAWS SHOULD BE ADDRESSED TO THE APPROPRIATE FOREIGN AUTHORITIES OR FOREIGN COUNSEL.**

ALL ✚/━

Embassies and Consulates                              ➕

List of Attorneys                                     ➕

Service of Process                                    ➕

## Criminal Matters 

## Obtaining Evidence in Civil and Commercial Matters ⊖

**Is Venezuela a party to the [Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters](#)** **?**

Yes.

The [Venezuelan Central Authority for the Hague Evidence Convention](#) ⧉ designated to receive letters of request for the taking of evidence is the Ministry of Popular Power for Foreign Affairs.

**How should letters of request be completed? Do they require transmittal via diplomatic channels?**

See the [Hague Evidence Convention Model Letters of Request](#) ⧉ for guidance on preparation of the letter of request. Letters of Request and accompanying documents should be prepared in duplicate and translated into Spanish. Such requests must be transmitted by the requesting court or person in the United States to the Venezuelan Central Authority and do not require transmittal via diplomatic channels.

**Further information:**

See [Venezuela's Declarations and Reservations regarding the Hague Evidence Convention](#) ⧉.

**Requests from Venezuela to Obtain Evidence in the United States**:

The [U.S. Central Authority for the Hague Evidence Convention](#) ⧉ is the Office of International Judicial Assistance, Civil Division, Department of Justice, 1100 L Street N.W., Room 8102, Washington, D.C. 20530

## Taking Voluntary Depositions of Willing Witnesses ⊖

**Are foreign attorneys permitted to take depositions of willing witnesses without the involvement of the host government or courts?**

Venezuela [objected](#)  to the provisions of Chapter II of the [Hague Evidence Convention](#) ⧉ regarding the taking of voluntary depositions of willing witnesses by commissioners, including private attorneys and

consular officers.  Consequently, depositions of willing witnesses in Venezuela must be undertaken pursuant to a request to the Venezuelan Central Authority⎘ and in the context of the Venezuelan court system.

**May consular officers conduct depositions of willing witnesses?**

Depositions of willing witnesses, regardless of nationality, by U.S. consular officers in Venezuela are not permitted.

**May local attorneys directly petition a court to conduct the deposition of an unwilling witness or must this be requested via letters rogatory?**

Private attorneys from the United States attempting to conduct voluntary depositions of willing witnesses in Venezuela are subject to the penalties of local Venezuelan law.

## Authentication of Documents                              ⊕

Last Updated: November 15, 2013

# COUNTRY PROFILE

## TAKING OF EVIDENCE BY VIDEO-LINK UNDER THE *HAGUE CONVENTION OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS*

**STATE NAME:** Bolivarian Republic of Venezuela

**PROFILE UPDATED ON (DATE):** May 2017

**PART I: STATE**

| | |
|---|---|
| **1. Contact details** *The contact details provided in this section will be published on the Hague Conference website* | |
| **CHAPTER I (LETTERS OF REQUEST)** | |
| *As with any other Letter of Request under Chapter I of the Evidence Convention, the requesting authority should contact the Central Authority(ies)of the requested State when seeking to obtain evidence by means of a Letter of Request, whether using video-link or not.* | |
| a) Are the contact details of the Central Authority(ies) designated by YOUR STATE up-to-date on the Evidence Section of the Hague Conference website? | ☒ Yes. <br> ☐ No. Please provide the contact details on a separate Word or PDF document for uploading on the Evidence Section of the Hague Conference website. |
| b) Would YOUR STATE be in favour of specifying **a person or department within the Central Authority(ies)** who would assist in processing Letters of Request where the use of video-links has expressly been requested (*e.g.,*to arrange the video-link or provide technical assistance)? | ☒ Yes. <br> If YOUR STATE has already done so, please specify the contact details: <br> Special Issues Area / Office of Consular Relations / Ministry for Foreign Relations <br><br> ☐ No. <br> Please explain why: <br><br> *Comments*: |
| c) What arrangements are there for ensuring that there is a contact person with whom the requesting authority can liaise and who is available on the day of the hearing to operate the video-link facilities (*e.g.* is there a booking system)? | The office has on-call staff, in charge of the information technology area, who is dedicated to the operation of video-link. |

**CHAPTER II (TAKING OF EVIDENCE BY DIPLOMATIC OFFICERS, CONSULAR AGENTS AND COMMISSIONERS)**

*Permission by a designated authority may be required to apply certain provisions under Chapter II. To know if sucha permission is required for a particular State, see the practical information chart (accessible from the <u>Authorities</u> page) AND / OR the declarations (accessible from the <u>Status Table</u> page) of the relevant State available on the <u>Evidence Section</u> of the Hague Conference website.*

*If permission is not required, applicants should contact the diplomatic and consular mission (Arts 15/16) or the commissioner (Art. 17) to explore whether or not evidence may be obtained by video-link under this Chapter.*

*If permission is required, applicants should contact the authority that was designated to grant permission AND the relevant diplomatic and consular mission or commissioner,to explore, where necessary, whether or not evidence may be obtained by video-link under this Chapter.*

| | |
|---|---|
| d) Would YOUR STATE be in favour of specifying **an entity or authority, in addition to the relevant authority / diplomatic or consular agent / commissioner**, that would assist in processing applications where the use of video-links has expressly been requested (*e.g.*, to arrange the video-link or provide technical assistance)? | ☐   Yes.<br>If YOUR STATE has already done so, please specify the contact details:<br><br>☒   No.<br> Please explain why: Our State considers that it is not necessary.<br><br>*Comments*: |
| e) What arrangements are there for ensuring that there is a contact person with whom the Court of Origin can liaise and who is available on the day of the hearing to operate the video-link facilities (*e.g.* is there a booking system)? | The office has on-call staff, in charge of the information technology area, who is dedicated to the operation of video-link. |

## PART II: RELEVANT LEGISLATION AND COURT SYSTEM

| Legal basis | |
|---|---|
| a) Does YOUR STATE, in the application of Article 27 (*i.e.* internal law or practice), allow for a foreign Court to directly take evidence by video-link? | ☐ Yes.<br>Please specify:<br><br>☒ No.<br> Please specify: Our State only allows indirect intervention of evidence<br><br>*Comments*:<br><br>In Venezuelan legislation there are no express prohibitions for foreign courts to obtain evidence by videoconference. In our judicial system, operates the principle of freedom of evidence, unless they are expressly prohibited. In the case of the presentation of evidence through videoconferences, both jurisprudence and doctrine, have pointed out its legality.<br><br>Article 857 of the Venezuelan Code of Civil Procedure establishes that the examination of witnesses, examinations, oaths, interrogations, summonses, notifications, and other acts of mere instruction to be carried out in the country shall be processed by the national courts, without are required by Letters Rogatory or diplomatic channel. The latter case is covered by Article 27 of the Convention.<br><br>In addition, article 38 of the Venezuelan Act on Private International Law (1998) recognizes the effectiveness of evidence obtained according to the procedural process of the right of the Court or official to which it is carried out. |
| b) Please indicate the legal basis or applicable protocols (*i.e.*, relevant laws, regulations, practice, etc.) for the use of video-links in the taking of evidence in YOUR STATE, either under the Convention or independent of the Convention (see, *e.g.* Art. 27 (b) and (c)):<br><br>*Please also attach a copy of, or provide a link to, the relevant provisions, where possible in English or French.* | In Venezuela, although there is no special law for the use of videoconferencing, there are several instruments that promote the use of information and communication technologies in the judicial sphere: the National Constitution; the Code of Civil Procedure, the Act of Info-Government; the Act of data messages and electronic signature; the Organic Act Labor Procedure; the Act on Protection of Victims, Witnesses and other procedural subjects; the Organic Act for the Protection of Children and Adolescents; the Organic Act of the Supreme Court of Justice; the judgments of the Constitutional Chamber of the Supreme Court of Justice (No. 721 07 / 9th / 2010 and No. 01 / 27th / 2011)<br><br>Additionally, the implementation of videoconference by the Executive |

| | |
|---|---|
| | Direction of the Magistracy and the Judiciary, is regulated through the "Normative Instrument for the videoconference service of the Executive Direction of the Magistracy and the Judiciary", and Resolution No. 2016-001 of the Criminal Cassation Chamber of the Supreme Court of Justice (Judicial Gazette No. 64, 12 / 12th / 2016) |
| c) Does YOUR STATE have any agreements with other Contracting States that derogate from the Convention when taking evidence by video-link (see Art. 28 and Art. 32)? | ☐ Yes.<br>Please attach a copy of, or provide a link to, the relevant provisions, where possible in English or French:<br><br>☒ No.<br><br>*Comments*:<br>Venezuela has signed regional agreements regulating the matter of obtaining evidence abroad, without specifying that the route be the videoconference, such as the Law Approving the Inter-American Convention on  Letters Rogatory (Official Gazette No. 33033, 08/03/1984); The Law Approving the Inter-American Convention on the Taking of Evidence Abroad (Official Gazette No. 33170, 02 / 3rd / 1985); The Law Approving the Additional Protocol to the Inter-American Convention on Letters Rogatory (Official Gazette No. 33171, 02 / 25th / 1985); The Law Approving the Additional Protocol to the Inter-American Convention on the Taking of Evidence Abroad (Official Gazette No. 4580, 05 / 21st / 1993); The Approval Law of the Code of Private International Law or Bustamante Code (Official Gazette of 04 / 9th / 1932) |
| **Court system** | |
| d) Please indicate which courts permit, or have the facilities for, the taking of evidence by video-link. If possible, indicate where relevant information on videoconferencing facilities in courts can be found online: | ☒ All courts.<br>☐ All courts of a specific type / level.<br>Please specify:<br>☐ Only specific courts.<br>Please specify which courts, or provide a link to/attach a full list:<br>☐ None.<br><br>*Comments*:<br>Until now, only these courts have facilities and practice: Judicial Circuits of the Courts of Protection of Children and Adolescents of the Judicial District of the Metropolitan Area of Caracas; and the State of Zulia. |

**PART III: TECHNICAL AND SECURITY ASPECTS (APPLICABLE TO BOTH CHAPTERS)**

| | |
|---|---|
| a) Does YOUR STATE use licensed software (which ensures support for technical and security matters) for the taking of evidence by video-link? | ☐ Yes.<br>Please specify:<br>☒ No.<br><br>*Comments*:<br>We use the Apache Openmeetings software, Version 3.0.6 Release, which is developed under free software (freeware) (http://openmeetings.apache.org/#Audio_and_Video_Conferencing)<br>Openmeetings is a software used for presentations, online training, web conferencing, drawing board, document collaboration and editing, user desktop exchange. The product is based on the OpenLaszlo RIA framework and the Red5 video server, which in turn relies on open source components.<br>The communication takes place in the meeting rooms that establish the security and modes of video quality. The recommended database is MySQL. The product can be configured as an installed server product, or used as hosting. Openmeetings has applied for membership to the Apache Software Foundation incubator. Openmeetings is an alternative to other commercial software that allows you to create web-based conferences, share and broadcast audio, videos, presentations and chats. This is one of the first free projects that allows to make videoconferences. For its operation uses technology Flash, for which it uses the server Red5 that is an application that pretends to be a free alternative to Adobe Flash Media Server. |
| b) What are the specifications of the video-link technology in use in YOUR STATE, including, if any, the minimum standards or mechanisms used to secure the communications and any recordings made?<br><br>*States are encouraged to provide as much information as possible when responding to this question. As such, it may be useful to consider liaising with the relevant IT experts.* | Codec (*i.e.*, manufacturer, model, transmission speed, bandwidth):<br>Openmeetings (Manufacturer: Apache Software Foundation; Model: Version 3.0.6 Release; Speed: 1Mbps per connection (minimum); Bandwidth: 1Mbps per connection (minimum).<br>Video and audio standards (*e.g.* Standard Definition, High Definition, etc.):<br>Yasm, H.264 (MPEG-4 AVC) video streams, Audio Codec: Nellymoser, Video Codec: VP8, Video Codec: H.263.<br>Type of network (*e.g.*, ISDN, IP, etc.):<br>IP<br>Type of encryption for signals in secure transmissions:<br>You can use custom encryption type, but you must decide during the installation the type of encryption to be used. By default, two types are available:<br>1) org.apache.openmeetings.util.crypt.MD5Implementation - this uses MD5 common crypt as PHP. This is the default encryption;<br>2) org.apache.openmeetings.util.crypt.MD5CryptImplementation - this uses the BSD encryption style. You can edit the configuration key during installation or later in the admin panel. But if you change it using the admin panel, the previous passwords might not work since they are encrypted with another algorithm.<br>Split screen capability:<br>Yes<br>Document cameras:<br>Yes, with the option sharing files with other remote users.<br>Multipoint connections:<br>Yes, satisfactory videoconferencing tests have been performed with up to 11 remote computers connected concurrently. |

| | | |
|---|---|---|
| | Additional specifications or capabilities:<br>It allows the diffusion of video and audio; You can view the desktop of any participant; Available in 19 languages; Virtual whiteboard with drawing, writing, editing, "cut and paste" capabilities, resizing of images and inserting symbols; Lecture while drawing (4x4 or 1xn modus); Secure drawing; Import documents in most formats available; Sending invitations and direct links within the conference; System of moderators; Public and private conference rooms; The server can run on both Windows and Linux, and clients only need a browser and Flash Player, so you can participate in a session from almost any platform; Has a module for integration with Moodle. | |
| | Protocols or other practices:<br>Real-Time Messaging Protocol (RTMP) Flash Streaming. Use of OpenMeetings with RTMPS & HTTPS: There are three ways in which the Openmeetings client can communicate with the server: 1) The Flash client uses the RTMP protocol to transfer video / audio and to send and receive user data (login, etc.) to the server and vice versa; 2) The browser uses the HTTP protocol to load the SWF file and upload and download the files (documents, pdfs, images, etc.) to the server and vice versa; And 3) The screen sharing client uses the RTMP protocol to transfer screen data and remote control to the server and vice versa. | |
| | *Comments*: | |
| c) Can evidence be taken via commercial providers (*e.g.*, Skype[TM])? | ☒ Yes.<br>Please specify: Although the recommendation is to use free softwares and open standards.<br><br>☐ No. | |
| | *Comments*: | |
| d) Does YOUR STATE have a procedure for testing connections and the quality of transmissions before the hearing? | ☒ Yes.<br>Please specify: Review of the quality of service and diagnostic module of OpenMeetings through a module included in the same app.<br><br>☐ No. | |
| | *Comments*: | |
| e) Does YOUR STATE have any requirements as to the hearing room, *e.g.*, should be located in a court, should havea camera view of the whole room or a view of all the parties, etc.? | ☒ Yes.<br>Please specify: There is a "Normative Instruction for the videoconference service of the Executive Direction of the Magistracy and the Judicial Power".<br><br>☐ No. | |
| | *Comments*: | |

*PART IV - LEGAL CONSIDERATIONS (BOTH CHAPTERS)*

**PART IV: USE OF VIDEO-LINKS UNDER BOTH CHAPTERS – LEGAL CONSIDERATIONS**

| Restrictions | |
|---|---|
| a) Must a court order directing the use of video-links first be obtained from the requesting State (Chapter I) / State of Origin (Chapter II)? | ☒ Yes. <br> Please specify: As an exceptional route, the use of videoconferencing must be authorized through a judicial resolution. <br><br> ☐ No. <br><br> *Comments*: |
| b) Are there any restrictions on what type/s of evidence can be taken by video-link or how it is to be taken? | ☐ Yes. <br> Please specify: <br> ☒ No. <br><br> *Comments*: <br> It lays down, in matters of approval, the principle of freedom of evidence. Its only limitation is that it is not expressly prohibited by the legal system and is not contrary to public order. |
| c) Are there any specific restrictions on how evidence gathered via video-link can be handled and distributed, or do the usual rules for evidence obtained in person apply? | ☐ Yes, there are specific restrictions. <br> Please specify: <br> ☒ No, the normal rules for evidence apply. <br><br> *Comments*: |
| d) Are there any restrictions on the type of person who may be examined by video-link? | ☐ Yes. <br> Please specify: <br> ☒ No. <br><br> *Comments*: <br> In case of videoconferences, the normal rules for evidences apply. |
| e) Is it necessary to seek the consent of the parties to use video-link to take evidence? | ☐ Yes. <br> Please specify the conditions under which parties may refuse the use of video-link: <br><br> ☒ No. <br><br> *Comments*: <br> It is the court's decision, whether or not to take such evidence trought videoconferences. |
| f) Are there any restrictions on the location where the person should be examined (*e.g.* in a courtroom, on the premises of an Embassy or diplomatic mission)? | ☐ Yes. <br> Please specify: <br> ☒ No. <br><br> *Comments*: |

*PART IV - LEGAL CONSIDERATIONS (BOTH CHAPTERS)*

| | |
|---|---|
| | There are no specific limitations, however, the evidence presented by the courts, must be practiced at its offices (Article 191 of the Code of Civil Procedure), or in the place enabled for videoconferencing. Embassies or diplomatic missions may conduct videoconferences at their offices, if they have the appropriate technological platform. |

*PART IV - LEGAL CONSIDERATIONS (BOTH CHAPTERS)*

| | |
|---|---|
| g) Can a witness / expert be compelled to use video-links to give evidence? | ☐ Yes.<br>If so, please specify what coercive measures may be used:<br><br>☒ No.<br>Please explain: There are no special rules in this matter. However, if a witness refuses to appear, he may be subject to a fine (Article 94 of the Code of Civil Procedure)<br><br>*Comments*: |
| h) Please briefly outline the procedure/s, under Chapter I and Chapter II, for actually notifying or summoning the witness / expert to give evidence by video-link, including any references to relevant laws, regulations or practice.<br><br>*Please also include, where applicable, the differences between notifying or summoning a willing witness / expert and notifying or summoning a witness / expert that is to be compelled.* | Chapter I: After receiving the letter rogatory by the Central Authority, the competent court, by means of a decree, orders the notification or summons, according to the ordinary rules (Art. 218 and subsequent, of the Venezuelan Code of Civil Procedure), expressly stating that the evidence will be presented through videoconference (Articles 857 and 395 of the Venezuelan Code of Civil Procedure). Once the date and time of the hearing at which the evidence will be presented by videoconference is established, the Central Authority shall be notified in order to inform the requesting State (see, for example, Art. 5 Venezuelan Approving Act Additional Protocol to the Inter-American Convention on the Taking of Evidence Abroad)<br><br>Chapter II: The Law of the official submitting the evidence applies, if it does not affect public order of Venezuela.<br><br>*Comments*: |
| i) The law of which State governs the use of privileges?<br><br>*Please tick all that apply.*<br><br>*See Articles 11 and 21(e) of the Convention* | Chapter I:<br>☒ The law of the Requesting State.<br>☒ The law of the Requested State.<br>☐ The law of another State.<br>Please specify:<br><br>Chapter II:<br>☒ The law of the State of Origin.<br>☒ The law of the State of Execution.<br>☐ The law of another State.<br>Please specify:<br><br>*Comments*:<br>See Art. 12 Venezuelan Approving Act Inter-American Convention on  Letters Rogatory |

*PART IV - LEGAL CONSIDERATIONS (BOTH CHAPTERS)*

*PART V - LEGAL CONSIDERATIONS (CHAPTER I)*

**PART V: USE OF VIDEO-LINKS UNDER <u>CHAPTER I</u> (LETTERS OF REQUEST) – LEGAL CONSIDERATIONS**

| Legal obstacles | |
|---|---|
| a) Does Your State consider that there are legal obstacles to using video-link to assist in the taking of evidence under Chapter I of the Convention?<br><br>*The Special Commission has noted that the use of video-link and similar technologies is consistent with the current framework of the Convention (see C&R No 55 of the 2009 SC and C&R No 20 of the 2014 SC).* | ☐ Yes.<br>Please specify:<br>☒ No.<br><br>*Comments*: |

| Direct and indirect taking of evidence | |
|---|---|
| b) Under Chapter I of the Convention, does Your State allow for the direct taking of evidence by judicial personnel of the *requesting* State (*i.e.,* the State in which the proceedings are pending)? | ☐ Yes.<br>☒ No.<br><br>*Comments*: |
| c) Under which provisions of Chapter I of the Convention is indirect taking of evidence by video-link possible in Your State? | ☒ Art. 9(1) –The judicial authority of the requested State obtains evidence (*e.g.*, a witness / expert examination) which is located in a (distant) location within its own State.<br><br>☐ Art. 9(2) - As a special method or procedure.<br>Please also outline whether any specific conditions must be satisfied:<br><br>*See also questions on presence.*<br><br>*Comments:* |

| Legal safeguards for witness / expert | |
|---|---|
| d) What are the legal safeguards in place for witnesses / experts in Your State when evidence is taken by video-link under Chapter I (*e.g.* protective measures for the witness / expert, provision of interpretation, right to legal counsel, etc.)? | In some cases, safeguards measures may be used (see Act on Protection of Victims, Witnesses and other procedural subjects). The right to defense is guaranteed free of charge by public defenders, to those who request. In relation to language interpretation, there is an official list of interpreters accredited to the national government, whose service must be paid by the interested parties (see http://www.mpprijp.gob.ve/wp-content/PDF/listadoOctubre2015.pdf). |

| Presence | |
|---|---|
| e) Are the rules for the presence of the parties and their representatives when physically in a single location the same for when evidence is | ☒ Yes.<br>If so, please specify if they are allowed to actively participate: |

*PART V - LEGAL CONSIDERATIONS (CHAPTER I)*

| | |
|---|---|
| taken via video-link?<br><br>*See Article 7 of the Convention* | The parties and their attorneys can attend, participating, according to the normal rules for the presentation of evidences (see, for example, Art. 5 Venezuelan Approving Act Additional Protocol to the Inter-American Convention on the Taking of Evidence Abroad)<br><br>☐ No.<br><br>*Comments*: |
| f) Under Chapter I of the Convention, does YOUR STATE allow for the cross-examination of a witness / expert by video-link by the representatives located in the *requesting* State (*i.e.*, the State in which the proceedings are pending)? | ☒ Yes.<br>☐ No.<br><br>*Comments*:<br>It should be allowed in accordance with the spirit of Article 3, paragraphs f and g of the Convention, since they are who make the request. |
| g) Does YOUR STATE allow for the presence of the judicial personnel of the requesting State via video-link?<br>*See Article 8 of the Convention*<br>*Please note that a declaration may be made under this provision.* | ☒ Yes.<br>If so, please specify if they are allowed to actively participate:<br>It should be allowed in accordance with the spirit of Article 3, paragraphs f and g of the Convention, since they are who make the request.<br><br>☐ No.<br><br>*Comments*: |

**PART VI: USE OF VIDEO-LINKS UNDER <u>CHAPTER II</u>(BY DIPLOMATIC OFFICERS, CONSULAR AGENTS AND COMMISSIONERS) – LEGAL CONSIDERATIONS**

<table>
<tr><td colspan="2">

*The questions in this Part are only for States that have not wholly excluded the application of Chapter II*

*Please note that Chapter II may be subject to a reservation in whole or in part under Article 33. Check the reservations that YOUR STATE has made under this Chapter in the status table, available on the <u>Evidence Section</u> of the Hague Conference website.*

</td></tr>
<tr><td colspan="2">Legal obstacles and legal framework</td></tr>
<tr>
<td>a) Does YOUR STATE consider there to be any legal obstacles to the taking of evidence by video-link under Chapter II of the Convention?<br><br>*The Special Commission has noted that the use of video-link and similar technologies is consistent with the current framework of the Convention (C&R No 55 of the 2009 SC and C&R No 20 of the 2014 SC).*</td>
<td>☐  Yes.<br>    Please specify:<br><br>☒  No.<br><br><br>*Comments*:</td>
</tr>
<tr>
<td>b) Under which provisions of Chapter II of the Convention is taking of evidence by video-link possible in YOUR STATE?</td>
<td>☒  Art. 15<br>☒  Art. 16<br>☐  Art. 17<br><br>*Comments*:<br><mark>It does not proceed through Art. 17, since Venezuela made a reservation of the intervention in the obtaining of evidences by the commissioners of the court.</mark></td>
</tr>
<tr>
<td>c) Is prior permission from YOUR STATErequired when taking evidence under Chapter II of the Convention on the territory of YOUR STATE?</td>
<td>☒  Yes.<br>    Please outline the procedure for seeking such permission, including any specific conditions that must be satisfied:<br><br>☐  No.<br><br><br>*Comments*:</td>
</tr>
<tr>
<td>d) Please indicate who administers the oath or affirmation and how perjury and contempt are dealt with when evidence is taken under Chapter II of the Convention on the territory of YOUR STATE.</td>
<td>Administration of the oath or affirmation:<br>The oath and declaration shall be carried out by the diplomatic or consular official and shall be regulated by its domestic Law.<br><br>Dealing with perjury and contempt:<br>Contempt and false testimony are regulated by the Law of the State of origin.</td>
</tr>
<tr><td colspan="2">Direct and indirect taking of evidence</td></tr>
<tr>
<td>e) Diplomatic and consular agents are usually located in the State where the witness / expert resides. It may be, however, that a witness / expert is located in a neighbouring country or in a place distant</td>
<td>☒  Yes.<br>    Please specify:<br><br>☐  No.</td>
</tr>
</table>

*PART VI - LEGAL CONSIDERATIONS (CHAPTER II)*

| | |
|---|---|
| from the Embassy or Consulate. In these circumstances, does YOUR STATE consider it possible to use video-link to obtain evidence under Chapter II of the Convention? | *Comments*: |

*PART VI - LEGAL CONSIDERATIONS (CHAPTER II)*

| Legal safeguards for witness / expert | |
|---|---|
| f)  What are the legal safeguards in place for witnesses / experts in YOUR STATE when evidence is taken by video-link under Chapter II (*e.g.* protective measures for the witness / expert, provision of interpretation, right to legal counsel, etc.)? | In some cases it can applied legal safeguards measures (See Act of Protection for Victims, Witnesses and other procesual subjects). The right to defense is guaranteed, free of charge by public defenders, if required by the interested party. |

| Presence | |
|---|---|
| g)  Under the law of YOUR STATE, who may be present via video-link when evidence is taken by **diplomatic and consular agents**?  *Please tick all that apply.* | ☒  The parties. <br> ☒  The parties' representatives. <br> ☒  Judicial personnel. <br> ☐  Someone else. <br> Please specify: <br><br> *Comments*: |
| h)  Under the law of YOUR STATE, who may be present via video-link when evidence is taken by **commissioners**?  *Please tick all that apply.* | ☐  The parties. <br> ☐  The parties' representatives. <br> ☐  Judicial personnel. <br> ☐  Someone else. <br> Please specify: <br><br> *Comments*: <br> Venezuela made a reservation of the intervention in the obtaining of evidences by the commissioners of the court. |

| Applicable law | |
|---|---|
| i)  The law of which State governs the administration of an oath or affirmation when evidence is taken by video-link under Chapter II? | ☒  The law of the State of Origin <br> ☐  The law of the State of Execution <br> ☐  It depends on whether evidence is taken by a consular or diplomatic agent or a commissioner. <br> Please specify: <br><br> *Comments*: |
| j)  The law of which State governs perjury and contempt when evidence is taken by video-link under Chapter II? | ☒  The law of the State of Origin <br> ☐  The law of the State of Execution <br> ☐  It depends on whether evidence is taken by a consular or diplomatic agent or a commissioner. <br> Please specify: <br><br> *Comments*: |

*PART VI - LEGAL CONSIDERATIONS (CHAPTER II)*

**PART VII PRACTICAL CONSIDERATIONS**

| *COMMON TO BOTH CHAPTERS* | |
|---|---|
| **Notice** | |
| a)  What does YOUR STATE consider to be the minimum amount of time required between the request and the actual hearing in order to make the arrangements to take evidence by video-link? | Chapter I: 15 working days<br><br>Chapter II: 15 working days |
| **Interpretation services** | |
| b)  Who is responsible, under Chapter I and Chapter II, for the use of interpretation services and who arranges these services in YOUR STATE when video-link is used? | Chapter I: The interested party, and exceptionally when this is requested by the Court, will be counted on free interpreter.<br><br>Chapter II: The origin State's Law will be applied |
| c)  Are professional accredited interpreters required in YOUR STATE, and where can relevant contact details be found? | ☒  Yes.<br>Please specify: They are interpreters recognized by the Venezuelan Ministry of Internal Affairs, Justice and Peace (see http://www.mpprijp.gob.ve/wp-content/PDF/listadoOctubre2015.pdf).<br><br>☐  No.<br><br>*Comments:* |
| d)  Under the law of YOUR STATE, is interpretation to be *simultaneous* or *consecutive* when a witness / expert is examined via video-link? | Consecutive |
| e)  Where may the interpreter be located when a witness / expert is examined via video-link?<br>*Please check all that apply.* | ☒  In the room with the witness / expert.<br>☐  In the room with those conducting the examination.<br>☐  Elsewhere in the requesting State (Chapter I) / State of Origin (Chapter II).<br>☐  Elsewhere in the requested State (Chapter I) / State of Execution (Chapter II).<br>☐  In a third State.<br>☐  Other.<br>Please specify:<br><br>*Comments:* |
| **Reporting and recording** | |
| f)  Is a written report of the video-link hearing or testimony prepared? | ☒  Yes.<br>Please specify by whom:<br>Chapter I: It is always recorded in court minutes, according to the general rules on evidence (See Art. 188 of the Venezuelan Code of Civil Procedure), and it is sent to |

*PART VII – PRACTICAL CONSIDERATIONS (BOTH CHAPTERS)*

| | |
|---|---|
| | <mark>the Central Authority.</mark><br><br><span style="color:blue">Chapter II: The law of the State of origin shall apply.</span><br><br>Please also outline the specific rules or regulations, if any, that are applicable to the handling/storage/distribution of the report:<br><br>☐  No.<br><br>*Comments*: |
| g) Are facilities and equipment made available in order to record the hearing or testimony? | ☒  Yes, with audio and video.<br>☐  Yes, only with video.<br>☐  Yes, only with audio.<br>☐  No, but the recording of hearings/testimonies is permitted.<br><br>If a recording is produced, please also outline the specific rules or regulations, if any, that are applicable to the handling/storage/distribution of the recording:<br><br>☐  No, because the recording of hearings/testimonies is not permitted under internal law.<br><br>*Comments*: |
| **Documents and exhibits** | |
| h) What arrangements are to be made for showing or referring to documents or exhibits when taking evidence by video-link? | <span style="color:blue">Security measures and measures of control to the evidences. Exhibition and explanation in camera of documentary data of the documents.</span> |

*PART VII – PRACTICAL CONSIDERATIONS (CHAPTER I)*

| | |
|---|---|
| ***PRACTICAL CONSIDERATIONS UNDER CHAPTER I*** | |
| **Practical obstacles** | |
| i) Does YOUR STATE consider that there are practical obstacles to using video-link to assist in the taking of evidence under Chapter I of the Convention? | ☒ Yes.<br>Please specify: In Venezuela there are no videoconference rooms in all judicial circuits.<br><br>☐ No.<br><br>*Comments*: |
| **Identification of all relevant actors** | |
| j) What is the procedure for verifying the identity of the parties, the witness / expert, and all relevant actors in YOUR STATE when video-link is used under Chapter I? | Presentation of identification document of the witness/expert; exhibition in front of the camera and certification by the authorities present at the event. |
| **Standard Forms** | |
| k) Do the authorities of YOUR STATE use a standardised request form under Chapter I that makes specific reference to the use of video-links?<br><br>*The use of the Model Form of the Evidence Convention is recommended when taking evidence under Chapter I.*<br><br>*While the Model Form has no explicit reference to the use of video-link, a request to this effect may be included in item 13 of the Form.* | ☒ Yes.<br>Please specify: It is use the standard application form recommended by the Hague Conference<br><br>☐ The standardised form used makes no reference to video-link.<br><br>☐ No standardised form is used.<br><br>*Comments*:<br>The Additional Protocol of The Inter-American Convention on Letter Rogatory and the Additional Protocol to the Inter-American Convention on the Taking of Evidence Abroad, also have standard applications forms. |
| l) Does YOUR STATE require the inclusion of any particular practical or technical information from the requesting State in the request in order to conduct / arrange a witness / expert examination by video-link under Chapter I? (*e.g.* contact details for IT support, technical specifications, etc) | ☒ Yes.<br>Please specify: Contact details of the computer service personnel in charge, and technical specifications.<br><br>☐ No.<br><br>*Comments*: |
| **Costs** | |
| m) Are there any costs associated with the taking of evidencevia video-link under Chapter I in YOUR STATE? | ☐ Yes.<br>Please provide an approximate estimate of these costs and / or specify the criteria used to determine these costs:<br><br>☒ No.<br><br>*Comments*:<br>In Venezuela the access to justice is free. |

*PART VII – PRACTICAL CONSIDERATIONS (CHAPTER I)*

| | |
|---|---|
| n) Who is responsible for bearing the costs occasioned by the use of video-link under Chapter I in Your State?<br><br>*See Art. 14(2) of the Evidence Convention* | ☒ The moving party (requesting the use of video-link).<br>☐ The requesting authority (in the requesting State).<br>☒ The requested authority (in the requested State).<br>☐ Other.<br>Please specify:<br><br>*Comments*:<br>The cost generated by the use of equipment for videoconferencing is assumed by the State, since access to justice is free in Venezuela. However, the use of interpreters must be paid by the requesting party. |
| o) How are these costs generally expected to be paid and/or reimbursed? | ☒ Payment in cash<br>☒ Payment by (credit) card<br>☒ Electronic/wire transfer<br>☐ Other.<br>Please specify:<br>*Comments*:<br>The method of payment must be agreed between the requesting party and the service provider. |
| p) Who pays for the interpretation services under Chapter I in Your State when video-link is used and how are these costs to be paid and/or reimbursed? | The requesting party must pay it. The method of payment must be agreed between the requesting party and the service provider. |

*PART VII – PRACTICAL CONSIDERATIONS (CHAPTER II)*

| | |
|---|---|
| ***PRACTICAL CONSIDERATIONS UNDER CHAPTER II*** | |
| ***Only for States that have not excluded in whole the application of Chapter II*** | |
| Practical obstacles | |
| q) Does Your State consider that there are practical obstacles to using video-link to assist in the taking of evidence under Chapter II of the Convention? | ☐ Yes. Please specify: <br> ☒ No. <br><br> *Comments*: |
| Identification of all relevant actors | |
| r) What is the procedure for verifying the identity of the parties, the witness / expert, and all relevant actors in Your State when video-link is used under Chapter II? | According to the laws in the State of origin |
| Standard Forms | |
| s) Do the authorities of Your State use a standardised request form under Chapter II that makes specific reference to the use of video-links? <br><br> *Although the use of the Model Form of the Evidence Convention is recommended when taking evidence under Chapter I, it may also be used, with the necessary amendments when applying for permission to take evidence under Chapter II.* <br><br> *While the Model Form has no explicit reference to the use of video-link, a request to this effect may be included in item 13 of the Form.* | ☐ Yes. Please specify: <br> ☐ The standardised form used makes no reference to video-link. <br> ☒ No standardised form is used. <br><br> *Comments*: |
| Assistance and facilities | |
| t) Are the Embassies and Consulates of Your State (acting as the State of Execution) able to assist applicants in arranging a video-link? | ☒ Yes. Please specify how, *e.g.*, via a booking system: A written agreement between both States and the requested party. <br> ☐ No. Please specify who else would assist, if anyone: <br><br> *Comments*: |
| u) Is it possible to hold a video-link session requested under the Convention at the premises of the Embassies or Consulates of Your State abroad? | ☒ Yes. Please specify: Through the support of the Central Authority of the State of execution. <br> ☐ No. <br><br> *Comments*: |
| v) Does Your State require the inclusion of any particular practical or technical information from the State of Origin in the request in order to conduct / arrange a witness or expert examination by video-link under Chapter II? (*e.g.* the use of interpreters, | ☐ Yes. Please specify: <br> ☒ No. <br><br> *Comments*: |

*PART VII – PRACTICAL CONSIDERATIONS (CHAPTER II)*

| | |
|---|---|
| stenographers, or recording devices) | |

*PART VII – PRACTICAL CONSIDERATIONS (CHAPTER II)*

| Costs | |
|---|---|
| w) Are there any costs associated with the taking of evidencevia video-link under Chapter II in Your State? | ☐ Yes.<br>Please provide an approximate estimate of these costs and / or specify the criteria used to determine these costs:<br><br>☒ No.<br><br>*Comments*: |
| x) Who is responsible for bearing the costs occasioned by the use of video-link under Chapter II in Your State? | ☒ The moving party (requesting the use of video-link).<br>☐ The State of Origin<br>☒ The Diplomatic mission or Consulate in the State of Execution.<br>☐ The commissioner<br>☐ Other.<br>Please specify:<br><br>*Comments*: |
| y) How are these costs generally expected to be paid and/or reimbursed? | ☒ Payment in cash<br>☒ Payment by (credit) card<br>☒ Electronic/wire transfer<br>☐ Other.<br>Please specify:<br>*Comments*:<br>In accordance with the laws of the State of origin |
| z) Who pays for the interpretation services under Chapter II in Your State when video-link is used and how are these costs to be paid and/or reimbursed? | The requesting party must pay it. The method of payment must be agreed between the requesting party and the service provider. |



## 20. CONVENTION ON THE TAKING OF EVIDENCE
## ABROAD IN CIVIL OR COMMERCIAL MATTERS[1]

*(Concluded 18 March 1970)*

The States signatory to the present Convention,

Desiring to facilitate the transmission and execution of Letters of Request and to further the accommodation of the different methods which they use for this purpose,

Desiring to improve mutual judicial co-operation in civil or commercial matters,

Have resolved to conclude a Convention to this effect and have agreed upon the following provisions –

CHAPTER I – LETTERS OF REQUEST

### Article 1

In civil or commercial matters a judicial authority of a Contracting State may, in accordance with the provisions of the law of that State, request the competent authority of another Contracting State, by means of a Letter of Request, to obtain evidence, or to perform some other judicial act.

A Letter shall not be used to obtain evidence which is not intended for use in judicial proceedings, commenced or contemplated.

The expression "other judicial act" does not cover the service of judicial documents or the issuance of any process by which judgments or orders are executed or enforced, or orders for provisional or protective measures.

### Article 2

A Contracting State shall designate a Central Authority which will undertake to receive Letters of Request coming from a judicial authority of another Contracting State and to transmit them to the authority competent to execute them. Each State shall organise the Central Authority in accordance with its own law.

Letters shall be sent to the Central Authority of the State of execution without being transmitted through any other authority of that State.

### Article 3

A Letter of Request shall specify –

a) the authority requesting its execution and the authority requested to execute it, if known to the requesting authority;

b) the names and addresses of the parties to the proceedings and their representatives, if any;

c) the nature of the proceedings for which the evidence is required, giving all necessary information in regard thereto;

d) the evidence to be obtained or other judicial act to be performed.

---

[1] This Convention, including related materials, is accessible on the website of the Hague Conference on Private International Law (www.hcch.net), under "Conventions" or under the "Evidence Section". For the full history of the Convention, see Hague Conference on Private International Law, *Actes et documents de la Onzième session (1968)*, Tome IV, *Obtention des preuves* (219 pp.).

Where appropriate, the Letter shall specify, *inter alia* –

e) the names and addresses of the persons to be examined;
f) the questions to be put to the persons to be examined or a statement of the subject-matter about which they are to be examined;
g) the documents or other property, real or personal, to be inspected;
h) any requirement that the evidence is to be given on oath or affirmation, and any special form to be used;
i) any special method or procedure to be followed under Article 9.

A Letter may also mention any information necessary for the application of Article 11.
No legalisation or other like formality may be required.

### Article 4

A Letter of Request shall be in the language of the authority requested to execute it or be accompanied by a translation into that language.

Nevertheless, a Contracting State shall accept a Letter in either English or French, or a translation into one of these languages, unless it has made the reservation authorised by Article 33.

A Contracting State which has more than one official language and cannot, for reasons of internal law, accept Letters in one of these languages for the whole of its territory, shall, by declaration, specify the language in which the Letter or translation thereof shall be expressed for execution in the specified parts of its territory. In case of failure to comply with this declaration, without justifiable excuse, the costs of translation into the required language shall be borne by the State of origin.

A Contracting State may, by declaration, specify the language or languages other than those referred to in the preceding paragraphs, in which a Letter may be sent to its Central Authority.

Any translation accompanying a Letter shall be certified as correct, either by a diplomatic officer or consular agent or by a sworn translator or by any other person so authorised in either State.

### Article 5

If the Central Authority considers that the request does not comply with the provisions of the present Convention, it shall promptly inform the authority of the State of origin which transmitted the Letter of Request, specifying the objections to the Letter.

### Article 6

If the authority to whom a Letter of Request has been transmitted is not competent to execute it, the Letter shall be sent forthwith to the authority in the same State which is competent to execute it in accordance with the provisions of its own law.

### Article 7

The requesting authority shall, if it so desires, be informed of the time when, and the place where, the proceedings will take place, in order that the parties concerned, and their representatives, if any, may be present. This information shall be sent directly to the parties or their representatives when the authority of the State of origin so requests.

### Article 8

A Contracting State may declare that members of the judicial personnel of the requesting authority of another Contracting State may be present at the execution of a Letter of Request. Prior authorisation by the competent authority designated by the declaring State may be required.

### Article 9

The judicial authority which executes a Letter of Request shall apply its own law as to the methods and procedures to be followed.

However, it will follow a request of the requesting authority that a special method or procedure be followed, unless this is incompatible with the internal law of the State of execution or is impossible of performance by reason of its internal practice and procedure or by reason of practical difficulties.
A Letter of Request shall be executed expeditiously.

## Article 10

In executing a Letter of Request the requested authority shall apply the appropriate measures of compulsion in the instances and to the same extent as are provided by its internal law for the execution of orders issued by the authorities of its own country or of requests made by parties in internal proceedings.

## Article 11

In the execution of a Letter of Request the person concerned may refuse to give evidence in so far as he has a privilege or duty to refuse to give the evidence –
a)    under the law of the State of execution; or
b)    under the law of the State of origin, and the privilege or duty has been specified in the Letter, or, at the instance of the requested authority, has been otherwise confirmed to that authority by the requesting authority.

A Contracting State may declare that, in addition, it will respect privileges and duties existing under the law of States other than the State of origin and the State of execution, to the extent specified in that declaration.

## Article 12

The execution of a Letter of Request may be refused only to the extent that –
a)    in the State of execution the execution of the Letter does not fall within the functions of the judiciary; or
b)    the State addressed considers that its sovereignty or security would be prejudiced thereby.

Execution may not be refused solely on the ground that under its internal law the State of execution claims exclusive jurisdiction over the subject-matter of the action or that its internal law would not admit a right of action on it.

## Article 13

The documents establishing the execution of the Letter of Request shall be sent by the requested authority to the requesting authority by the same channel which was used by the latter.
In every instance where the Letter is not executed in whole or in part, the requesting authority shall be informed immediately through the same channel and advised of the reasons.

## Article 14

The execution of the Letter of Request shall not give rise to any reimbursement of taxes or costs of any nature.
Nevertheless, the State of execution has the right to require the State of origin to reimburse the fees paid to experts and interpreters and the costs occasioned by the use of a special procedure requested by the State of origin under Article 9, paragraph 2.
The requested authority whose law obliges the parties themselves to secure evidence, and which is not able itself to execute the Letter, may, after having obtained the consent of the requesting authority, appoint a suitable person to do so. When seeking this consent the requested authority shall indicate the approximate costs which would result from this procedure. If the requesting authority gives its consent it shall reimburse any costs incurred; without such consent the requesting authority shall not be liable for the costs.

CHAPTER II – TAKING OF EVIDENCE BY DIPLOMATIC OFFICERS, CONSULAR AGENTS AND COMMISSIONERS

Article 15

In a civil or commercial matter, a diplomatic officer or consular agent of a Contracting State may, in the territory of another Contracting State and within the area where he exercises his functions, take the evidence without compulsion of nationals of a State which he represents in aid of proceedings commenced in the courts of a State which he represents.

A Contracting State may declare that evidence may be taken by a diplomatic officer or consular agent only if permission to that effect is given upon application made by him or on his behalf to the appropriate authority designated by the declaring State.

Article 16

A diplomatic officer or consular agent of a Contracting State may, in the territory of another Contracting State and within the area where he exercises his functions, also take the evidence, without compulsion, of nationals of the State in which he exercises his functions or of a third State, in aid of proceedings commenced in the courts of a State which he represents, if –

a)   a competent authority designated by the State in which he exercises his functions has given its permission either generally or in the particular case, and

b)   he complies with the conditions which the competent authority has specified in the permission.

A Contracting State may declare that evidence may be taken under this Article without its prior permission.

Article 17

In a civil or commercial matter, a person duly appointed as a commissioner for the purpose may, without compulsion, take evidence in the territory of a Contracting State in aid of proceedings commenced in the courts of another Contracting State if –

a)   a competent authority designated by the State where the evidence is to be taken has given its permission either generally or in the particular case; and

b)   he complies with the conditions which the competent authority has specified in the permission.

A Contracting State may declare that evidence may be taken under this Article without its prior permission.

Article 18

A Contracting State may declare that a diplomatic officer, consular agent or commissioner authorised to take evidence under Articles 15, 16 or 17, may apply to the competent authority designated by the declaring State for appropriate assistance to obtain the evidence by compulsion. The declaration may contain such conditions as the declaring State may see fit to impose.

If the authority grants the application it shall apply any measures of compulsion which are appropriate and are prescribed by its law for use in internal proceedings.

Article 19

The competent authority, in giving the permission referred to in Articles 15, 16 or 17, or in granting the application referred to in Article 18, may lay down such conditions as it deems fit, *inter alia*, as to the time and place of the taking of the evidence. Similarly it may require that it be given reasonable advance notice of the time, date and place of the taking of the evidence; in such a case a representative of the authority shall be entitled to be present at the taking of the evidence.

Article 20

In the taking of evidence under any Article of this Chapter persons concerned may be legally represented.

Article 21

Where a diplomatic officer, consular agent or commissioner is authorised under Articles 15, 16 or 17 to take evidence –

a) he may take all kinds of evidence which are not incompatible with the law of the State where the evidence is taken or contrary to any permission granted pursuant to the above Articles, and shall have power within such limits to administer an oath or take an affirmation;

b) a request to a person to appear or to give evidence shall, unless the recipient is a national of the State where the action is pending, be drawn up in the language of the place where the evidence is taken or be accompanied by a translation into such language;

c) the request shall inform the person that he may be legally represented and, in any State that has not filed a declaration under Article 18, shall also inform him that he is not compelled to appear or to give evidence;

d) the evidence may be taken in the manner provided by the law applicable to the court in which the action is pending provided that such manner is not forbidden by the law of the State where the evidence is taken;

e) a person requested to give evidence may invoke the privileges and duties to refuse to give the evidence contained in Article 11.

Article 22

The fact that an attempt to take evidence under the procedure laid down in this Chapter has failed, owing to the refusal of a person to give evidence, shall not prevent an application being subsequently made to take the evidence in accordance with Chapter I.

CHAPTER III — GENERAL CLAUSES

Article 23

A Contracting State may at the time of signature, ratification or accession, declare that it will not execute Letters of Request issued for the purpose of obtaining pre-trial discovery of documents as known in Common Law countries.

Article 24

A Contracting State may designate other authorities in addition to the Central Authority and shall determine the extent of their competence. However, Letters of Request may in all cases be sent to the Central Authority.
Federal States shall be free to designate more than one Central Authority.

Article 25

A Contracting State which has more than one legal system may designate the authorities of one of such systems, which shall have exclusive competence to execute Letters of Request pursuant to this Convention.

Article 26

A Contracting State, if required to do so because of constitutional limitations, may request the reimbursement by the State of origin of fees and costs, in connection with the execution of Letters of

Request, for the service of process necessary to compel the appearance of a person to give evidence, the costs of attendance of such persons, and the cost of any transcript of the evidence.

Where a State has made a request pursuant to the above paragraph, any other Contracting State may request from that State the reimbursement of similar fees and costs.


## Article 27

The provisions of the present Convention shall not prevent a Contracting State from –

a)  declaring that Letters of Request may be transmitted to its judicial authorities through channels other than those provided for in Article 2;

b)  permitting, by internal law or practice, any act provided for in this Convention to be performed upon less restrictive conditions;

c)  permitting, by internal law or practice, methods of taking evidence other than those provided for in this Convention.


## Article 28

The present Convention shall not prevent an agreement between any two or more Contracting States to derogate from –

a)  the provisions of Article 2 with respect to methods of transmitting Letters of Request;

b)  the provisions of Article 4 with respect to the languages which may be used;

c)  the provisions of Article 8 with respect to the presence of judicial personnel at the execution of Letters;

d)  the provisions of Article 11 with respect to the privileges and duties of witnesses to refuse to give evidence;

e)  the provisions of Article 13 with respect to the methods of returning executed Letters to the requesting authority;

f)  the provisions of Article 14 with respect to fees and costs;

g)  the provisions of Chapter II.


## Article 29

Between Parties to the present Convention who are also Parties to one or both of the Conventions on Civil Procedure signed at The Hague on the 17th of July 1905 and the 1st of March 1954, this Convention shall replace Articles 8-16 of the earlier Conventions.


## Article 30

The present Convention shall not affect the application of Article 23 of the Convention of 1905, or of Article 24 of the Convention of 1954.


## Article 31

Supplementary Agreements between Parties to the Conventions of 1905 and 1954 shall be considered as equally applicable to the present Convention unless the Parties have otherwise agreed.


## Article 32

Without prejudice to the provisions of Articles 29 and 31, the present Convention shall not derogate from conventions containing provisions on the matters covered by this Convention to which the Contracting States are, or shall become Parties.

## Article 33

A State may, at the time of signature, ratification or accession exclude, in whole or in part, the application of the provisions of paragraph 2 of Article 4 and of Chapter II. No other reservation shall be permitted. Each Contracting State may at any time withdraw a reservation it has made; the reservation shall cease to have effect on the sixtieth day after notification of the withdrawal.
When a State has made a reservation, any other State affected thereby may apply the same rule against the reserving State.

## Article 34

A State may at any time withdraw or modify a declaration.

## Article 35

A Contracting State shall, at the time of the deposit of its instrument of ratification or accession, or at a later date, inform the Ministry of Foreign Affairs of the Netherlands of the designation of authorities, pursuant to Articles 2, 8, 24 and 25.
A Contracting State shall likewise inform the Ministry, where appropriate, of the following –
*a)* the designation of the authorities to whom notice must be given, whose permission may be required, and whose assistance may be invoked in the taking of evidence by diplomatic officers and consular agents, pursuant to Articles 15, 16 and 18 respectively;
*b)* the designation of the authorities whose permission may be required in the taking of evidence by commissioners pursuant to Article 17 and of those who may grant the assistance provided for in Article 18;
*c)* declarations pursuant to Articles 4, 8, 11, 15, 16, 17, 18, 23 and 27;
*d)* any withdrawal or modification of the above designations and declarations;
*e)* the withdrawal of any reservation.

## Article 36

Any difficulties which may arise between Contracting States in connection with the operation of this Convention shall be settled through diplomatic channels.

## Article 37

The present Convention shall be open for signature by the States represented at the Eleventh Session of the Hague Conference on Private International Law.
It shall be ratified, and the instruments of ratification shall be deposited with the Ministry of Foreign Affairs of the Netherlands.

## Article 38

The present Convention shall enter into force on the sixtieth day after the deposit of the third instrument of ratification referred to in the second paragraph of Article 37.
The Convention shall enter into force for each signatory State which ratifies subsequently on the sixtieth day after the deposit of its instrument of ratification.

## Article 39

Any State not represented at the Eleventh Session of the Hague Conference on Private International Law which is a Member of this Conference or of the United Nations or of a specialised agency of that Organisation, or a Party to the Statute of the International Court of Justice may accede to the present Convention after it has entered into force in accordance with the first paragraph of Article 38.
The instrument of accession shall be deposited with the Ministry of Foreign Affairs of the Netherlands.
The Convention shall enter into force for a State acceding to it on the sixtieth day after the deposit of its instrument of accession.

The accession will have effect only as regards the relations between the acceding State and such Contracting States as will have declared their acceptance of the accession. Such declaration shall be deposited at the Ministry of Foreign Affairs of the Netherlands; this Ministry shall forward, through diplomatic channels, a certified copy to each of the Contracting States.

The Convention will enter into force as between the acceding State and the State that has declared its acceptance of the accession on the sixtieth day after the deposit of the declaration of acceptance.


## Article 40

Any State may, at the time of signature, ratification or accession, declare that the present Convention shall extend to all the territories for the international relations of which it is responsible, or to one or more of them. Such a declaration shall take effect on the date of entry into force of the Convention for the State concerned.

At any time thereafter, such extensions shall be notified to the Ministry of Foreign Affairs of the Netherlands.

The Convention shall enter into force for the territories mentioned in such an extension on the sixtieth day after the notification indicated in the preceding paragraph.


## Article 41

The present Convention shall remain in force for five years from the date of its entry into force in accordance with the first paragraph of Article 38, even for States which have ratified it or acceded to it subsequently.

If there has been no denunciation, it shall be renewed tacitly every five years.

Any denunciation shall be notified to the Ministry of Foreign Affairs of the Netherlands at least six months before the end of the five year period.

It may be limited to certain of the territories to which the Convention applies.

The denunciation shall have effect only as regards the State which has notified it. The Convention shall remain in force for the other Contracting States.


## Article 42

The Ministry of Foreign Affairs of the Netherlands shall give notice to the States referred to in Article 37, and to the States which have acceded in accordance with Article 39, of the following –

a)    the signatures and ratifications referred to in Article 37;
b)    the date on which the present Convention enters into force in accordance with the first paragraph of Article 38;
c)    the accessions referred to in Article 39 and the dates on which they take effect;
d)    the extensions referred to in Article 40 and the dates on which they take effect;
e)    the designations, reservations and declarations referred to in Articles 33 and 35;
f)    the denunciations referred to in the third paragraph of Article 41.


In witness whereof the undersigned, being duly authorised thereto, have signed the present Convention.

Done at The Hague, on the 18th day of March, 1970, in the English and French languages, both texts being equally authentic, in a single copy which shall be deposited in the archives of the Government of the Netherlands, and of which a certified copy shall be sent, through the diplomatic channel, to each of the States represented at the Eleventh Session of the Hague Conference on Private International Law.

Case 1:18-cv-25337-KMM   Document 226-2   Entered on FLSD Docket 03/02/2023   Page 49 of 93

# STATUS TABLE

## 20: Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters

Entry into force: 7-X-1972

Last update: 19-I-2023
Number of Contracting Parties to this Convention: 65
*The expression "Contracting Party" covers both cases in which the Convention has,*
*and cases in which the Convention has not yet, entered into force for that Party following the deposit of its instrument of ratification,*
*accession, acceptance or approval (see column EIF in the chart).*

🖶 View and/or print full status report

Contracting Parties to this Convention that are also Members of the HCCH (i.e., the Organisation) are in bold; Contracting Parties that are not Members of the HCCH are in *italics*.

| Contracting Party | S [1] | R/A/S [2] | Type [3] | EIF [4] | EXT [5] | Auth [6] | Res/D/N/DC [7] |
|---|---|---|---|---|---|---|---|
| Albania | | 16-VII-2010 | A* | 14-IX-2010 | | 1 | D |
| Andorra | | 26-IV-2017 | A* | 25-VI-2017 | | 2 | D,Res |
| Argentina | | 8-V-1987 | A* | 7-VII-1987 | | 1 | D,Res |
| Armenia | | 27-VI-2012 | A* | 26-VIII-2012 | | 1 | D,Res |
| Australia | | 23-X-1992 | A* | 22-XII-1992 | | 3 | D,Res |
| *Barbados* | | 5-III-1981 | A* | 4-V-1981 | | 1 | |
| Belarus | | 7-VIII-2001 | A* | 6-X-2001 | | 2 | D,Res |
| Bosnia and Herzegovina | | 16-VI-2008 | A* | 15-VIII-2008 | | 1 | |
| Brazil | | 9-IV-2014 | A* | 8-VI-2014 | | 1 | D,Res |
| Bulgaria | | 23-XI-1999 | A* | 22-I-2000 | | 2 | D,Res |
| China | | 8-XII-1997 | A* | 6-II-1998 | | 4 | D,N,Res |
| *Colombia* | | 13-I-2012 | A* | 13-III-2012 | | 1 | |
| Costa Rica | | 16-III-2016 | A* | 15-V-2016 | | 1 | |

| Contracting Party | S [1] | R/A/S [2] | Type [3] | EIF [4] | EXT [5] | Auth [6] | Res/D/N/DC [7] |
|---|---|---|---|---|---|---|---|
| Croatia | | 1-X-2009 | A* | 30-XI-2009 | | 1 | D,Res |
| Cyprus | | 13-I-1983 | A* | 14-III-1983 | | 3 | D,Res |
| Czech Republic | | 28-VI-1993 | Su | 1-I-1993 | | 2 | D |
| Denmark | 18-IV-1972 | 20-VI-1972 | R | 7-X-1972 | | 2 | D,Res |
| El Salvador | | 19-I-2023 | A* | 20-III-2023 | | 1 | D,Res |
| Estonia | | 2-II-1996 | A* | 2-IV-1996 | | 2 | D |
| Finland | 9-III-1976 | 7-IV-1976 | R | 6-VI-1976 | | 2 | D,Res |
| France | 24-VIII-1972 | 7-VIII-1974 | R | 6-X-1974 | 1 | 2 | D,Res |
| Georgia | | 31-V-2021 | A* | 30-VII-2021 | | 1 | D,Res |
| Germany | 18-III-1970 | 27-IV-1979 | R | 26-VI-1979 | | 2 | D,Res |
| Greece | 18-I-2005 | 18-I-2005 | R | 19-III-2005 | | 2 | D,Res |
| Hungary | | 13-VII-2004 | A* | 11-IX-2004 | | 2 | D,Res |
| Iceland | | 10-XI-2008 | A* | 9-I-2009 | | 1 | D,Res |
| India | | 7-II-2007 | A* | 8-IV-2007 | | 3 | D |
| Israel | 11-XI-1977 | 19-VII-1979 | R | 17-IX-1979 | | 2 | D |
| Italy | 6-II-1975 | 22-VI-1982 | R | 21-VIII-1982 | | 2 | D |
| Kazakhstan | | 26-IX-2016 | A* | 25-XI-2016 | | 2 | D,Res |
| *Kuwait* | | 8-V-2002 | A* | 7-VII-2002 | | 1 | |
| Latvia | | 28-III-1995 | A* | 27-V-1995 | | 2 | D |
| *Liechtenstein* | | 12-XI-2008 | A* | 11-I-2009 | | 1 | D |
| Lithuania | | 2-VIII-2000 | A* | 1-X-2000 | | 2 | D,Res |
| Luxembourg | 2-V-1975 | 26-VII-1977 | R | 24-IX-1977 | | 2 | D,Res |
| Malta | | 24-II-2011 | A* | 25-IV-2011 | | 2 | Res |
| Mexico | | 27-VII-1989 | A* | 25-IX-1989 | | 1 | D,Res |
| Monaco | | 17-I-1986 | A* | 18-III-1986 | | 2 | D,Res |
| Montenegro | | 16-I-2012 | A* | 16-III-2012 | | 2 | D,Res |
| Morocco | | 24-III-2011 | A* | 23-V-2011 | | 1 | |
| Netherlands | | 8-IV-1981 | R | 7-VI-1981 | 1 | 3 | D,Res |

| Contracting Party | S [1] | R/A/S [2] | Type [3] | EIF [4] | EXT [5] | Auth [6] | Res/D/N/DC [7] |
|---|---|---|---|---|---|---|---|
| Nicaragua | | 27-II-2019 | A* | 28-IV-2019 | | 1 | Res,DC |
| North Macedonia | | 19-III-2009 | A* | 18-V-2009 | | | D |
| Norway | 18-III-1970 | 3-VIII-1972 | R | 7-X-1972 | | 3 | D,Res |
| Poland | | 13-II-1996 | A* | 13-IV-1996 | | 3 | Res |
| Portugal | 18-III-1970 | 12-III-1975 | R | 11-V-1975 | | 2 | D,Res |
| Republic of Korea | | 14-XII-2009 | A* | 12-II-2010 | | 2 | D,Res |
| Romania | | 21-VIII-2003 | A* | 20-X-2003 | | 2 | D,Res |
| Russian Federation | | 1-V-2001 | A* | 30-VI-2001 | | | D |
| Serbia | | 2-VII-2010 | A* | 31-VIII-2010 | | 3 | D |
| *Seychelles* | | 7-I-2004 | A* | 7-III-2004 | | 2 | D |
| Singapore | | 27-X-1978 | A* | 26-XII-1978 | | 1 | D,Res |
| Slovakia | | 15-III-1993 | Su | 1-I-1993 | | 2 | D |
| Slovenia | | 18-IX-2000 | A* | 17-XI-2000 | | 1 | |
| South Africa | | 8-VII-1997 | A* | 6-IX-1997 | | 3 | D,Res |
| Spain | 21-X-1976 | 22-V-1987 | R | 21-VII-1987 | | 2 | D,Res |
| Sri Lanka | | 31-VIII-2000 | A* | 30-X-2000 | | 1 | D,Res |
| Sweden | 21-IV-1975 | 2-V-1975 | R | 1-VII-1975 | | 1 | D |
| Switzerland | 21-V-1985 | 2-XI-1994 | R | 1-I-1995 | | 3 | D,Res |
| Türkiye | 13-XII-2000 | 13-VIII-2004 | R | 12-X-2004 | | 2 | D,Res |
| Ukraine | | 1-II-2001 | A* | 1-IV-2001 | | 2 | D,Res |
| United Kingdom of Great Britain and Northern Ireland | 18-III-1970 | 16-VII-1976 | R | 14-IX-1976 | 8 | 3 | D,N,Res |
| United States of America | 27-VII-1970 | 8-VIII-1972 | R | 7-X-1972 | 3 | 3 | D |
| Venezuela (Bolivarian Republic of) | | 1-XI-1993 | A* | 31-XII-1993 | | 1 | D,Res |
| Viet Nam | | 4-III-2020 | A* | 3-V-2020 | | 1 | D |

1) S = Signature

2) R/A/Su = Ratification, Accession or Succession

3) Type = R: Ratification;

    A: Accession;

    A*: Accession giving rise to an acceptance procedure; click on A* for details of acceptances of the accession;

    $A^{EU}$: Accession by the European Union

    $A^{EU}$*: State bound as a result of the accession by the European Union

    A**: Objection

    C: Continuation;

    Su: Succession;

    Den: Denunciation;

4) EIF = Entry into force

5) EXT = Extensions of application

6) Authorities per Convention = Designation of Authorities

7) Res/D/N/DC = Reservations, declarations, notifications or depositary communications

Caution
As of: March 1, 2023 7:56 PM Z

## *United States v. $343,726.60 in United States Currency*

United States Court of Appeals for the Eleventh Circuit

March 31, 2008, Decided; March 31, 2008, Filed

No. 07-14143 Non-Argument Calendar

**Reporter**
271 Fed. Appx. 972 *; 2008 U.S. App. LEXIS 7228 **

UNITED STATES OF AMERICA, Plaintiff-Counter-Defendant-Appellee, versus $ 343,726.60 in U.S. currency seized from Scottrade account # XXXX3422, $ 29,159.86, in U.S. currency seized from Washington Mutual Bank account # XXXXXXXXXXX3929, Defendants, ARTHUR VANMOOR, Claimant-Appellant, versus SCOTTRADE, Third-Party-Defendant.

**Notice:** PLEASE REFER TO FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1 GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.

**Prior History: [**1]** Appeal from the United States District Court for the Southern District of Florida. D. C. Docket No. 05-20513-CV-AJ.

*United States v. $343,726.60 in United States Currency, 2005 U.S. Dist. LEXIS 54479 (S.D. Fla., Aug. 10, 2005)*

**Disposition:** AFFIRMED.

## Core Terms

district court, forfeiture, Fugitive, report and recommendation, motion to dismiss, civil forfeiture, discovery, discovery violation, forfeiture claim, lesser sanction, criminal case, Disentitlement Act, deposition, sanctions, abused, notice, funds

## Case Summary

### Procedural Posture

Appellant sought review of a judgment from the United States District Court for the Southern District of Florida, which granted a motion filed by appellee, the United States, to dismiss appellant's claim pursuant to the Fugitive Disentitlement Act, *28 U.S.C.S. § 2466*. Alternatively, the district court dismissed appellant's

claim for discovery violations.

### Overview

The U.S. brought an action seeking forfeiture of funds that were allegedly the proceeds of a prostitution business operated by appellant. Appellant made a claim to the funds. The U.S. filed a motion to dismiss the claim pursuant to *§ 2466*. The court held that the district court correctly determined that (1) the civil forfeiture case and the pending criminal case against appellant were sufficiently related to invoke the authority to dismiss under *§ 2466*; (2) appellant had notice of the criminal charges against him; (3) appellant declined to reenter the U.S. to defend against the civil forfeiture; and (4) appellant was not held in custody in any other jurisdiction for commission of criminal conduct in that jurisdiction. The court also agreed with the district court's alternative dismissal based upon appellant's discovery violations. Specifically, appellant engaged in a campaign to avoid complying with discovery and to delay the litigation. The district court considered appellant's request for lesser sanctions, and determining they would be ineffective in this case, the district court was not required to impose additional futile sanctions before dismissing appellant's claim.

### Outcome
The court affirmed the district court's judgment.

## LexisNexis® Headnotes

Civil Procedure > Judicial Officers > Judges > Discretionary Powers

Civil Procedure > Discovery & Disclosure > Discovery > Misconduct During Discovery

Leon Patricios

271 Fed. Appx. 972, *972; 2008 U.S. App. LEXIS 7228, **1

Civil Procedure > Sanctions > Misconduct & Unethical Behavior > General Overview

HN1[⬇] Judges, Discretionary Powers

A district court has broad discretion in the imposition of sanctions. Sanctions for discovery abuses are intended to prevent unfair prejudice to litigants and to insure the integrity of the discovery process.

**Counsel:** For Arthur Vanmoor, Appellant: Montgomery Blair Sibley, Montgomery Blair Sibley, Chrt., WASHINGTON, DC.

For United States of America, Appellee: Madeleine R. Shirley, Anne R. Schultz, U.S. Attorney's Office, Carol E. Herman, MIAMI, FL.

**Judges:** Before ANDERSON, DUBINA and HULL, Circuit Judges.

# Opinion

[*972] PER CURIAM:

The United States ("the government") brought this action seeking forfeiture of funds that were allegedly the proceeds of a prostitution business operated by Arthur [*973] Vanmoor ("Vanmoor"). Subsequently, Vanmoor made a claim to the funds. Thereafter, the government filed a motion to dismiss Vanmoor's claim pursuant to the Fugitive Disentitlement Act, 28 U.S.C. § 2466. The government's motion was referred to a magistrate judge who issued a report and recommendation recommending that the government's motion to dismiss be granted. Vanmoor objected to the report and recommendation on the grounds that he is not a fugitive and that this forfeiture proceeding is not related to the criminal cases pending against him. The district court overruled Vanmoor's objections to the magistrate judge's [**2] report and recommendation and granted the government's motion to dismiss Vanmoor's claim pursuant to the Fugitive Disentitlement Act. Alternatively, the district court dismissed Vanmoor's claim for discovery violations.

After reviewing the record and reading the parties' briefs, we conclude that the district court properly denied Vanmoor's forfeiture claim based on the Fugitive Disentitlement doctrine. The district court correctly determined that (1) the civil forfeiture case and the pending criminal case against Vanmoor were sufficiently

related to invoke the authority to dismiss under § 2466; (2) Vanmoor had notice of the criminal charges against him; (3) Vanmoor declined to reenter the United States to defend against the civil forfeiture; and (4) Vanmoor was not held in custody in any other jurisdiction for commission of criminal conduct in that jurisdiction.

Moreover, even if we were to conclude that the district court somehow erred or otherwise abused its discretion in dismissing Vanmoor's forfeiture claim under 28 U.S.C. § 2466, we agree with the district court's alternative dismissal based upon Vanmoor's discovery violations. Specifically, Vanmoor first refused to appear for deposition [**3] after having been properly noticed by the government. Additionally, Vanmoor defied the district court's subsequent orders to appear after the government moved to compel his appearance at a deposition in the United States. Thereafter, Vanmoor and his counsel engaged in a campaign to avoid complying with discovery and to delay the litigation.

Initially, the district court considered Vanmoor's request for lesser sanctions. HN1[⬆] A district court has broad discretion in the imposition of sanctions. Flury v. Daimler Chrysler Corp., 427 F.3d 939, 944 (11th Cir. 2005). "[S]anctions for discovery abuses are intended to prevent unfair prejudice to litigants and to insure the integrity of the discovery process." Id. Because lesser sanctions proved to be ineffective in this case, however, the district court was not required to impose additional futile sanctions before dismissing Vanmoor's claim. See Malautea v. Suzuki Motor Co., Ltd., 987 F.2d 1536, 1544 (11th Cir. 1993); Fed. R. Civ. P. 37.

Vanmoore's remaining arguments in this appeal, that the district court erred in denying Vanmoor's own motion to dismiss the forfeiture complaint as moot and that the delay in the civil forfeiture proceedings violated [**4] his constitutional due process rights, are meritless. Because we conclude that there is no merit to any of the arguments Vanmoor makes in this appeal, we affirm the district court's judgment of forfeiture.

**AFFIRMED.**

End of Document

Caution
As of: March 1, 2023 7:42 PM Z

# *United States v. Kokko*

United States District Court for the Southern District of Florida

July 30, 2007, Decided; July 30, 2007, Entered

CASE NO. 06-20065-CR-LENARD/TORRES

**Reporter**

2007 U.S. Dist. LEXIS 54885 *; 2007 WL 2209260

UNITED STATES OF AMERICA, v. PENTTI KALEVI KOKKO, Defendant. AERSPED LTD. INTERNATIONAL, Petitioner/Claimant.

## Core Terms

watches, forfeiture, deposition, discovery, subpoena, bailee, allegations, claimant, assertions, amended petition, travel, forfeiture of property, motion to quash, circumstances, clarification, forfeited, contends, argues

**Counsel:** [*1] For USA, Plaintiff: Alison Whitney Lehr, Sean Paul Cronin, LEAD ATTORNEYS, United States Attorney's Office, Miami, FL.

**Judges:** EDWIN G. TORRES, United States Magistrate Judge.

**Opinion by:** EDWIN G. TORRES

## Opinion

### *OMNIBUS ORDER*

This matter is before the Court on Petitioner's Motion for Hearing [**D.E. 25**], government's Motion for Discovery [**D.E. 27**]; Petitioner's Motion to Quash Subpoena Duces Tecum [**D.E. 28**]; government's Motion for Clarification of Claim, or in the Alternative, to Strike Claim of the Petitioner Aersped Ltd. [**D.E. 29**]; and related pleadings. After considering all pleadings filed and being fully advised in the premises, the Court grants the government's motion for clarification of Petitioner's claim. In light of this ruling, the Court prospectively grants the government's motion for discovery, denies Petitioner's motion to quash subpoena duces tecum, and denies without prejudice Petitioner's request for a hearing, for the reasons set forth below.

## *I. BACKGROUND*

On January 31, 2006, defendant Pentti Kalevi Kokko ("Kokko") was charged by indictment with knowingly and intentionally attempting to introduce into the commerce of the United States forty-nine (49) watches by means of a fraudulent and false invoice, [*2] declaration, affidavit, letter, paper and statement, in violation of *18 U.S.C. § 542*. [D.E. 7, Count 1]. The indictment sought forfeiture of Kokko's interest in the 49 watches. *Id.* On March 6, 2006, Kokko pled guilty to the aforementioned charge and agreed to forfeiture of the watches. [D.E. 18]. Kokko also executed a Consent to Forfeiture in which he specifically averred that he was the owner of the 49 watches, no other person or entity had an ownership interest in the watches, and he expressly agreed to the forfeiture of his right, title, and interest in the watches. [D.E. 19]. On March 22, 2006, the Court entered a Preliminary Order of Forfeiture [D.E. 22] that was later incorporated into Kokko's sentence. [D.E. 24].

### *A. Aersped's Opposition to Forfeiture of the 49 Watches*

On April 28, 2006, Petitioner Aersped Ltd. International ("Aersped") filed a "Petition for Hearing" alleging that it was a freight forwarder based in Switzerland that was "retained by the owners of the watches to deliver the watches to Miami on a consignment basis." [D.E. 25]. In the Petition, which was signed by Aersped's Managing Director under penalty of perjury, Aersped alleges that it employed Kokko to hand-carry [*3] the watches on a flight from Zurich to Miami. Aersped asserts a right, title, or interest in the watches as bailee for the benefit of the watch owners.

Aersped opposes the government's attempt to forfeit the watches on the ground that it is unaware upon which statute the government is relying for forfeiture. Aersped

also argues that the forfeiture of the watches would violate the *Excessive Fines Clause of the Eighth Amendment*. Aersped compares forfeiture of the 49 watches, valued at $ 346,300, with Kokko's offense (failure to declare to Customs the value of items brought into this country), and concludes that forfeiture would be grossly disproportionate to the gravity of the offense. Further, Aersped notes that Kokko was ordered to pay $ 20,778 in restitution, which apparently was the duty that would have been due on the watches at the time of entry into the United States. Aersped suggests that the amount of money recoverable through forfeiture is so much larger than the fine imposed by the Court that it bears no articulable correlation to any injury suffered by the government. Finally, citing *28 C.F.R. §§ 9.8(a)* and *9.2(v)*, Aersped claims to be a victim of Kokko's criminal act, therefore **[*4]** the watches should be returned to it (Aersped).

On June 6, 2006, the government moved for clarification of Aersped's claim to the watches or, in the alternative, to strike the claim entirely [D.E. 29] on the grounds that Aersped had failed to demonstrate statutory standing and failed to state a claim upon which relief may be granted. The government contends that Aersped's assertions are not within the statutory parameters prescribed by *21 U.S.C. § 853(n)(3)* and *§§ 853(n)(6)(A)* or *(n)(6)(B)*.

Pursuant to *21 U.S.C. § 853(n)(2)*, a third party wishing to assert an interest in property subject to a preliminary order of criminal forfeiture must timely petition for adjudication of that interest. The petition "shall be signed by the petitioner under penalty of perjury and shall set forth the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, any additional facts supporting the petitioner's claim, and the relief sought." *21 U.S.C. § 853(n)(3)*. The government argues that Aersped has not explicitly stated the nature of its right, title, and interest in the watches **[*5]** nor the time and circumstances of its acquisition of the watches, and does not provide additional facts supporting its claim to the watches as required by *21 U.S.C. § 853(n)(3)*. Accordingly, the government alleges, the assertions contained in Aersped's Petition are simply insufficient to satisfy the standing requirement of *§ 853(n)(3)* and that a hearing to adjudicate Aersped's interest in the watches is premature at this point. Instead of seeking dismissal of Aersped's petition, however, the government asks that Aersped be required to modify its claim to meet the requirements of this statute.

The government also contends that Aersped's petition does not state a claim for relief under either *21 U.S.C. §§ 853(n)(6)(A)* or *(B)*. These provisions set forth the two grounds for recovery in an ancillary proceeding such as the instant one:

(6) If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that-

(A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner **[*6]** rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or

(B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section;

the court shall amend the order of forfeiture in accordance with its determination.

*21 U.S.C. § 853(n)(6)*.

The government argues that Aersped's bare assertion that it was delivering watches to Miami on a consignment basis does not satisfy either of these two grounds in that Aersped has failed to establish that its interest is superior to that of Kokko's or that it was a *bona fide* purchaser of the watches without reasonable cause to believe that they were the subject of forfeiture at the time of purchase. Consequently, unless Aersped amends its claim to demonstrate an actionable interest under either *§ 853(n)(6)(A)* or *(B)*, the government contends the claim should be dismissed for failure to state a claim upon which relief may be granted. [1]

Aersped thereafter responded in opposition to the

---

[1] The government **[*7]** also responded directly to the contentions raised in Aersped's Petition concerning Aersped's lack of knowledge of the particular statute the government was relying on to forfeit the watches; Aersped's argument that forfeiture would violate the *Excessive Fines Clause of the Eighth Amendment*; and Aersped's claim that it was a victim of Kokko's crime. The Court need not address these contentions in light of its ruling on statutory standing in Section II.A., *infra*.

government's motion for clarification or to strike. [D.E. 34]. It contends that the allegations already presented through its verified Petition -- that it is a Swiss freight forwarder entrusted by the owners of the watches to deliver them to the United States, that it has a right, title and interest in the watches as a bailee, and that it is a victim for purposes of this proceeding - satisfy the standing requirements of *§ 853(n)*. Moreover, Aersped claims, it *has* stated a claim for relief under *§ 853(n)(6)(A)* by demonstrating that Kokko was merely a hired courier without any legal interest in the watches, meaning he had no interest that he could forfeit to the government, and thus **[*8]** Aersped's interest in the watches is superior to that of the government's. Aersped concludes that it need not amend its Petition and that the watches should be returned to it pursuant to *§ 853(n)(6)(A)*.

In reply [D.E. 35], the government counters that Aersped's allegations that it is the bailee of the watches and that Kokko was merely a courier are only bare assertions, unsupported by any information let alone sworn information, and are insufficient to constitute a proper claim under *§ 853(n)(3)*. The government again points out that Aersped has failed to provide any information regarding how, when, and from whom it acquired the watches, as required by *§ 853(n)(3)*. Furthermore, the government notes that Aersped's assertion that Kokko was merely a courier with no interest in the watches directly contradicts Kokko's statement that he owned the watches and was unaware of any other person or entity with an ownership interest in them. [D.E. 19]. The government posits that Aersped should be required to make a sufficient showing of standing and entitlement to pursue its claim in this Court by complying with the explicit provisions of *§ 853(n)(3)*. Until Aersped demonstrates *facts* surrounding **[*9]** its alleged bailment of the watches and its alleged relationship to Kokko, the government argues, neither it nor this Court can determine whether Aersped's interest in the watches is legal and superior to the government's.

### B. Government's Request to Conduct Discovery

Shortly after Aersped filed its original Petition, the government sought an order authorizing discovery pursuant to *Fed. R. Crim. P. 32.2(c)(1)(B)*. [D.E. 27]. The stated purpose of the discovery was to permit the government to explore the basis for Aersped's claim to

the 49 watches. [2] At the same time, the government served a *Fed. R. Civ. P. 30(b)(6)* deposition subpoena *duces tecum* and notice of taking deposition on Aersped. [D.E. 30 at 2, P 4]. Aersped responded with a motion to quash the subpoena and to require any deposition that might be authorized to take place in Switzerland. [D.E. 28]. The sole basis articulated for quashing the subpoena is that Aersped is a Swiss company and its *30(b)(6)* witness is a citizen of Switzerland and a foreign national who is located outside the Court's subpoena power. [D.E. 28].

The government challenges Aersped's claim that it is beyond the subpoena power of this Court. [D.E. 30]. It notes that Aersped is not merely a witness in this case, it is a party/intervenor who is seeking affirmative relief from this Court, i.e., the return of the 49 watches, accordingly it is subject to the subpoena power of this Court. Moreover, the government asserts that Aersped must produce its *30(b)(6)* witness for deposition here in Miami, the location chosen by the party setting the deposition (i.e., the government). The government contends that, if Aersped's motion to quash the subpoena were treated as a motion for protective order under *Fed. R. Civ. P. 26(c)(2)*, the company has failed to articulate a basis (such as undue burden or expense) for changing the location **[*11]** of the deposition to Switzerland, and thus Aersped has failed to meet the good cause requirement of this rule. Morever, the government claims that requiring it to travel to a foreign country for the deposition would be "vastly" more expensive, time-consuming, and inefficient than if the deposition were held here. In addition to travel expenses for the prosecutor handling this case, a qualified court reporter, and a qualified translator, the prosecutor would be required to obtain an official passport in order to travel on official business; obtain permission from the foreign government to take the deposition in that country; and comply with whatever discovery restrictions were imposed by the *foreign* government. The government contrasts this scenario with the lesser burden on Aersped's designated

[2] Specifically, the government seeks discovery in the following areas: (1) the basis for Aersped's claimed interest **[*10]** in, and the extent of its interest in the assets identified in this Court's Preliminary Order of Forfeiture; (2) how and from whom and for what value and under what terms Aersped obtained ownership or bailment of the assets in question; (3) the employment/contractor arrangement between Aersped and Kokko as well as directives and instructions given to Kokko; and (4) all claims and defenses of Aersped. [D.E. 27 at 2].

representative or representatives having to travel to Miami for the _**deposition**_.

## II. ANALYSIS

### A. Aersped's Petition Under 21 U.S.C. § 853(n)

A criminal _**forfeiture**_ proceeding under _21 U.S.C. § 853_ is an _in-personam_ action against a criminal defendant. Once the defendant's property is ordered forfeited, a third party "asserting a legal interest in the property forfeited to the United States" may file **[*12]** a petition pursuant to _§ 853(n)_ and argue that the forfeiture order should be modified to the extent of the third party's interest.

> (2) Any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may, within thirty days of the final publication of notice or his receipt of notice under _paragraph (1)_, whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property. The hearing shall be held before the court alone, without a jury.

_§ 853(n)(2)_. This provision permits an orderly procedure by which third parties seeking to recover interests in forfeited property may obtain judicial resolution of their claims.

As previously recited, _§ 853(n)(3)_ sets forth what must be included in the verified petition:

> the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, any additional facts supporting the petitioner's claim, and the relief sought.

_§ 853(n)(3)_. "Failure to file a petition that satisfies the requirements **[*13]** of _§ 853(n)(3)_ is grounds for dismissal without a hearing." _United States v. Pegg, 1998 WL 34309460, *2 (M.D. Ga. Nov. 25, 1998)_ (citing numerous cases so holding); _see also United States v. BCCI Holdings (Luxembourg), S.A., 956 F. Supp. 1, 4 (D.D.C. 1996)_ (court may dismiss without a hearing a petition that fails to allege all elements necessary for recovery, including those relating to standing); _cf. United States v. Toma, 1997 U.S. Dist. LEXIS 11987, 1997 WL 467280, *2 (N.D. Ill. Aug. 6, 1997)_ (petition that recited

dates and circumstances under which the claimant acquired title to property as well as additional supporting facts was deemed sufficient so that a hearing would be held to resolve factual issue of whether claimant owned the forfeited property).

The government does not dispute the ability of a bailee, as Aersped claims to be, to contest forfeiture of its property. That is well established. _See, e.g., Via Mat Int'l South America Ltd. v. United States, 446 F.3d 1258, 1262-63 (11th Cir. 2006)_ (non-owners of property, such as bailees, may also have injuries resulting from the seizure of property that are sufficient to establish standing); _United States v. $ 244,320.00, 295 F. Supp. 2d 1050, 1060-61 (S.D. Iowa 2003)_ **[*14]** (the possessory interest of a bailee of seized currency is sufficient to confer standing to contest forfeiture of that currency).

However, the government argues, and the Court agrees, that Aersped must do more than simply allege it is a bailee and that it has an interest in the watches at issue here. The plain language of _§ 853(n)(3)_ clearly requires more than what Aersped has alleged. The statute requires Aersped to set forth, in addition to the nature and extent of its right, title, or interest in the watches, "the time and circumstances of [its] acquisition of the right, title, or interest" in the watches as well as any additional facts supporting its claim. The bare allegations that it was entrusted by the owners of the watches to deliver them to Miami, and that Kokko was merely its courier, do not satisfy the explicit requirements of _§ 853(n)(3)_. _See, e.g., United States v. $ 205,991.00 in United States Currency, 1997 U.S. Dist. LEXIS 16669, 1997 WL 669839, *2 (S.D. N.Y. Oct. 28, 1997)_ (bailee who fails to identify bailor lacks standing to maintain a claim for currency subject to forfeiture); _United States v. $ 557,933.89, More or Less in U.S. Funds, 1998 U.S. Dist. LEXIS 22252, 1998 WL 817651, * 2 (E.D.N.Y. March 2, 1998)_ (no standing **[*15]** where custodian of forfeited property failed to identify the owner of property).

Although at this stage of the proceedings Aersped need not _prove_ its allegations, it must do more than simply assert it has an interest in the watches. Consistent with _§ 853(n)(3)_, a claimant of some interest in property must do more than state that interest in a conclusory fashion, as Aersped has done here. _See, e.g., Pegg, 1998 WL 34309460 at *3_ (petition which merely recited language from _§ 853(n)_ and alleged general conclusions, without providing allegations of fact as required by _§ 853(n)(3)_, insufficient and petition dismissed). "The claimant needs

to provide *some explanation of the interest* for it to qualify as a colorable possessory interest sufficient to establish standing." $244,320.00, 295 F. Supp. 2d at 1061 (court found a "substantial body of law that requires some additional showing beyond the allegation of a possessory interest" to establish standing) (emphasis supplied). The showing may not be a heavy burden, but it is a burden nonetheless. *Id. at 1062. See also United States v. $ 290,000.00 in United States Currency, 2006 U.S. Dist. LEXIS 61303, 2006 WL 2475331, *4 (D. Kan. Aug. 25, 2006)* ("The courts have consistently **[*16]** held that *unexplained* naked possession does not constitute a sufficient possessory interest to confer standing on a claimant to contest a forfeiture." (emphasis supplied)). This is particularly so in light of Kokkos's declaration that he alone owned the watches – a statement that *directly* contradicts Aersped's bare allegations.

Controlling precedent in this Circuit requires a bailee who claims entitlement to property subject to forfeiture to identify the owner of the property. "A bailee must assert for whom he acts." *United States v. $ 260,242.00 United States Currency, 919 F.2d 686, 688 (11th Cir. 1990)* (adopting holding in *United States v. $ 321,470.00, United States Currency, 874 F.2d 298, 304 (5th Cir. 1989)*, that "one claiming to have been acting as a bailee . . . in a forfeiture action must identify the owner of the property."); *see also $ 205,991.00, 1997 U.S. Dist. LEXIS 16669, 1997 WL 669839 at *2.* Without identifying *facts* supporting its claim, Aersped has not sufficiently stated a claim and cannot show that its interest is superior to that of the government's, as required by *§ 853(n)(6)(A).*

The Court concludes, based on the allegations contained in Petition, that Aersped has failed to demonstrate standing under *§ 853(n)(3)* sufficient **[*17]** to contest the forfeiture of the 49 watches. Aersped also has failed to state a claim for relief under *§ 853(n)(6)(A).* At this juncture, then, a hearing to adjudicate the validity of Aersped's interest in the watches is premature and inappropriate.

Rather than seeking to strike or dismissal of the petition, however, the government prudently requests that Aersped be required to clarify its claim. The Court grants the government's request. Aersped shall file an amended petition that satisfies *21 U.S.C § 853(n)* (as discussed herein), within twenty (20) days from the date of this Order. If Aersped does not file an amended petition within this timeframe, the Court will recommend to the Honorable Joan A. Lenard that Aersped's claim in

this action be dismissed with prejudice. If Aersped does file an amended petition, the government upon review thereof may file any authorized motion within twenty (20) days of the date Aersped files its amended pleading.

**B. Discovery**

Aersped bears the burden of proving in this proceeding, by a preponderance of the evidence, that it has both a legal interest in the 49 watches and that its interest is superior to that of the government's. *§ 853(n)(6)(A). Federal Rule of Criminal Procedure P. 32.2* **[*18]** governs criminal forfeiture proceedings, and expessly contemplates discovery in an ancillary proceeding such as this one, in accordance with the Federal Rules of Civil Procedure, if the Court determines that "discovery is necessary or desirable to resolve factual issues." *Rule 32.2(c)(1)(B).* The Court agrees with the government that discovery is both necessary and desirable so that Aersped's claim to the watches can be resolved. The particular topics identified by the government in its motion to authorize discovery, *see* footnote, *supra,* are appropriate areas of inquiry. The Court grants the government's motion for discovery, subject to the filing of an amended petition by Aersped. If and when an amended petition is filed, the government may seek discovery in any manner authorized by the rules of civil procedure.

Aersped's request that the deposition of its *30(b)(6)* representative be conducted in Switzerland is denied. Absent a showing of good cause under *Rule 26(c),* a foreign claimant in a federal forfeiture proceeding - like Aersped - can be required to be deposed in the district where the action is pending. *See generally* 8A Wright, Miller, & Marcus, **[*19]** Federal Practice and Procedure § 2112 (2d ed. 1994 & 2007 Supp.). Furthermore, the time and expense of having to travel to the United States from another country (obstacles not even raised by Aersped, the Court notes) does not constitute an undue burden. *See United States v. $ 160,066.98, 202 F.R.D. 624, 627-28 (S.D. Cal. 2001)* (forfeiture claimants located in Pakistan required to attend depositions in California). Aersped is more than just a witness in this case. It is a claimant seeking affirmative relief by invoking the jurisdiction of this Court. As such, Aersped is not beyond the subpoena power of this Court and may be compelled to produce its corporate representative for deposition in this country if it wishes to pursue a claim in this proceeding. *See United States v. One Parcel of Real Estate at 5860 North Bay Road,*

2007 U.S. Dist. LEXIS 54885, *19

*Miami Beach, Fla., 121 F.R.D. 439 (S.D. Fla. 1988)* (corporate directors who resided in Colombia were required to appear for deposition in Miami where corporation was claiming interest in forfeited property). Assuming that an amended petition is filed that complies with the applicable statute, and if and when the government seeks to depose Aersped's *30(b)(6)* witness, **[*20]** that individual (or individuals) will be required to travel to the United States for deposition.

* * *

### III. CONCLUSION

Based on the foregoing, the Court hereby **denies without prejudice** Petitioner's Motion for Hearing [**D.E. 25**]; **grants** government's Motion for Discovery [**D.E. 27**]; **denies** Petitioner's Motion to Quash Subpoena Duces Tecum [**D.E. 28**]; and **grants** government's Motion for Clarification of Claim [**D.E. 29**]. Aersped shall file an amended verified Petition within twenty (20) days of the date of this Order, as set forth above, following which the government may within twenty (20) days thereof file any appropriate motion it chooses or proceed with discovery in accordance with the *Fed. R. Civ. P. 26*.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 30th day of July, 2007.

EDWIN G. TORRES

United States Magistrate Judge

**End of Document**

◈ Positive
As of: March 1, 2023 7:43 PM Z

# *United States v. One Parcel of Real Estate*

United States District Court for the Southern District of Florida

August 10, 1988, Decided ; August 10, 1988, Filed

Nos. 87-2196-CIV-SCOTT, 87-2197-CIV-SCOTT

### Reporter
121 F.R.D. 439 \*; 1988 U.S. Dist. LEXIS 9314 \*\*

UNITED STATES of America, Plaintiff, v. ONE PARCEL OF REAL ESTATE AT 5860 NORTH BAY ROAD, MIAMI BEACH, FLORIDA, Together With All Appurtenances Thereto And All Improvements Thereon, Defendant. UNITED STATES OF America, Plaintiff, v. ONE PARCEL OF REAL ESTATE AT THREE PINE ISLAND ROAD, PLANTATION, FLORIDA, Together WithAll Appurtenances Thereto and All Improvements Thereon, Defendant. The TRAVELLERS INSURANCE COMPANY, Claimant/Counterplaintiff, v. UNITED STATES of America, Plaintiff/Counterdefendant

## Core Terms

deposition, claimant, notice, designate, cases, legal title, motions, innocent owner, managing agent, adverse party, deponents, discovery, calendar, matters, depose

## Case Summary

### Procedural Posture
The corporate claimant filed motions to permit compliance with a notice of deposition by producing a corporate representative for deposition. The underlying notices of deposition served by plaintiff federal government requested the appearance of two named directors of the claimant corporations.

### Overview
The underlying notices of deposition served by the government specifically requested the appearance of two named directors of the claimant corporations. The court determined that the procedure was correct under the Federal Rules of Civil Procedure. The two directors of the claimant corporations were properly noticed for deposition in Miami, Florida. The government sought the deposition testimony of two named directors of the claimant corporations. These two individuals resided in Medellin, Colombia, while the claimant corporations were Panamanian. Additionally, these two individuals

were related to the previous owner of the property, who was alleged to have purchased the property with proceeds derived from narcotics transactions. The government contended that these two deponents had crucial information and knowledge on the issues of standing and innocent ownership. The court agreed.

### Outcome
The court denied the claimants' motion. The court ordered the government to renotice the two named directors for deposition in Miami, Florida.

## LexisNexis® Headnotes

Business & Corporate Law > ... > Corporate Governance > Directors & Officers > General Overview

Civil Procedure > ... > Methods of Discovery > Depositions > Oral Depositions

Business & Corporate Law > Corporations > General Overview

Civil Procedure > ... > Discovery > Methods of Discovery > General Overview

### *HN1*[⬆] Corporate Governance, Directors & Officers

A party seeking to take the deposition of a corporation has two choices. The first choice is to notice the deposition of the corporation by a particular officer, director, or managing agent pursuant to *Fed. R. Civ. P. 30(b)(1)*. At such a deposition, the testimony is of the corporation and if the corporation is a party, the testimony may be used at trial by an adverse party for any purpose. *Fed. R. Civ. P. 30(a)(2)*. The second

121 F.R.D. 439, *439; 1988 U.S. Dist. LEXIS 9314, **9314

choice is to notice the deposition of the corporation without specifically naming the person to be deposed by listing in the notice a description with reasonable particularity of the matters on which examination is requested. _Fed. R. Civ. P. 30(b)(6)_. In that event, the corporation is required to designate one or more officers, directors, or managing agents or other persons who consent to testify on its behalf, and may set forth for each person designated, the matters on which he will testify. The testimony of the person or persons so designated is the testimony of the corporation and, if the corporation is a party, the testimony may be used at trial by an adverse party for any purpose. _Fed. R. Civ. P. 32(a)(2)_.

Admiralty & Maritime Law > Maritime Forfeitures & Penalties > General Overview

Civil Procedure > Remedies > Forfeitures > General Overview

Criminal Law & Procedure > Sentencing > Forfeitures > General Overview

**HN2[⤓]** **Admiralty & Maritime Law, Maritime Forfeitures & Penalties**

To establish an innocent owner defense, claimants must prove that they have more than mere legal title to the property. Mere legal title, in and of itself, does not insulate property from the reach of _21 U.S.C.S. § 881(a)(6)_. Possession of bare legal title by one who does not exercise dominion and control over the property is insufficient even to establish standing to challenge a forfeiture. Courts look behind the formal title to determine whether the record title owner is a "strawman" set up to conceal the financial affairs or illegal dealings of someone else.

**Counsel:** [**1] Donald F. Chase, II, AUSA and Peter Prieto, AUSA, for the Government.

Benedict Kuehne, Esquire, Sonnett, Sale and Kuehne, Pennsylvania, Miami, Florida, for Tiranty, S.A.

Neal Sonnett, Esquire, Sonnett, Sale and Kuehne, Pennsylvania, Miami, Florida, for Scorpio Latiner, S.A.

Hilarie Bass, Esquire, Greenberg, Traurig, Miami, Florida, for Travelers Insurance.

**Judges:** Thomas E. Scott, United States District Judge.

**Opinion by:** SCOTT

# Opinion

### [*439] OMNIBUS ORDER

THOMAS E. SCOTT, UNITED STATES DISTRICT JUDGE

The above-referenced cases are before the Court on several pending motions. Upon review of these motions and the responsive pleadings, and being otherwise duly advised, it is ORDERED and ADJUDGED as follows:

1. The Motions of Claimants, Scorpio Latina, S.A. and Tiranty, S.A., to Permit Compliance with Notice of Deposition by Producing a Corporate Representative for Deposition are denied. The underlying notices of deposition served by the government specifically request the appearance of two named directors of the claimant corporations. [*440] The Court determines that this procedure is correct under the Federal Rules of Civil Procedure. See _GTE Products Corporation v. GEE, 115 F.R.D. 67 (D. Mass. 1987)_. The court in _GTE_ held that:

_HN1_[⤒] A party seeking to take the deposition of a corporation has [**2] two choices. The first choice is to notice the deposition of the corporation by a particular officer, director, or managing agent pursuant to _Rule 30(b)(1), F.R.Civ.P._ At such a deposition, the testimony is of the corporation and if the corporation is a party, the testimony may be used at trial by an adverse party for any purpose. _Rule 30(a)(2), F.R.Civ.P._ The second choice is to notice the deposition of the corporation without specifically naming the person to be deposed by listing in the notice a description '. . . . with reasonable particularity [of] the matters on which examination is requested.' _Rule 30(b)(6), F.R.Civ.P._ In that event, the corporation is required to '. . . . designate one or more officers, directors, or managing agents or other persons who consent to testify on its behalf, and may set forth for each person designated, the matters on which he will testify.' _Id._ The testimony of the person or persons so designated is the testimony of the corporation and, if the corporation is a party, the testimony may be used at trial by an adverse party for any purpose. _Rule 32(a)(2), F.R.Civ. P._

Case 1:18-cv-25337-KMM   Document 226-2   Entered on FLSD Docket 03/02/2023   Page 63 of 93

121 F.R.D. 439, *440; 1988 U.S. Dist. LEXIS 9314, **2

Page 3 of 3

*Id. at 68. See also Sugarhill Records, Ltd. v. Motown Record Corp., et al., [**3] 105 F.R.D. 166 (S.D.N.Y. 1985); Rule 30(b)(6), Fed. R. Civ. P.* In 1970, *Rule 30* was broadened by placing the duty to designate the person with the most knowledge of the subject area to be examined on the corporation; however, "the new procedure does not preclude taking a deposition by any other procedure authorized by the rules. Thus a party who wishes the deposition of a specific officer or agent of a corporation may still obtain it and is not required to allow the corporation to decide for itself whose testimony the other party may have." 8 *Wright & Miller, Federal Practice and Procedure: Civil* § 2103 p. 375 (2d ed. 1970). Furthermore, as the Advisory Committee note to the 1970 amendment to *Rule 30* states, "if the examining party believes that certain officials who have not testified pursuant to this subdivision have added information, he may depose them." 48 F.R.D. at 515. Applying this reasoning to the present case, it is clear that the two directors of the claimant corporations have been properly noticed for deposition in Miami, Florida.

As claimants in these cases, Scorpio Latina, S.A. and Tiranty, S.A. are seeking affirmative relief by the assertion of *HN2*[⬆] an innocent [**4] owner defense. To establish this defense, claimants must prove that they have more than mere legal title to the property. Mere legal title, in and of itself, does not insulate property from the reach of *21 U.S.C. § 881(a)(6). United States v. A Single Family Residence etc., 803 F.2d 625, 630 (11th Cir. 1986)*. As that court noted, "possession of bare legal title by one who does not exercise dominion and control over the property is insufficient even to establish standing to challenge a forfeiture." *Id. at 630.* As this Court has previously stated "courts look behind the formal title to determine whether the record title owner is a 'strawman' set up to conceal the financial affairs or illegal dealings of someone else." *United States v. One 1977 36 Foot Cigarette Ocean Racer, etc., 624 F. Supp. 290 (S.D. Fla. 1985).*

The government seeks the deposition testimony of Victoria Escobar and Alba Maria Escobar, two of the three directors of the claimant corporations. These two individuals reside in Medellin, Colombia, while the claimant corporations are Panamanian. Additionally, these two individuals are related to Pablo Escobar, the previous owner of the property, who is alleged to [**5] have purchased the property with proceeds derived from narcotics transactions. The government contends that these two deponents have crucial information and knowledge on the issues of standing and innocent ownership. We tend to agree. *See United States v. A Single Family Residence etc., 803 F.2d 625 (11th Cir. 1986).*

[*441] Accordingly, it is Ordered that the government shall renotice Victoria Escobar and Alba Maria Escobar for deposition in Miami, Florida. If the deponents choose not to appear, this Court shall have no other alternative but to assume that they are unable to establish either standing or the innocent owner defense as required by law.

2. These cases are hereby continued for an additional 30 days in order to allow the parties to conclude discovery. Trial on both cases is hereby reset for the trial calendar period commencing Monday, September 12, 1988 with a calendar call on Wednesday, September 7, 1988 at 9:30 A.M.

3. Traveler's Motion for Summary Judgment is deferred until discovery is completed. *See* Order dated July 12, 1988.

DONE and ORDERED in Chambers at Miami, Florida on this 10th day of August, 1988.

_____

**End of Document**

 Positive

As of: March 1, 2023 7:56 PM Z

## *Doe v. Successfulmatch.com*

United States District Court for the Northern District of California, San Jose Division

November 5, 2014, Decided; November 5, 2014, Filed

Case No. 5:13-cv-03376 LHK (HRL)

**Reporter**

2014 U.S. Dist. LEXIS 156663 *; 2014 WL 5775328

JANE DOE 1 and JANE DOE 2, Plaintiffs, v. SUCCESSFULMATCH.COM, a California Corporation, Defendant.

**Prior History:** *Doe v. Successfulmatch.com, 2014 U.S. Dist. LEXIS 140531 (N.D. Cal., Sept. 30, 2014)*

## Core Terms

deposition, deposed, travel, discovery, parties, website

**Counsel:** [*1] For Jane Doe 1, Jane Doe 2, Plaintiffs: Robert S. Green, LEAD ATTORNEY, James Robert Noblin, Lesley Elizabeth Weaver, Green & Noblin, P.C., Larkspur, CA.

For Successfulmatch.com, a California Corporation, Defendant: Virginia Anne Sanderson, Kronenberger Burgoyne, LLP, San Francisco, CA.

**Judges:** HOWARD R. LLOYD, UNITED STATES MAGISTRATE JUDGE.

**Opinion by:** HOWARD R. LLOYD

## Opinion

**ORDER RE DISCOVERY DISPUTE JOINT REPORT NO. 1**

[Re: Dkt. 32]

Defendant Successfulmatch.com operates several dating websites, including PositiveSingles.com, which focuses on persons with sexually transmitted diseases. Plaintiffs, who are former members of PositiveSingles.com, claim that defendant shared their dating profiles among multiple affiliated websites and fraudulently and deceptively failed to disclose that their profiles could be viewed on those affiliated sites. They

sue for themselves and on behalf of a putative class of non-California residents who registered for use of the PositiveSingles.com website or any other website indicating that it was "Powered by PositiveSingles.com" during the four year period prior to March 15, 2013.

Plaintiffs served a *Fed. R. Civ. P. 30(b)(6)* notice for defendant's deposition to take place in Larkspur, California. Defendant's [*2] sole employee, Jason Du, will testify on behalf of the company. Du lives in Chengdu, China. At issue in Discovery Dispute Joint Report (DDJR) No. 1 is whether Du should be deposed in Larkspur or in Chengdu. The matter is deemed suitable for determination without oral argument. *Civ. L.R. 7-1(b)*. Upon consideration of the parties' respective arguments, this court concludes that Du should be deposed here.

Ordinarily, corporate designees presumptively will be deposed at the corporation's principal place of business. *Fausto v. Credigy Services Corp., 251 F.R.D. 427, 429 (N.D. Cal. 2008)*. Even so, that is not an absolute rule; and, "[a] district court has wide discretion to establish the time and place of depositions." *Hyde & Drath v. Baker, 24 F.3d 1162, 1166 (9th Cir. 1994)*. "And because of the court's discretion to designate the site of a deposition, the presumption appears to be merely a decision rule that facilitates determination when other relevant factors do not favor one side over the other." *Custom Form Mfg., Inc. v. Omron Corp., 196 F.R.D. 333, 336 (N.D. Ind. 2000)* (citations omitted). When making such determinations, courts consider the relative convenience of and hardships to the parties. *Fausto, 251 F.R.D. at 429*. Relevant factors include the location of counsel for both parties, the number of corporate representatives a party seeks to depose, whether the deponent often travels for business purposes, the likelihood [*3] of significant discovery disputes arising which would require resolution by the forum court, and the equities with respect to the nature of the claims and the parties' relationship. See *Cadent Ltd. v. 3M Unitek Corp., 232 F.R.D. 625, 628-29 (C.D. Cal. 2005)*.

"Accordingly, [c]orporate defendants are frequently deposed in places other than the location of the principal place of business, especially in the forum [where the action is pending], for the convenience of all parties and in the general interests of judicial economy." *Id. at 629* (citations omitted; alterations in original).

Defendant represents to the court that Du does not regularly travel to the United States; that he has no plans to travel to this country in the coming year; and that he has not traveled to California for several years. These considerations favor defendant, but this court finds that they are outweighed by the other factors.

Counsel for both sides are located in this district, and Du is the only corporate designee to be deposed. Defendant represents that traveling here will impose a significant personal burden on Du; and, it contends that since plaintiffs chose to file this lawsuit, they should bear the burden of incurring the expense of a trip to China. But, it was defendant that **[*4]** selected this forum through a clause in its Terms of Service, which plaintiffs say, are presented to users of defendant's website on a take-it-or-leave-it basis: "The Agreement and the relationship between you and SM.com shall be governed by the laws of the State of California without regard to its conflict of law provisions. You and SM.com agree to submit to the personal and exclusive jurisdiction of the state courts located in Santa Clara County, California or the United States District Court for the Northern District of California." (Second Amended Class Action Complaint, Dkt. 61 ¶ 9). This clause evidently was meant to apply to any user of defendant's websites, no matter where they are located in the world.[1] Moreover, the gist of plaintiffs' claims is that defendant made partial representations that were misleading or deceiving, including in its Terms of Service, as to the privacy, exclusivity, or confidentiality of users' profiles. The equities with respect to the nature of the claims and the parties' relationship weigh in plaintiffs' favor.[2]

---

[1] Plaintiff Jane Doe 1 says she is a Canadian resident, and plaintiff Jane Doe 2 says that she is a resident of Washington state.

[2] Defendant points **[*5]** out that a similar suit has been filed in Santa Clara Superior Court on behalf of a class of California residents who registered with PositiveSingles.com or any of defendant's affiliate websites. Defendant claims that plaintiffs' counsel engaged in gamesmanship by noticing defendant's deposition in the state case, but then withdrawing that notice upon defendant's objection, and then issuing a new notice of

Defendant argues that plaintiffs' disinclination to travel to China "raises significant concerns about their commitment to the case and to the class they purport to represent." (Dkt. 32 at 7). For purposes of resolving this discovery dispute, that argument is overblown--and irrelevant. As noted, the overarching concerns in determining where a deposition should proceed are the convenience of all parties and the general interests of judicial economy. And, the federal rules "should be construed and administered to secure the just, speed, and inexpensive determination of every **[*6]** action and proceeding." *Fed. R. Civ. P. 1*.

While the parties do not anticipate a high likelihood of disputes that would require resolution by the forum court, if any such disputes were to arise, matters would be considerably more complicated if the deposition were to proceed in China—either in person or by videoconference. Defendant maintains that conducting the deposition by videoconference is the most efficient means of deposing Du. See *Fed. R. Civ. P. 30(b)(4)* ("The parties may stipulate—or the court may on motion order—that a deposition be taken by telephone or other remote means."). But, for purposes of enforcing discovery, a deposition taken by telephonic or other remote means is deemed to take place where the deponent answers the questions. *Fed. R. Civ. P. 30(b)(4)*. No one addresses the potential foreign sovereignty and comity issues that are implicated when a court orders that a deposition proceed overseas. *Custom Form Mfg., Inc., 196 F.R.D. at 336*. Cf. *Calderon v. Experian Information Solutions, Inc., 287 F.R.D. 629, 635-636 (D. Idaho 2012)* (ordering depositions to proceed in Chile where, among other things, the defendant did not identify any aspect of Chilean law that would preclude the taking of the depositions in Chile and the plaintiff submitted an affidavit of a Chilean legal expert who averred that conducting a deposition via notice, as opposed to subpoena, on **[*7]** Chilean soil would not violate Chilean law). Thus, this court declines to order that the deposition proceed by videoconference and finds "that the best way to protect the discovery process in this case, and the best way to avoid sovereignty issues that might otherwise arise, is to compel that the *Rule 30(b)(6)* depositions of defendant['s] employees take place in the United States." *Custom Form Mfg., Inc., 196 F.R.D. at 337*.

deposition in the instant action. This court sees nothing wrong with plaintiffs' efforts in pursuing defendant's deposition through legitimate discovery tools available under the Federal Rules of Civil Procedure.

2014 U.S. Dist. LEXIS 156663, *7

Based on the record presented, and after weighing competing legitimate interests and possible prejudice, the court finds that it will be less costly and disruptive to have the deposition proceed in Larkspur, California, than to have the deposition proceed in China. As for the question of which side should bear the necessary expenses—defendant having chosen this forum, it shall bear the entire cost of Du's travel and lodging.

Finally, this court notes that at the time DDJR No. 1 was filed, the pleadings were not yet settled. However, plaintiffs recently filed their second amended complaint, and defendant has answered. Accordingly, this court denies as moot defendant's request for an order delaying the deposition until after anticipated motions to dismiss are resolved.

**SO ORDERED**.

Dated: November 5, 2014

/s/ Howard R. Lloyd **[*8]**

UNITED STATES MAGISTRATE JUDGE

---

End of Document

⚠ Caution
As of: March 1, 2023 7:54 PM Z

## *United States v. $ 160,066.98 from Bank of Am.*

United States District Court for the Southern District of California

July 5, 2001, Decided

Case No. 99cv2067-LAB

### Reporter

202 F.R.D. 624 *; 2001 U.S. Dist. LEXIS 14786 **

UNITED STATES OF AMERICA, Plaintiff, v. $ 160,066.98 FROM BANK OF AMERICA, ACCOUNT NUMBER # 10898-14613, $ 103,245.42 FROM BANK OF AMERICA, ACCOUNT NUMBER # 24694-10468, $ 80,000.00 FROM BANK OF AMERICA, CASHIER'S CHECK # 2012063192, $ 51,000.00 WELLS FARGO BANK, CASHIER'S CHECK # 0953012961, $ 25,000.00 IN U.S. CURRENCY, $ 16,246.32 FROM BANK OF AMERICA, ACCOUNT NUMBER # 09485-01362, $ 11,229.67 FROM WELLS FARGO BANK, ACCOUNT NUMBER # 0953-043726, $ 171.97 FROM BANK OF AMERICA, ACCOUNT NUMBER # 10740-02624, Defendants.

**Disposition:** [**1] CLAIMANTS' MOTION FOR PROTECTIVE ORDER DENIED.

## Core Terms

depositions, claimants, discovery, travel, telephonic, parties, Reply, protective order, appears, venue, forfeiture, questions, attend, circumstances, substantiate, deponents, noticed, reasons, depose

## Case Summary

### Procedural Posture

Plaintiff United States brought a forfeiture action against defendant in rem currency and bank funds, alleging that they were counterfeit software sale proceeds. Claimant foreign nationals filed for the return of the currency and funds, then moved for a protective order to require that their depositions be taken in person in a foreign country or telephonically rather than in person as noticed.

### Overview

Since the money at issue derived from business conducted in the United States and the foreign nationals had availed themselves of the court's jurisdiction by filing claims to recover the money, special circumstances justified the depositions in the United States rather than in the foreign nationals' residence or place of business. Moreover, the security warning for Americans considering travel to the foreign nationals' country was good cause to conduct the depositions in the United States. Even if travel to the foreign country was safe, the foreign nationals failed to show that depositions in the United States placed an undue burden on them because they had not shown that they were unable to afford the trip, they had overstated the required time, and the costs to the counsel of record, all of whom were in the United States, would be large. Finally, none of the alternative methods the foreign nationals proposed satisfied the United States' particular and legitimate need for in-person depositions given that exhibit creation and authentication were reasonably anticipated, the court's authority was compromised by the remoteness, and written depositions were inadequate.

### Outcome

The motion for a protective order was denied.

## LexisNexis® Headnotes

Civil Procedure > ... > Discovery > Methods of Discovery > General Overview

Civil Procedure > Discovery & Disclosure > Discovery > Protective Orders

### *HN1*[⤓] Discovery, Methods of Discovery

See *Fed. R. Civ. P. 26(c)*.

Civil Procedure > Discovery &

202 F.R.D. 624, *624; 2001 U.S. Dist. LEXIS 14786, **1

Disclosure > Discovery > Protective Orders

Criminal Law & Procedure > ... > Crimes Against Persons > Violation of Protection Orders > Application & Issuance

Criminal Law & Procedure > ... > Crimes Against Persons > Violation of Protection Orders > General Overview

HN2[↧] Discovery, Protective Orders

The burden is on the person seeking the protective order to demonstrate good cause. On a motion for protective order, the court should balance the costs and burdens to each side. A district court has wide discretion to establish the time and place of depositions.

Civil Procedure > Parties > Capacity of Parties > General Overview

Civil Procedure > ... > Jurisdiction > In Rem & Personal Jurisdiction > General Overview

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Rem Actions > General Overview

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Rem Actions > True In Rem Actions

HN3[↧] Parties, Capacity of Parties

Courts have departed from the fiction that the property itself is the party in an in rem action. The claimant in an in rem proceeding, although not technically a party, is the same in substance in the in rem proceeding as in an in personam proceeding brought against the person.

Civil Procedure > ... > Methods of Discovery > Depositions > Oral Depositions

HN4[↧] Depositions, Oral Depositions

A deposition notice is all that is needed to require the attendance of parties at their depositions. An examining party may set the place for the deposition of another party wherever he wishes subject to the power of the court to grant a protective order under *Fed. R. Civ. P. 26(c)(2)* designating a different place.

Civil Procedure > ... > Methods of Discovery > Depositions > Oral Depositions

HN5[↧] Depositions, Oral Depositions

While a court may order a defendant to appear at any convenient place for a deposition, case law indicates that it will be presumed that the defendant will be examined at his residence or place of business or employment. In the absence of special circumstances, a party seeking discovery must go where the desired witnesses are normally located. Underlying that general rule appears to be the concept that it is plaintiffs who bring the lawsuit and who exercise the first choice as to the forum. The defendants, on the other hand, are not before the court by choice. Thus, courts have held that plaintiffs normally cannot complain if they are required to take discovery at great distances from the forum.

Civil Procedure > ... > Methods of Discovery > Depositions > Oral Depositions

Civil Procedure > Discovery & Disclosure > General Overview

HN6[↧] Depositions, Oral Depositions

Parties joining litigation subject themselves to the jurisdiction of the court where the action is filed. They take advantage of the federal rules of discovery and rely on the jurisdiction's administration of justice. In such circumstances, exceptions to the general rule on the location of depositions are not uncommon.

Civil Procedure > ... > Discovery > Methods of Discovery > General Overview

Civil Procedure > Discovery & Disclosure > General Overview

Civil Procedure > Discovery & Disclosure > Discovery > Protective Orders

Civil Procedure > Discovery & Disclosure > Discovery > Undue Burdens in Discovery

HN7[↧] Discovery, Methods of Discovery

Only undue burden or expense provides a potential

202 F.R.D. 624, *624; 2001 U.S. Dist. LEXIS 14786, **1

basis for relief from legitimate discovery demands. *Fed R. Civ. P. 26(c)*. Undue burden requires parties to show more than expense or difficulty.

Civil Procedure > ... > Costs > Costs Recoverable > Depositions & Transcripts

Civil Procedure > ... > Methods of Discovery > Depositions > Oral Depositions

Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Travel Expenses

*HN8*[⤓]  **Costs Recoverable, Depositions & Transcripts**

The travel expenses of the deponents are not the only relevant expenses considered in determining the site of a deposition. The travel expenses of counsel is also relevant.

Civil Procedure > ... > Methods of Discovery > Depositions > Written Depositions

*HN9*[⤓]  **Depositions, Written Depositions**

See *Fed. R. Civ. P. 31(a)(1)*.

Civil Procedure > ... > Methods of Discovery > Interrogatories > General Overview

Civil Procedure > ... > Discovery > Methods of Discovery > General Overview

Civil Procedure > ... > Methods of Discovery > Depositions > Oral Depositions

Civil Procedure > ... > Methods of Discovery > Depositions > Written Depositions

*HN10*[⤓]  **Methods of Discovery, Interrogatories**

Whether or not the deposition of a witness shall be taken orally or by written interrogatories is, of course, within the discretion of the court, but that discretion must be exercised in a manner that will do justice to both parties.

Civil Procedure > Judicial Officers > Court Reporters > General Overview

Governments > Courts > Court Personnel

Civil Procedure > ... > Discovery > Methods of Discovery > General Overview

Civil Procedure > ... > Methods of Discovery > Depositions > Written Depositions

*HN11*[⤓]  **Judicial Officers, Court Reporters**

Deposition by written questions involves advance preparation of the exact questions to be read to the deponent by an authorized officer recording the sworn testimony in person. *Fed R. Civ. P. 31(a)(3)*.

Civil Procedure > ... > Methods of Discovery > Depositions > Written Depositions

*HN12*[⤓]  **Depositions, Written Depositions**

See *Fed. R. Civ. P. 31(b)*.

Civil Procedure > ... > Methods of Discovery > Depositions > Oral Depositions

Civil Procedure > ... > Methods of Discovery > Depositions > Written Depositions

*HN13*[⤓]  **Depositions, Oral Depositions**

See *Fed. R. Civ. P. 30(c)*.

**Counsel:** For UNITED STATES OF AMERICA, plaintiff: U S Attorney CV, U S Attorneys Office Southern District of California, San Diego, CA.

For IFFAT ZAHID, SAJID SHARFI, ZAHID HUSSAIN, claimants: Richard M Barnett, Law Offices of Richard M Barnett, San Diego, CA.

**Judges:** HONORABLE LARRY A. BURNS, United States Magistrate Judge.

**Opinion by:** LARRY A. BURNS

# Opinion

Case 1:18-cv-25337-KMM   Document 226-2   Entered on FLSD Docket 03/02/2023   Page 70 of 93

Page 4 of 9

202 F.R.D. 624, *624; 2001 U.S. Dist. LEXIS 14786, **1

**[*625] ORDER DENYING CLAIMANTS' MOTION FOR PROTECTIVE ORDER**

[Dkt No. 25]

This matter is before the court on a Motion For Protective Order ("Motion") by claimants Iffat Zahid and Sajid Sharfi to require Plaintiff the United States of America to take their depositions in person in Pakistan or telephonically from California rather than in person in San Diego, California as noticed. Plaintiff filed opposition, and claimants filed a reply. The court finds the issues appropriate for decision on the papers and without oral argument, pursuant to Civil Local Rule 7.1(d)(1). After careful consideration of the papers submitted, and for the reasons set forth below, the Motion is **DENIED**.

## I. BACKGROUND

The United States government filed its civil Complaint for Forfeiture against eight *in* [**2] *rem* currency and bank fund defendants on September 23, 1999, alleging they are proceeds from sales of counterfeit Microsoft software involving claimant Zahid Hussain, among others. [1] On October 29, 1999, Zahid Hussain, his wife Iffat Hussain, and a third claimant, Sajid Sharfi, purported to be Zahid Hussain's father and a resident of Pakistan, each filed a claim in response to the Complaint, demanding the return and restitution of the monies and claiming the right to defend the action as "owner, agent of the owner, and/or bailee" of defendants. Dkt Nos. 5, 6, 7. Zahid Hussain and Iffat Zahid resided in Orange County, California at the time the Complaint was filed.

[**3] On January 3, 2000, this action was stayed pending the conclusion of state criminal proceedings in San Diego County Superior Court against Zahid Hussain and other individuals. Zahid Hussain fled the jurisdiction prior to trial and remains a fugitive from the California criminal charges. Opp. 2:15-16. All the other defendants in the criminal action either pled guilty or

---

[1] Approximately one month later, plaintiff propounded interrogatories and requests for production of documents. Opp. 2:8-9. The claimants acknowledge no responses to that discovery have yet been provided, through "oversight." Reply 2:26. Claimants' stated intention now to belatedly respond to interrogatories and document production requests propounded approximately twenty months ago does not advance Plaintiff's quest to identify and fix the evidence claimants can personally provide and to assess their credibility as witnesses.

were found guilty at trial. Iffat Zahid remained "here until September of 2000." Reply 4:6-7.

Sajid Sharfi claims ownership of the defendants $ 160,066.98, the cashier's check in the amount of $ 80,000, and the cashier's check in the amount of $ 51,000, on grounds the checks are payable to him and he is purportedly a signatory on the named account. Opp. 2:20-23. Iffat Zahid claims one-half of all the [*626] defendant property as her community property interest in the income of Zahid Hussain. Opp. 2:25-28. Claimants' counsel represents Zahid Hussain "will not be further pursuing his claim." Mot. 2:20-21. Plaintiff acknowledged: "Claimant Zahid Hussain is expected to withdraw his claim, but has not yet done so." Opp. 2:20-21.

The stay in this action was lifted on November 30, 2000. Dkt No. 16. On April 20, 2001, this court [**4] granted plaintiff leave to file an unopposed First Amended Complaint. [2] Dkt Nos. 23, 24, 27. On April 23, 2001, plaintiff noticed the depositions of Zahid Hussain, Iffat Zahid, and Sajid Sharfi for May 2, 2001 in San Diego, California. All three claimants now purportedly reside in Pakistan. Mot. 2:23-24. Prior to the noticed deposition date, claimants' counsel communicated his intent to seek judicial relief regarding the venue and manner of those depositions. Reply 5:10-12. The deponents did not attend their May 2, 2001 depositions. Opp. 2:14-15; Reply 2:11-12.

The instant motion is brought on behalf of claimants Iffat Zahid and Sajid Sharfi only. *See* Mot. Caption. If they do not prevail in procuring an order that the depositions occur in Pakistan, the moving claimants propose as alternatives to in-person depositions: (1) telephonic appearances, with the deponents in Pakistan [**5] and counsel in San Diego; or (2) reserve the deposition of Sajid Sharfi until immediately prior to trial to "reduce the costs to claimant Sharfi in defending this case"; and (3) depose Iffat Zahid through written questions pursuant to *FED.R.CIV.P. 31*. Reply 7:16-25.

## II. DISCUSSION

### A. Legal Standards

*Federal Rule of Civil Procedure 26* provides, in pertinent

---

[2] The parties have consented to the jurisdiction of the undersigned Magistrate Judge for all purposes in this case. Dkt No. 12.

202 F.R.D. 624, *626; 2001 U.S. Dist. LEXIS 14786, **5

part:

*HN1*[⬆] Upon motion by a party or by the person from whom discovery is sought, . . . and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: . . .
(2) that the disclosure or discovery may be had only on specified terms and conditions, including a designation of time or place;
(3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; . . .
*FED.R.CIV.P. 26(c).*

*HN2*[⬆] The burden is on the person seeking the protective order to demonstrate [**6] good cause. *Wilson v. Olathe Bank, 184 F.R.D. 395, 397 (D.Kan. 1999).* "On a motion for protective order, the court should balance the costs and burdens to each side." *Benchmark Design, Inc. v. BDC, Inc., 125 F.R.D. 511, 512 (D.Ore. 1989).* "A district court has wide discretion to establish the time and place of depositions." *Hyde & Drath v. Baker, 24 F.3d 1162, 1166 (9th Cir. 1994)* (finding no abuse of discretion in ordering the depositions of Hong Kong corporations to occur in San Francisco, where the corporations had filed suit and should expect to appear, and upholding dismissal of the complaint as a discovery sanction for failure to appear after the deponents disregarded prior orders to appear for depositions in Hong Kong).

**B. Claimants Are Parties Prosecuting Claims In This District, Involving Property Deposited In This District Arising Out Of Business Conducted In This District, And Are Properly Compelled To Appear Here**

**1. Claimants In Forfeiture Actions Are "Parties"**

*HN3*[⬆] "Courts have departed from the fiction that the property itself is the party in an *in rem* action. *United States v. Banco Internacional/Bital S.A., 110 F. Supp. 2d 1272, 1279 (C.D.Cal. 2000)* [**7] (citing *Burns Bros. v. Central R.R., 202 F.2d 910, 913 (2nd Cir. 1953)* (concluding the parties (the government and a civil forfeiture claimant) in an *in rem* proceeding were the same as in a successive [*627] *in personam* suit). The claimant in an *in rem* proceeding, although not

technically a party, is the same "in substance" in the *in rem* proceeding as in an *in personam* proceeding brought against the person. *Id.* (citing *B&B No. 10 v. Olson, 121 F.2d 704 (2nd Cir. 1941).* This court finds the claimants in this case are parties to this action for purposes of resolving discovery disputes.

**2. Parties Litigating In This District From An Extra-Territorial Base Must Foreseeably Return To This Venue In The Course Of The Litigation**

*HN4*[⬆] A deposition notice is all that is needed to require the attendance of parties at their depositions. "An 'examining party may set the place for the deposition of another party wherever he wishes subject to the power of the court to grant a protective order under *Rule 26(c)(2)* designating a different place.'" *Farquhar v. Shelden, 116 F.R.D. 70, 72 (E.D. Mich. 1987)* (citation omitted) (granting [**8] a protective order to defendant, a citizen of the Netherlands, that plaintiff depose him in the Netherlands).

*HN5*[⬆] "While a court may order a defendant to appear at any convenient place, case law indicates that 'it will be presumed that the defendant will be examined at his residence or place of business or employment.'" *Farquhar, 116 F.R.D. at 72* (citations omitted). In the absence of special circumstances, "a party seeking discovery must go where the desired witnesses are normally located." *Id.* Underlying that general rule "appears to be the concept that it is plaintiffs who bring the lawsuit and who exercise the first choice as to the forum. The defendants, on the other hand, are not before the court by choice. Thus, courts have held that plaintiffs normally cannot complain if they are required to take discovery at great distances from the forum." *Id.*

The court finds "special circumstances" exist in this case to depart from the general rule that a plaintiff may expect to depose the defendant at the latter's "residence or place of business." *See Farquhar, 116 F.R.D. at 72.* The claims in this action involve money accumulated in this district [**9] through business transactions which occurred here and which remains on deposit here. Iffat Zahid and Sajid Sharfi have elected to pursue their restitution claim within the forfeiture action brought by the United States. The court is not persuaded by the two moving claimants' attempt to distinguish themselves from the parties in *Hyde & Drath* and *Custom Form Mfg., Inc. v. Omron Corp, 196 F.R.D. 333 (N.D. Ind. 2000)* on grounds they "themselves" did not conduct business in California. *See* Reply 5:3-4, 6:26-27 ("claimants have not elected to conduct business affairs

202 F.R.D. 624, *627; 2001 U.S. Dist. LEXIS 14786, **9

nor maintain duly registered principal place of business in either this district, or for that matter, this country"). There appears to be no dispute that the monies at issue in this case were derived from business conducted here by Zahid Hussain, who remains at this time formally a claimant. It is the income from Zahid Hussain's business while he and Iffat Zahid resided in this district, against which she purports to make her community property claim. Opp. 2:27-28. Claimant Sajid Sharfi asserts he was a signatory on certain of the named accounts and that certain of the named checks were made payable [**10] to him. It may reasonably be imputed from those facts that he elected to have business affairs for his benefit conducted here and that he participated in the selection or approval of deposit accounts. Each claimant accordingly professes a legal interest in the proceeds of business conducted in this district.

HN6[↑] Parties joining litigation subject themselves to the jurisdiction of the court where the action is filed. They take advantage of the federal rules of discovery and rely on the jurisdiction's administration of justice. In such circumstances, "exceptions to the general rule on the location of depositions" are not uncommon. See Custom Form Mfg., 196 F.R.D. at 336 (finding, in the corporate context: "When a foreign corporation is doing business in the United States, is subject to the court's jurisdiction, and has freely taken advantage of our federal rules of discovery, exceptions to the general rule on the location of depositions are often made"). These claimants selected the venue for the business transactions giving rise to this action and where to deposit the in rem defendants. Their return to this district for deposition, on [*628] balance, is more reasonable, [**11] safer, less costly, and more efficient than the alternative of conducting the depositions in Pakistan.

### 3. Plaintiff's Good Cause Shown To Conduct The Depositions In Person, In San Diego, Outweighs Claimants' Cost, Convenience, And Efficiency Arguments For A Deposition Venue In Pakistan

The court finds dispositive Plaintiff's substantiation that the United States government has issued a security warning for Americans considering travel to Pakistan. [3]

---

[3] The May 14, 2001 "Travel Warning" provides, in pertinent part: "The Department of State warns U.S. citizens to evaluate carefully the implications for their security and safety before deciding to travel to Pakistan. [P] Information received by the U.S. Government suggests a continued need for vigilance on the part of American citizens resident in, or traveling through,

Opp. Ex. "B". "An order for depositions in Pakistan effectively forecloses the depositions of Claimants entirely, since safety reasons rule out travel to Pakistan by Plaintiff's counsel and the handwriting expert." Opp. 4:19-21. The court declines to order American citizens at this time to undertake such a journey to conduct civil discovery.

[**12] Even were travel to Pakistan safe, the court finds claimants have not made an adequate showing to prevail on the protective order Motion. HN7[↑] Only "undue burden or expense" provides a potential basis for relief from legitimate discovery demands. See FED.R.CIV.P. 26(c) (emphasis added). "Undue" burden requires parties to show more than expense or difficulty. See, e.g., Benchmark Design, 125 F.R.D. 511 ("Rule 26(c) authorizes a protective order when discovery would be unduly burdensome. This requires more than some expense or difficulty, especially in the case of a party to the action") (citing Dart Indus. v. Westwood Chemical Co., 649 F.2d 646, 649 (9th Cir. 1980)).

Claimants argue they should be permitted to have their depositions taken in Pakistan because otherwise they face two lengthy round trips to California in a single year: one for depositions and a second for trial: "Should this matter proceed to trial, claimants will have to attend the trial and thus travel to San Diego a second time within the same year." Mot. 5:2-3. Claimants substantiate round trip airfare between Karachi, Pakistan and San Diego, California costs between $ 3,031 [**13] and $ 4,712 per person. Mot. 4:28, Ex. "A". Claimants attempt no showing of inability to afford that expenditure due to impecuniousness.

Claimants further argue they would be considerably inconvenienced, representing "the trip to San Diego from Pakistan takes four (4) days each direction" and requires the traveler to "take at least four separate planes." Mot. 5:10-12. Although the claimants do not convert the travel schedule across several time zones into actual travel time, the court finds the nine representative itineraries provided as Motion Exhibit "A" do not support the "four days each direction" and "at least four planes" representations. Options 1, 2, 3, 7, 8, and 9 show just three legs, each nonstop, each direction. None of the nine options would require more than three plane changes and none exceeds three itinerary days each direction. Options 4, 5, and 6 actually indicate departure availability one date with

---

Pakistan. . . . [P] Events in the Middle East have increased the possibility of violence. . . ."

202 F.R.D. 624, *628; 2001 U.S. Dist. LEXIS 14786, **13

arrival the following date, both directions, with just two legs each way, or four days *round trip*. Claimants accordingly overstate the travel burden when they assert "eight days" of travel as the unavoidable norm.

The burden and expense to the government, were the [**14] court to order claimants' depositions to proceed in Pakistan, are legitimate considerations. *HN8*[↑] "The travel expenses of the deponents are not the only relevant expenses considered in determining the site of a deposition. The travel expenses of counsel is also relevant." *Custom Form Mfg., 196 F.R.D. at 337* (citing *Kasper v. Cooper Canada Ltd., 120 F.R.D. 58 (N.D. Ill. 1988). See also Farquhar, 116 F.R.D. at 72* ("While the location of the parties themselves is a primary factor, locations of their attorneys is also a relevant consideration") (citing *Haymes v. Columbia Pictures Corp., 16 F.R.D. 118, 123 (S.D.N.Y. 1954))*. All counsel of record in this matter are located in San Diego. Plaintiff contends a handwriting expert needs to be present at the depositions [*629] while claimants complete handwriting exemplar cards. [4] Assuming, without deciding, such a procedure is permissible and justified in this case, that expert would constitute yet another person traveling to Pakistan. The court observes that a court reporter from this jurisdiction familiar with the rules of the court and authorized to record testimony would be another [**15] likely, if not indispensable, attendee. Accordingly, at least double the expenditure for travel and lodging would likely accompany a Pakistan venue compared to a San Diego venue. Plaintiff further represents depositions in Pakistan would require the transporting of approximately 5,000 documents.

In addition, the court considers claimants oversimplify the logistics of conducting the depositions in Pakistan. For example, they observe: "There is absolutely no reason the Court cannot rule on any controversies under any of claimants' proposed deposition schemes." Reply 5:12-14. Claimants' [**16] proposal that the court remain on telephone standby fails to account for significant time zone differences. Moreover, they substantiate no confirmation that reliable technical

facilities will be readily available for such undertakings as international conference calling, and the like.

The court finds claimants' inconvenience and expense associated with the prosecution of their claim in this district were foreseeable, are not "undue," and do not outweigh the government's burden, expense, safety risks, and compromised effectiveness should the depositions be ordered to go forward in Pakistan or by telephone, or by any of the other means claimants propose. On balance, the claimants' good cause showing in support of a protective order does not outweigh Plaintiff's showing in support of the need to conduct the depositions in San Diego.

## 4. None Of The Alternative Methods Claimants Propose Would Satisfy Plaintiff's Particular And Legitimate Need For In-Person Depositions

### a. Depositions Via Telephone

Plaintiff has made a particularized showing why converting the depositions to telephonic would be prejudicial to its forfeiture case. *See Jahr v. IU Intern Corp., 109 F.R.D. 429 (M.D.N.C. 1986)* [**17] (placing the burden on the party opposing telephonic deposition after a showing of legitimate reasons for taking a deposition telephonically); *Rehau, Inc. v. Colortech, 145 F.R.D. 444 (W.D.Mich. 1993)* (approving of telephonic depositions and requiring the party opposing to come forward with a particularized showing why that party would be prejudiced thereby); *Cressler v. Neuenschwander, 170 F.R.D. 20 (D. Kan. 1996)* (requiring justification for resisting telephonic deposition and a showing of prejudice). Plaintiff seeks, among other things, to observe these witnesses and to substantiate their identities. Opp. 3:2-5. Plaintiff questions the very existence of Sajid Sharfi as well as his standing as a bona fide claimant in the absence of evidence that he had "any contact whatsoever with the Defendant accounts and cashier's checks." [5] Opp. 3:2-3. The underlying facts involve allegations of fraud. The government prevailed in its criminal prosecutions associated with Zahid Hussain's business transactions. Plaintiff emphasizes the particular need in this case for authentication of documents, including a need to secure a signature exemplar in the presence [**18] of its

---

[4] Claimants assert: "Plaintiff asserts it 'will need to get Claimants to fill out handwriting exemplars in the presence of a handwriting expert'. . . . Plaintiff has cited no authority for requiring handwriting exemplars during the course of a deposition, as there is [none]. Nor has plaintiff established any need for such exemplars." Reply 4:9-12. The issue is not briefed, and the court expresses no opinion on this incipient dispute.

[5] "Plaintiff believes that neither of the Claimants had any contact whatsoever with the Defendant's accounts and cashier's checks and indeed may not be the people they claim to be. In any event, the Claimants are either fictitious alter egos of Hussain, or are controlled by him." Opp. 3:2-5.

202 F.R.D. 624, *629; 2001 U.S. Dist. LEXIS 14786, **18

expert witness. [6] Opp. 3:20-21. The claimants will be required to prove the legitimacy of their claims to the *res*. Sajid Sharfi must substantiate his formal connection and entitlement to the subject funds. Exhibit creation and authentication are a reasonably anticipated component of that inquiry.

[*630] These circumstances add extra weight to the need for in-person depositions. A telephonic deposition would prevent Plaintiff from gathering such evidence. Counsel would be further disadvantaged without the opportunity "to see the witness and to evaluate the witness' demeanor, facial reactions and expressions." *Arrocha v. McAuliffe, 109 F.R.D. 397, 402 (D.C. 1986)* [**19] (holding in a Title VII employment discrimination case that the disparity and ability of counsel to examine and evaluate witnesses which would result if depositions occurred in the Republic of Panama, precluding plaintiffs' counsel from attending in person and requiring him to participate by telephone, could not be approved). If claimants' deposition testimony were to substitute for personal appearances at trial, as the claimants' aversion to travel suggests could happen, the opportunity to make a thorough record during the depositions is even more critical.

Finally, the court finds its authority would be compromised in this case by the remoteness of a deposition venue in Pakistan, even leaving aside the question whether special arrangements would be required through the host country's government or judicial system. It would be logistically difficult and inefficient to resolve disputes that may arise in the course of that discovery without a federal judge or magistrate in the country applying the rules applicable to the litigation in this jurisdiction. The court's authority to intervene in the foreign nationals' depositions abroad could be similarly compromised, particularly as the [**20] underlying facts involved alleged criminal conduct. *See Custom Form Mfg., 196 F.R.D. at 336-37*. The delays associated with attempted deposition objection rulings at such great distances risk disjointing and prolonging unreasonably the conduct of those depositions.

## b. Deposition Immediately Before Trial

Claimants' proposed option that Sajid Sharfi's deposition testimony be reserved until immediately before trial does not address Plaintiff's need to conduct fact-finding discovery and witness assessment for purposes of

preparing its case. A deposition of Sajid Sharfi on the eve of trial falls short of a reasonable alternative. Moreover, it appears Sajid Sharfi may not have been to California before. Mot. 2:16. The moving papers raise reasonable doubt regarding Iffat Zahid's intentions with respect to a trial appearance regarding a trial appearance, and the representation that Zahid Hussain will be withdrawing his claim, color the court's perception regarding the intentions of all the claimants. *See* section II.B.6, below.

## c. Deposition Through Written Interrogatories

Claimants suggest that Iffat Zahid be deposed through written interrogatories [**21] rather than orally. HN9[⬆] "A party may take the testimony of any person, including a party, by deposition upon written questions . . . ." *FED.R.CIV.P. 31(a)(1)*. HN10[⬆] "Whether or not the deposition of a witness be taken orally or by written interrogatories is, of course, within the discretion of the court [], but that discretion must be exercised in a manner that will do justice to both parties." *Wheeler v. West India S.S. Co., 11 F.R.D. 396, 397 (S.D.N.Y. 1951)* (footnote omitted).

HN11[⬆] Deposition by written questions involves advance preparation of the exact questions to be read to the deponent by an authorized officer recording the sworn testimony in person. *FED.R.CIV.P. 31(a)(3)*; *see also* FED.R.CIV.P 31(b) [7], 30(c) [8]. Leaving aside [*631] the logistics of sending or obtaining a court reporter for purposes of taking the testimony in Pakistan, the court finds in these circumstances a

---

[7] HN12[⬆] "A copy of the notice and copies of all questions served shall be delivered by the party taking the deposition to the officer designated in the notice, who shall proceed promptly, in the manner provided by *Rule 30(c)*, *(e)*, and *(f)*, to take the testimony of the witness in response to the questions and to prepare, certify, and file or mail the deposition, attaching thereto the copy of the notice and the questions received by the officer." *FED.R.CIV.P. 31(b)*.

[8] *Rule 30(c)* provides in pertinent part: HN13[⬆] "The officer before whom the deposition is to be taken shall put the witness on oath or affirmation and shall personally, or by someone acting under the officer's direction and in the officer's presence, record the testimony of the witness. . . . In lieu of participating in the oral examination, parties may serve written questions in a sealed envelope on the party taking the deposition and the party taking the deposition shall transmit them to the officer [before whom the deposition is to be taken], who shall propound them to the witness and record the answers verbatim."

[6] *See* fn. 4, above.

202 F.R.D. 624, *631; 2001 U.S. Dist. LEXIS 14786, **21

written question deposition would be inadequate for the same reasons telephonic depositions are not a reasonable substitute for in-person proceedings. Moreover, the type of testimony to be elicited from claimants in a forfeiture action does not appear to lend itself to advance formulation of follow-up [**22] questions. The court finds Plaintiff has demonstrated a convincing need for the physical presence of both deposing counsel and the claimants at their depositions.

### [**23] 5. The Court Need Not Reach International Procedural Issues

The parties raise additional considerations associated with the conduct of depositions in foreign countries under the _FED.R.CIV.P. 28(b)_ process for depositions in foreign countries pursuant to applicable treaties, conventions, or letters rogatory. Opp. p. 4; Reply pp. 5-6. The court finds it need not reach those issues, as the Motion is denied.

### 6. Claimants Are Admonished To Promptly Formalize Any Change In Their Status

Claimants assert Zahid Hussain will be withdrawing his claim. In addition, the Motion raises the reasonable inference that Iffat Zahid may not intend to return to this district for any purpose associated with pursuing her claim. She is apparently the mother of three children, ages five years, three years, and six months. Mot. 5:15-16. Claimants represent, on the one hand, they "will have to attend the trial." Mot. 5:2-3. On the other hand, they state with respect to Iffat Zahid: "**It will simply be impossible** to leave her children for a minimum of ten to twelve days twice within a year, **let alone once**." Mot. 5:16-17 (emphasis added). Curiously, in their Reply, claimants [**24] rephrase that characterization while reinforcing the inference that Iffat Zahid may not intend to pursue her claim: ""**It will simply be impossible** [for Iffat Zahid] to leave her children for a minimum of ten to twelve days once, **let alone twice** in the same year." Reply 3:23-25 (emphasis added). Iffat Zahid "**could simply not be away from her children for the time it would take to attend her deposition** here in the United States, which requires travel four (4) days each direction." Reply 4:22-23 (emphasis added).

The court admonishes any and all of these claimants who do not intend to press their claims through trial to abandon their claims promptly and formally to avoid waste of government and judicial resources.

## III. CONCLUSION AND ORDER

For the foregoing reasons, **IT IS HEREBY ORDERED**:

1. Claimants' Motion For Protective Order is **DENIED**;

2. The parties shall proceed immediately to coordinate new date(s) for the taking of the depositions of Iffat Zahid and Sajid Sharfi in San Diego, California, as previously noticed;

3. The August 31, 2001 discovery deadline applicable to the completion of claimants' depositions remains in effect; [**25] and

4. Counsel for claimants shall forthwith formally regularize the status of Zahid Hussain, and any other claimant who will not be pursuing his or her claim in this action, by withdrawing him or them as a claimant(s) and shall produce each remaining claimant for deposition.


IT IS SO ORDERED.

Dated: 7/5/01


**HONORABLE LARRY A. BURNS**

**United States Magistrate Judge**

---

End of Document

Caution
As of: March 1, 2023 7:36 PM Z

# *In re Vitamin Antitrust Litig.*

United States District Court for the District of Columbia

September 10, 2001, Decided ; September 11, 2001, Filed

Misc. No. 99-197 (TFH), MDL No. 1285

**Reporter**
2001 U.S. Dist. LEXIS 25070 *

IN RE: VITAMIN ANTITRUST LITIGATION; THIS DOCUMENT RELATES TO ALL ACTIONS (except Case Nos. 00-1030 and 00-1236

**Disposition:** [*1] Magistrate recommends that this Plaintiffs' Motion to Compel Defendants to Produce Witnesses and Officers, Directors and Managing Agents for Depositions in the United States granted.

## Core Terms

depositions, discovery, witnesses, declaration, take place, defendants', managing agent, parties, civil procedure, sovereignty, principal place of business, plaintiffs', affront, travel, weighs, disputes, ordering, circumstances, deponent, borders, factors, courts, cases, recommend, burdens, attend, depose, merits, motion to compel, noticed

## Case Summary

### Procedural Posture

In an antitrust action pertaining to two separate classes of purchasers of vitamin products, plaintiffs filed a motion to compel certain foreign defendants to produce *Fed. R. Civ. P. 30(b)(6)* witnesses and officers, directors and managing agents for depositions in Washington, D.C. or such other location in the United States agreed to by the parties. The matter was referred to a magistrate judge for report and recommendation.

### Overview

Plaintiffs maintained that depositions of the foreign defendants' *Rule 30(b)(6)* witnesses and managing agents should take place in Washington, D.C., rather than in Japan, Germany, and France, on the ground that depositions within those nations' territorial borders were subject to cumbersome, inefficient procedures and laws

that would impose "insurmountable obstacles" to necessary discovery, entailing unacceptable delay and excessive expense. Defendants responded that plaintiffs' motion sought a ruling that went against the understanding and practice of the parties to the litigation: namely, that depositions would occur in the location most convenient for the deponent. The magistrate found that special circumstances existed for ordering that depositions take place in the United States rather than at the foreign defendants' principal places of business. The magistrate reasoned that the legal and procedural impediments in Japan, France, and Germany, weighed in favor of ordering the depositions to take place in Washington, D.C.

### Outcome

The magistrate recommended that the plaintiffs' motion be granted, and that each of the foreign defendants subject to the motion be ordered to produce for deposition in Washington, D.C., or such other location in the United States as may be agreed upon, their witnesses and up to six officers, directors, and managing agents.

## LexisNexis® Headnotes

Civil Procedure > ... > Methods of
Discovery > Depositions > Oral Depositions

*HN1*[⤓] Depositions, Oral Depositions

*Fed. R. Civ. P. 30(b)(1)* tasks the party taking a deposition with providing all other parties written notice stating the time and place for taking the deposition.

Civil Procedure > ... > Methods of

2001 U.S. Dist. LEXIS 25070, *1

Discovery > Depositions > Oral Depositions

*HN2*[⬇] **Depositions, Oral Depositions**

Although depositions of a corporation are generally conducted at its principal place of business, the case law and treatises reflect that where a dispute arises courts have discretion to order a different location depending upon the circumstances.

Civil Procedure > ... > Discovery > Methods of Discovery > Foreign Discovery

Civil Procedure > ... > Methods of Discovery > Depositions > Oral Depositions

*HN3*[⬇] **Methods of Discovery, Foreign Discovery**

The presumption that depositions occur at a corporation's place of business, is merely a decisional rule that facilitates determination when other relevant factors do not favor one side over the other. Thus, there are numerous cases in which courts have ordered depositions of foreign defendants taken in the United States, rather than at the defendant's principal place of business.

Business & Corporate Law > Foreign Corporations > General Overview

Civil Procedure > ... > Discovery > Methods of Discovery > Foreign Discovery

International Law > Individuals & Sovereign States > General Overview

Civil Procedure > ... > Methods of Discovery > Depositions > Oral Depositions

*HN4*[⬇] **Business & Corporate Law, Foreign Corporations**

Where location is disputed, courts generally consider a variety of factors in determining whether the deposition of a foreign corporation should occur in the United States or abroad. These factors include: (1) the burden to the parties of holding the depositions in the United States relative to the burden of holding the depositions abroad, including the burdens imposed on the witnesses and the parties' counsel; (2) the court's ability to

supervise depositions in the contested location; (3) whether depositions would be impeded by any legal or procedural barriers in another nation; and (4) the potential affront to the sovereignty of a foreign nation if a deposition pursuant to the Federal Rules of Civil Procedure is held within its borders.

Civil Procedure > ... > Methods of Discovery > Depositions > Oral Depositions

*HN5*[⬇] **Depositions, Oral Depositions**

A court has discretion to set the location of depositions where it finds the circumstances warrant.

Civil Procedure > ... > Discovery > Methods of Discovery > Foreign Discovery

Governments > Courts > Judicial Comity

International Law > Individuals & Sovereign States > General Overview

Civil Procedure > ... > Methods of Discovery > Depositions > Oral Depositions

Governments > Courts > Authority to Adjudicate

International Law > Dispute Resolution > Evidence > General Overview

*HN6*[⬇] **Methods of Discovery, Foreign Discovery**

When depositions of foreign nationals are taken on American or neutral soil, courts have concluded that comity concerns are not implicated.

**Counsel:** For LEAD PLAINTIFFS, DONALDSON & HASENBEIN, INC V F. HOFFMAN-LA ROCHE LTD, 99-762, DONALDSON & HASENBEIN, INC V ROCHE VITAMINS, INC, 98-1116, ANIMAL SCIENCE PRODUCTS, INC V HOFFMANN-LA ROCHE INC, 98-2947, ANIMAL SCIENCE PRODUCTS INC V CHINOOK GRP LTD, 99-544, DAD'S PRODUCTS CO, INC V F. HOFFMANN-LA ROCHE LTD, 99-599, PILGRIM'S PRIDE CORP V CHINOOK GRP LTD, 99-718, PILGRIM'S PRIDE CORP V HOFFMANN-LA ROCHE INC, 99-720, LIVENGOOD FEEDS, INC V HOFFMANN-LA ROCHE INC, 99-782, LAKELAND CASH FEED CO V HOFFMANN-LA ROCHE INC., 99-

2001 U.S. Dist. LEXIS 25070, *1

921, TEXAS FARM PRODUCTS CO V HOFFMAN-LA ROCHE INC., 99-986, WRIGHT ENRICHMENT, INC V CHINOOK GRP, LTD, 99-1014, WRIGHT ENRICHMENT, INC V HOFFMANN-LA ROCHE INC, 99-1015, WRIGHT ENRICHMENT, INC V LONZA INC, 99-1013, CENTRAL CONNECTICUT COOPERATIVE FARMERS ASSOCIATION, CLASS PLAINTIFFS, plaintiffs: Ann Catherine Yahner, COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C., Washington, DC.

For LEAD PLAINTIFFS, DONALDSON & HASENBEIN, INC V F. HOFFMAN-LA ROCHE LTD, 99-762, DONALDSON & HASENBEIN, [*2] INC V ROCHE VITAMINS, INC, 98-1116, ANIMAL SCIENCE PRODUCTS, INC V HOFFMANN-LA ROCHE INC, 98-2947, ANIMAL SCIENCE PRODUCTS INC V CHINOOK GRP LTD, 99-544, DAD'S PRODUCTS CO, INC V F. HOFFMANN-LA ROCHE LTD, 99-599, PILGRIM'S PRIDE CORP V CHINOOK GRP LTD, 99-718, PILGRIM'S PRIDE CORP V HOFFMANN-LA ROCHE INC, 99-720, LIVENGOOD FEEDS, INC V HOFFMANN-LA ROCHE INC, 99-782, LAKELAND CASH FEED CO V HOFFMAN-LA ROCHE INC., 99-921, TEXAS FARM PRODUCTS CO V HOFFMAN-LA ROCHE INC., 99-986, WRIGHT ENRICHMENT, INC V CHINOOK GRP, LTD, 99-1014, WRIGHT ENRICHMENT, INC V HOFFMANN-LA ROCHE INC, 99-1015, WRIGHT ENRICHMENT, INC V LONZA INC, 99-1013, ANIMAL SCIENCE PRODUCTS, INC., DOMAIN INC, MIDWESTERN PET FOODS, INC., AG MARK INC, PILGRIM'S PRIDE CORPORATION, DONALDSON & HASENBEIN, LAKELAND CASH FEED COMPANY, INC., SHAKLEE CORPORATION, UNITED COOPERATIVE FARMERS, INC., plaintiffs: Jonathan David Schiller, BOIES & SCHILLER, L.L.P., Washington, DC.

For LEAD PLAINTIFFS, DONALDSON & HASENBEIN, INC V F. HOFFMAN-LA ROCHE LTD, 99-762, DONALDSON & HASENBEIN, INC V ROCHE VITAMINS, INC, 98-1116, ANIMAL SCIENCE PRODUCTS, INC V HOFFMANN-LA ROCHE INC, 98-2947, ANIMAL SCIENCE PRODUCTS INC V CHINOOK GRP LTD, 99-544, DAD'S [*3] PRODUCTS CO, INC V F. HOFFMANN-LA ROCHE LTD, 99-599, PILGRIM'S PRIDE CORP V CHINOOK GRP LTD, 99-718, PILGRIM'S PRIDE CORP V HOFFMANN-LA ROCHE INC, 99-720, LIVENGOOD FEEDS, INC V HOFFMANN-LA ROCHE INC, 99-782, LAKELAND CASH FEED CO V HOFFMAN-LA ROCHE INC., 99-921, TEXAS FARM PRODUCTS CO V HOFFMAN-LA ROCHE INC., 99-986, WRIGHT ENRICHMENT, INC V CHINOOK GRP, LTD, 99-1014, WRIGHT ENRICHMENT, INC V HOFFMANN-LA ROCHE INC,

99-1015, WRIGHT ENRICHMENT, INC V LONZA INC, 99-1013, INDIRECT PURCHASER CLASS/ COX PLAINTIFFS, RICKY COX, RICHARD K. MYERS, JENNIFER G. WILLIAMS, BERYL D. HALL, HUBERT E. PETRIE, JR., DONALD W. BALES, LARRY L. MCALPINE, JOSEPH CAMINITTI, ERIC S. WILSON, DALEN WEBB, ROBERT SHULTE, JOSHUA P. PRENTICE, AMY KIVENHOVEN, MARIA ANGELES, ELWOOD E. WILLIAMS, SANDRA K. MCCLOUD, ELIZABETH R. CROCKER, SCOTT BAYLENS, JAMES A. BURKE, III, plaintiffs: Steven A. Martino, Stephen L. Klimjack, JACKSON, TAYLOR, MARTINO & HEDGE, Mobile, AL.

For TYSON FOODS, INCORPORATED, HUDSON FOODS, INC., CHOCTAW MAID FARMS, INC., ALLEN'S HATCHERY, INC., GEORGE'S, INC., GEORGE'S FARMS, INC., GEORGE'S OF MISSOURI, INC., OK INDUSTRIES, INC., PETERSON FARMS, INC., SIMONS FOODS INC., SUNSHINE MILLS INC, [*4] TOWNSENDS, INC., CONTINENTAL GRAIN COMPANY, PREMIUM STANDARD FARMS, INC., MOUNTAIRE FEEDS, INC., QUAKER OATS COMPANY, AGRI BEEF CO, AGWAY INC, ALABAMA FARMERS COOPERATIVE, INC., ALLEN FAMILY FOODS, INC./ALLEN'S HATCHERY, INC., ARKAT FEED INC, B.C. ROGERS POULTRY, INC., BLAIR MILLING & ELEVATOR CO., INC., BRASWELL FOODS, CACTUS FEEDERS INC, CAGLE'S INC, CAL-MAINE FOODS, INC., CASE FOODS, INC., CIRCLE S RANCH, COHARIE FARMS, CONSAC INDUSTRIES, INC., CONTIGROUP COMPANIES, INC., CYPRESS FOODS, INC., DAWE'S INC/DAWE'S LABORATORIES, E.D. & F. MAN, INC., EASTERN MINERALS, INC., EVERGREEN MILLS, INC., FARMERS FEED & SUPPLY CO., FARMLAND INDUSTRIES, INC., FISHBELT FEED, INC., FRIONA INDUSTRIES, INC., FURST-MCNESS CO, GARLAND FARM SUPPLY, INC., GEORGE'S INC., GLOBAL HEALTH SCIENCES, INC., GOLDEN ROD ENTERPRISES, INC./GOLDEN ROD FEED MILL, INC., HARRISON POULTRY, INC., HITCH MILLS, INC./HITCH PORK PRODUCERS, INC., HUDSON FOODS, INC., INDI-BEL, INC., J & K FARMS, J.C. HOWARD FARMS, KALMBACH FEEDS, KEITH SMITH COMPANY, KENT FEEDS INC, KOFKOFF FEED, INC., L&K ENTERPRISES, L.L. MURPHREY CO., MFA INCORPORATED, MANNA PRO, INC., MAR-JAC POULTRY, INC., MARSHALL DURBIN COMPANIES, MARSHALL MINERALS, INC. [*5] , MIDWEST PMS, INC., MILK SPECIALTIES COMPANY, MISSION PHARMACAL COMPANY, MOARK PRODUCTIONS, INC., MOUNTAIRE FEEDS, INC./MOUNTAIRE FARMS, INC., N.G. PURVIS

FARMS, NORMAN W. FRIES, INC., OK INDUSTRIES, ORANGEBURG FOODS, PECO FOODS, INC., PENNFIELD CORPORATION, PETERSON FARMS, INC., PREMIUM STANDARD FARMS, INC., PRINCE AGRI PRODUCTS, INC., PRODUCERS FEED CO, Y PURINA MILLS, INC., RANGEN, INC., RENAISSANCE NUTRITION, INC., ROCCO ENTERPRISES, INC., SCHELL & KAMPETER, INC., SCHREIBER FOODS, INC., SEABOARD CORPORATION, SEMINOLE FEED, SIMMONS FOODS, INC., SOUTHEASTERN MINERALS, INC., SOUTHERN STATES COOPERATIVE, INC., STAR MILLING COMPANY, SUNSHINE MILLS INC, SYLVEST FARMS, INC., TENNESSEE FARMERS COOPERATIVE, TOWNSENDS, INC., TYSON FOODS, INC., UNITED FEEDS, INC., UNIVERSAL COOPERATIVES, INC., VITA PLUS CORP, VITA TECH INTERNATIONAL, INC., WAMPLER FOODS, INC., ZEPHYR EGG COMPANY, HILL'S PET NUTRITION, INC., BLUE SEAL FEEDS, CHOCTAW MAID FARMS, INC., FOSTER POULTRY FARMS, BENEDICT FEEDING CO, KEITH SMITH CO, MOARK PRODUCTION INC, REITSMA DAIRY, ANIMIX, LLC, GENERAL NUTRITION COMPANIES, INC., KRAFT FOODS, INC., MCCLAIN ENTERPRISES, INC., R.P. SCHERER CORP., SMITHKLINE BEECHAM CORP., T.C. PRODUCTS [*6] CO INC, WESTWAY HOLDING CORP, COUNTRYMARK COOPERATIVE, INC., plaintiffs: Kenneth L. Adams, DICKSTEIN, SHAPIRO, MORIN & OSHINSKY, L.L.P., Washington, DC.

For INDIRECT PURCHASER CLASS/ COX PLAINTIFFS, RICKY COX, RICHARD K. MYERS, JENNIFER G. WILLIAMS, BERYL D. HALL, HUBERT E. PETRIE, JR., DONALD W. BALES, LARRY L. MCALPINE, JOSEPH CAMINITTI, ERIC S. WILSON, DALEN WEBB, ROBERT SHULTE, JOSHUA P. PRENTICE, AMY KIVENHOVEN, MARIA ANGELES, ELWOOD E. WILLIAMS, SANDRA K. MCCLOUD, ELIZABETH R. CROCKER, SCOTT BAYLENS, JAMES A. BURKE, III, plaintiffs: M. Stephen Dampier, P. Dean Waite, Jr., Mary Elizabeth Snow, THE SHARBROUGH LAW FIRM, PC, John W. Sharbrough, III, Mobile, AL.

For MIDWESTERN PET FOODS, INC., plaintiff: Roberta D. Liebenberg, FINE, KAPLAN & BLACK, Philadelphia, PA.

For A. L. GILBERT, plaintiff: Bruce H. Simon, COHEN, WEISS & SIMON, New York, NY.

For ANILE PHARMACY, INC, plaintiff: M. Eric Frankovitch, FRANKOVITCH, ANETAKIS, COLANTONIO & SIMON, Steven M. Recht, RECHT LAW OFFICES, Weirton, WV.

For AAA EGG FARM, plaintiff: Craig C. Corbitt, ZELLE, HOFFMANN, VOELBEL & GETTE, L.L.P., San Francisco, CA.

For FEEDSTUFFS PROCESSING COMPANY, plaintiff: Steven [*7] O. Sidener, GOLD BENNETT & CERA LLP, San Francisco, CA.

For PERRIGO COMPANY, NBTY, INC., REXALL SUNDOWN, INC., TWIN LABORATORIES, INC., CAMBR COMPANY, NATURAL ALTERNATIVES INTERNATIONAL, INC., NUTRACEUTICAL CORPORATION, MAKERS OF KAL, INC., LEINER HEALTH PRODUCTS, INC., plaintiffs: Richard Alan Arnold, KENNY, NACHWALTER, SEYMOUR, ARNOLD, CRITCHLOW & SPECTOR, PA, Miami, FL.

For PUBLIX SUPERMARKETS, INCORPORATION, MEIJER INC, plaintiffs: Joseph Michael Vanek, DAAR, FISHER, KANARIS & VANEK, P.C., Chicago, IL.

For HILL'S PET NUTRITION, INC., plaintiff: Gerald G. Saltarelli, BUTLER RUBIN SALTARELLI & BOYD, Chicago, IL.

For NUTRA BLEND, LLC, plaintiff: C. Brooks Wood, MORRISON & HECKLER, LLP, Kansas City, MO.

For THE PROCTER GAMBLE COMPANY, plaintiff: Robert II Heuck, WAITE, SCHNEIDER, BAYLESS & CHESLEY, Cincinnati, OH.

For TRAVIS CRANE, plaintiff: Dallas D. Ball, Ballentine, SC.

For KELLOGG COMPANY, plaintiff: Jeannine M. Tsukahara, ZELLE, HOFFMANN, VOELBEL & GETTE, L.L.P., San Francisco, CA.

For MC SHARES, INC., plaintiff: Carol Elder Bruce, TIGHE, PATTON, ARMSTRONG & TEASDALE, Washington, DC.

For BRISTOL MYERS SQUIBB, plaintiff: Colin A. Underwood, [*8] SOLOMON, ZAUDERER, ELLENHORN, FRISCHER & SHARP, New York, NY.

For HORMEL FOODS CORP, plaintiff: Eric Sean Jackson, ROBINS, KAPLAN, MILLER & CIRESI, L.L.P., Washington, DC.

For HORMEL FOODS CORP, JENNIE-O FOODS, SPARBOE AGRIC CORP, FORM A FEED INC, BIG GAIN INC, LAND O'LAKES, INC., GOLDEN STATE FEEDS INC, DIAMOND CROSS INC, LAND O'LAKES/ HARVEST STATES FEEDS LLC, THOMAS PRODUCTS INC, QUALITY LIQUID FEEDS INC, CENEX HARVEST STATE COOPERATIVES, WILLMAR POULTRY FARMS INC, GESSELL FEED

2001 U.S. Dist. LEXIS 25070, *8

INC, VIKING FEED SERVICE, GOLD'N PLUMP POULTRY INC, MALT O MEAL COMPANY, plaintiffs: Phillip A. Cole, LOMMEN, NELSON, COLE & STAGEBERG, P.A., Minneapolis, MN.

For CENEX HARVEST STATE COOPERATIVES, TURKEY STORE CO, WILLMAR POULTRY COMPANY, INC., plaintiffs: K. Craig Wildfang, ROBINS, KAPLAN, MILLER & CIRESI, Minneapolis, MN.

For TURKEY STORE CO, plaintiff: Andrew S. Birrell, Minneapolis, MN.

For BASIC DRUGS INC, plaintiff: Kevin A. Bowman, SEBALY, SHILLITO & DYER, Dayton, OH.

For JUDY GREENE, plaintiff: Gordon Ball, Knoxville, TN.

For HUDSPETH & TILTON, plaintiff: Elaine Metlin, GILBERT, HEINTZ & RANDOLPH, Washington, DC.

For PHARMATIVE CORP, plaintiff: Bradley Stuart [*9] Lui, MORRISON & FOERSTER, LLP, Washington, DC.

For CARGILL, INCORPORATED, THE IAMS COMPANY, AGRIBRANDS INTERNATIONAL, INC., CARL S. AKEY, INTERNATIONAL, RALSTON PURINA COMPANY, RALCORP HOLDINGS INC, plaintiffs: Robert Kenly Webster, Washington, DC.

For CONOPCO, INC., plaintiff: Lawrence Byrne, SQUADRON, ELLENOFF, PLESENT & SHEINFELD, LLP, New York, NY.

For ALABAMA MEDICAID AGENCY, plaintiff: Charles A. Graddick, SIMS, GRADDICK & DODSON, P.C., Mobile, AL.

For AMER HOME PROD CORP, plaintiff: William James Bachman, WILLIAMS & CONNOLLY, Washington, DC.

For SKW TEXTURANT SYSTEMS MANUFACTURING, plaintiff: Frank Panopoulos, WHITE & CASE, L.L.P., Washington, DC.

For LL MURPHREY, plaintiff: Trawick H. Stubbs, Jr., STUBBS & PERDUE, PA, New Bern, CA.

For COCA-COLA COMPANY, plaintiff: Lee Allen Freeman, FREEMAN, FREEMAN & SALZMAN, P.C., Chicago, IL.

For SOUTH-CENTRAL PRODUCTS, INC., plaintiff: Terri Chadick, CONNER & WINTERS, P.L.L.C., Fayetteville, AR.

For LEAD DEFENDANTS, DONALDSON & HASSENBEIN, INC V F. HOFFMANN-LA ROCHE LTD, 98-762, DONALDSON & HASENBEIN, INC V ROCHE VITAMINS INC, 98-1116, ANIMAL SCIENCE PRODUCTS, INC V HOFFMANN-LA ROCHE INC, 98-2947, ANIMAL [*10] SCIENCE PRODUCTS, INC V CHINOOK GRP LTD, 99-544, DAD'S PRODUCTS CO, INC V F. HOFFMANN-LA ROCHE LTD, 99-599, PILGRIM'S PRIDE CORP. V CHINOOK GRP LTD, 99-718, PILGRIM'S PRIDE CORP V HOFMANN-LA ROCHE INC, 99-720, LIVENGOOD FEEDS, INC. V HOFFMANN-LA ROCHE, INC, 99-782, LAKELAND CASH FEED CO V HOFFMANN-LA ROCHE INC, 99-921, PRODUCTS CO V HOFMANN-LA ROCHE INC, 99-986, WRIGHT ENRICHMENT INC V CHINOOK GRP LTD, 99-1014, WRIGHT ENRICHMENT INC V HOFFMANN-LA ROCHE INC, 99-1015, WRIGHT ENRICHMENT INC V LONZA INC, 99-1013, HOFFMAN-LAROCHE, INC, defendants: Bruce L. Montgomery, ARNOLD & PORTER, Washington, DC.

For LEAD DEFENDANTS, DONALDSON & HASSENBEIN, INC V F. HOFFMANN-LA ROCHE LTD, 98-762, DONALDSON & HASENBEIN, INC V ROCHE VITAMINS INC, 98-1116, ANIMAL SCIENCE PRODUCTS, INC V HOFFMANN-LA ROCHE INC, 98-2947, ANIMAL SCIENCE PRODUCTS, INC V CHINOOK GRP LTD, 99-544, DAD'S PRODUCTS CO, INC V F. HOFFMANN-LA ROCHE LTD, 99-599, PILGRIM'S PRIDE CORP. V CHINOOK GRP LTD, 99-718, PILGRIM'S PRIDE CORP V HOFMANN-LA ROCHE INC, 99-720, LIVENGOOD FEEDS, INC. V HOFFMANN-LA ROCHE, INC, 99-782, LAKELAND CASH FEED CO V HOFFMANN-LA ROCHE INC, 99-921, PRODUCTS CO V HOFMANN-LA ROCHE INC, 99-986, WRIGHT ENRICHMENT [*11] INC V CHINOOK GRP LTD, 99-1014, WRIGHT ENRICHMENT INC V HOFFMANN-LA ROCHE INC, 99-1015, WRIGHT ENRICHMENT INC V LONZA INC, 99-1013, RHONE-POULENC S.A., RHONE-POULENC AG COMPANY, INC., ROUSSEL CORP, RHONE-POULENC ANIMAL NUTRITION INC, defendants: George T. Manning, JONES, DAY, REAVIS & POGUE, Washington, DC.

For LEAD DEFENDANTS, DONALDSON & HASSENBEIN, INC V F. HOFFMANN-LA ROCHE LTD, 98-762, DONALDSON & HASENBEIN, INC V ROCHE VITAMINS INC, 98-1116, ANIMAL SCIENCE PRODUCTS, INC V HOFFMANN-LA ROCHE INC, 98-2947, ANIMAL SCIENCE PRODUCTS, INC V CHINOOK GRP LTD, 99-544, DAD'S PRODUCTS CO, INC V F. HOFFMANN-LA ROCHE LTD, 99-599, PILGRIM'S PRIDE CORP. V CHINOOK GRP LTD, 99-718, PILGRIM'S PRIDE CORP V HOFMANN-LA ROCHE INC, 99-720, LIVENGOOD FEEDS, INC. V HOFFMANN-LA ROCHE, INC, 99-782, LAKELAND

CASH FEED CO V HOFFMANN-LA ROCHE INC, 99-921, PRODUCTS CO V HOFMANN-LA ROCHE INC, 99-986, WRIGHT ENRICHMENT INC V CHINOOK GRP LTD, 99-1014, WRIGHT ENRICHMENT INC V HOFFMANN-LA ROCHE INC, 99-1015, WRIGHT ENRICHMENT INC V LONZA INC, 99-1013, BASF AG, BASF CORPORATION, defendants: Tyrone C. Fahner, MAYER, BROWN & PLATT, Chicago, IL.

For LEAD DEFENDANTS, DONALDSON & HASSENBEIN, INC V F. HOFFMANN-LA **[*12]** ROCHE LTD, 98-762, DONALDSON & HASENBEIN, INC V ROCHE VITAMINS INC, 98-1116, ANIMAL SCIENCE PRODUCTS, INC V HOFFMANN-LA ROCHE INC, 98-2947, ANIMAL SCIENCE PRODUCTS, INC V CHINOOK GRP LTD, 99-544, DAD'S PRODUCTS CO, INC V F. HOFFMANN-LA ROCHE LTD, 99-599, PILGRIM'S PRIDE CORP. V CHINOOK GRP LTD, 99-718, PILGRIM'S PRIDE CORP V HOFMANN-LA ROCHE INC, 99-720, LIVENGOOD FEEDS, INC. V HOFFMANN-LA ROCHE, INC, 99-782, LAKELAND CASH FEED CO V HOFFMANN-LA ROCHE INC, 99-921, PRODUCTS CO V HOFMANN-LA ROCHE INC, 99-986, WRIGHT ENRICHMENT INC V CHINOOK GRP LTD, 99-1014, WRIGHT ENRICHMENT INC V HOFFMANN-LA ROCHE INC, 99-1015, F. HOFFMANN-LAROCHE, LTD., defendants: Scott William Muller, DAVIS, POLK & WARDWELL, Washington, DC.

For LEAD DEFENDANTS, DONALDSON & HASSENBEIN, INC V F. HOFFMANN-LA ROCHE LTD, 98-762, DONALDSON & HASENBEIN, INC V ROCHE VITAMINS INC, 98-1116, ANIMAL SCIENCE PRODUCTS, INC V HOFFMANN-LA ROCHE INC, 98-2947, ANIMAL SCIENCE PRODUCTS, INC V CHINOOK GRP LTD, 99-544, DAD'S PRODUCTS CO, INC V F. HOFFMANN-LA ROCHE LTD, 99-599, PILGRIM'S PRIDE CORP. V CHINOOK GRP LTD, 99-718, PILGRIM'S PRIDE CORP V HOFMANN-LA ROCHE INC, 99-720, LIVENGOOD **[*13]** FEEDS, INC. V HOFFMANN-LA ROCHE, INC, 99-782, LAKELAND CASH FEED CO V HOFFMANN-LA ROCHE INC, 99-921, PRODUCTS CO V HOFMANN-LA ROCHE INC, 99-986, WRIGHT ENRICHMENT INC V CHINOOK GRP LTD, 99-1014, WRIGHT ENRICHMENT INC V HOFFMANN-LA ROCHE INC, 99-1015, WRIGHT ENRICHMENT INC V LONZA INC, 99-1013, TAKEDA AMERICA INC, TAKEDA VITAMIN & FOOD USA, INC., TAKEDA CHEMICAL INDUSTRIES, LTD., defendants: Lawrence Byrne, SQUADRON, ELLENOFF, PLESENT & SHEINFELD, LLP, New York, NY.

For REILLY INDUSTRIES, INC., defendant: Karen

Natalie Walker, Jeffrey Bossert Clark, KIRKLAND & ELLIS, Washington, DC.

For EM INDUSTRIES, INC., defendant: Theodore V. Cacioppi, Craig M. Walker, ROGERS & WELLS, New York, NY.

For EM INDUSTRIES, INC., E. MERCK, MERCK KGAA, defendants: Fred W. Reinke, CLIFFORD, CHANCE, ROGERS & WELLS, LLP, Washington, DC.

For BASF AG, RHONE-POULENC S.A., F HOFFMAN-LA ROCHE, INC., defendants: Jonathan Lee Greenblatt, SHEARMAN & STERLING, Washington, DC.

For BASF AG, BASF AKTIENGESELLSCHAFT, defendants: Stephen Fishbein, SHEARMAN & STERLING, New York, NY.

For RHONE-POULENC S.A., HOECHST MARION ROUSSEL S.A., defendants: Mary-Helen Perry, JONES, DAY, REAVIS & POGUE, **[*14]** Washington, DC.

For DUCOA, L.P., DCV, INC., defendants: James R. Weiss, PRESTON, GATES, ELLIS & ROUVELAS MEEDS, Washington, DC.

For DUCOA, L.P., DCV, INC., defendants: Kurt S. Odenwald, Jim J. Shoemake, Kevin K. Spradling, GUILFOIL PETZALL & SHOEMAKE, LLP, St. Louis, MO.

For DCV, INC., defendant: Elizabeth Wallace Fleming, SENNIGER, POWERS, LEAVITT & ROEDEL, St. Louis, MO.

For CONAGRA, INC., defendant: Paul H. Friedman, Terri L. Bowman, DECHERT PRICE & RHOADS, Washington, DC.

For PETER COPLAND, CHINOOK GROUP LTD, CHINOOK GROUP INC, COPE INVESTMENTS LTD, JOHN KENNEDY, ROBERT SAMUELSON, defendants: Donald I. Baker, BAKER & MILLER, PLLC, Washington, DC.

For RHONE-POULENC AG COMPANY, INC., RHONE-POULENC ANIMAL NUTRITION INC, defendants: John M. Majoras, JONES, DAY, REAVIS & POGUE, Cleveland, OH.

For MITSUI & CO., LTD., MITSUI & COMPANY, INCORPORATED (USA), defendants: Aileen Meyer, WINTHROP, STIMSON, PUTNAM & ROBERTS, Washington, DC.

For BIOPRODUCTS, INC., defendant: Michael E. Nogay, SELLITTI NOGAY & MCCUNE, Weirton, WV.

For VITACHEM COMPANY, defendant: Erin R. Brewster, MACCORKLE LAVENDER & CASEY, PLLC, Charleston, WV.

For DAIICHI PHARMACEUTICALS [*15] CORPORATION, DAIICHI FINE CHEMICALS, INC., defendants: Michael Louis Denger, GIBSON, DUNN & CRUTCHER, L.L.P., Washington, DC.

For TANABE SEIYAKU COMPANY LIMITED, TANABE, U.S.A., INC., TAKEDA U.S.A., INC., defendants: Mark Riera, SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP, Los Angeles, CA.

For SUMITOMO CHEMICAL CO., LTD., defendant: Peter Dean Isakoff, WEIL, GOTSHAL & MANGES, L.L.P., Washington, DC.

For TANABE, U.S.A., INC., defendant: William L. Monts, III, WILSON, HAJEK & SHAPIRO, P.C., Virginia Beach.

For KUNO SOMMER, defendant: John Worth Kern, IV, JANIS, SCHUELKE & WECHSLER, Washington, DC.

For EISAI CORPORATION OF NORTH AMERICA, EISAI CO., LTD., EISAI USA INC, EISAI INC., defendants: Margaret Kolodny Pfeiffer, SULLIVAN & CROMWELL, Washington, DC.

For E.I. DUPONT DE NEMOURS AND COMPANY, defendant: George J Terwilliger, MCGUIRE, WOODS, BATTLE & BOOTHE, LLP, Washington, DC.

For UCB SA, UCB CHEMICALS CORP, UCB PHARMA INC, defendants: Kevin Richard Sullivan, KING & SPALDING, Washington, DC.

For GIVAUDAN-ROURE FLAVORS, INC., defendant: Jacqueline Ray Denning, ARNOLD & PORTER, Washington, DC.

For UCB CHEMICALS CORP, UCB PHARMA INC, defendants:  [*16] Ann Marie Hart, KING & SPALDING, Washington, DC.

For BASF CORPORATION, defendant: Andrew S. Marovitz, MAYER, BROWN & PLATT, Chicago, IL.

For LONZA A.G., LONZA INC., defendants: Thomas M. Mueller, Jonathan Shiffman, MAYER, BROWN & PLATT, New York, NY.

For CHINOOK GROUP LTD, defendant: W. Todd Miller, BAKER & MILLER, PLLC, Washington, DC.

For EISAI CO., LTD., EISAI USA INC, EISAI INC., defendants: Stacey R. Friedman, SULLIVAN & CROMWELL, D. Stuart Meiklejohn, New York, NY.

For TAKEDA VITAMIN & FOOD USA, INC., defendant: Cathy M. Armstrong, THORP REED & ARMSTRONG,

LLP, Wheeling, WV.

For DEGUSSA-HULS AG, DEGUSSA HULS CORPORATION, defendants: Donald C. Klawiter, MORGAN, LEWIS & BOCKIUS, L.L.P., Washington, DC.

For DEGUSSA-HULS AG, defendant: Thomas John Lang, MORGAN, LEWIS & BOCKIUS, L.L.P., Washington, DC.

For BIOPRODUCTS, INC., defendant: Charles E. Jarrett, Marcia E. Marstellar, BAKER & HOSTETLER, Marcia E. Marsteller, Cleveland, OH.

For MITSUI & CO., LTD., defendant: Holly A. House, MCCUTCHEN DOYLE BROWN & ENENEER, San Francisco, CA.

For MITSUI & CO., LTD., defendant: Sutton Keany, PILLSBURY & WINTHROP, LLP, New York, NY.

For NOVUS [*17] INTERNATIONAL, INC., defendant: E. Perry Johnson, Jeffrey S. Russell, BRYAN CAVE, LLP, St. Louis, MO.

For MID-AMERICA DAIRYMEN, INC., ASSOCIATED MILK PRODUCERS, INC., MILK PRODUCTS LLC, BORDEN INC, claimants: William W. Kocher, Columbus, OH.

For BECKETT APROTHECARY, HOPKINSON HOUSE PHARMACY INC, claimants: Philip A. Steinberg, Bala Cynwyd, PA.

For CALIFORNIA INDIRECT PURCHASER/ GARDNER-ROSSI COMPANY PLAINTIFFS, GARDNER/ ROSSI COMPANY, LINDA PHILION, JULIA HART-LAWSON, HOWARD GENDLER, CONNE MARIE GRAHAM, HELENE SILVER, LINNEY DICKINSON and ROSS W. GRAHAM, movant: Eric B. Fastiff, LEIFF, CABRASER, HEIMANN & BERNSTEIN, LLP, Guido Saveri, SAVERI & SAVERI, PC, San Francisco, CA.

For STATE PLAINTIFFS/ GIRAL, movant: Jeffrey Andrew Bartos, QUERRIERI, EDMOND & CLAYMAN, Washington, DC.

For SELTZER CHEMICALS, 1700 PHARMACY INC, JBDL PHARMACY, HORIZON LABORATORIES, INC., movants: Ann Catherine Yahner, COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C., Washington, DC.

For GLEN FORD, RITCHIE SMITH FEEDS, INC., VITAPHARM CANADA LTD, movants: Michael G. Lenett, THE CUNEO LAW GROUP, P.C., Washington, DC.

For FEDERAL REPUBLIC OF GERMANY, THE,

Case 1:18-cv-25337-KMM   Document 226-2   Entered on FLSD Docket 03/02/2023   Page 83 of 93

Page 8 of 18
2001 U.S. Dist. LEXIS 25070, *17

movant: Peter Heidenberger, [*18] Chevy Chase, MD.

For STEPHEN J. POLLAK, special master: Stephen John Pollak, SHEA & GARDNER, Washington, DC.

For CARGILL, INCORPORATED, AGRIBRANDS INTERNATIONAL, INC., CARL S. AKEY, INC., THE IAMS COMPANY, intervenors: Robert Kenly Webster, Washington, DC.

For ARCHER DANIELS MIDLAND COMPANY, intervenor: Steven R. Kuney, WILLIAMS & CONNOLLY, Washington, DC.

For GENERAL MILLS, INC., intervenor: Garrett Berry Magens Duarte, COLLIER, SHANNON, RILL & SCOTT, P.L.L.C., Washington, DC.

**Judges:** Stephen J. Pollak, Special Master.

**Opinion by:** Stephen J. Pollak

## Opinion

**Report and Recommendations of the Special Master Respecting Plaintiffs' Motion to Compel Defendants to Produce 30(b)(6) Witnesses and Officers, Directors and Managing Agents for Depositions in the United States**

This report addresses issues raised by plaintiffs' August 3, 2001, motion to compel certain foreign defendants "to produce their _Rule 30(b)(6)_ witnesses and officers, directors and managing agents for depositions in Washington, D.C. or such other location in the United States agreed to by the parties." [1] Having considered

---

[1] Plaintiffs' Motion to Compel Foreign Defendants to Produce _Rule 30(b)(6)_ Witnesses and Officers, Directors and Managing Agents for Depositions in the United States, dated Aug. 3, 2001 ("Pls. Mot."), at 1. Plaintiffs assert that their motion applies to 11 named foreign defendants, F. Hoffmann-LaRoche Ltd.; BASF AG; Rhone-Poulenc S.A.; Rhone-Poulenc Animal Nutrition S.A.; Daiichi Pharmaceutical Co., Ltd.; Eisai Co., Ltd.; Merck KGaA; E. Merck; Reilly Chemicals, S.A.; Degussa AG; and Lonza AG (referred to hereinafter as the "foreign defendants"). Id. at 1 n.1. Plaintiffs also assert that the motion should apply prospectively to other foreign defendants--viz., UCB S.A.; Sumitomo Chemical Co., Ltd.; and Tanabe Seiyaku Co., Ltd.--in the event the objections of those defendants to personal jurisdiction are rejected by the Court. Id. I recommend that this Report and Recommendations, depending on the results of any Rule 53 objections thereto,

the full record, including the memoranda, exhibits, declarations, and other materials [*19] submitted by the parties, the arguments presented at the hearing on August 15, 2001, and other pertinent materials in the record before the Court, for the reasons that follow, I recommend that the plaintiffs' motion be granted, and that each of the foreign defendants subject to the motion be ordered to produce for deposition in Washington, D.C., or such other location in the United States as may be agreed upon, their 30(b)(6) witnesses and up to six officers, directors, and managing agents ("managing agents").

[*20] **Background**

The foreign defendants have stipulated that this Court has personal jurisdiction over each of them for purposes of these actions. [2] On June 20, 2001, the Court denied the foreign defendants' motion for a protective order requiring plaintiffs to conduct discovery under the Hague Convention, or other applicable treaties and laws, and approved narrowed merits discovery to be taken under the Federal Rules of Civil Procedure. On July 20 and August 2, 2001, plaintiffs noticed 30(b)(6) depositions of nine of the 11 foreign defendants and for six managing agents of two of these defendants for September 2001 in Washington, D.C. [3]

Before issuing these notices, plaintiffs offered to limit the depositions in the United States to the 30(b)(6) depositions and depositions of six managing agents of each of [*21] the foreign defendants. Defendants rejected that offer, insisting that the depositions be "taken where the deponent (party or non-party) resides," [4] except that the Swiss defendants insisted that depositions take place in Germany on the ground that it is illegal to take a Federal Rules deposition in Switzerland. [5]

---

inform, but not necessarily dictate, the outcome on the issue addressed for foreign defendants that are still objecting to personal jurisdiction and thus have not had reason to show particular circumstances that might justify a different ruling.

[2] See Stipulation and Order Regarding Personal Jurisdiction and Re-Filing of Actions, filed Jan. 29, 2001, P 4.

[3] These notices are attached as Exhibit No. 1 to Plaintiffs' Motion to Compel.

[4] See Pls. Mot., Exh. Nos. 2, 3.

[5] See Foreign Defendants' Opposition to Plaintiffs' Motion to Compel, dated Aug. 9, 2001 ("Defs. Opp. Mem."), at 10 n.6.

On August 3, 2001, plaintiffs filed the instant motion to compel and a supporting memorandum, along with exhibits. Among those exhibits were documents published by the U.S. Department of State detailing procedures to be followed by U.S. citizens when taking depositions in Japan, Germany, and France. [6] On August 9, 2001, defendants filed an opposition to the motion to compel. Among the exhibits attached to defendants' opposition were declarations of Christoph M. Gass, an attorney of F. Hoffmann-La Roche Ltd., and of Joerg Buchmueller, a Vice [*22] President and in-house counsel of BASF AG, which detail the burdens that would be imposed on their respective companies should their 30(b)(6) witnesses and/ or managing agents be compelled to submit to depositions in the United States. [7]

On August 14, 2001, plaintiffs filed a reply memorandum in support of their motion to compel. Plaintiffs attached to their reply a declaration of John J. Rosenthal, an attorney who represents one of the plaintiffs in this litigation but whose declaration discusses his experience taking depositions in Germany in the Graphite Electrodes case. [8] On August 15, 2001, the day of the hearing on plaintiffs' motion, defendants filed a motion for leave to submit supplemental authority in opposition to the motion to compel, and attached declarations of David E. Miller and Jerome S. Fortinsky. Mr. Miller's declaration states that he is a partner in a law firm representing [*23] one of the foreign defendants and that, in a prior case, he took depositions in France and Germany that were no different from Federal Rules depositions taken in the United States. Mr. Fortinsky's declaration states that he is a partner in a law firm representing one of the foreign defendants and that he was one of the attorneys representing a defendant in the Graphite Electrodes litigation. He takes issue with Mr. Rosenthal's declaration as it relates to procedures governing depositions in Germany and, in particular, as to what transpired in the Graphite

Electrodes case Mr. Rosenthal discusses in his declaration.

[*24] On August 17, 2001, two days after the hearing, defendants filed a second motion for leave to submit supplemental authority. Attached to their motion is a declaration of Iva Nathanson, Vice President of Manhattan Reporting, a court reporting service headquartered in New York City. Ms. Nathanson states that her firm has provided court-reporting services for approximately 50 depositions in Germany and 40 depositions in France, and that such depositions were taken under the authority of the Federal Rules of Civil Procedure and took place without any foreign or U.S. State Department approval or intervention. On August 17, 2001, counsel for defendants Daiichi Pharmaceutical Co., Ltd., and Eisai Co., Ltd., submitted a letter stating that depositions may be taken in Japan in accordance with the Federal Rules of Civil Procedure and detailing where conference rooms at the American Consulate in Osaka and the American Embassy in Tokyo would be available for depositions.

On August 24, 2001, plaintiffs filed a motion for leave to submit supplemental authority, and attached declarations of Joachim Zekoll, a Professor of Law at the University of Frankfurt, and Alexander Blumrosen, a partner in a [*25] French law firm. Messrs. Zekoll and Blumrosen state that depositions in Germany and France must be taken in accordance with those nations' laws, and that an order from a United States District Court that such depositions be taken under the Federal Rules does not obviate the need to follow French and German law while taking depositions within those nations' borders. Plaintiffs also attached a letter from William F. Daniels, Consular Officer of the U.S. Department of State's European Division Overseas Citizens Services. Mr. Daniels states that "a U.S. court order which provides that overseas discovery of citizens and foreign nationals in Germany [is] to be conducted under the U.S. Federal Rules of Civil Procedure[] does not override or invalidate the required German government's procedures" applicable to depositions. On August 30, 2001, plaintiffs submitted a redacted Order to Compel Discovery in Dean Foods Co. v. Eastman Chemical Co., No. C 00-4379 WHO (JL) (N.D. Cal. Aug. 13, 2001), a ruling referenced in but not yet published at the time of their earlier filings, and discussed at the hearing. [9]

---

[6] See Pls. Mot., Exh. Nos. 8-10.

[7] These declarations are attached as Exh. Nos. 12, 19 to Defs. Opp. Mem.

[8] In re Graphite Electrodes Antitrust Litig., MDL No. 1244 (E.D. Pa.). Mr. Rosenthal's Declaration dated Aug. 13, 2001, is Exh. C to Pls. Reply Mem. Defendants had asserted that "the Kenny Nachwalter firm [which represents some of the plaintiffs in this action] took the depositions in Germany [in that case] without any of the Hague Convention procedures that the same firm now argues will be required." Defs. Opp. Mem. at 10-11.

---

[9] See Pls. 8/3/01 Mem. at 10; Transcript of Aug. 15, 2001, hearing ("8/15/01 Tr.") at 27-30. The parties' various motions for leave to submit additional authority are granted. I have

**[*26] The Parties' Contentions**

The plaintiffs maintain that depositions of the foreign defendants' 30(b)(6) witnesses and managing agents should take place in Washington, D.C., rather than in Japan, Germany, and France, on the ground that depositions within those nations' territorial borders are subject to cumbersome, inefficient procedures and laws that would impose "insurmountable obstacles" to necessary discovery, entailing unacceptable delay and excessive expense. Plaintiffs also argue that the defendants have been able to conduct depositions of the plaintiffs in the United States without similarly cumbersome procedures, and that fairness dictates that plaintiffs be given the same opportunity. Finally, plaintiffs argue that the Court has discretion to set the depositions in whatever place it deems best, and that an analysis of the factors courts consider in determining whether foreign parties' 30(b)(6) witnesses and executives should be deposed here or in their home countries favors setting the depositions in the United States.

Defendants respond that plaintiffs' motion seeks a ruling that goes against the understanding and practice of the parties to this litigation: namely, [*27] that depositions will occur in the location most convenient for the deponent. Defendants assert that plaintiffs should not be heard to argue that depositions in Japan, Germany, and France will have to take place according to the laws of those states after successfully arguing that discovery should take place pursuant to the Federal Rules, not the Hague Convention or comparable treaties and foreign laws. Defendants also argue that the general rule governing the location of depositions is that, absent "special circumstances," corporate deponents are deposed at the corporation's principal place of business. Finally, defendants argue that there are no such special circumstances here, and that plaintiffs can take timely Federal Rules-type depositions in Japan, Germany, and France without impediments and without approval or intervention from those nations.

**Report and Recommendations**

HN1[↑] Rule 30(b)(1) tasks the party taking a deposition with providing all other parties written notice "stating the time and place for taking the deposition ***."

given the attached authorities and declarations such weight as they deserve.

Defendants cite a number of cases for the proposition that "if a corporation is noticed for deposition at a location other than its principal [*28] place of business, and the corporation objects, 'the objection should be sustained unless there are unusual circumstances which justify such an inconvenience to the corporation.'" See Defs. Opp. Mem. at 12-13, quoting Zuckert v. Berkliff Corp., 96 F.R.D. 161, 162 (N.D. Ill. 1982); see, also, Defs. Opp. Mem. at 13 n.11.

HN2[↑] Although defendants are correct that depositions of a corporation are generally conducted at its principal place of business, the case law and treatises reflect that where a dispute arises courts have discretion to order a different location depending upon the circumstances. See, e.g., Fin. Gen. Bankshares, Inc. v. Lance, 80 F.R.D. 22, 23 (D.D.C. 1978) (holding that the location of depositions of defendants "ultimately is within the discretion of the Court, and instances of defendants having to appear for depositions at the place of trial are not unusual"); 7 Moore's Federal Practice § 30.20[1][b][ii], at 30-36; 30-37 (3d ed. 2001) ("the deposition of a corporation through its officers or agents normally must be taken at its principal place of business" but "courts retain substantial discretion to designate the site of a deposition"); [*29] 8A Charles Alan Wright et al., Federal Practice and Procedure § 2112, at 74-75, 81 (2d ed. 1994) ("the deposition of a corporation by its agents and officers should ordinarily be taken at its principal place of business," but, "on a motion the court has a wide discretion in selecting the place of examination," and "the particular facts of each case will determine the selection of a place for examination").

Courts have suggested that HN3[↑] the presumption identified by defendants that "depositions occur at a corporation's place of business," Defs. Opp. Mem. at 12, is "'merely a decisional rule that facilitates determination when other relevant factors do not favor one side over the other.'" See, e.g., Custom Form Mfg., Inc. v. Omron Corp., 196 F.R.D. 333, 336 (N.D. Ind. 2000) (citation omitted); 7 Moore's Federal Practice § 30.20[1][b][ii], at 30-37 (same). Thus, there are numerous cases in which courts have ordered depositions of foreign defendants taken in the United States, rather than at the defendant's principal place of business. See, e.g., McKesson Corp. v. Islamic Republic of Iran, 185 F.R.D. 70 (D.D.C. 1999); Fin. Gen. Bankshares, 80 F.R.D. at 23; [*30] Custom Form, 196 F.R.D. at 336-37.

HN4[↑] Where location is disputed, courts generally consider a variety of factors in determining whether the

deposition of a foreign corporation should occur in the United States or abroad. These factors include: [10] (1) the burden to the parties of holding the depositions in the United States relative to the burden of holding the depositions abroad, [11] [*31] including the burdens imposed on the witnesses and the parties' counsel; [12] (2) the court's ability to supervise depositions in the contested location; [13] (3) whether depositions would be impeded by any legal or procedural barriers in another nation; [14] [*32] and (4) the potential affront to the sovereignty of a foreign nation if a deposition pursuant to the Federal Rules of Civil Procedure is held within its borders. [15]

---

[10] Although not every case addressing this issue discusses all of the factors, those I now describe are generally understood to be relevant considerations.

[11] See, e.g., Afram Exp. Corp. v. Metallurgiki Halyps, S.A., 772 F.2d 1358, 1365 (7th Cir. 1985); McKesson, 185 F.R.D. at 80-81; Custom Form, 196 F.R.D. at 336-37; In re Honda Am. Motor Co., 168 F.R.D. 535, 539-40 (D. Md. 1996).

[12] See, e.g., Afram Exp. Corp., 772 F.2d at 1365 (considering defendant's frequent business travel to the United States); Fin. Gen. Bankshares, 80 F.R.D. at 23 (considering location of counsel); Mill-Run Tours, Inc. v. Khashogai, 124 F.R.D. 547, 551 (S.D.N.Y. 1989) (considering the location of counsel and the witnesses); R.F. Barron Corp. v. Nuclear Fields (Australia) Pty. Ltd., No. 91 C 7610, 1992 U.S. Dist. LEXIS 13067, at *3-4 (N.D. Ill. Aug. 27, 1992) (allowing depositions of foreign defendants to be taken in Chicago, rather than the countries where they reside, because deponents would be in Chicago for a convention); D'Agostino v. Johnson & Johnson, 242 N.J. Super. 267, 576 A.2d 893, 898 (N.J. Super. Ct. App. Div. 1990) (considering the foreign defendants' frequent business travel to the United States).

[13] See, e.g., McKesson, 185 F.R.D. at 80; Fin. Gen. Bankshares, 80 F.R.D. at 23; Afram Exp. Corp., 772 F.2d at 1365; Custom Form, 196 F.R.D. at 336-37.

[14] See, e.g., In re Honda, 168 F.R.D. at 540; Triple Crown Am., Inc. v. Biosynth AG, No. 96-7476, 1998 U.S. Dist. LEXIS 6117, at *10 (E.D. Pa. Apr. 29, 1998); Dean Foods Co. v. Eastman Chem. Co., No. C 00-4379 WHO (JL), slip op. at 9 (N.D. Cal. Aug. 13, 2001) (considering "which deposition location would be most expeditious for the progress of the litigation, including any constraints on discovery in the foreign country").

[15] See e.g., McKesson, 185 F.R.D. at 81 (finding that holding a deposition in Iran would burden Iran's sovereignty); In re Honda, 168 F.R.D. at 538 ("If a federal court compels discovery on foreign soil, foreign judicial sovereignty may be

The cases cited by defendants are consistent with HN5[↑] the court having discretion to set the location of depositions where it finds the circumstances warrant. [16] Those cases identify a practice of deposing corporate defendants at their principal place of business; they do not establish a general rule specifying where such depositions must take place. None of the cases cited by defendants identifies the universe of "special" or "unusual" circumstances that would justify setting depositions at a location other than a corporate defendant's principal place of business. I view the factors noted above as fleshing out the [*33] concept of "special circumstances" described in Work v. Bier, 107 F.R.D. 789, 792 n.4 (D.D.C. 1985), a case principally relied upon by defendants. See Defs. Opp. Mem. at 10 n.7, 12, 13 & n.12, 17.

---

infringed, but when depositions of foreign nationals are taken on American or neutral soil, courts have concluded that comity concerns are not implicated."); Custom Form, 196 F.R.D. at 336-37 (same).

[16] I am not persuaded by defendants' attempt to distinguish cases in which courts have required foreign defendants to travel to the United States to be deposed. See Defs. Opp. Mem. at 13-14. In several of the cases identified by defendants as addressing solely which country's procedural laws should be followed, the courts considered where the depositions of a foreign party should take place. See, e.g., Custom Form, 196 F.R.D. at 336-37 (ordering depositions in Illinois, rather than Japan, based on sovereignty concerns, the absence of a special showing of hardship on the part of the Japanese company, the time and expense of holding the depositions in Japan, and the absence of a federal judge in Japan); In re Honda, 168 F.R.D. 535 (ordering deposition in Baltimore, rather than Japan, based on United States sovereignty concerns, the limitations imposed by Japanese laws, the costs of travel, the location of documents; and the potential for delay). Other distinctions argued by defendants appear to be immaterial or nonexistent. For example, defendants argue that in McKesson Corp., 185 F.R.D. at 70, the foreign locations suggested as alternatives to the United States were neither the defendant's principal places of business nor had any relation to the dispute. Although it is true that the court considered London and the Hague as locations for the depositions, the defendant therein stated that the best site for the depositions was Iran (where the deponents lived and worked) and suggested these alternative locations as a compromise. The court rejected all three foreign locations. See, also, M & C Corp. v. Erwin Behr GmbH & Co., 165 F.R.D. 65 (E.D. Mich. 1996) (rejecting defendants' motion for a protective order and ordering depositions to take place in the United States where defendants traveled to the U.S. frequently for business and the discovery sought was after trial and judgment).

[*34] Accordingly, I recommend that the parties' dispute over the location of the depositions of these foreign defendants be resolved by considering the factors in light of the record before the Court, and proceed now to do so.

### 1. Expense and Burden

Plaintiffs maintain that the expense and burden of taking depositions in Europe and Japan far outweigh those entailed by requiring defendants' witnesses to travel to the United States. In support of their position, plaintiffs assert that the depositions will be attended by numerous attorneys, if past practice in this case is to be a guide; [17] that many of the defendants' attorneys are based in the United States; and that plaintiffs will reimburse defendants for the reasonable expenses deponents incur in traveling to the United States for depositions. Plaintiffs assert that the travel burdens on defendants' executives should not be dispositive because those defendants' executives routinely travel to the United States to further defendants' commercial objectives and because the foreign defendants are taking the plaintiffs' depositions in the United States, without having to comply with what plaintiffs view as the cumbersome processes [*35] applicable in Japan, Germany, and France.

Defendants respond that plaintiffs have alleged a world-wide conspiracy and should not be heard to complain of having to travel overseas to depose witnesses, particularly since many of the plaintiffs are large, multi-national corporations, and "they (and their counsel) are seeking a stratospheric pay day in the hundreds of millions of dollars." Defs. Opp. Mem. at 20. [18] Defendants assert that plaintiffs fail to consider the costs of disruption to defendants' business operations from key employees having to miss work for as much as a week's time. Defendants also contend that many of the witnesses plaintiffs seek to depose will invoke their *Fifth Amendment* right against self-incrimination, and thus plaintiffs' [*36] estimates about the number of lawyers needing to attend are unfounded. Additionally, defendants argue that the locations noticed by plaintiffs are "contrary to the established course of dealing among the parties," which has been that "depositions will occur in locations convenient for the deponent." Id. at 5.

As an initial matter, I do not find that the past practice in this case has established a binding rule that determines the location of depositions of representatives of the foreign defendants. Defendants, however, have made a showing that they will be burdened if their executives have to travel to the United States to give depositions. [19] [*38] On balance, though, this factor weighs in favor of ordering depositions to take place here. Given the number of parties and attorneys actively involved in this litigation, and, in particular, the number of [*37] defense attorneys with offices in or easily accessible to Washington, D.C. (whose travel, food, and lodging costs to attend depositions in Europe and Japan would impose significant burdens on their clients), there are considerable efficiencies to be gained by ordering depositions here that outweigh the burdens imposed by requiring defendants' 30(b)(6) witnesses and managing agents to miss work because of travel time. [20] That some or even many managing agents may avail themselves of their right not to incriminate themselves does not seem to be a strong reason for requiring depositions abroad: the depositions for such witnesses, including preparation time, will likely be of such a short duration that the impact on defendants' businesses will be minimal. [21] Limitation of the number of managing agent depositions in the United States (exclusive of consensual depositions) to six per foreign defendant, the figure plaintiffs initially proposed to defendants, further cabins the burden on these defendants.

---

[17] Twenty-four attorneys attended the deposition of a representative of LaRoche Entities on June 7-8, 2001, in Washington, D.C., and 25 attended the deposition of a representative of BASF Corporation on July 11-12, 2001, in New York City. See Pls. Mot., Exh. Nos. 4 & 5.

[18] Defendants further note that "fees of the magnitude [recently awarded to class counsel] would cover a lot of trips to Europe." Defs. Opp. Mem. at 20 n.21.

[19] See Declarations of Christoph M. Gass and Joerg Buchmueller. Defs. Opp. Mem., Exh. Nos. 12, 19.

[20] Plaintiffs' offer to reimburse defendants for the reasonable expenses for their witnesses to travel to the United States removes that cost element from consideration. See Pls. 8/3/01 Mem. at 11.

[21] Should all or most of the managing agents noticed for a particular foreign defendant plead the Fifth, plaintiffs might have cause to seek leave for additional managing agent depositions in the United States. Letter exchanges between counsel indicate that the parties have been working to establish mechanisms that will minimize attorney time and expense where witnesses noticed for deposition intend to plead their *Fifth Amendment* privilege, but will still permit plaintiffs to make the record they desire. See, e.g., letter dated August 29, 2001, from Stephen Fishbein to John Kinney. These efforts are to be encouraged.

2001 U.S. Dist. LEXIS 25070, *37

## 2. Supervision of Depositions

Plaintiffs maintain that depositions of foreign defendants' 30(b)(6) witnesses and managing agents are likely to be contentious and that the resolution of any disputes would be hampered by the distance and time differences between the [*39] United States on the one hand, and Europe and Japan on the other. Defendants respond that Federal Rules discovery, unlike the taking of evidence in civil law countries, "is left to the parties *without* direct involvement by the court." Defs. Opp. Mem. at 21. Defendants further note that depositions of UCB, S.A., executives in Belgium in this case took place without any need to resolve disputes, and that the Special Master has been called upon to resolve a dispute during the middle of only one of the more than 200 depositions already taken in this case. Id. at 21-22. On that basis, defendants predict that the need for judicial intervention, if any, will not be so great as to require a bright-line rule placing their witnesses' depositions in Washington, D.C.

As I have noted during hearings on issues presented to me as Special Master for this litigation, the parties are to be commended for their efforts to resolve disputes without judicial intervention. The many depositions that have taken place thus far without active judicial supervision are evidence of that record. Still, disputes requiring judicial resolution have delayed certain portions of discovery for almost two years, [*40] and some discovery currently awaits judicial resolution of this and other issues. Given the significance of the deposition discovery now at issue and the likely assertion of testimonial privileges, [22] it is not unlikely that disputes requiring judicial intervention will arise during the conduct of these depositions. Were this the beginning of the case and the discovery cutoff date a distant speck on the horizon, any concerns about prompt judicial supervision and resolution of deposition disputes might not be that weighty. But that time period has been expended. Judge Hogan has made abundantly clear in his July 28, 2001, scheduling order that fact discovery must proceed apace and be completed by February 11, 2002, and that the parties cannot assume that requests to extend scheduling dates will be freely granted. Requiring depositions to occur in Washington, D.C., would increase the chances that such disputes could be resolved promptly and that the parties can meet their obligations under the scheduling order. Accordingly, this factor weighs in favor of ordering depositions to take place in Washington, D.C.

### [*41]  3.  Legal and Procedural Impediments in Japan, Germany, and France

Plaintiffs maintain that the depositions for defendants' 30(b)(6) witnesses and managing agents should be taken in Washington, D.C., because depositions in Japan, Germany, and France would be subject to cumbersome legal and procedural requirements under the laws of those nations. Defendants respond that the Court's June 20, 2001, Order that merits discovery proceed under the Federal Rules trumps foreign laws and rules, and that depositions in Japan, Germany, and France could proceed as if they were taking place in the United States. The evidence submitted by the parties in support of their contentions reflects widely divergent views. For the reasons that follow, I find that this factor also weighs in favor of locating the depositions in Washington, D.C.

### a. Japan

As to Japan, plaintiffs submitted materials from the American Consulate in Osaka, Japan, that detail the steps required for taking voluntary depositions of Japanese witnesses in Japan. [23] [*43] Plaintiffs maintain that these steps are unduly burdensome and that the requirement that depositions take place only at the U.S. Embassy or Consulates [*42] is unworkable given the limited size and availability of rooms and the number of attorneys expected to attend the depositions. Plaintiffs also submitted the August 13, 2001, opinion in Dean Foods, [24] which found that the procedural

---

[22] For example, at the hearing, counsel for the defendants stated that the defendants' witnesses could assert testimonial privileges based on their respective nations' privacy laws regardless of where the depositions taken place. See 8/15/01 Tr. at 115, 125.

---

[23] According to those documents, a party must (1) telephone the Consulate to determine which dates and which rooms in the U.S. Embassy or Consulate are available; (2) make an initial reservation; (3) submit the initial reservation fee of $ 400; (4) apply for and receive a court order scheduling the deposition, and send the order and a list of all attorneys who will participate in the deposition; (5) submit a $ 200-per-day deposit for the room (the party will also have to pay $ 200-per hour for consular fees if the transcript is to be certified); (6) obtain visas from the Japanese government for the attorneys planning to attend; (7) arrange for stenographers, videographers, and interpreters; and (8) arrange for the transcripts. Pls. Mot., Exh. No. 8.

[24] Dean Foods Co. v. Eastman Chem. Co., No. C 00-4379

2001 U.S. Dist. LEXIS 25070, *42

requirements for depositions at the American Consulate "constitute a substantial obstacle to the smooth conduct of proceedings" and ordered that depositions of the Japanese defendant's managing agents take place in San Francisco, with deponents' reasonable expenses to be borne by plaintiffs. [25]

The Japanese defendants do not take specific issue with the list of requirements plaintiffs set forth as applying to depositions at the U.S. Consulate or Embassy. Nevertheless, counsel for the Japanese defendants advised in a letter of August 17, 2001 that "there are no procedures or rules in Japan that will prevent depositions in Japan, in this litigation, from being conducted in accordance with the Federal [*44] Rules of Civil Procedure as ordered by this Court." The same letter does acknowledge, however, that depositions in Japan must be taken at the American Consulate or Embassy; that a deposition room in the Consulate holding eight people will not be available until October 9, 2001; that a room holding 15 people will not be available until November 17, 2001; and that a room holding 20 people at the American Embassy in Tokyo will not be available until January 17, 2002.

I find that the steps required for taking depositions at the American Consulate are a burden but not so onerous as to be dispositive as to this factor. Still, given the February 11, 2002, cutoff for fact discovery, the number of attorneys who can reasonably be expected to attend the depositions, and the size and availability of conference rooms, [26] I conclude that this factor weighs in favor placing depositions of the Japanese defendants' 30(b)(6) witnesses and managing agents in Washington, D.C., rather than Japan.

**[*45]  b. Germany**

As to Germany, plaintiffs submitted materials of the U.S. Consulate General in Frankfurt, Germany, that detail the steps that must be taken to conduct voluntary depositions within Germany's borders. [27] Plaintiffs also submitted a letter from a State Department official in Washington, D.C., William F. Daniels, that supports plaintiffs' contentions that German discovery procedures apply to depositions notwithstanding the Court's June 20, 2001, Order specifying that merits discovery be taken under the Federal Rules rather than the Hague Convention. Mr. Daniels's letter states, in relevant part:

> "a U.S. court order which provides that overseas discovery of citizens and foreign nationals in Germany [is] to be conducted under the U.S. Federal Rules of Civil Procedure[] does not override or invalidate the German government's procedures which are set forth in the U.S. Consulate General-Frankfurt's website []."

Specifically, German law requires that any "U.S.-style" depositions of individuals in Germany be administered by the U.S. Embassy or Consulate, etc., and are not superseded by any U.S. Court order that depositions be conducted under the Federal [*46] Rules. It has long been the State Department's understanding of German law that private litigants cannot simply take depositions on their own of foreign nationals in Germany--even if there is a US court order that depositions be made under the Federal Rules."

Plaintiffs also submitted a Declaration of Joachim Zekoll, who states:

> "even with an order from this Court requiring that discovery proceed under the Federal Rules of Civil Procedure, plaintiffs will violate German law if they conduct Federal Rules depositions of German nationals in Germany without following the procedures set forth in the [Hague] Evidence Convention or other diplomatic agreements. *** The procedures set forth in the Evidence Convention and on the U.S. Consulate General-Frankfurt's website are part of German domestic law, and offer

---

WHO (JL) (N.D. Cal. Aug. 13, 2001).

[25] Magistrate Judge Larson issued an oral ruling on July 11, 2001, denying a motion for protective order filed by a Japanese defendant and ordering the defendant to produce its witnesses for depositions in San Francisco. See Pls. 8/3/01 Mem. at 10 and Exh. No. 12. This ruling was affirmed on August 2, 2001, by District Judge Orrick. See 8/2/01 Transcript at 4 (submitted under cover of letter dated Aug. 16, 2001, of John F. Kinney). Magistrate Judge Larson stated the reasons for his July 11, 2001, ruling in a written opinion published August 13, 2001, which is referenced above in the text.

[26] I am not persuaded that the limited availability of rooms could be overcome by videoconferencing.

---

[27] Pls. Mot., Exh. No. 9. According to those materials, depositions must take place at the U.S. Embassy or one of the consulates; the testimony "must be given voluntarily without coercion or threat of future sanctions"; and "prior to the taking of testimony and in accordance with German law, the consular officer will administer a voluntariness advisement to each witness." After receiving notice of the deposition, the American Embassy will notify the German Ministry of Justice of the deposition, which will, in turn, notify the appropriate state government in Germany. The plaintiffs must pay a $ 400 scheduling fee and $ 200 per hour for consular services.

the exclusive means by which plaintiffs lawfully may take depositions of German nationals within Germany for use in U.S. legal proceedings, [footnote omitted]" [28]

Finally, plaintiffs submitted a Declaration of John J. Rosenthal, an attorney representing one of the plaintiffs in this action, which sets forth Mr. Rosenthal's views on whether Federal Rules [*47] depositions may take place in Germany based on his experiences in another case.

[*48] Although in their opposition brief defendants did not take issue with the materials plaintiffs submitted from the U.S. Consulate General Frankfurt that detail the steps plaintiffs would have to follow to depose witnesses in Germany, at the hearing defendants maintained that the Court's June 20, 2001, Order allowing discovery to proceed under the Federal Rules rendered the German procedures inapplicable. In defendants' view, depositions could take place in Germany pursuant to the Federal Rules, without the approval or intervention of the German government. Counsel representing the European defendants stated:

"The deposition will be exactly as if it were taken in Brooklyn. That is exactly right. That's what Judge Hogan ordered and that's what we're prepared to do." 8/15/01 Tr. at 115.

Defense counsel had earlier acknowledged that there was no case dealing with whether parties could conduct a Federal Rules deposition in Germany as if it were in Washington, D.C. Id. at 109. Defendants asserted at the hearing that depositions would not be voluntary and that defendants would be subject to the Court's sanction power if their witnesses refused to testify. Defendants also [*49] submitted a Declaration of Iva Nathanson, who stated that her court-reporting service has been involved in approximately 50 depositions in Germany that were conducted without the involvement of foreign judicial or consular officials and took place in private offices or hotel conference rooms. Finally, defendants submitted the Declarations of David E. Miller and Jerome S. Fortinsky, each of whom states that he has conducted Federal Rules depositions in Germany

without incident.

Based on the full record before me, I conclude that the requirements of German law respecting the taking of evidence by deposition in Germany of German nationals apply notwithstanding Judge Hogan's June 20, 2001, Order that merits discovery in this case proceed under the Federal Rules. I am not prepared to place significant reliance upon the conflicting declarations of various counsel and court reporters who have participated in depositions in other cases as to whether those depositions proceeded with or without impediments. Nor am I willing to rest upon the representations of defense counsel, which I accept as made in full good faith, that any depositions ordered to take place in Germany would proceed at counsel's [*50] office without limitation, particularly since those counsel did not speak on behalf of Germany itself or on behalf of all parties who may be represented at the depositions, including counsel who may be retained by the witnesses.

In reaching this conclusion, I place primary reliance on the declaration of Mr. Zekoll, who reaches the same conclusion set forth by Mr. Daniels. [29] I also find it significant that the Federal Republic of Germany, which has participated in this litigation by filing an amicus brief urging that merits discovery be taken pursuant to the Hague Convention, did not choose to appear before the Court in support of the position that depositions may be taken within its borders without its approval and without complying with German laws and procedures. I also find it significant that defendants have not been able to explain satisfactorily why Japanese and Swiss laws and deposition procedures would apply to depositions within their borders, but French and German laws and procedures would not. Finally, I rely on the Declaration of Dr. Martin J. Reufels, which was attached in support of defendant BASF's Memorandum in Support of Its Motion for a Protective Order (May 12, 2000). [*51] According to Dr. Reufels, under "German international civil procedure law, the Hague Convention on Evidence is the exclusive means of obtaining evidence in civil procedure cases [in Germany] that are of an international nature." [30] [*52] Dr. Reufels further opines

---

[28] Declaration dated August 24, 2001, PP 11-12. Mr. Zekoll previously submitted a declaration in support of plaintiffs' motion to compel jurisdictional discovery under the Federal Rules, and I recognized him as qualified to express opinions on the Hague Convention and German law as they may affect plaintiffs' discovery. 8/15/00 Report and Recommendations at 32.

[29] As Mr. Daniels's letter does not indicate whether he is an attorney, nor explains his authority to issue an opinion on behalf of the State Department, it is, by itself, not sufficient.

[30] Declaration of Martin J. Reufels P 8 (May 8, 2000). Dr. Reufels also opines that conducting depositions outside the processes of the Hague Convention could expose the parties to criminal prosecutions. Id. at P P 25-28. As with Mr. Zekoll, I

2001 U.S. Dist. LEXIS 25070, *52

that "any disregard of the *Hague* Convention on Evidence *** (i.e., allowing plaintiffs to proceed under the U.S. Federal Rules of Civil Procedure within the territory of the Federal Republic of Germany) is seen unanimously as a *violation* of international law and as an infringement of the judicial sovereignty of the Federal Republic of Germany." [31]

Even though counsel suggested at the hearing that Federal Rules *depositions* would proceed without incident in Germany because the foreign defendants are subject to the Court's sanction powers and would be unlikely to raise legal or procedural bars to the depositions, I find that insufficient for two reasons. First, it is not altogether unlikely that a number of the foreign defendants' officers, directors, and managing agents will hire their own counsel who, on behalf of their clients, may wish to avail themselves of all available legal and procedural protections. Second, and more importantly, the Court's June 28, 2001, Order makes it imperative that the parties move forward with depositions at an expeditious pace. With fact discovery closing on February 11, 2002, there is insufficient time to take a wait-and-see attitude regarding whether depositions in Germany proceed without incident or whether they must be rescheduled in Brussels or the United States. In sum, this factor weighs in favor of ordering that the depositions of the German defendants take place in Washington, D. [*53] C.

**c. France**

As to France, the plaintiffs submitted a Declaration of Alexander Blumrosen in support of their motion. [32] Mr.

recognized Dr. Reufels as "qualified to express opinions on the Hague Convention and German law as they may affect plaintiffs' discovery ***."   8/15/00 Report and Recommendations at 32.

I do not find convincing defendants' contention that plaintiffs cannot argue that German or French law would apply to depositions within those nations after plaintiffs argued that discovery should be taken pursuant to the Federal Rules rather than through the Hague Convention. I find no inconsistency between arguing on the one hand that the Federal Rules should apply because the Hague Convention could not ensure adequate and efficient discovery, and arguing on the other hand that depositions within a foreign nation's borders must comply with local laws notwithstanding any federal court order providing that discovery proceed under the Federal Rules.

[31] Id. P 9.

[32] Declaration dated Aug. 22, 2001 ("8/22/01 Blumrosen

Blumrosen states that "the procedures prescribed by the [Hague] Evidence Convention provide the exclusive means by which parties may take depositions within France for use in foreign law proceedings." 8/22/01 Blumrosen Decl. P 8a. Moreover, France has enacted a "blocking statute" that criminalizes the taking of depositions on French soil "that are not channeled through the Evidence Convention." Id., P 9. According to Mr. Blumrosen:

"it is not uncommon for U.S. litigants to resort to taking voluntary and agreed upon depositions in France of French nationals without following the requirements of the Evidence Convention. This practice has arisen, in part, because the French State has yet to engage in any criminal prosecution under the blocking statute, and accordingly no jail terms, fines, penalties or other sanctions have been raised by the French State in connection with the blocking statute. Nonetheless, such depositions without question violate French domestic law and in consequence, it is unlikely that a French court would enforce any [*54] judgment from a foreign jurisdiction such as the United States resulting from such improperly obtained evidence. Furthermore, such depositions would be entirely voluntary and *** plaintiffs would have no means by which to compel testimony from the witness." Id., P 11.

The defendants submitted a Declaration of Iva Nathanson, who stated that her court-reporting service has been involved in approximately 40 depositions in France that were conducted without the involvement of foreign judicial or consular officials and took place in private offices or hotel conference rooms. Finally, defendants [*55] submitted the Declaration of David E. Miller, who states that he has conducted Federal Rules depositions in France without incident.

Based on the record before me, I conclude that the requirements of French law respecting the taking of evidence by deposition in France of French nationals apply notwithstanding Judge Hogan's June 20, 2001, Order that merits discovery in this case proceed under the Federal Rules. In reaching my conclusion, I place primary reliance on the declaration of Mr. Blumrosen

Decl."). Plaintiffs had submitted a declaration of Mr. Blumrosen in support of their motion to compel jurisdictional discovery. In my Report and Recommendations of August 15, 2000, I recognized Mr. Blumrosen as "qualified to express opinions on the Hague Convention and French law as they may affect plaintiffs' discovery ***."   8/15/00 Report and Recommendations at 37.

and on the absence of any contrary foreign law expert opinions supporting the defendants' assertions. I am not prepared to place significant reliance upon the conflicting declarations of various counsel or court reporters who have participated in depositions in France.

As with Germany, given the uncertainty as to whether Federal Rules depositions may be taken in France without interference, this factor weighs in favor of ordering that the depositions of French defendants take place in Washington, D.C., rather than in France.

#### d. Switzerland

As to Switzerland, the Swiss defendants agree that Federal Rules depositions are prohibited within that nation's territory. See Defs. Opp. [*56] Mem. at 10 n.6; Gass Decl. P 5. The Swiss defendants, however, submit that depositions of their witnesses should take place across the border, in Germany. For the reasons described above, I find that Germany is not free from legal and procedural impediments, and thus this factor weighs in favor of conducting depositions of the Swiss defendants' witnesses in Washington, D.C., rather than in Switzerland or Germany.

#### 4. Affront to Sovereignty

A final factor that weighs in favor of ordering that these depositions be conducted in the United States is the potential that voluntary Federal Rules-type depositions would be an affront to the sovereignty of Germany and France. [33] See, e.g., McKesson, 185 F.R.D. at 81 (ordering deposition in United States to avoid infringement on Iran's sovereignty). As noted above, defendants insisted at oral argument that Federal Rules depositions in their home countries would be no different than depositions in the United States, [34] and that such depositions take place on a regular basis. [35] But as to any potential affront to sovereignty, defendants do not so much deny the potential as argue its inevitability: why, the defendants [*57] seem to ask,

should the potential affront to sovereignty require depositions in the United States when the Special Master recommended and the Court ruled that discovery should be taken pursuant to the Federal Rules not-withstanding any affront to the sovereignty of these nations? [36]

The defendants are, of course, correct that the Court ordered discovery to proceed under the Federal Rules even though such discovery could be construed as an affront to the sovereignty of the nations in which they reside. But that does not mean comity issues should not receive proper weight [*58] in subsequent analyses, or that the Court should not make every effort to minimize the potential for affronts to foreign nations' sovereignty. [37] To the contrary, Aerospatiale's requirements are ongoing. [38] Furthermore, there is a larger potential for affronts to sovereignty through the taking of testimony from witnesses abroad than from the collection of documents responsive to document requests. See, e.g., In re Honda, 168 F.R.D. at 538 ("HN6[↑] when depositions of foreign nationals are taken on American or neutral soil, courts have concluded that comity concerns are not implicated."); Custom Form, 196 F.R.D. at 336-37 (same).

[*59] Accordingly, this factor also weighs in favor of requiring that depositions of the foreign defendants' 30(b)(6) witnesses and managing agents be conducted in the United States.

#### Conclusion

Having analyzed each of the relevant factors to be considered regarding the place of the depositions and found that special circumstances exist for ordering that depositions take place in the United States rather than at the foreign defendants' principal places of business, I recommend that plaintiffs' motion be granted and that the depositions of each of the foreign defendants' 30(b)(6) witnesses and six of their officers, directors and managing agents be conducted in Washington, D.C., or such other location in the United States as may be

---

[33] There is no similar issue with respect to Japan, where the parties are agreed, depositions. must take place at the U.S. Embassy or one of the consulates, or Switzerland, where, the parties are agreed, Federal Rules depositions would violate Swiss law and should not be pursued.

[34] See 8/15/01 Tr. at 109, 121.

[35] See, e.g., id. at 120-21; see, also, Declaration of Iva Nathanson P 3.

[36] See 8/15/01 Tr. at 111.

[37] Accord, Declaration of Dr. Martin J. Reufels P 14 (May 8, 2000) ("Discovery conducted through an alternative means has been found offensive to German sovereignty.").

[38] See Societe Nationale Industrielle Aerospatiale v. United States District Court for the Southern District of Iowa, 482 U.S. 522, 546, 96 L. Ed. 2d 461, 107 S. Ct. 2542 (1987).

2001 U.S. Dist. LEXIS 25070, *59

agreed upon, provided that plaintiffs shall reimburse defendants for the reasonable costs of deponents' travel to the United States, including lodging and food, to attend the depositions.

September 10, 2001

Stephen J. Pollak

Special Master

End of Document