UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-cv-25337-KMM

ANTONIO CABALLERO,

      Plaintiff

v.

FUERZAS ARMADAS REVOLUCIONARIAS
DE COLOMBIA, et al.,

      Defendants.

_____/

### INTERESTED PARTIES' RESPONSE IN OPPOSITION TO [ECF NO. 345] PLAINTIFF'S MOTION IN LIMINE AND CROSS-MOTION TO PERMIT REMOTE TRIAL TESTIMONY BY GORRIN AND PERDOMO

True to form, Caballero again seeks to gain an advantage at trial by seeking to preclude any trial testimony on the part of all of the Interested Parties. Caballero knows that requiring Gorrin or Perdomo to appear in person at trial would "effectively prohibit [their trial testimony] from taking place at all, a result that would seriously undermine if not outright eliminate their ability to challenge the agency or instrumentality determination." ECF No. 275 at 3. That is exactly what he is hoping for.

Apparently in the alternative, Caballero seeks to preclude the Interested Parties from offering any testimony in rebuttal to his bribery accusations against Gorrin based on unsubstantiated, unproven, and meritless allegations of "destruction" of evidence (without actually identifying any applicable "duty") – which is a discovery dispute never actually raised with Magistrate Judge Becerra in the first instance, during the pendency of fact discovery, essentially seeking under the guise of a motion *in limine* spoliation sanctions pursuant to Rule 37 through the backdoor. And, further, Caballero seeks an adverse inference instructing the jury that the properties at issue in this case are the product of money laundering by Gorrin and Perdomo when, again, there was no duty to preserve documents that he speculates *may* support his theory, and when there is zero evidence in support of his accusation, and when this quintessential discovery dispute was never raised at all. Not even the Government, in its criminal indictment against Gorrin, claims this obstruction. In seeking that his bribery accusation go unrebutted and that this Court instruct the

jury that Gorrin and Perdomo are money launderers, Caballero asks this Court to ignore the applicable rules and to summarily enter terminating sanctions without the bother of ever having made such a motion.

*None* of Caballero's requested relief is warranted here under the applicable legal authorities or the facts. Caballero's latest effort to circumscribe a full and fair defense should be rejected, and Caballero's Motion in Limine ("MIL"), (ECF No. 345), should be denied in its entirety.

## ARGUMENT

### I. Legal Standard on a Motion in Limine.

"[T]he function of a motion *in limine* is to present a pretrial issue of admissibility of evidence that is likely to arise at trial, and as such, the order, like any other interlocutory order, remains subject to reconsideration by the court throughout the trial." *Reyes v. Goya Foods, Inc.*, 2013 WL 12133927, at *2 (S.D. Fla. June 10, 2013) (internal quotations omitted); *Begualg Inv. Mgmt., Inc. v. Four Seasons Hotel Ltd.*, 2013 WL 750309, at *1 (S.D. Fla. Feb. 27, 2013) ("*In limine* rulings are not binding on a trial court and remain subject to reconsideration during course of trial."). In ruling on motions *in limine*, evidence may be excluded "only if the evidence is clearly inadmissible for any purpose … [I]f evidence is not clearly inadmissible, evidentiary rulings must be deferred until trial to allow questions of foundation, relevancy, and prejudice to be resolved in context." *Id.*; *Begualg Inv.*, 2013 WL 750309, at *1 ("Motions *in limine* are disfavored; admissibility questions should be ruled upon as they arise at trial.")

### II. Gorrin and Perdomo Should be Permitted to Testify Remotely at Trial.

Acknowledging that his reasoning for precluding Gorrin and Perdomo's remote testimony at deposition was already "rejected" by this Court, (MIL at 5), Caballero now seeks to prevail by precluding Gorrin and Perdomo from testifying remotely at trial in either their individual capacities or on behalf of the Interested Party Entities that own the properties upon which he seeks to execute. The sole basis for exclusion of remote trial testimony by Gorrin or Perdomo on behalf of the corporate entities is Fla. Stat. § 772.13(6) (2023) (the "TVFA"), which this Court has already ruled is inapplicable to these proceedings.

With respect to the remote trial testimony of Gorrin and Perdomo individually, Caballero again raises the inapplicable TVFA, and also claims there is no good cause under Fed. R. Civ. P. 43 even though both are OFAC-blocked and prohibited from entering the United States for any reason. As explained below, there is good cause to allow their remote trial testimony and

appropriate safeguards to ensure their remote trial testimony is accurate and reliable for consideration by the jury.

### A. The "TVFA" is Inapplicable Here and Cannot be the Basis for Caballero's MIL.

Caballero's MIL begins by "once again" asking this Court to apply the TVFA, and mischaracterizing this Court's order denying summary judgment (ECF 329) as having "ruled that [the TVFA] is applicable, but just not 'at this juncture.'" MIL at 2. Not so. While this Court held that the TVFA "is not applicable at *this* juncture"—*i.e.*, "at the agency and instrumentality stage of the litigation, where the Interested Parties are merely defending against their designation as agencies or instrumentalities of FARC," ECF No. 329 at 9-10—the Court did not say, or even imply, that the TVFA would be applicable at a *later* pre-judgment juncture of the litigation, noting that "this is not yet a postjudgment collection proceeding, and thus the TFVA is not applicable at this juncture." *Id*. at 10. Because this Court has already held the TVFA is inapplicable, *at least* at this time, it cannot be the basis for the relief Caballero seeks in his MIL.

And Caballero's thinly-veiled reconsideration request in a footnote should stricken. MIL at 2, n. 1. Regardless, his reasoning continues to be faulty. Caballero claims the TVFA, by its own language, applies to any post-judgment execution proceedings under TRIA and that he has obtained a judgment against the FARC. Caballero again misses the point. This is the same language that renders the TVFA inapplicable here where Caballero is not attempting to collect against the FARC, but rather against the Interested Parties. And he cannot do so unless he first meets his burden of proving that the Interested Parties are A/Is of the FARC.

Regardless, even if *arguendo* the TVFA applied, (it does not), Perdomo, like the remaining Interested Parties, has never been criminally indicted, and he also openly lives and works in Venezuela. Caballero relies entirely on the TVFA in labeling Perdomo a "fugitive" from this civil collection proceeding, but the TVFA does not even apply to so-called "fugitives of civil proceedings" given that its language specifically addresses evasion of "the jurisdiction of the court in which a *criminal case* is pending against the defendant or person." Fla. Stat. § 772.13(6) (emphasis added). In addition, Gorrin has previously disputed being a "fugitive" because his presence in Venezuela is entirely unrelated to his indictment as that is his country of citizenship where he permanently resides and is employed. ECF No. 243 at n. 2 (quoting *United States v. Bescond*, 24 F. 4th 759, 773 (2d Cir. 2021) (holding that the fugitive disentitlement doctrine did

not apply to a foreign person indicted in the United States who has "neither fled nor concealed" himself and "simply remains at home.").[1]

### B. There is Good Cause to Allow Gorrin and Perdomo's Remote Trial Testimony.

Federal Rule of Civil Procedure 43(a) affords courts the discretion to permit remote testimony "[f]or good cause in compelling circumstances and with appropriate safeguards." Fed. R. Civ. P. 43(a); *see* Fed. R. Civ. P. 43(a) Advisory Committee's note (the "most persuasive showings of good cause and compelling circumstances are likely to arise when a witness is unable to attend" in person). A party's inability to legally enter the United States satisfies Rule 43(a)'s requirement. *See Clowdus v. Am. Airlines, Inc.*, 2022 WL 6497311, at *3 (S.D. Fla. Sept. 21, 2022) ("I find that Plaintiff presents good cause and compelling circumstances to permit Mr. Muriel to testify by remote means. Here, Mr. Muriel is unable to legally enter the United States" and "these findings apply to Mr. Espinoza who, like Mr. Muriel, is legally unable to enter the United States because his visa has expired."); *Lopez v. Miller*, 915 F. Supp. 2d 373, 396 n.9 (E.D.N.Y. 2013) ("Diaz was deported in 2003 to Santo Domingo and may not legally reenter the United States, thus easily satisfying Rule 43(a)'s requirement.") (internal citations omitted)); *Monserrate v. K.K. Mach. Co. Inc.*, 2013 WL 1412194, at *1 (E.D.N.Y. Apr. 8, 2013) ("[Plaintiff] faces more than mere difficulty obtaining a visa; he is statutorily prohibited from doing so.").

Caballero claims that Gorrin and Perdomo have "declined an opportunity to be heard" because they have "undertaken no efforts to enter the jurisdiction." MIL at 11. This accusation is belied by Gorrin, Perdomo, and the Interested Parties' relentless efforts to adjudicate this case on the merits from the moment they learned of it. As Magistrate Judge Becerra held, Gorrin and Perdomo are designated by OFAC and prohibited from traveling to the United States to attend this

---

[1] Venezuela is not Gorrin's "offshore hiding place" as Caballero argues because Gorrin has not concealed his whereabouts. Moreover, Gorrin has no status in the United States and there are no extradition proceedings pending against him or commanding him to appear in the United States. The Interested Parties recognize that, in *Ener v. Martin*, 987 F. 3d 1328, 1332 (11th Cir. 2021), the Eleventh Circuit held that "[a] party is a fugitive if she intentionally avoids arrest by fleeing, hiding within, or remaining absent from the jurisdiction." However, *Ener* is factually distinguishable since it involved a party who resided within the United States and absconded during the course of legal proceedings. She then refused to return to the United States in violation of court orders holding her in civil contempt, thus rendering her a fugitive of the very proceeding she sought to attack from outside the jurisdiction. This case is more akin to the Second Circuit's holding in *Bescond* where a foreign individual who remained at home could not be deemed a fugitive.

trial. ECF No. 253 at 8.² Given their OFAC designations, it would be a sanctions violation for any individual or entity to accept payment from them for travel expenses. Moreover, applying for a visa or seeking OFAC permission, as Caballero suggests, would either be pointless or so time consuming as to be ineffectual for the upcoming trial. While Caballero may argue that Gorrin may travel to the United States for the purpose of surrendering in the criminal case against him, that would not necessarily enable him to render in-person testimony in his defense in the trial in this case. It would still be up to this Court's discretion whether to allow Gorrin to be transported from custody, and this Court may opt to have Gorrin testify remotely for security reasons. In fact, some courts have held that incarceration satisfies Rule 34's "good cause" requirement to permit remote testimony.³

### C. Appropriate Safeguards Can be Implemented to Ensure Accurate and Reliable Remote Trial Testimony.

Caballero does not argue that appropriate safeguards are unavailable to this Court in order to allow the remote trial testimony of Gorrin and Perdomo. In fact, Caballero does not discuss this prong of the Fed. R. Civ. P. 43 analysis at all. MIL at 10, n. 10.

When remote testimony is permitted, the appropriate safeguards required include, "(1) accurate identification of the witness; (2) protection of influence from persons present with the

---

² Caballero's reliance on two cases from other districts in which he claims "fear of arrest" was deemed not sufficient to establish "good cause" under Fed. R. Civ. P. 34(a) is misplaced. *In re Emanuel*, 406 B.R. 634 (Bankr. S.D.N.Y. 2009); *In re Henson*, 289 B.R. 741 (Bankr. N.D.Cal. 2003). Neither case involved blocked individuals who were prohibited from traveling to the United States regardless of being criminally indicted. In *Emanuel*, the court specifically pointed out that "[t]he *only* justification" offered by the witness was his fear of arrest. *Emanuel*, 406 B.R. at 637. In *Heller*, the witness did not even claim fear of arrest as a reason for non-appearance at trial. Instead, he claimed he could not leave Canada while his immigration asylum petition was pending. *Heller*, 289 B.R. at 743. Those cases are easily distinguishable to the situation at hand.

³ *Ruiz v. Nevada Dep't of Corr.*, No. 317CV00643RCJCSD, 2023 WL 3355583, at *1 (D. Nev. Apr. 21, 2023) ("For witnesses who are incarcerated, 'the trial judge should take into account the costs and inconvenience of transporting a prisoner from his place of incarceration to the courtroom, any potential danger or security risk which the presence of a particular inmate would pose to the court, the substantiality of the matter at issue, the need for an early determination of the matter, the possibility of delaying trial until the prisoner is released, the probability of success on the merits, the integrity of the correctional system, and the possibility that the testimony could be presented by deposition.' … Applying the incarcerated witness factors here, the Court finds that compelling the Nevada Department of Corrections to produce the incarcerated witnesses via video conference from their current place of incarceration is not unduly burdensome and should therefore be granted.")

witness; and (3) accurate transmission." *Clowdus*, 2022 WL 6497311, at *3. The Advisory Committee notes to Rule 43(a) state, "[n]o attempt is made to specify the means of transmission that may be used. Audio transmission without video images may be sufficient in some circumstances, particularly as to less important testimony. Video transmission ordinarily should be preferred when the cost is reasonable in relation to the matters in dispute, the means of the parties, and the circumstances that justify transmission." Fed. R. Civ. P. 43.

The videoconference platform, Zoom, ensures appropriate safeguards for the Court, Parties, and jurors to observe and listen to Gorrin and Perdomo's testimony in real time, and provides Caballero an opportunity for cross-examination. A large enough screen can be utilized in order to provide the Court and the jury an appropriately sized image of the witness. The video feed can be arranged so that the witness is able to see the bench, the jury box, and the attorneys while rendering testimony. *Virtual Architecture, Ltd. v. Rick*, 2012 WL 388507, at *2 (S.D.N.Y. Feb. 7, 2012) ("The Court is comfortable that the technology enabled the witness to observe and comprehend 'the very ceremony of trial and the presence of the factfinder,' and that the jury was presented with a close approximation of in person testimony."); *Monserrate v. K.K. Mach. Co. Inc.*, 2013 WL 1412194, at *1 (E.D.N.Y. Apr. 8, 2013) ("Defendants express concern that credibility determinations cannot be made regarding video testimony … Here, the Court will be sufficiently able to observe [Plaintiff's] demeanor and using video conferencing."); *See Jennings v. Bradley*, 419 F. App'x 594, 598 (6th Cir. 2011) (finding no abuse of discretion and appropriate safeguards used when the jury could listen to the witnesses, observe their demeanor, the opposing party had the opportunity to question the witnesses, and the transmission was instantaneous).

Indeed, in the years since the pandemic began, remote testimony at depositions has proven effective, becoming "the new normal." *PC-41 DOE v. Poly Prep Country Day School*, 20-CV-03628-DG-SJB, 2022 WL 420619, *1 (E.D.N.Y. Jan. 20, 2022) (quotations omitted); *see also Barry v. United States*, 21-CV-7684 (BCM), 2022 WL 4467504, at *6 (S.D.N.Y. Sept. 26, 2022) ("in the post-pandemic world, remote depositions remain 'the new normal[.]'"). And courts generally agree: "'[t]he more recent court decisions [permitting remote depositions during the pandemic] build on pre-pandemic case law that liberally allowed for and encouraged remote depositions as the technology for taking depositions in that way has improved significantly over time.'" *Poly Prep*, 2022 WL 420619, *1

As Magistrate Judge Becerra stated with respect to Gorrin and Perdomo's remote depositions, "there is hardly an argument that could be made that any prejudice to Plaintiff outweighs the Interested Parties' right to defend the action." ECF No. 257 at 7. Caballero has waived any argument about the lack of appropriate safeguards by failing to address this prong entirely. But to the extent Caballero feels that additional safeguards should be implemented, just as the Parties were able to coordinate, and successfully complete, the remote depositions, the Parties can confer "to determine appropriate safeguards to be put in place and establish procedures for the taking of [Gorrin and Perdomo's] remote testimony" to propose to the Court for approval. *VMX-Glob.*, 339 F.R.D. at 692.

### III. Caballero's Request for the Exclusion of "Uncorroborated" Testimony Should be Denied.

Caballero seeks to accuse Gorrin of bribery at the trial in this matter and, at the same time, prevent Gorrin from defending himself on the basis that Gorrin's testimony is "uncorroborated" by documents that Gorrin had no duty to preserve, and that Caballero never even asked for in this case, and – tellingly – Caballero has never sought discovery sanctions under Rule 37, which is the actual proper vehicle for this requested sanction. *See, e.g., XTEC, Inc. v. Cardsmart Techs., Inc.*, 2014 WL 10250973, at *4 (S.D. Fla. Dec. 2, 2014) (denying a motion in limine because it was a discovery dispute that should have been resolved earlier); *Celler Law Org., Inc. v. Sony Pictures Television Inc.*, 13-61678-CIV, 2014 WL 12580516, at *5 (S.D. Fla. Apr. 12, 2014) (rejecting a motion in limine because the defendant had ample time to raise the discovery dispute during the course of discovery but "failed to do so until the eve of trial"); *Wyeth v. Apotex Inc.*, 08-22308-CIV, 2009 WL 8626786, at *7 (S.D. Fla. Oct. 6, 2009) ("The failure to timely raise the matter at the appropriate time waives any right that [Plaintiff] may have now to Rule 37 sanctions, such as the exclusion of the evidence.").

Caballero apparently seeks to introduce spreadsheets used by the Government during the criminal trial in the matter of *United States v. Diaz Guillen, et al.*, Case No. 18-cr-80160-WPD (S.D. Fla.) because Caballero alleges that the spreadsheets reflect bribe payments made by Gorrin due to letters on the spreadsheets that supposedly stand for "the initials for the names of members of the conspiracy (subject to [Gorrin's] criminal indictment)." MIL at 14. Caballero wants this theory to go unrebutted even though Gorrin testified at deposition that the letters on the spreadsheets were internal compliance codes created by the exchange house's compliance employees, and that amounts paid according to the spreadsheets were currency exchanges for

which the exchange house received payment. ECF No. 314-6 at 38: 3-12. Caballero has unilaterally determined that Gorrin's testimony is "non-credible" and, citing no legal authority that would allow him to supplant the jury's credibility determination, requests to preclude at trial Gorrin's testimony concerning internal compliance codes and "any topic for which he relies upon documents that he claims were destroyed."

### A. Any Documents on Internal Compliance Codes and Currency Exchange Transactions are Irrelevant.

As an initial matter, the Interested Parties have repeatedly argued that the criminal case against Gorrin, and consequently the evidence presented by the Government therein, has absolutely nothing to do with this case and should not be raised *at all*. This case involves a private individual's claim that two individuals (Gorrin and Perdomo), one of whom is not indicted, are agencies or instrumentalities (A/Is) of the FARC, such that he should be able to seize the property of twenty-three unindicted corporate entities. As Caballero concedes, the criminal indictment only charges one of those individuals (Gorrin) for alleged bribe payments to "two Venezuelan National Treasurers … in order to obtain and retain the rights to conduct foreign currency exchange transactions at favorable rates." MIL at 4. Caballero has admitted that the criminal indictment does not charge Gorrin with being an A/I of the FARC. ECF No. 184 at 14, n. 6 ("The U.S. government did not charge Gorrin with being an A/I of the FARC … The U.S. government charged with Gorrin with specific behavior that occurred in this District."). In fact, the indictment does not reference the FARC in any way, and the FARC was not discussed at any time during the two-week trial. To win this lawsuit, the Interested Parties do not need to defeat the indictment. They simply need to show that Caballero has failed to meet his burden of proving that they are A/Is of the FARC. The indictment is of no aid to Caballero in this regard, nor is the spreadsheet used by the Government in support of its irrelevant allegations.

Despite the complete irrelevance of the criminal indictment, and consequently the evidence introduced by the Government during the related criminal trial, it is Caballero who has repeatedly seeks to interject it in this case. Caballero has claimed that he is not attempting to try the *government's* criminal case, but that "the government already tried *our* case." ECF No. 270-1 at 40: 4-6 (emphasis added). And as Magistrate Judge Becerra explained:

> Let me just say to you, look, I don't know what will happen at these depositions, but **you're not trying the government's case. You need to show a very limited thing, actually**. You need to show a jury – jury is going to have to make a finding

> that they are agents and instrumentalities of the FARC. That is what you have to do in this case.
>
> The government's indictment, as I understand it, and of course, that is just my reading of it, seems to be a far more expansive indictment of Mr. Gorrin. Many of the things that you argue sometimes are well beyond anything you have to prove at trial. So I guess you will cross that bridge when we get there.

ECF No. 270-1 at 40: 18-25, 41: 1-4.

Despite this, Caballero's MIL again claims that the evidence introduced at the criminal trial is "inextricably tied to Gorrin's actions as an [A/I] of the FARC, including without limitation, that the other co-conspirators in the case, Diaz Guillen, Velasquez, and Andrade, who were involved with, and benefitted from, Gorrin's criminal activities presented at trial, are themselves FARC [A/Is]." MIL at 4. But, as detailed in the Interested Parties' Corrected Motion for Summary Judgment, (ECF No. 342), which the Interested Parties incorporate herein, Caballero's "theories" do not establish an A/I relationship. In particular, Caballero's theory that conferring any "benefit" to an alleged FARC A/I renders an individual an A/I himself would render anyone remotely connected to the Venezuelan government or Venezuelan currency transactions a FARC A/I. That is the sort of "attenuated link" that the Eleventh Circuit cautioned "common sense indicates" will not be sufficient. *Stansell v. Revolutionary Armed Forces of Colombia*, 45 F.4th 1340, 1346 (11th Cir. 2022) ("Common sense indicates, however, that the more attenuated the link the more difficulty it will be to prove agency/instrumentality status … [T]he mere associations used in the game 'Six Degrees of Kevin Bacon' … would not suffice under § 201 of the TRIA.")

The spreadsheets themselves are inadmissible hearsay. *See United States v. Thomas*, 315 Fed. Appx. 828, 835 (11th Circ. 2009) (abuse of discretion to admit spreadsheets). Nevertheless, to the extent Caballero insists on presenting spreadsheets from the criminal case in the trial of this matter even though they are immaterial and totally unrelated to the FARC or this case, the Interested Parties are entitled to defend themselves by presenting the testimony of Gorrin regarding the spreadsheets. The jury, as the fact finder, and not Caballero, can weigh Gorrin's testimony and determine its credibility in rendering its verdict.

And, in any event, Caballero may not raise an unsubstantiated motion for exclusionary sanctions, which should have been properly made under Rule 37 and timely raised with Judge Becerra, under the guise of a "motion *in limine*." *See, e.g., XTEC,* 2014 WL 10250973, at *4; *Celler Law*, 2014 WL 12580516, at *5; *Wyeth*, 2009 WL 8626786, at *7.

**B. There Was No "Destruction" of Documents for Which There Was No Duty to Preserve.**

Even if the documents were somehow relevant, there is no basis to impose sanctions here because Caballero has not established spoliation, much less bad faith spoliation resulting in prejudice. Even though the Eleventh Circuit's common law of spoliation governs Caballero's request for sanctions, Caballero relies solely on Federal Rule of Evidence 403 as the basis for the broad exclusion of testimony he seeks. However, "[b]ecause it allows a trial court to exclude evidence that is probative, Rule 403 is an extraordinary remedy which should be used sparingly." *Aycock v. R.J. Reynolds Tobacco Co.*, 769 F.3d 1063, 1069 (11th Cir. 2014). "In applying Rule 403, courts must look at the evidence in a light most favorable to admission, maximizing its probative value and minimizing its undue prejudicial impact." *Id*. "The major function [of Rule 403] is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *Id*. Evidence that is "essential to the rebuttal" of the other party's case, as opposed to evidence introduced to bolster a party's own case, cannot be excluded under Rule 403. *Id*. (citing *United States v. Mills,* 704 F.2d 1553, 1560 (11th Cir.1983) (holding that evidence necessary to the government's rebuttal of a defendant's case could not be excluded under Rule 403, but could have been if it was introduced only to "bolster the prosecution's case.")). As stated above, any testimony by Gorrin at trial concerning the existence of internal compliance codes or currency exchange transactions would be in rebuttal to Caballero's irrelevant bribery allegations. Moreover, Caballero's claim of unfair prejudice is supported by nothing more than Caballero's circular assertion that he will be unfairly prejudiced.

Apart from relying on Rule 403, Caballero does not cite to a single case setting forth an applicable standard that would permit the exclusion of trial testimony based on non-production of hypothetical documents that were never requested and for which there was no duty to preserve. Instead, Caballero accuses Gorrin of destroying documents from 2011 or 2012 after Gorrin learned, on November 19, 2019, that he was criminally indicted in the United States.[4] MIL at 13. But the criminal case is not Caballero's case. Caballero did not implicate Gorrin or any of the Interested Parties in this separate and unrelated civil matter until April 8, 2022, (ECF No. 150),

---

[4] Caballero does not explain how the unsealing of the indictment should have made Gorrin immediately aware of the relevance of spreadsheet from seven or eight years prior, much less how Gorrin could have been made aware of this completely unrelated litigation.

and Gorrin did not learn about it until later that year. As Magistrate Judge Goodman held in a case involving a similar argument:

> [T]he alleged destruction of evidence arose primarily when Defendants were under a duty to *others* (such as government officials who issued subpoenas), but not necessarily these Plaintiffs, and these other litigants are not parties to this litigation and have not sought sanctions against these Defendants. In other words, the parties who do (or did) have standing to seek spoliation sanctions have not pursued them. The Court is reluctant to create a new legal precedent which would establish some type of free-floating or shifting duty which other parties could latch onto in order to seek the sanctions which the parties with standing choose not to pursue.

*Point Blank Sols., Inc. v. Toyobo Am., Inc.*, 2011 WL 1456029, at *1 (S.D. Fla. Apr. 5, 2011).

Regardless, "anticipation of litigation is not the standard for spoliation sanctions – bad faith is." *Tesoriero v. Carnival Corp.*, 965 F. 3d 1170, 1183 (11th Cir. 2020). "And bad faith 'in the context of spoliation, generally means destruction for the purpose of hiding adverse evidence.'" *Id*. at 1184. Spoliation sanctions "cannot be imposed for negligently losing or destroying evidence." *Id*. Spoliation is the "intentional destruction of evidence," the "intentional concealment of evidence, or "the significant and meaningful alteration of a document or instrument." *Managed Care Sols., Inc. v. Essent Healthcare, Inc.*, 736 F. Supp. 2d 1317, 1322 (S.D. Fla. 2010). "[T]he party seeking [spoliation] sanctions must prove ... first, that the missing evidence existed at one time; second, that the alleged spoliator had a duty to preserve the evidence; and third, that the evidence was crucial to the movant being able to prove its prima facie case or defense." *Id*. at 1322. Even when all three elements are satisfied, sanctions based on spoliation of evidence are appropriate "only where the absence of that evidence is predicated on bath faith." *Id*. Direct evidence of bad faith exists "where a party purposefully loses or destroys relevant evidence." *Id*. Circumstantial evidence of bad faith exists when it can be proven that:

> (1) evidence once existed that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case; (2) the spoliating party engaged in an affirmative act causing the evidence to be lost; (3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence; and (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator.

*Id*. at 1232 (quoting *Walter v. Carnival Corp.*, 2010 WL 2927962, at *2 (S.D. Fla. July 23, 2010)). Here, Caballero has failed to establish any of the three required elements for spoliation sanctions, much less any direct or circumstantial bad faith.

With respect to the alleged documents concerning internal compliance codes, Caballero has failed to show what documents existed in the first place or whether any such documents were even destroyed. When discussing internal compliance codes referenced in a 2012 spreadsheet during Gorrin's deposition, Caballero's counsel asked, "Where is the list?" without ever establishing that a list even existed or asking Gorrin what documents had been created concerning the internal compliance codes. ECF No. 314-6 at 38 (37): 13. Not surprisingly, Gorrin responded, "What list? That should be in the archive files. That has been more than ten years." *Id*. at 38 (37): 14-15. Caballero's counsel did not follow up to determine what was meant by the "archive files," what sort of records pertaining to the internal compliance codes were in the archived files, whether they remained archived at the time of the deposition, whether they had been destroyed, or when any destruction occurred. No information whatsoever was requested by Caballero's counsel concerning the internal compliance code documents that would enable him to claim the destruction of documents that he never established existed. *See Point Blank Sols., Inc. v. Toyobo Am., Inc.*, 2011 WL 1456029, at *21 (S.D. Fla. Apr. 5, 2011) ("To pursue its spoliation claim, Point Blank 'must *at a minimum* point to some *facts* indicating that [the evidence allegedly destroyed] exists' … The Court cannot simply *assume* that [the evidence] must have existed[.]"). Moreover, as stated above, Gorrin had no duty to preserve any internal compliance code documents, and any documents concerning the codes are not in any way "crucial" to Caballero's ability to prove his claims.

With respect to a different set of potential documents concerning currency exchange transactions, Gorrin testified, "that is dead archive, ten years past" and "by law they are destroyed every eight years after it has transpired." *Id*. at 48 (47): 20-21, 49 (48): 10-11. Caballero harps on Gorrin's "supposition" that the records may have been available when he became aware of the criminal indictment against him in 2019. *Id*. at 50 (49): 22 ("Administratively. I suppose so. But, "It is well-settled that the duty to preserve potentially relevant evidence 'arises when the party in possession of the evidence knows that litigation **by the party seeking the evidence** is pending or probable.'" *Point Blank*, 2011 WL 1456029, at *24 (emphasis in original).

And, in any event, Caballero may not raise an unsubstantiated motion for exclusionary sanctions, which should have been properly made under Rule 37 and timely raised with Judge Becerra, under the guise of a "motion *in limine*." *See, e.g., XTEC,* 2014 WL 10250973, at *4; *Celler Law*, 2014 WL 12580516, at *5; *Wyeth*, 2009 WL 8626786, at *7.

IV. **Caballero's Request for an Adverse Inference Regarding on the Source of Funds Used to Purchase Properties Should be Denied.**

Caballero requests an adverse inference regarding the source of funds used to purchase the real property at issue in this case. Again, the Eleventh Circuit's common law of spoliation applies to Caballero's adverse inference request. As such, Caballero bears the burden to prove, "first, that the missing evidence existed at one time; second, that the alleged spoliator had a duty to preserve the evidence; and third, that the evidence was crucial to the movant being able to prove its prima facie case or defense." *Managed Care Sols., Inc. v. Essent Healthcare, Inc.*, 736 F. Supp. 2d 1317, 1322 (S.D. Fla. 2010). And even when all three elements are met, "an adverse inference is drawn from a party's failure to preserve evidence only when the absence of that evidence is predicated on bad faith." *Bashir v. Amtrak*, 119 F.3d 929 (11th Cir. 1997)).

The Eleventh Circuit has consistently reinforced that an adverse inference is not permitted without a finding of bath faith. *Cox v. Target Corp.*, 351 Fed. Appx. 381, 383 (11th Cir. 2009) (Upholding denial of adverse inference jury instruction where the plaintiff "identified no evidence in the record to suggest that [the defendant] had destroyed the relevant videotape in bad faith."); *Penalty Kick Mgmt. Ltd. v. Coca Cola Co.*, 318 F.3d 1284, 1294 (11th Cir. 2003) ("There is no indication of bad faith in this case, so we decline to draw an adverse inference for the lost label."); *Slattery v. Precision Response Corp.* 167 Fed. Appx. 139, 141 (11th Cir. 2006) ("[Plaintiff] has shown no evidence that [Defendant] withheld or tampered with any of the documents in bad faith.").

And "given this Circuit's requirement that an adverse inference flowing from spoliation requires the presence of bad faith, even **grossly negligent** discovery conduct does not justify that type of jury instruction. *Point Blank Sols., Inc. v. Toyobo Am., Inc.*, 2011 WL 1456029, at *10 (S.D. Fla. Apr. 5, 2011) (emphasis in original) (citing *Preferred Care Partners Holding Corp. v. Humana, Inc.,* 2009 WL 982460, at *7 (S.D. Fla. Apr. 9, 2009) (declining to order adverse inference even though party's performance in fulfilling discovery obligations was "clearly egregious" and even though the party's discovery failings "resulted from the grossly negligent oversights of counsel").

Here, Caballero again fails to establish that the Interested Parties had a duty to preserve documents concerning source of funds for the purchase of the Florida realty in this case. The earliest time any such duty would have arisen would have been when the Interested Parties because aware of this litigation in mid-2022. *Point Blank*, 2011 WL 1456029, at *24 ("It is well-settled

that the duty to preserve potentially relevant evidence 'arises when the party in possession of the evidence knows that litigation **by the party seeking the evidence** is pending or probable.'") (emphasis in original). By that time, Gorrin was no longer in possession of the documents concerning source of funds.

Moreover, the documents are irrelevant. Caballero claims, "that the source of funds used to purchase the subject Florida real properties was the subject of Gorrin and Perdomo's money laundering activities and that the [Interested Parties] that held the subject Florida real properties were vehicles for such money laundering activities[.]" MIL at 18. However, Caballero's allegations are entirely irrelevant according to Caballero himself:

> I think that the reason that these assets are captured is because you don't need to show at all that they were part of any money laundering or anything else. They are owned by an A/I, and by virtue of being owned by the A/I, they're collectible.

ECF No. 270-1 at 68: 17-17. Thus, he cannot meet the last element for spoliation because the evidence is not "crucial" to his ability to prove his claim. In fact, Caballero's experts had no opinion whatsoever on the subject properties and based their A/I opinions on alleged activities completely unrelated to the properties. Lastly, Caballero fails to prove, or even argue, that the absence of source of funds documents is predicated on bad faith. On that basis alone, Caballero's adverse inference request must be denied.

And, in any event, Caballero may not raise an unsubstantiated motion for exclusionary sanctions, which should have been properly made under Rule 37 and timely raised with Judge Becerra, under the guise of a "motion *in limine*." *See, e.g., XTEC,* 2014 WL 10250973, at *4; *Celler Law*, 2014 WL 12580516, at *5; *Wyeth*, 2009 WL 8626786, at *7.

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion in Limine, (ECF No. 345), should be denied in its entirety.

Dated: July 28, 2023                                  Respectfully submitted,

/s/Lisandra Guerrero
Howard Srebnick (FL Bar No. 919063)
Lisandra Guerrero (FL Bar No. 98521)
**BLACK SREBNICK**
201 South Biscayne Boulevard, Suite 1300
Miami, Florida 33131
Tel. (305) 371-6421
E-mail: HSrebnick@RoyBlack.com

LGuerrero@RoyBlack.com

*Counsel for the Interested Parties*