UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:18-cv-25337-KMM

ANTONIO CABALLERO,

    Plaintiff,

v.

FUERZAS ARMADAS REVOLUCIONARIAS
DE COLOMBIA, *et al.*,

    Defendants.

_____/

**PLAINTIFF ANTONIO CABALLERO'S REPLY IN SUPPORT OF HIS MOTION IN LIMINE (ECF NO. 345) AND RESPONSE IN OPPOSITION TO INTERESTED PARTIES' CROSS-MOTION TO PERMIT REMOTE TRIAL TESTIMONY BY GORRIN AND PERDOMO (ECF NO. 353)**

The first sentence of the IPs'[1] cross-motion and opposition (ECF No. 353, "Opposition") to Plaintiff Antonio Caballero's ("Caballero") Motion in Limine (ECF No. 345, "Motion") accuses Caballero of attempting to "gain an advantage at trial" when it is the IPs that ask this Court to become the first court in the U.S. to deprive a terrorism victim of the opportunity to confront—in-person, at trial, through testimony in front of a jury—the agency or instrumentality (A/I). Whether this Court espouses that the Florida's Terrorism Victim Fugitive Disentitlement Act ("TVFA")—which prohibits such repugnant conclusion—applies now or later, Federal Rule of Civil Procedure ("FRCP") 43(a) prohibits depriving a terrorism victim of the "**powerful force for truthtelling**," which "***[t]he very ceremony of trial and the presence of the factfinder may exert,***" as well as "***[t]he opportunity to judge the demeanor of a witness face-to-face.***"[2] The IPs' attempts to gain an advantage at trial extend to matters beyond remote appearance. For example, the IPs seek to offer testimony[3] regarding purported "internal compliance codes"—the substance, and even the existence of which, the IPs cannot corroborate. In essence, the IPs would have this Court overlook Federal Rule of Evidence ("FRE") 403. As further example of IPs' attempts to gain an advantage, the IPs seek to avoid an adverse inference being imposed against them in relation to the lack of any documentation regarding the source of funds used to purchase the subject Florida real properties—even though such result is supported by case law and FRE 403.

## ARGUMENT

**I.   THE IPS' ARGUMENTS AGAINST PRECLUSION OF REMOTE TESTIMONY FAIL**

Although this Court previously allowed the taking of the IPs' depositions via remote means for *discovery* purposes, the issue of in-person testimony for *trial* purposes has not been decided.[4] In their introduction, the IPs attempt to apply the logic of Judge Moore's Order—overruling Caballero's objections to M.J. Becerra's Orders (ECF Nos. 253, 263), effectively allowing the IPs

---

[1] The "IPs" are defined as Raul Gorrin Belisario ("Gorrin"), Gustavo Adolfo Perdomo Rosales ("Perdomo"), and the 23 entities listed at ECF No. 207 at 2, n.1.
[2] *See* 1996 advisory committee notes of FRCP 43(a) (emphasis added).
[3] Such is readily apparent from the opposition to Caballero's request to preclude such testimony.
[4] Magistrate Judge Becerra expressed (before the TVFA's passage) that her granting of the former did not equate to a decision on the latter and that the issue of in-person trial testimony would have to be decided by Judge Moore at a later date. *See* 3-9-2023 Hearing Tr. at 50:16-21 ("***I don't know that Judge Moore will allow them to testify at a trial remotely. That is a completely different consideration that Judge Moore will have to undertake***…") (emphasis added). Moreover, counsel for the IPs also conceded that the issue of in-person trial testimony would be decided at a later date. *Id*. at 43:22-44:8.

(prior to the TVFA's passage) to appear remotely for their deposition during *discovery*—to argue that the IPs should be allowed to appear remotely for purposes of *trial*. In doing so, however, the IPs improperly use brackets to alter language from J. Moore's Order in a manner that misleadingly gives the appearance that J. Moore (and M.J. Becerra, whom J. Moore is quoting) have already decided (and denied) Caballero's request precluding remote testimony by Gorrin and Perdomo in their individual and/or representative capacities. To be clear, this is what the Court actually said: "Magistrate Judge Becerra stated that, given Gorrin and Perdomo's OFAC designations, denying the Interested Parties' request 'would effectively prohibit **the depositions** from taking place at all, a result that would seriously undermine if not outright eliminate their ability to challenge the agency or instrumentality determination.'" ECF No. 275 at 3 (emphasis added). The IPs' misrepresentation—whether intentional or not—does not alter the reality that the issue of the in-person testimony at the A/I hearing (which is no longer lawfully available under the TVFA) with respect to the IPs is yet to be adjudicated.

M.J. Becerra's reasoning (above and on IPs' page 7) is of no avail to the IPs in the *trial* context.[5] Thus far, this Court has focused almost exclusively on the due process rights of the fugitives. Caballero has due process rights as well. The TVFA has "stepped-in" to rebalance those rights in Caballero's favor, and despite this Court's ruling on the timing of its application, the IPs wish for this Court to ignore FRCP 43(a). *See supra* n.2 ("***The importance of presenting live testimony in court cannot be forgotten. The very ceremony of trial and the presence of the factfinder may exert a powerful force for truthtelling. The opportunity to judge the demeanor of a witness face-to-face is accorded great value in our tradition***.") (emphasis added).

---

[5] The notion that the IPs' ability to challenge their A/I status would be eliminated or that the IPs would be effectively prohibited from defending themselves—were the Court to preclude remote testimony—ignores that, in the *trial* context, due process concerns overwhelmingly weigh in favor of Caballero, notwithstanding the IPs' egotistical attempt to make it about their purported due process rights (which since passage of the TVFA no longer exist as to either having a trial or further usage of the resources of this Court). The TVFA precludes remote testimony at trial by Gorrin and Perdomo individually or on behalf of the IP Entities. And although the Court has decided that the TVFA "is not applicable at this juncture," Caballero has already made clear that he intends to appeal the logic upon which Court has based its decision on the TVFA. Put another way, Caballero is simply preserving his position as he is authorized to do. Caballero's first footnote in his Motion, which the IPs seek to strike, summarizes the error in this Court's faulty logic with respect to the TVFA. *See* Mot. at 1 n.1 ("the TVFA applies to 'any postjudgment execution proceedings' to enforce a judgment under 18 U.S.C. § 2333 (i.e., against a foreign terrorist organization—such as, in this instance, the FARC")).

2

### A. THE IPS FAIL TO OVERCOME CABALLERO'S TVFA ARGUMENTS

The IPs' argument that the TVFA does not apply to *any* of the IPs is not credible. Contending that Gorrin is not a fugitive, conveniently overlooks the issuance of the Clerk's Notice Placing Defendants in Fugitive Status (ECF No. 286-1) in the criminal case[6] before this Court which Gorrin has thus far successfully avoided. Further, Caballero has previously explained how Gorrin and Perdomo are fugitives under the TVFA. *See* ECF No. 285 at 13-17, 314 at ¶¶ 52-54.[7]

Shockingly, the IPs contest Gorrin's fugitive status despite his evasion of his criminal case, the above Clerk's Notice, and despite his declining to enter or reenter Florida or the U.S. to submit to this Court's jurisdiction.[8] *See* Mot. at 9, 12; Fla. Stat. §772.13(6)(a)(2) (2023). Gorrin's fugitive status has been acknowledged in his criminal case and, more recently, in former U.S. Representative David Rivera's criminal case.[9] Even prior to the TVFA, Gorrin perfectly met the Eleventh Circuit's fugitive definition.[10] The IPs attempt (and fail) to analogize Gorrin's situation to the circumstances in *United States v. Bescond,* 24 F. 4th 759, 773 (2d Cir. 2021), erroneously arguing that Gorrin has no status in the U.S. (when the U.S. Government's indictment against Gorrin explicitly mentions Gorrin having maintained a residence in the U.S. at various periods of his criminal activity).[11] Gorrin is a fugitive from justice as designated in the Clerk's Notice and is encompassed by the TVFA (*Bescond* notwithstanding).

The IPs admit that Perdomo and Gorrin own and control the IP Entities. *See* Mot. at 12. The IPs also do not contest the TVFA's applicability to "any entity that is owned by or controlled by a person to whom" the law applies. Fla. Stat. §772.13(6)(a)(2). Given Perdomo's and Gorrin's fugitive status, the IP Entities are subject to the TVFA. The granting of the IPs' request that Gorrin

---

[6] Caballero incorporates his response in opposition to the IPs' summary judgment motion ("MSJ"), and his response statement of material facts, in which he details the reasons why the criminal case against Gorrin is relevant here. *See* ECF No. 351 at 4-6, 9-11, 16-20, and ECF No. 352.

[7] Perdomo's declining to enter the U.S. is sufficient for TVFA purposes. *See* Mot. at 10, 12; Fla. Stat. Section 772.13(6)(a)(2). Thus, the fact that Perdomo has not been indicted is of no import.

[8] Separate and apart from the TVFA, Gorrin's evasion of his criminal case renders him a "fugitive."

[9] Clerk's Notice Placing Defendants in Fugitive Status, ECF No. 286-1; Government's Response To David Rivera's Motion For Miscellaneous Relief, ECF No. 352-29 at 39, 46, 51 n.4.

[10] *See Ener v. Martin,* 987 F. 3d 1328, 1332 (11th Cir. 2021); *see also* ECF No. 222-1.

[11] ECF No. 352-24 ("GORRIN…was a citizen and national of Venezuela, ***who at various periods of the conspiracy was a resident of the United States, <u>having maintained a residence in Coral Gables, Florida</u>***.") (emphasis added). The circumstances surrounding Gorrin are thus different from the individual in *Bescond,* whom the Second Circuit deemed to not be a fugitive. *Id.,* 24 F.4th at 772 ("Bescond was not in the United States while allegedly committing the charged conduct.").

3

testify remotely—before this very same Court in which he avoids appearing—would not only be unusually noteworthy (as this would be the first Court in the U.S. to do so in favor of a fugitive), but such would aggressively defy the TVFA's letter and spirit.  If this Court is wrong about the timing of the application of the TVFA, depriving Caballero of FRCP 43(a)'s in-person requirements would only further compound the judicial error.

### B.  THE IPS FAIL TO OVERCOME CABALLERO'S FRCP 43(a) ARGUMENTS

FRCP 43(a) independently precludes remote testimony at trial by Gorrin and Perdomo individually or on behalf of the IP Entities.  Tellingly, the IPs relegate the discussion of Caballero's *directly on-point* cases (which address FRCP 43 in the fugitive context)—*In re Emanuel* ("*Emanuel*") and *In re Henson* ("*Henson*")—to a mere footnote. The IPs cannot overcome the premise for which Caballero cites *Emanuel,* that is, Gorrin's "***fear of arrest…is neither good nor compelling***" cause under FRCP 43(a). 406 B.R. at 637 (emphasis added).[12]  Indeed, nowhere in their section on good cause do the IPs attempt to contest the premise that fear of arrest is not good cause.  Instead, the IPs devote nearly all of their good cause section to attempting to supplement their good cause arguments (with their self-created "blocked" status, which they have not attempted to cure as discussed in greater detail below)—which nevertheless fails.

Gorrin's and Perdomo's "blocked" status is not good cause for allowing them to testify remotely at trial in their individual or representative capacity.  Preliminarily, Caballero notes that such argument is self-serving. Furthermore, as previously noted: i) there are no communications or administrative petitions, by or on behalf of Perdomo or Gorrin, seeking permission to travel to the U.S. in the past five (5) years (*see* Mot. at 11); ii) there are no communications, by or on behalf of Perdomo or Gorrin, requesting that OFAC remove Perdomo or Gorrin from OFAC's Specially Designated Nationals and Blocked Persons List (*id.* at 11 n.12); and iii) Gorrin and Perdomo admitted they have not tried to get a visa to come to the U.S. to appear personally before this Court (*id.* at 8 n.8; ECF No. 314-1, Perdomo Depo Tr. at 9:12-21).  In fact, in arguing (without any

---

[12] Nary a word in the IPs' Opposition as to the IPs arguably having a greater burden than Heller in *Emanuel* as *party*-witnesses, rather than mere fact witnesses, seeking to testify remotely for *trial* purposes. *See* Mot. at 10. Further, the IPs' attempts to distinguish *Henson* (which the IPs mistakenly refer to as "*Heller*") fail.  The IPs argue that the fugitive in *Henson* "claimed he could not leave Canada while his immigration asylum petition was pending" as his good cause basis (as opposed to "fear of arrest"). *See* Opp. at 5 n.2. Regardless, *Henson* is another example (separate and apart from *Emanuel*) of court refusing to allow a fugitive to appear remotely in the civil context.

support) that it would be pointless for Gorrin or Perdomo to seek OFAC permission or apply for a visa, the IPs bolster Caballero's position.

Gorrin's and Perdomo's lack of efforts to petition OFAC or apply for a visa belies the truth—that the IPs' opposition to Caballero's requested relief has nothing to do with Gorrin's or Perdomo's immigration status—but rather Gorrin's and Perdomo's desire to never return to the U.S.[13] That the Court should not now allow Gorrin or Perdomo to use their "blocked" status (and failure to cure same) as a sword (i.e., as justification for allowing their remote testimony at trial) is further supported by the fact that their "blocked" status is self-created. In fact, Gorrin is subject to criminal prosecution for the same reason that he has been blocked. *See* ECF No. 160-3 at 3-4. Gorrin has also made clear that he will not be returning to the U.S. (Mot. at 6-7 n.7, 9 n.9) and further chastised the U.S. judicial system (*id.* at 9). The reality is that the designated IPs—like the fugitive in *Emanuel*—seek to avoid trial and legal consequence. Thus, Gorrin's fugitive status has little to do with his OFAC blocking, it has to do with his admission that he will never return to the U.S. Why? Because he is a criminal with a case pending against him, from which he is a fugitive.

Further, M.J. Becerra has already dispelled the notion that Gorrin is prohibited from traveling to the U.S., and IPs' counsel has conceded as much.[14] Such logic applies to Perdomo.[15]

---

[13] The IPs confuse their wanting to adjudicate these proceedings on the merits with their not wanting to return to the U.S. *See* Opp. at 4. Those are two different issues.

[14] *See* Mot. at 8 (quoting M.J. Becerra: "**But he [i.e., Gorrin] can come**. He is just, obviously, going to be arrested.") (emphasis added). The IPs nevertheless rely on M.J. Becerra's previous Order (ECF No. 253 at 8) to argue that because they are OFAC-designated, they are prohibited from traveling to the U.S. for purposes of trial. *See* Opp. at 4-5. Preliminarily, Caballero notes that M.J. Becerra never made any ruling in such Order as to whether Gorrin and Perdomo would be allowed to appear remotely for purposes of *trial*. Indeed, the Order clearly noted that "the issue of whether Gorrin and Perdomo may appear remotely at trial is not before it [i.e., the Court] at this time." ECF No. 253 at 8 n. 3. Furthermore, as argued above, Gorrin's and Perdomo's lack of efforts to work with OFAC or obtain a visa, and Gorrin's statements at his deposition on May 22, 2023 (which post-date M.J. Becerra's Order, ECF No. 253, of April 22, 2023) that he has no intention of returning to the U.S. (*see* Mot. at 6-7 n.7) and chastising of the U.S. judicial system (*id.* at 9), reveal that the IPs' opposition to Caballero's requested relief has nothing to do with Gorrin's or Perdomo's immigration status.

[15] Thus, the premise that good cause is demonstrated "when a witness is unable to attend" trial in-person (*see* Opp. at 4), and the case law which the IPs use to support such premise, are inapplicable. Further, such cases are distinguishable. The individuals at issue in the FRCP 43(a) analysis in *Monserrate*, *Lopez,* and *Clowdus* (Opp. at 4) were neither fugitives nor blocked. Also, the individuals at issue in the FRCP 43(a) analysis in *Lopez* and *Clowdus* were non-party witnesses (as opposed to Gorrin and Perdomo, who are parties). And, in *Clowdus*, the issue regarding whether

5

In a last-ditch effort to demonstrate "good cause," the IPs argue that even were Gorrin to travel to the U.S., surrendering himself in his criminal case, "that would not necessarily enable him to render in-person testimony" at trial here (*see* Opp. at 5) and, relying upon *Ruiz* (Opp. at 5 n.3), the IPs further argue that Gorrin's incarceration might satisfy FRCP 43(a)'s good cause requirement. Such argument presents a hypothetical scenario this Court need not consider. Gorrin has not turned himself in nor has he intimated that he would. To the contrary, Gorrin has said that he has no intention of returning to the U.S. (*see* Mot. at 6-7 n.7), that he has "no interest to answer to the indictment" (*id.* at 9). Gorrin has further chastised the U.S. judicial system (*id.* at 9).

Given their lack of "good cause," Gorrin and Perdomo should not be able to testify, on behalf of the IP Entities, remotely at trial. The IP Entities cannot do what Gorrin and Perdomo cannot do individually.[16] Given the lack of "good cause," it was not (and is still not) necessary to determine whether Gorrin, Perdomo, and the IP Entities satisfy FRCP 43(a)'s "appropriate safeguards" prong. Caballero thus did not waive any argument as to appropriate safeguards. Caballero nevertheless explains why the IPs' arguments that remote tools, in particular Zoom, fail to provide the "appropriate safeguards."

The IPs' "appropriate safeguards" cases miss the mark. None of those cases authorized a *fugitive* to testify remotely at trial.[17] Such absence is telling. Were the Court to grant the IPs' request that Gorrin and Perdomo be permitted to testify remotely (individually or on behalf of the IP Entities), the remote tool (i.e., Zoom) would become the very vehicle fugitives such as Gorrin and Perdomo utilize to game the system. Put another way, fugitives such as Gorrin and Perdomo use their remote location and means to avoid the jurisdiction and lie without legal consequence—

---

to allow the non-party witnesses to testify remotely was for the purpose of an evidentiary and motions hearing (as opposed to trial here). 2022 U.S. Dist. LEXIS 186141 at *3. Furthermore, although the non-party witnesses' expired visas factored into the court's good-cause determination, the court noted that such non-party witnesses' visas expired "mere days" after the court originally scheduled the subject hearing and that, at least one of the non-party witnesses, attested to scheduling a visa renewal appointment which was "not for several months." *Id.* at *10-11. Gorrin and Perdomo, by contrast, have known since at least January 27, 2023 of this Court's original trial order (ECF No. 216) and have taken no efforts to appear in-person for such trial. They simply do not wish to appear in person–because of the arrests that would likely take place.

[16] This position is consistent with the TVFA: "This subparagraph applies to any entity that is owned by or controlled by a person to whom this paragraph applies." *See* Fla. Stat. §772.13(6)(a)(2).

[17] This is also true of the IPs' cases cited to for the premise that remote testimony at depositions has become the norm—which do not even concern fugitives using remote tools or FRCP 43(a).

6

as they so cavalierly did in their deposition.[18] Safeguards presumed to facilitate testimony, premised on a witness being faced with perjury consequences, are a far cry from pretending that Zoom somehow provides a safeguard when the fugitive has placed himself in a circumstance beyond such consequence. Such result would eviscerate the "***powerful force for truthtelling***," which "***[t]he very ceremony of trial and the presence of the factfinder may exert.***" *See supra* n.2 (emphasis added).[19] If this Court already knows that somebody is an arsonist, why give them a match? Due process is a two-way street. The IPs simply wish for Caballero's due process rights to remain kicked to the curb, including those required under the TVFA and FRCP 43(a).

## II.  THE EXCLUSION OF UNCORROBORATED EVIDENCE ARGUMENTS PREVAIL

Caballero does not seek to exclude (under spoliation principles) Gorrin's testimony regarding the purported "internal compliance codes" because they were supposedly contained in "dead archives" which were destroyed (after Gorrin learned that he was indicted). Instead, Caballero seeks exclusion under FRE 403 because its probative value (i.e., Gorrin's attempt to rebut his co-conspirator Andrade's testimony) is substantially outweighed by the danger of: 1) unfair prejudice to Caballero (as Gorrin's testimony cannot be corroborated); and 2) misleading the jury (in the face of Alejandro Andrade's testimony confirming that "AA" are the initials of his name, and other evidence which corroborates that the entries in the spreadsheets such as in Government Exhibits 11 and 18 reflect payments made by Gorrin for Andrade's benefit (as bribes, including payments to Andrade's extra-marital girlfriend as appearing on documentation labeled "AA"), *see* Mot. at 14).[20] The IPs' arguments that Caballero was late in bringing his motion,[21] that

---

[18] The IPs argue that Zoom satisfies the three required appropriate safeguards; however, such argument presumes that the fugitive is not using Zoom as a vehicle for gaming the system (i.e., utilizing this Court in one instance—to assert a purported interest in property, while evading it in another instance—as a fugitive avoiding his criminal trial) and lying without consequence.

[19] The IPs' offer to meet and confer to consider additional safeguards ignores that no safeguard—other than in-person testimony by the IPs at trial—would afford Caballero "***[t]he opportunity to judge the demeanor of a witness face-to-face is accorded great value in our tradition.***" *See supra* n.2 (emphasis added).

[20] Caballero's above request is independent from the other relief sought in his Motion. *Aycock* (*see* Opp. at 10), is distinguishable because Gorrin's testimony regarding the purported "internal compliance codes" is: i) uncorroborated; ii) directly controverted by the testimony of his co-conspirator and additional evidence; and iii) not essential to the IPs' defense regarding their A/I status because the spreadsheet is but one example of Gorrin's material assistance to a FARC A/I.

[21] Caballero only learned of the IPs' "rebuttal evidence" (i.e., Gorrin's explanation that the letters on the spreadsheets were purportedly internal compliance codes created by the exchange house's

Caballero has no basis to impose sanctions, and that Caballero has not met the standard for spoliation sanctions (including the IPs' caselaw support such arguments)[22] are misplaced.

By attempting to recharacterize Caballero's Motion as a spoliation motion, the IPs try to impose upon Caballero the inapplicable spoliation standard. Regardless, Gorrin should have preserved the documents which were purportedly archived and destroyed in light of the Superseding Indictment, and it is not credible that Gorrin could not have taken any action to preserve the documents (assuming that they even existed).[23] Whether Gorrin had a duty to preserve the documents and whether he destroyed the documents, what is most relevant—to Caballero's Motion under FRE 403—is the fact that Gorrin cannot corroborate his testimony (that he wishes to present as a fugitive through Zoom, while sitting in his offshore safe haven—where he faces no consequences for perjury), which is directly contradicted by reliable evidence (e.g., testimony from his co-conspirator Andrade and other evidence introduced at the trial Gorrin avoided).

In support of their relevancy argument, the IPs rely upon M.J. Becerra's statement regarding Caballero not having to try the government's case and having to show "a very limited thing, actually" (Opp. at 8-9). Such statement confirms that Caballero has a much lower bar as to what he needs to show in this case compared to the criminal case. Moreover, M.J. Becerra never once said that Caballero could not use evidence from the criminal case. Such would defy common and fundamental judicial norms and rules—particularly evidentiarily. In any case, at the time that M.J. Becerra made such statement she did not have all of the evidence before her, which reveals that Gorrin's activities—described in the indictment and evidenced during the trial of his co-conspirators—renders him a FARC A/I. Gorrin's and Perdomo's activities evidenced in the criminal trial of Gorrin's co-conspirators is important and related to this case. And, as previously noted by Caballero in his opposition to the IPs' MSJ, the IPs again do not controvert that Diaz

---

compliance employees) during Gorrin's deposition, which took place on the last day before the discovery window closed and was scheduled as soon as possible after the Court entered its order (ECF No. 295) on Caballero's objections to M.J. Becerra's order on the motion for protective order regarding the depositions of Gorrin and Perdomo.

[22] The IPs' cases (*see* Opp. at 7, 9, and 11) are inapplicable because they involved requests for relief based upon spoliation and did not involve a motion *in limine* seeking to exclude evidence under FRE 403. *Wyeth v. Apotex Inc.*, is also distinguishable because the movant therein (unlike Caballero) sought FRCP 37-type relief, which could have been raised during discovery. *Id.,* No. 08-22308-CIV-MORE, 2009 U.S. Dist. LEXIS 132019, *20-21 (S.D. Fla. Oct. 6, 2009).

[23] Gorrin should not be able to use the fact that he destroyed the documents as a sword in this civil case and as a shield in his criminal case.

8

Guillen, Velasquez, and Andrade are FARC A/Is. *See* ECF No. 351 at 11, n. 23. Because the criminal case concerned other FARC A/Is with substantial links to Gorrin and given the broad A/I standard, Gorrin's relationships with other FARC A/Is are relevant.[24]

The spreadsheets[25] (in Government Exhibits 11 and 18) are non hearsay under FRE 801(d)(2) (C), (D), or (E) because they are being offered against Gorrin (an opposing party) and: i) according to Gorrin, the spreadsheet (in Government Exhibit 11) "is an accounting, an internal accounting from our personal in-house stock house[,]" (*see* ECF No. 314-6, Gorrin Depo Tr. 39:4-7); ii) it is undisputed that Government Exhibit 18 was also from his exchange house (*id.* at 44:21-45:11); and/or iii) Andrade knows that the two emails (from "asesor 002"), which respectively attached the two spreadsheets, were sent to him from Gorrin's office because on several occasions he received information from the same email. *See* ECF No. 345-1 at 12, 33.

## III.  THE ADVERSE INFERENCE ARGUMENTS PREVAIL

Caballero analogized the situation here to that in *Trafalgar*. Mot. at 18 ("Moreover, like Trafalgar, Caballero sought (via a request for production), but never received, relevant financial documentation—despite a court order compelling such document production."). Applying *Trafalgar's* logic (albeit dicta),[26] Caballero requested an adverse inference—that the source of funds used to purchase the subject Florida real properties was the subject of Gorrin's and Perdomo's money laundering activities and that the IPs that held the subject Florida real properties were vehicles for such money laundering activities. The Opposition does not mention *Trafalgar*.

The IPs mischaracterize the Motion as a spoliation motion. Such mischaracterization is even more egregious than that discussed above, given that Caballero does not allege that the IPs

---

[24] Caballero has addressed the IPs' argument that "anyone…connected to the Venezuelan government or Venezuelan currency transactions" is a FARC A/I. *See* ECF No. 351 at 16. Such argument ignores that the "bond scheme" and "permuta scheme" were such that Gorrin's primary participation (having access to the "bonds" and "permuta" government exchange rates afforded to only he and a limited group of money launderers—as evidenced by prosecutions of Gorrin, and such limited group—through bribery to Andrade and Diaz Guillen) differentiates Gorrin from "all Venezuelans." *See* ECF No. 352 at ¶ 1, 29-30.
[25] The IPs' citation to *Thomas* (*see* Opp. at 9)—without any analysis—should be disregarded.
[26] Although dicta, the district court was clear—that is, had the plaintiff been unable to support its fraud allegations through other evidence, the district court would have granted the plaintiff's motion *in limine* for an adverse inference that the documents requested, but never produced, would support plaintiff's fraud allegations. *Trafalgar,* 2010 U.S. Dist. LEXIS 154970 at *10 n.6.

9

destroyed the source of fund documents—but rather that they failed to produce such documents.[27] Given the lack of documentation, FRE 403 also supports Caballero's adverse inference request.[28]

Inherent in the IPs' argument is their conflating of "relevancy" and "collectability." The fact that the subject real properties may be executed upon by Caballero is a function of the A/Is owning the properties. The relevancy of the documentation relates to the A/I activities, but not necessarily the criminal behavior alleged by the government. Put another way, the IPs seek to use "collectability" as a sword to prevent Caballero from gathering relevant evidence as to the actual activities of the IPs' regarding the movement of their monies which activities may be probative of their A/I status. Caballero has been deprived of that opportunity to gather such evidence—because that it was fugitives and money launderers do. Adverse inferences are certainly warranted under these circumstances.

Caballero thus respectfully requests that his Motion (ECF No. 345) be granted and the IPs' cross-motion (ECF No. 353) to permit remote trial testimony by Gorrin and Perdomo be denied.

---

[27] The majority of the cases in IPs' Section IV are inapplicable as they concern spoliation issues. Notably none of the cases cited by the IPs (for the proposition that "bad faith" in withholding or tampering with documents is pre-requisite to an adverse inference, *i.e., Cox*, *Penalty Kick Mgmt. Ltd.*, and *Slattery* on page 13 of the Opp.) involve fugitive money launderers A/Is. Why? Because terrorist agents "operate in the shadows out of necessity," *Stansell v. FARC*, 771 F.3d 724, 732, 742 (11th Cir. 2014). It is uncontroverted that Gorrin's Dead Archives were destroyed after Gorrin learned of his indictment. Miraculously now, no source of funding documents are available for tens of millions of dollars in property that Gorrin and Perdomo each admit they own and control and each of which they respectively purport were acquired from their own personal funds (ECF No. 352 at 8, n. 24). Caballero need not show that every document that money launders fail to produce were withheld, tampered with, or destroyed, in "bad faith." As the Dead Archives illustrate—such was their practice to avoid consequence. And in a fugitive context, Caballero need not show more—the admission of the practice having occurred must be enough for the adverse inference. To force Caballero to sparse out which specific documents were withheld, tampered with, or destroyed, sets an unfathomable bar while the fugitive and his documentation (or lack thereof) remain in the "shadows." Because fugitive money launderers avoid discovery, they should not escape adverse inferences when they fail to produce the evidence.

[28] Caballero has alleged that Gorrin is an A/I due to his illicit financial activities which have benefitted the FARC (including, money laundering and bribery of FARC A/Is), and thus, Caballero should not be denied documentation regarding the source of funds used to purchase the subject real properties.

Respectfully submitted,

*/s/ Joseph I. Zumpano*
Joseph I. Zumpano
Fla. Bar. No. 0056091
jzumpano@zplaw.com
Leon N. Patricios
Fla. Bar No. 0012777
lpatricios@zplaw.com
Gabriela Rosell
Fla. Bar No. 0111735
grosell@zplaw.com

ZUMPANO PATRICIOS, P.A.
312 Minorca Ave.
Coral Gables, FL 33134
Tel: (305) 444-5565

*Attorneys for Plaintiff Antonio Caballero*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th day of August, 2023, the undersigned electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system.

*/s/ Joseph I. Zumpano*
Joseph I. Zumpano