UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:18-cv-25337-KMM

ANTONIO CABALLERO,

      Plaintiff,

v.

FUERZAS ARMADAS REVOLUCIONARIAS
DE COLOMBIA, *et al.*,

      Defendants.

_____/

### PLAINTIFF ANTONIO CABALLERO'S EMERGENCY MOTION TO STAY ORDER (ECF NO. 365) AND FINAL JUDGMENT (ECF NO. 374) PENDING APPEAL

On August 21, 2023, this Court entered an Order (the "Order," ECF No. 365) granting the IPs'[1] motion for summary judgment (the "MSJ," ECF No. 342) on the issue of agency or instrumentality ("A/I"). On August 28, 2023, the Court entered Final Judgment (the "IPFJ", ECF No. 374) in favor of the IPs and ordering, among other things, the vacating of all execution process levied by Caballero on the IPs or their properties and requiring Caballero to cause, within seven calendar days, deeds to be delivered to two of the IPs transferring the Fisher Island Property[2] and the Collins Avenue Property.[3]

Given that the IPFJ requires the transfer of real property, which if found erroneous will have deprived a victim of terrorism of a recovery previously obtained and eliminates Caballero's priority as a judgment creditor through the vacating of levied writs (the "Subject Writs"),[4] Caballero moves this Court, pursuant to Federal Rule of Appellate Procedure 8(a)(1)(A) and on an emergency basis pursuant to Local Rule 7.1(d)(1), to stay the effect of the IPFJ pending Caballero's

---

[1] The "IPs" are defined as Raul Gorrin Belisario ("Gorrin"), Gustavo Adolfo Perdomo Rosales ("Perdomo"), and the 23 entities listed at ECF No. 207 at 2, n.1.

[2] The "Fisher Island Property" refers to the real property located at 7043 Fisher Drive, Unit 7043, Miami Beach, Florida 33109.

[3] The "Collins Avenue Property" refers to the real property located at 18555 Collins Avenue, Unit 4401, Sunny Isles, Florida 33160.

[4] The "Subject Writs" include Caballero's writs on the IPs' respective subject blocked assets—real property and non-real property alike. The following are seven writs of execution which were levied upon real property: **1)** ECF No. 159, issued Writ as to RIM Group Investments III Corp., 144 Isla Dorada Boulevard, Coral Gables, Florida, ECF No. 194 at 7 (levied on 10/11/2022); **2)** ECF No. 161 at 1, issued Writ as to Magus Holding LLC, 4100 Salzedo Street, Unit 804, Coral Gables, Florida, ECF No. 194 at 4 (levied on 10/11/2022); **3)** ECF No. 161 at 2, issued Writ as to RIM Group Investments II Corp., 4100 Salzedo Street, Unit 913, Coral Gables, Florida, ECF No. 194 at 2 (levied on 10/11/2022); **4)** ECF No. 161 at 3, issued Writ as to RIM Group Investments II Corp., 4100 Salzedo Street, Unit 813, Coral Gables, Florida, ECF No. 194 at 1 (levied on 10/11/2022); **5)** ECF No. 161 at 4, issued Writ as to RIM Group Investments I Corp., 4100 Salzedo Street, Unit 807, Coral Gables, Florida, ECF No. 194 at 5 (levied on 10/11/2022); **6)** ECF No. 161 at 5, issued Writ as to RIM Group Investments I Corp., 4100 Salzedo Street, Unit 608, Coral Gables, Florida, ECF No. 194 at 6 (levied on 10/11/2022); and **7)** ECF No. 161 at 6, issued Writ as to RIM Group Investments, Corp., 4100 Salzedo Street, Unit 1010, Coral Gables, Florida, ECF No. 194 at 3 (levied on 10/11/2022). There was one writ of garnishment issued and served upon Garnishee, Professional Bank—ECF No. 241, issued Writ as to blocked funds held at Professional Bank, ECF No. 294-2 (affidavit of service, evidencing completion of service on 3/30/2023). Lastly, the following are two writs of execution which were levied on certain stock interests of Gorrin and/or Perdomo: **1)** ECF No. 173, issued Writ as to stock owned by Gorrin in the entities listed at ECF No. 173 at 2; and **2)** ECF No. 273-1, issued Writ as to stocked owned by Perdomo in entities listed at ECF No. 173-1 at 2.

appeal—which has been filed (ECF Nos. 367, 375).  Simply put, if a stay is not entered and Caballero prevails on appeal only to return to find the IPs unblocked with their property sold and the proceeds transferred offshore, a victim of terrorism will have been deprived of tens of millions of dollars that should have been collected.

Caballero has repeatedly briefed for this Court that Florida's Terrorism Victim Fugitive Disentitlement Act (the "TVFA"), codified at § 772.13(6), Fla. Stat. (2023), is applicable to these post-judgment proceedings.  To date, this Court has refused to apply the TVFA. Consequently, this Court improperly entertained the IPs' MSJ (i.e., an improper utilization of a court resource) and entered the erroneously entered the IPFJ.  Although Caballero is likely to prevail on the merits of his appeal for this reason alone, Caballero is also likely to prevail on the merits of his appeal for an independent reason—this Court's misapplication of the A/I standard at the summary judgment stage.

Moreover, as will be discussed in greater detail below, if the Eleventh Circuit Court of Appeals reverses this Court's Order and the IPFJ, the denial of Caballero's requested stay will cause irreparable damage to Caballero, who has already paid the Southern District of Florida U.S. Marshal (the "USMS") a $50,000 commission.  Furthermore, the denial of Caballero's requested stay will cause irreparable damage to Caballero through the loss of his priority over the subject blocked assets and the loss of a substantial collection if the IPs are unblocked during the pendency of the appeal and sell the blocked assets. The IPs, by contrast, would suffer no harm were the requested stay entered because, at this point, the assets are currently blocked. Finally, given that Caballero's appeal will raise and resolve issues relating to the application and scope of the recently enacted TVFA (i.e., issues of first impression) and the public's interest in fighting terrorism, compensating victims of terrorism, and promoting judicial efficiency, entering Caballero's requested stay pending his appeal would serve the public interest.

### REQUEST FOR EMERGENCY RELIEF PURSUANT TO LOCAL RULE 7.1(d)(1)

Caballero has designated this Motion as an emergency motion under Local Rule 7.1(d)(1) because Caballero has only seven days to comply with the terms of the IPFJ and doing so will cause Caballero irreparable harm if the Court's rulings are reversed on appeal.

### LEGAL STANDARD

Stays pending appeal are "an exercise of judicial discretion" and "dependent upon the circumstances of the particular case." *Alpacific S.A. v. Diageo Latin Am. & Caribbean, Inc*., No.

10-civ-23822, 2014 U.S. Dist. LEXIS 197499, *6 (S.D. Fla. Nov. 7, 2014) (quoting *Virginian Ry. Co. v. United States,* 272 U.S. 658, 672-73 (1926)).   To determine whether to enter a stay pending an appeal, courts consider four factors: "1) that the movant is likely to prevail on the merits on appeal; 2) that absent a stay the movant will suffer irreparable damage; 3) that the adverse party will suffer no substantial harm from the issuance of the stay; and 4) that the public interest will be served by issuing the stay." *Id.*  Although "the Eleventh Circuit has stated that ordinarily, the first factor is the most important," a movant "may also have his motion granted upon a lesser showing of a 'substantial case on the merits' when 'the balance of the equities [identified in factors 2, 3, and 4] weighs heavily in favor of granting the stay." *Id.* at *6-7 (citing *Garcia-Mir v. Meese,* 781 F.2d 1450, 1453 (11th Cir. 1986) and quoting *Ruiz v. Estelle,* 650 F.2d 555, 565 (5th Cir. 1981)).

## ARGUMENT

## I.   CABALLERO IS LIKELY TO PREVAIL ON THE MERITS ON APPEAL

On August 21, 2023, the Court granted the IPs' MSJ on the basis that Caballero failed to establish that the IPs are A/Is of the FARC. *See* ECF No. 365. Subsequently, on August 28, 2023, the Court entered the IPFJ in favor of the IPs. *See* ECF No. 374. The Court's error is two-fold. First, the Court should have never entertained the IPs' MSJ and entered the IPFJ (i.e., an improper utilization of a court resource) pursuant to the applicable TVFA. Second, notwithstanding the applicable TVFA, the Court should have denied the IPs' MSJ for the independent reason that Caballero provided an abundance of evidence to support the A/I status of the IPs—and certainly enough to create a factual dispute for purposes of summary judgment. Accordingly, Caballero is likely to prevail on the merits on appeal.  Regardless, Caballero has, at a minimum, established a "substantial case on the merits"—which, in conjunction with the balance of equities weighing heavily in Caballero's favor (discussed in subsequent sections)—warrants the entering of a stay here.  *Alpacific S.A.,* 2014 U.S. Dist. LEXIS 197499, *6-7; *United States v. Schwarzbaum,* No. 18-cv-81147, 2021 U.S. Dist. Lexis 248182, at *2 (S.D. Fla. Dec. 30, 2021).

### A.  The Court Failed to Apply The TVFA

On June 20, 2023, the TVFA was enacted into law.[5]  That same day, Caballero notified the Court of the TVFA's enactment.  *See* ECF No. 318. Despite Caballero's multiple requests for the

---

[5]  *See* Florida Senate Bill 1442, accessed at: http://laws.flrules.org/2023/267. The TVFA's legislative history evidences that it was intended to be applied in these very circumstances in a sister case (i.e., involving a TRIA proceeding and putative claimants alleged to be A/Is). *See* ECF

3

Court to apply the TVFA by denying all relief sought by, and dismiss all claims made by, the IPs, and enter judgment in favor of Caballero,[6] the Court erred in failing to apply the TVFA.

The TVFA provides:

   (a)   In any postjudgment execution proceedings to enforce a judgment entered under this section or under 18 U.S.C. s. 2333 or a substantially similar law of the United States or of any state or territory of the United States:

   1.   There is no right to a jury trial under s. 56.18 or s. 77.08; and

   2.   A defendant or a person may not use the resources of the courts of this state in furtherance of a defense or objection to postjudgment collection proceedings if the defendant or person purposely leaves the jurisdiction of this state or the United States, declines to enter or reenter this state or the United States to submit to its jurisdiction, or otherwise evades the jurisdiction of the court in which a criminal case is pending against the defendant or person. This subparagraph applies to any entity that is owned or controlled by a person to whom this paragraph applies.

   (b)   Paragraph (a) applies to any judgment collectible under state law and to any civil action pending or filed on or after June 20, 2023.

§ 772.13(6)(a)-(b), Fla. Stat. (2023).

### 1. Brief Background on the Fugitive Disentitlement Doctrine

The fugitive disentitlement doctrine developed in the federal court system as a common law principle of equity arising from a court's inherent power. *Pesin v. Rodriguez*, 244 F.3d 1250, 1252 (11th Cir. 2001) (noting that the "Supreme Court first applied the fugitive disentitlement doctrine in the 1876 case of *Smith v. United States. See* 94 U.S. 97, 24 L. Ed. 32 (1876)."). In *Degen v. United States*, 517 U.S. 820, 829 (1996), the United States Supreme Court limited the application of the common law fugitive disentitlement doctrine because it was a judicially created doctrine arising from a court's inherent power. It is well recognized that the court in *Degen* declined in that instance to apply, merely under its inherent authority, the fugitive disentitlement

---

No. 313 at 10 n. 21. Bill Analysis for HB 1501 (i.e., a House Bill identical to Senate Bill 1442), page 4 (discussing another TRIA proceeding (i.e., *Stansell v. Lopez Bello*), involving another group of TRIA judgment creditors (i.e., the *Stansells*): "Lopez-Bello and his front companies were each ruled to be an agency or instrumentality of the FARC … Lopez-Bello and his attorneys continue to demand jury trials in the post-judgment phase of the proceedings, but then they fail to appear. This has caused over a decade of delay…"), https://www.flsenate.gov/Session/Bill/2023/1501/Analyses/h1501z1.CJS.PDF.
[6] *See e.g.*, ECF Nos. 285, 318, 326, 328, 351, 361.

doctrine but "not because it was inherently unconstitutional. 517 U.S. at 829." *United States v. 5054 Stoney Point Lake*, 731 F. Supp. 2d 1345, 1349 n.3 (N.D. Ga. 2010). The Supreme Court acknowledged that its ruling might be different if disentitlement were authorized by statute. *Id*. at 828 ("We need not, and do not, intimate a view on whether enforcement of a disentitlement rule under proper authority would violate due process . . . .").

In direct response to the weakening of the common law fugitive disentitlement doctrine in *Degen*, both the United States Congress and the Florida Legislature passed laws codifying a stronger version of the fugitive disentitlement doctrine in civil forfeiture actions. *5054 Stoney Point Lake*, 731 F. Supp. 2d at 1349; *United States v. $343,726.60 in United States Currency*, No. 05-cv-20513, 2007 U.S. Dist. LEXIS 108151, at *11 n.4 (S.D. Fla. July 16, 2007); *Tejada v. In re Forfeiture of the Following Described Prop., $406,626.11 in U.S. Currency*, 820 So. 2d 385, 387-88 (Fla. 3d DCA 2002). Due process challenges to the statutory codifications of the fugitive disentitlement doctrine have been summarily rejected, while the application of the statutes to pending actions has been affirmed. *Collazos v. United States*, 368 F.3d 190, 205 (2d Cir. 2004); *United States v. Batato*, 833 F.3d 413, 426-29 (4th Cir. 2016); *Tejada v. In re Forfeiture of the Following Described Prop., $406,626.11 in U.S. Currency*, 820 So. 2d 385, 387-89 (Fla. 3d DCA 2002).

## 2. *The Florida Legislature Has Balanced the Protections Given to Third Parties with the Interests of Victims of Terrorism*

It is the role of the federal and state legislatures to set the policy of the state within constitutional bounds. In 2023, in the midst of publicized acrimony between political parties, the members of the Florida Legislature ***unanimously*** passed the TVFA.[7] This law confirms that there is a consequence to a fugitive placing assets in Florida and using the Florida and federal law to protect their assets. Agencies or instrumentalities of terrorists can no longer use Florida as a safe haven to deposit their loot and fight collection actions from their offshore hiding place.

As the Eleventh Circuit has held, Florida's statutes applicable to post judgment proceedings require providing a claimant with notice and an opportunity to be heard. *See Stansell v. Revolutionary Armed Forces of Columbia*, 771 F.3d 713, 725 (11th Cir. 2014) ("*Stansell II*") (quoting various post judgment statutes requiring notice and an opportunity to be heard). Thus,

---

[7]     *See*    Florida    Senate    Bill    1442,    Bill    History,    accessed    at https://flsenate.gov/Session/Bill/2023/1442.

just as the Florida Legislature has created the notice and hearing provisions in Florida law (utilized by the Eleventh Circuit) to provide "protections to third parties" in post judgment collection proceedings, in passing the TVFA, the Florida Legislature has enforced such further "protections to third parties" to also consider and balance certain interests of victims of terrorism in post judgment collection proceedings.

The balance reached by the Florida Legislature is constitutional and appropriate. Courts analyzing the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA") and Florida's forfeiture Fugitive Disentitlement Statute have held that so long as the fugitive has notice of the proceeding, the fugitive merely has to appear to argue against application of the doctrine. *Batato*, 833 F.3d at 427-28; *Tejada*, 820 So. 2d at 389. Adjudication against the fugitive is appropriate because the fugitive has not been denied an opportunity to be heard, but rather has avoided the opportunity by remaining a fugitive–in Gorrin's case not presenting himself to be heard within the territorial jurisdiction of this very Court. Indeed, when rejecting a fugitive's arguments against application of the common law doctrine, the Eleventh Circuit has held that the fugitive "himself can remedy any hardship by simply submitting himself to the authority of the courts." *United States v. One Parcel of Real Estate*, 868 F.2d 1214, 1217 (11th Cir. 1989).

Other courts have said the same. When applying Florida's civil forfeiture Fugitive Disentitlement statute, the Third DCA noted: "It is Tejada's flight or his continued refusal to appear in the face of judicial action that is the critical predicate to his disentitlement." *Tejada*, 820 So. 2d at 389. The Florida Legislature has now codified what the Third DCA found appropriately formed a "critical predicate" to a fugitive's disentitlement: refusal to appear. Although welcomed by victims of terrorism, there is nothing extraordinary about Florida's TVFA. The law merely codifies principles that are well established in statutory law as now applicable to victims of terrorism.

### 3. The TVFA is Applicable

This Court has found the TVFA applicable, just not at this stage of the proceedings. *See* ECF No. 329 at 10.  Caballero maintains that the Court has erred in finding the TFVA inapplicable at this stage of the proceedings.  The plain language of the TVFA, and the plain language of 18 U.S.C. § 2333 (the "ATA"), squarely contradicted the Court's prior ruling (in ECF No. 329), which flowed through to the Court's ruling on the IPs' MSJ and the IPFJ (*see* ECF Nos. 365, 374). The first element is whether the matter is a postjudgment execution proceeding to enforce a judgment entered under 18 U.S.C. 2333. § 772.13(6)(a), Fla. Stat. On May 20, 2020, this Court entered the

Final Judgment under 18 U.S.C. § 2333. *See* ECF No. 63 at 1. This Court's Final Judgment awarded Caballero damages pursuant to 18 U.S.C. § 2333. *Id*. On April 8, 2022, as part of Caballero's collection efforts to satisfy the Final Judgment, he instituted postjudgment collection proceedings against the IPs. *See* ECF No. 150.

The TVFA frames the context of its application in the very first sentence of Section 772.13(6)(a), as follows: "In ***any postjudgment execution proceedings*** to enforce a judgment entered under this section ***or under 18 U.S.C. s. 2333***..." (emphasis added). And 18 U.S.C § 2333 makes clear that the only judgment proceedings it addresses are those regarding a judgment against a Foreign Terrorist Organization (e.g., the FARC), to wit[8]:

> In an action under subsection (a) for an injury arising from an act of international terrorism committed, planned, or authorized by an ***organization that had been designated as foreign terrorist organization under Section 219 of the Immigration and Nationality Act (8 U.S.C. 1189),*** as of the date on which such act of international terrorism was committed, planned or authorized, liability may be asserted as to any person who aids and abets, by knowingly providing substantial assistance, or who conspires with the person who committed such an act of international terrorism.

18 U.S.C § 2333(d)(2) (emphasis added).

The IPs are not foreign terrorist organizations, rather the Defendant in this case—the FARC—is a foreign terrorist organization as defined in the ATA above. Neither were the IPs sued under the ATA for "liability" as referenced above in 18 U.S.C. § 2333(d)(2). *See* ECF No. 1. Caballero is hereunder engaged in postjudgment proceedings pursuant to TRIA 201(a) upon a judgment under 18 U.S.C § 2333 regarding a foreign terrorist organization—i.e., the Defendant FARC, which was sued for "liability" by Caballero under the ATA, and against whom the Court entered a judgment under the ATA.

It cannot be that the TVFA does not apply at this "juncture", as the language of the TVFA itself expressly makes clear that the TVFA applies to "any postjudgment execution proceedings" to enforce a judgment under 18 U.S.C. § 2333 (i.e., against a foreign terrorist organization—such as, in this instance, the FARC). These are precisely the postjudgment proceedings being pursued before this Court under TRIA 201(a)—at this very moment. Subsection (a)(2) of the TVFA also states that "[a] defendant or a person may not use the resources of the courts of this state in

---

[8] Caballero's judgment is also against FARC-EP the military and drug running operation that remains blocked. *See* ECF No. 192 at 18-19.

furtherance of a defense or objection to postjudgment collection proceeding[] . . . ." § 772.13(6)(a)(2), Fla. Stat.

Florida Statutes, Chapter 56, "Final Process" does discuss the right to a trial by jury. Such right to a trial by jury, however, is to determine the "right of property." Specifically, Section 56.18, states that "as soon as possible after the return, or after service of a Notice to Appear pursuant to s. 56.29(2), a jury, if not waived, shall be impaneled to try the ***right of property***." § 56.18, Fla. Stat. (2023) (Emphasis added). Furthermore, Section 56.19 provides that:

> Upon the verdict of the jury, the court shall enter judgment ***deciding the right of property***, and if the verdict is for the judgment creditor, awarding a recovery by the judgment creditor from the claimant and the claimant's sureties, of the value (as fixed by the officer, or as fixed by the jury if fixed by it) of such parts of the property as the jury may have found subject to execution that were delivered to the claimant, and awarding separately such damages as may be awarded under s. 56.18, and of all costs attending the presentation and trial of the claim.

§ 56.19, Fla. Stat. (2023) (emphasis added).

Similarly, Chapter 77 contemplates a right to a trial by jury to determine the "right of property." Section 77.08 specifically grants a right to a trial by jury in garnishment proceedings, and Section 77.16 discusses the specific findings which a jury will be impaneled to decide. Specifically, Section 77.16 provides:

> If any person other than defendant claims that the debt due by a garnishee is due to that person and not to defendant, or that the property in the hands or possession of any garnishee is that person's property and shall make an affidavit to the effect, the court shall impanel a jury to ***determine the right of property*** between the claimant and plaintiff unless a jury is waived.

§ 77.16(1), Fla. Stat. (2023) (emphasis added).

Given that both Chapters 56 (post judgment execution proceedings statutes), and Chapter 77 (the prejudgment and postjudgment garnishment proceedings statutes) address a trial by jury to determine "right of property," such Chapters 56 and 77 cannot be read to carve-out a separate trial by jury solely to determine the agency or instrumentality status of the IPs because both: (a) the rights of Caballero as a TRIA judgment creditor to have recovered the "rights of property" in the two properties he successfully bid upon at the respective USMS sales of November 8, 2022, and (b) the rights of Caballero to collect the "rights of property" upon the remaining assets in the respective names of the IPs that he successfully attached; turn upon the language of TRIA that

makes the "right of property" of the agencies or instrumentalities of a terrorist party defendant recoverable by Caballero as a matter of law. The language of TRIA provides that:

> Notwithstanding any other provision of law, and except as provided in subsection (b), in every case in which a person has ***obtained a judgment against a terrorist party*** on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section 1605(a)(7) of title 28, United States Code, ***the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment*** to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

TRIA 201(a) (emphasis added).

Thus, TRIA (similar to the ATA and TVFA) provides that the relevant judgment to which post judgment execution proceedings apply is the "judgment against a terrorist party" (e.g., in this instance—the FARC), and provide that the TRIA judgment creditor may execute and/or attach the "right of property" of agencies or instrumentalities to wit: "*(including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment.*" *Id*.[9] (Emphasis added).

There are two unbroken lines of law that the Court must not breach. First, by operation of law: (a) the TVFA defines a postjudgment execution proceeding as enforcing "a judgment under….18 U.S.C s. 2333"; (b) 18 U.S.C. s. 2333 makes clear that the only judgment it addresses are those against a Foreign Terrorist Organization (e.g., the FARC), and (c) under TRIA 201(a)—

---

[9] In *Stansell v. Revolutionary Armed Forces of Colom.*, 45 F.4th 1340 (11th Cir. 2022) ("*Stansell V*"), the Eleventh Circuit analyzed the exact procedural posture before this Court—i.e., Lopez-Bello defending his designation as an agency or instrumentality of the FARC in a proceeding in which his assets had already been garnished and executed upon. *Id.* at 1356. Lopez Bello, like the IPs, requested a jury trial as to his agency or instrumentality status. As more fully explained below, prior to the passage of the TVFA, the Eleventh Circuit held that Lopez Bello's right to trial on his defenses to an *ex parte* agency or instrumentality designation—the issue before this Court—arose directly from the very Florida postjudgment garnishment statute later modified by the TVFA. *Id.* at 1356. The inescapable conclusion of the Eleventh Circuit's holding in *Stansell V*, at an identical stage of postjudgment proceedings as this case, is that trials on agency or instrumentality defenses to execution and garnishment actions are not independent or separate, preliminary proceedings in which the agency or instrumentality is "merely defending against their designation" as this Court has thus far reasoned. ECF No. 329 at 9. Instead, the Eleventh Circuit held that any trial on agency or instrumentality arises from the procedures set forth in Chapters 56 and 77, Florida Statutes. Because the Eleventh Circuit **has not provided for some preliminary agency or instrumentality defense proceeding outside of Chapters 56 and 77**, the agency or instrumentality defense (and any other applicable defenses to turnover or sale) must be litigated under Chapter 56 and 77.

it is the judgment **"obtained…against a terrorist party"** (i.e., against the Foreign Terrorist Organization—FARC—in this instance) that renders the ensuing execution and attachment proceedings as "postjudgment execution proceedings."

      The second unbroken line of law which the Court must not breach is that neither Chapters 56, nor 77, nor the TVFA, permit the Court to sever the defenses that would have been raised by the IPs (were Gorrin and Perdomo not fugitives) from a now bench trial to determine the "right of property."[10] Why? Because it is precisely in this respect, that the two unbroken lines of law meet: Caballero's "right of property" in the assets he has already recovered, executed, or attached, turn upon the very language of TRIA that provides him with the right to have recovered, executed upon and/or attached (as applicable) the "right of property" of the IPs from the outset—as a matter of law. Were Gorrin and Perdomo not fugitives, the IPs would have had the right to a—now bench— trial under the TVFA to contest their status as agents and instrumentalities of FARC in an attempt to defeat Caballero's "right of property" under TRIA, or to establish their own "right of property" as free from Caballero's interests as a TRIA judgment creditor. But alas, these men are fugitives. The statute is clear. Accordingly, the Court erred in failing to apply the TVFA.

             **i.    Both Gorrin and Perdomo Declined to Enter this State**

      The second element of the TVFA relates to the conduct of the "fugitive." The statute provides three independent ways that the second element can be met: 1) if the person purposefully leaves the jurisdiction of Florida or the United States; 2) if the person declines to enter or reenter Florida or the United States to submit to its jurisdiction; or 3) if the person otherwise evades the

---

[10] The Eleventh Circuit's ruling in *Stansell V* likewise did not breach this unbroken line of law, as this Court now has in ECF. No. 329. The Eleventh Circuit did not hold that Lopez Bello's right to a jury trial on his "challenge to the agency or instrumentality issue" was some proceeding independent of, or separate from, postjudgment proceedings under Chapters 56 or 77 that could thus separately lead to a hypothetical judgment (of some unknown sort), which hypothetical judgment would then be subject to further "postjudgment" proceedings to determine "rights of property" which themselves turn upon recoverability by the TRIA judgment creditor by operation of law under TRIA 201(a). Instead, the Eleventh Circuit kept its analysis squarely within Chapter 77. Under the Eleventh Circuit's analysis applicable to terrorism victim collection actions, the agency or instrumentality issue before this Court is inextricably tied to the agency and instrumentality status of Gorrin and Perdomo, both fugitives, who under the TVFA have therefore lost their opportunity for a—now bench—trial all of which would have been squarely governed by Chapters 56 and 77.

jurisdiction of the court in which a criminal case is pending against him. § 772.13(6)(a)(2), Fla. Stat.

Although it was self-evident that Gorrin's conduct satisfied each of the three independent tests and Perdomo's conduct satisfied the first two, Caballero only needed to establish one for each. Caballero established as an undisputed fact that: (i) Gorrin declined to enter this state or the United States to submit to its jurisdiction; (ii) Perdomo declined to enter this state or the United States to submit to its jurisdiction; and (iii) Gorrin otherwise evaded the jurisdiction of a court in which a criminal case is pending against him. Moreover, it was undisputed that Gorrin or Perdomo own the IPs.[11]

Caballero established that both Gorrin and Perdomo meet the second independent test provided in Section 772.13(6)(a)(2), Fla. Stat., because both have declined to enter this state or the United States to submit to its jurisdiction. *See* ECF No. 314 at ¶¶ 52, 54; ECF No. 285 at 14-16.

Although they complained about the initial notice they received, by October 14, 2022, Gorrin and Perdomo filed, through counsel, a motion to vacate their A/I determinations. *See* ECF No. 175. In November 2022, both provided declarations to this Court. *See* ECF Nos. 183-3, 183-4. On January 27, 2023, this Court entered its order scheduling a trial on "the issue of agency and instrumentality determination" (ECF No. 216). Thus, Gorrin and Perdomo had ample notice of these proceedings and an opportunity to enter Florida to defend their interests.

Early in the discovery process, Caballero demanded that Gorrin and Perdomo personally appear in Miami for their depositions. A discovery hearing on the issue was set for March 9, 2023 and several other hearings followed regarding Caballero's demand that Gorrin and Perdomo personally appear in Miami for his depositions (ECF Nos. 232, 248). Gorrin and Perdomo argued

---

[11] *See* ECF No. 286 at ¶¶7-9, 15-19; ECF No. 314 at ¶ 54; ECF No. 314-6, 5/22/2023 Raul Gorrin Deposition Transcript at p. 27/lines 15-23, p. 71/lines 7-13 (Gorrin stating that he has "no intention to ever go to the United States."); ECF No. 286 ¶¶ 20-27; ECF No. 314 at ¶ 52; ECF No. 314-1, 5/22/2023 Gustavo Perdomo Deposition Transcript at p. 11/lines 9-14 (Perdomo admitting that he will not appear in person to defend this case); ECF No. 286 at ¶¶ 10-11; ECF No. 314 at ¶ 54; ECF No. 314-6, 5/22/2023 Raul Gorrin Deposition Transcript at p. 49/line 16 – p. 50/line 15 (Gorrin admitting that he is aware that he was indicted in 2018, and has "no interest to answer to the indictment in the United States."); *see also*, ECF No. 314 at ¶ 53; ECF No. 314-6, 5/22/2023 Raul Gorrin Deposition Transcript at p. 124/lines 4-15; OFAC Notice, 84 Fed. Reg. 2946 (Feb. 8, 2019), ECF No. 160-1 at pp. 3-4; OFAC Notice, 84 Fed. Reg. 23162 (May 21, 2019), ECF No. 160-4 at p. 3; Press Release, Treasury Dept. (Jan. 8. 2019), ECF No. 160-3 at pp. 6-7.

to Magistrate Judge Becerra, that as blocked persons they are prohibited from obtaining a visa to travel to the United States. *See* ECF No. 253 at 3. Their blocked status, however, is no trump card, because they have done nothing to even attempt to obtain a visa.

In response to discovery requests,  Gorrin and Perdomo admitted that: 1) there are no communications by or on their behalf seeking permission to travel to the United States in the past five (5) years (*see* ECF No. 286 at ¶¶ 7, 20); 2) there are no communications by or on their behalf requesting that OFAC remove Gorrin or Perdomo from OFAC's Specially Designated Nationals and Blocked Persons List (*see* ECF No. 286 at ¶¶ 8, 21); and 3) there is no administrative petition submitted by or on their behalf requesting that OFAC remove Gorrin or Perdomo from OFAC's Specially Designated Nationals and Blocked Persons List (*see* ECF No. 286 at ¶¶ 9, 22).

Put another way, Gorrin and Perdomo have undertaken no efforts to enter Florida or the United States since being blocked in 2019, including no efforts being taken after entering their appearance in this matter. ***By taking no efforts to enter the jurisdiction, Gorrin and Perdomo have clearly <u>declined</u> to enter the jurisdiction*** and thereby have declined their opportunity to be heard. In fact, both fugitives have expressly testified that they will not be entering the territorial jurisdiction of this court. *See supra*, n. 10. Indeed, their counsel plainly conceded, at least as to Gorrin, that if Gorrin "***wanted to***" enter the country, the United States government certainly would welcome him doing so. In response to counsel for Gorrin's comment that he "can't even come to the country. I mean, he is blocked from entering the country . . . ," the following was said in open court before Magistrate Judge Becerra:

> THE COURT: Let me suggest to you that he certainly can come.
> MR. DUNLAP: **<u>He certainly can come</u>**.
> THE COURT: I mean, he can't come for a vacation.
> MR. DUNLAP: Right.
> THE COURT: But he can come. He is just, obviously, going to be arrested.
> MR. DUNLAP: Technically, he can't come because he's blocked by OFAC. So I don't think he can come into the country. But I'm sure if he tried, they would find a way.
> THE COURT: **<u>Trust me, if he wanted to come, the U.S. government would –</u>**
> MR. DUNLAP: **<u>I will concede that point.</u>**
> THE COURT: -- see fit to bring him.
> MR. DUNLAP: I will concede that point.
> THE COURT: I mean, he may get here courtesy of the U.S. Marshals, but he can get here.
> MR. DUNLAP: Right. . . . .

ECF No. 286 at ¶ 15 (citing April 10, 2023 Hearing Transcript at p. 14/line 18 – p. 15/line 14) (emphasis added).

ii.     **Gorrin Evading Court's Jurisdiction in Criminal Case**

Caballero established as an undisputed fact that Gorrin is evading entering the U.S. and specifically the Southern District of Florida where a criminal case is pending against him. Gorrin is aware of the criminal case against him. *See* ECF No. 314 at ¶ 54(d). He has tweeted about it and has denied the government's allegations in his sworn declaration. *See* ECF No. 286 ¶ 14; ECF 183-3. In his criminal proceedings, the Clerk designated Gorrin a fugitive. *See* ECF No. 286 ¶¶ 11, 16. In the proceeding before the Court, Magistrate Judge Becerra held that "Gorrin is a fugitive, as he was indicted in this District and has yet to appear in the proceedings against him." ECF No. 253 at 3.

Unlike CAFRA, the TVFA does not require the pending criminal case to be related to the civil post judgment collection proceeding. The TVFA merely requires a showing that the person "evades the jurisdiction of the court in which a criminal case is pending against the defendant or person." Thus, Gorrin's prior filings and arguments that attempted to distance his criminal case from this civil collection proceeding are legally irrelevant.

4.   ***The TVFA Mandated Denial of the IPs' MSJ, Prohibited the Entry of the IPFJ, and Mandated Judgment in Favor of Caballero***

Section 772.13(6)(a)(2), Fla. Stat., broadly prohibited the IPs from using the resources of the Court.[12] The TVFA closed the chasm that existed between the discretion being exercised in this case in favor of two fugitives (and their entities) and TRIA's policy of providing a usable remedy to victims of terrorism. There is no more room for the exercise of ad hoc judicial discretion in favor of the "due process" rights of the Interested Parties. Section 772.13(6) has explicitly defined the IPs' "due process" rights within already accepted constitutional bounds. Fugitives from criminal proceedings, like Gorrin, are unequivocally barred from utilizing the resources of this Court unless they personally appear before it. Gorrin has had months to exercise his "opportunity to be heard" by leaving his offshore safe haven, entering Florida, and submitting to the jurisdiction

---

[12] Section 772.13(6)'s reference to "the resources of the ***courts of this state***", does not preclude its application to these proceedings. The Eleventh Circuit has stated that "[t]he district and bankruptcy courts of our Circuit that are located in Florida **are courts of Florida because they adjudicate claims under Florida law and are a part of the judicial system in that state.**" *Menchise v. Akerman Senterfitt*, 532 F.3d 1146, 1150 (11th Cir. 2008) (emphasis added).

of this Court. He has not, and defiantly refused to do so (*see* ECF No. 314 at ¶ 54) and Section 772.13(6) mandated that Caballero recover his assets.

The Court needed to have taken an action that stopped the IPs from continuing with their defenses or objections to Caballero's post judgment collection proceedings, including in the IPs' MSJ. That action was the denial of all relief sought by, and dismissal of all claims made by, the IPs, and the entry of judgment in favor of Caballero—which it erred in granting the IPs' MSJ and entering the IPFJ.

### B.  The Court Misapplied the A/I Standard at the Summary Judgment Stage

The Court misapplied the summary judgment standard prescribed by the Eleventh Circuit in *N. Shore Med. Ctr., Inc. v. CIGNA Health*, 68 F.4th 1241, 1243, 1245 (11th Cir. 2023). As in *N. Shore Med. Ctr.*, summary judgment was inappropriate "for the simple reason that a genuine dispute exists over the core factual question in this case", *id.* at 1243, that is—whether Gorrin and Perdomo are FARC A/Is.  Though perhaps not "exhaustive" (as Caballero continues discovering new and additional evidence supporting this Court's previous A/I determinations), the evidence supplied by Caballero to date is far more than "sufficiently extensive to permit the inference" that Gorrin and Perdomo (and the IP Entities, discussed below) are FARC agencies and/or instrumentalities. 68 F.4th at 1245.  Prior to the passage of the TVFA, just as Cigna would have had the opportunity "to rebut an inference" through the "add[ition] [of] data...at trial", so too would have the IPs been given an opportunity to attempt to rebut the A/I determinations through the addition of data at trial (though such addition is unlikely in the absence of any fact or expert witnesses). *Id.*

As the non-movant, Caballero was entitled to a view of the evidence in the light most favorable to Caballero.  Indeed, the Eleventh Circuit granted Lopez-Bello a trial on the thin reed of his affidavit denying involvement in the alleged A/I activities. *Stansell V*, 45 F.4th at 1360.  The Court did not view the evidence in the light most favorable to Caballero.  Instead, the Court held Caballero to a higher standard than provided by TRIA and the Eleventh Circuit. In *Stansell II*, the Eleventh Circuit Court also aptly recognized that "***terrorist organizations such as FARC operate in the shadows out of necessity***" such that a plaintiff can even establish an A/I relationship as being indirect. *Stansell II*, 771 F.3d at 732, 742 (emphasis added). Thus, establishing direct connections between FARC and an A/I is not required. *Id.* at 739. Of note, Caballero has established direct relationships between Gorrin and Maduro who is the FARC. Notably, the

14

Eleventh Circuit reaffirmed this premise in *Stansell V*, 45 F.4th at 1351 ("nothing in § 201(a) of the TRIA suggests that an instrumentality relationship with a terrorist party needs to be direct."). In *Stansell V*, the Eleventh Circuit found that, "[t]he evidence viewed collectively and taken in the light most favorable to the López appellants, created material issues of fact as to whether Mr. López and his companies were agencies or instrumentalities of the FARC." *Id.* at 1360.  Even setting aside Mr. López's bare bones affidavit, the Eleventh Circuit found an issue of fact based on the testimony of several experts who opined that Mr. López was not an A/I because, in their opinion, he could not be tied to the FARC.  Here, RZ's testimony clearly tied the IPs to the FARC or, at the very least, created a material issue of fact on the issue.

RZ's testimony regarding the organization and operations of the FARC, the Cartel of the Suns, Maduro, and Gorrin goes well beyond "conclusory statements."  RZ explained the manner in which Gorrin and Perdomo acted as agents for Maduro and opined, as has the United States government, that Maduro is a leader of the FARC. ***RZ's testimony would have been sufficient to support a criminal conviction – never mind create an issue of fact at the summary judgment phase of a civil matter***. Courts have recognized that in the criminal context—where there is a much higher burden of proof—expert testimony regarding circumstantial evidence can support a conviction. *United States v. Garcia*, 447 F.3d 1327, 1335 (11th Cir. 2006) (holding that the testimony of an "experienced narcotics agent" would help the jury understand the evidence, specifically, how "drug trafficking organizations compartmentalize certain operations and roles"); *United States v. Cox*, 391 F. App'x 756, 759 (11th Cir. 2010) ("there is a 'well-established rule that an experienced narcotics agent may testify as an expert to help a jury understand the significance of certain conduct or methods of operation unique to the drug distribution business'"); *United States v. Reyes Vera*, 770 F.3d 1232, 1239 (9th Cir. 2014) (admitting the expert's testimony because such testimony was formed based on the expert's observations and application of "his knowledge and experience of gang practices to deduce the significance of that information").

The Court's characterization of Caballero's extensive examples of the IPs' assistance of the FARC and FARC A/Is as merely "incidental" as opposed to "material" under the A/I standard is an improper weighing of the evidence which far exceeds the Court's authority on summary judgment. *See* Order at 12. On summary judgment, the Court may not weigh the credibility of conflicting evidence to resolve factual disputes—or erroneously state that no factual disputes exist. *See Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1300 (11th Cir. 1983)

("Because the district court erred when considering Warrior's motion for partial summary judgment by weighing conflicting evidence and resolving factual disputes, and because genuine issues of material fact exist that preclude summary judgment, we REVERSE"). Additionally, when evaluating motions for summary judgment along with considering all the evidence in the light most favorable to the non-moving party, the Court must also consider all evidence on the record, not just the motion for summary judgment and statement of material facts. *See Reese v. Herbert*, 527 F.3d 1253, 1270 (11th Cir. 2008) ("The District Court shall consider all evidence in the record when reviewing a motion for summary judgment -- pleadings, depositions, interrogatories, affidavits, etc. -- and can only grant summary judgment if *everything* in the record . . . demonstrates that no genuine issue of material fact exists.") (*quoting Tippens v. Celotex Corp.*, 805 F.2d 949, 952 (11th Cir. 1986)). Here, the Court's role was not to evaluate the credibility of inferences drawn RZ and WL, but instead, to evaluate whether a jury may find the experts credible.

The notion that Caballero needed to have provided more detail into how exactly Chavez and Maduro used the bribes provided to them by Gorrin and/or Gorrin's money laundering to benefit the FARC, ignores that Chavez and Maduro were/are the leader of the Cartel of the Suns, and that Maduro is currently a leader of the FARC. In fact, as Caballero has established, Maduro is the FARC and that premise remains uncontroverted. The Court also ignored the Eleventh Circuit's cautionary words that terrorist organizations are clandestine and operate in the shadows. *See Stansell II*, 771 F.3d 713, 732. A victim of terrorism cannot be expected to proffer more than Caballero has done to prove A/I status when fugitives such as Gorrin and Perdomo fail to meaningfully participate in discovery (as evidenced by, for instance, their failure to provide any document production regarding source of funds for purchase of the blocked real properties).

## II.   CABALLERO WILL SUFFER IRREPARABLE DAMAGE ABSENT A STAY

Caballero has already paid the USMS a $50,000.00 commission. *See* ECF No. 184-5 at ¶ 8. If this Court denies Caballero's request for a stay and the Eleventh Circuit reverses this Court's Order and the IPFJ, Caballero would have to begin anew the execution process with respect to the Fisher Island and Collins Avenue Properties, complete a new USMS sale, and pay an additional USMS commission fee (likely another $50,000.00—assuming such assets would be available for collection). Thus, were the Court to deny Caballero's requested stay and the Eleventh Circuit to reverse this Court's Order and the IPFJ, Caballero would have, at a minimum, lost $50,000.00 and thus been irreparably damaged.

16

Caballero will further be irreparably damaged by the denial of his requested stay (to maintain the status quo pending his appeal) because the effective dissolution of the Subject Writs, the reversal of the sale of the Fisher Island and Collins Avenue Properties, and the return of such properties to the IPs will result in Caballero losing his priority over the subject assets even if this Court's Order and the IPFJ were reversed on appeal and potentially losing any recovery if the IPs become unblocked and dispose of the property. Currently, Caballero has priority over all other FARC judgment creditors and also has priority of Casa Express, which has made clear that it seeks to execute upon the Fisher Island and Collins Avenue Properties, as well as the other blocked real properties encompassed by Caballero's Subject Writs bar one.[13]

Setting competing judgment creditors aside, without a stay, if the IPs are unblocked by OFAC during the pendency of the appeal, the IPs could sell the properties and move the proceeds offshore effectively nullifying the effect Look Back Rule,[14] which would allow Caballero to proceed against the IPs as if they were still blocked – but leave nothing for Caballero to collect upon given any liquidation of the once blocked assets. In light of the aforementioned, Caballero's

---

[13] *See Casa Express Corp. v. Bolivarian Republic of Venezuela*, Case No. 21-cv-23103-BB, ECF No. 3 at 9 (S.D. Fla. Sept. 10, 2021). Indeed, the condominium association for the Fisher Island Property named Casa Express as a party in its foreclosure action, and Casa Express subsequently appeared. *See generally*, *Palazzo del Sol/Della Luna at Fisher Island Condominium Association, Inc., v. Planet 2 Reaching, Inc.,* Case No. 22-004165-CA (31) (Fla. 11th Cir. Ct. Miami-Dade Cnty.).

[14] To wit: "Unless otherwise specifically provided, ***any amendment, modification, or revocation of any…license issued by or under the direction of the Director of the Office of Foreign Assets Control does not affect…any civil or criminal suit or proceeding commenced or pending prior to such amendment, modification, or revocation."*** *See* 31 C.F.R. § 598.402 (emphasis added) (pertaining to the Kingpin Act, part 598); 31 C.F.R § 536.402 (containing similar language in relation to the Narcotics Trafficking Sanction Regulations, Part 536); *Stansell II,* 771 F.3d at 732-33 (interpreting 31 CFR § 536.402 and holding that claimants' OFAC de-listing, which actually purported to unblock ALL of claimants' assets and remove their designation sanctions, should not operate retroactively to put their assets out of the plaintiffs' reach because the plaintiff had already initiated post-garnishment proceedings against claimants); *Sutherlin v. Wells Fargo Bank N.A.*, 767 F. App'x 812, 821 (11th Cir. 2019) ("Because the writ of garnishment had been served on Wells Fargo before the delisting, the assets were still considered 'blocked' for purposes of the *Stansell* plaintiffs' turnover claim, notwithstanding the delisting decision." (citing *Stansell II*, 771 F.3d at 733; and 31 C.F.R. § 536.402, "stating that any revocation of an order or ruling issued by OFAC 'shall not' affect 'any civil…proceeding commended or pending prior to such…revocation'")).

likelihood of irreparable damage is more than some speculative "possibility." *Nken v. Holder,* 556 U.S. 418, 434-35 (2009).

## III.    A STAY WILL NOT SUBSTANTIALLY HARM THE IPS

In contrast to the irreparable harm that will be brought against Caballero, there is no indication that a stay pending appeal will harm the IPs. *See e.g.*, *United States v. Schwarzbaum*, Case No. 18-cv-8114, 2021 U.S. Dist. LEXIS 248182 at *2-3 (S.D. Fla. Dec. 30, 2021) (balancing the harm between the parties). All the subject assets—the Subject Writ blocked properties, the Fisher Island Property, and the Collins Avenue Property—were originally blocked in January of 2019.[15] Thus, since that time, but for licensed transactions that merely create blocked proceeds, the IPs cannot transact their assets. Currently, the IPs remain blocked by OFAC.[16] Therefore, the IPs will suffer no prejudice by the short delay of waiting for the decision in the appeal of the Court's Order and the IPFJ, which Caballero has already filed his notice of appeal and amended notice of appeal. *See* ECF Nos. 367, 375.

To the extent that the IPs may argue that they would be harmed because they will not pay the past due condominium association fees (and any additional fees which continue to accrue while the stay remains in place pending the appeal) on the Fisher Island and Collins Avenue Properties until such properties are retitled in their names, the IPs failed to pay those exact fees while the properties were previously titled in their names. As to the Fisher Island Property, the association fees began accruing in December of 2018 (before the IPs were blocked). *See* ECF No. 359 at 7 n. 8. The OFAC license issued to Venable LLP (Attention: Mr. Wilson) (i.e., the "Licensee") on behalf of Gorrin and Perdomo, amended on October 19, 2020 (*see* ECF No. 290-3), allowed the past dues on the Fisher Island Property to be paid at the time such license was amended in October of 2020— but they were not. Instead, the fees continued to accrue even up to the November 8, 2022 USMS sale of the Fisher Island Property. Thus, there is no reason to believe that this time would be any different. As to the Collins Avenue Property, in previous papers, Caballero explained that such property was subject to assessments such that the condominium association could bring a new

---

[15] *See* Notice of OFAC Sanctions Actions, 84 Fed. Reg. 2946-49 (Feb. 8, 2019); Notice of OFAC Sanctions Actions, 84 Fed. Reg. 23162-63 (May 21, 2019).

[16] *See* OFAC Specially Designated Nationals and Blocked Persons List (last update Aug. 17, 2023), accessed on Aug. 23, 2023 at https://ofac.treasury.gov/specially-designated-nationals-and-blocked-persons-list-sdn-human-readable-lists

foreclosure action. *See* ECF No. 326 at 8. Caballero thus previously argued for the preliminary injunction to be dissolved so that he could sell the properties to pay the assessments. *Id*. To the extent that the IPs now seek reversal of the sale for the same reason—i.e., to sell the properties and/or otherwise pay the assessment—this Court should act no differently. Indeed, although the association has a lien upon the Collins Avenue Property, to the best of counsel's knowledge, the Condo Association has not initiated foreclosure proceedings. As such, the IPs do not face any real or concrete threat.

What is more, if Magistrate Judge Becerra previously considered the harm stemming from Caballero's purchase of the Fisher Island and Collins Avenue Properties with accruing past due assessments to be self-inflicted (ECF No. 202 at 42), then certainly the harm stemming from two of the IPs' failure to pay the assessments on their previously owned properties would also be self-inflicted.

## IV. A STAY SERVES THE PUBLIC INTEREST

The TVFA became law roughly two months ago. Given that Caballero's appeal of this Court's Order and the IPFJ will necessarily include an analysis of the TVFA (*see* Section I.A. above), Caballero's appeal will raise important issues of first impression. Entering Caballero's requested stay in order for the Eleventh Circuit to adjudicate the application and scope of the TVFA (i.e., issues of first impression—the adjudication of which would benefit other victims of terrorism in post-judgment collection proceedings in Florida) would thus serve the public interest.[17] Moreover, the public's interest in fighting terrorism and compensating victims of terrorism also supports the imposition of a stay pending appeal. Were a stay not imposed and were the Eleventh Circuit to reverse this Court's Order and the IPFJ, Caballero may lose his priority over and/or right

---

[17] Courts have granted stays pending an appeal in other contexts when the appeal raises an issue of first impression. *See Pinares v. United Techs. Corp.,* No. 10-80883-CIV-MARRA, 2019 U.S. Dist. LEXIS 228695, at *5, 7 (S.D. Fla. Feb. 12, 2019) (granting a motion to stay pending appeal because a stay would "would serve judicial economy" as the appeal raises a complex issue "that has not been addressed by the Eleventh Circuit" and would impact "twenty complex, expensive, and time consuming toxic tort cases"); *Steines v. Westgate Palace L.L.C.,* No. 22-cv-629-RDB-DAB, 2023 U.S. Dist. LEXIS 59628, at *2-3 (M.D. Fla. Jan. 20, 2023) (staying case pending an appeal from the denial of a motion to compel arbitration because "the appeal of novel issues is not frivolous"); *Guzy v. QBE Specialty Ins. Co.,* No. 20-cv-23169, 2022 U.S. Dist. LEXIS 74172, at *4-5 (S.D. Fla. Apr. 22, 2022) (noting that although courts generally to do not "stay matters collateral to a final judgment, principally involving fees or costs issues"—"[c]ourts sometimes deviate from this norm…'in instances where the appellate issue is…a case of first impression.'").

in the subject assets, while the IPs continue to litigate from the safety of their offshore safe haven (which the TVFA seeks to prohibit).  Finally, the public's interest in promoting judicial efficiency is also best served by granting Caballero's requested stay because, were a stay not imposed and were the Eleventh Circuit to reverse this Court's Order and the IPFJ, Caballero may be forced (assuming he continues to have priority) to re-litigate this matter, which already been pending for nine months.

## V.    A BOND IS NOT NECESSARY

A district court has the discretion to waive a bond requirement.[18] This Court exercised such discretion in favor of the IPs when it did not require them to post any bond when staying Caballero's collections. *See* ECF No. 214 at 16-17. Furthermore, to require Caballero to post a bond would not fulfill the underlying purpose of such mechanism.[19]  Caballero is not attempting to stay the enforcement of a money judgment entered against him.  Instead, Caballero is requesting that the Court maintain the status quo by staying the IPFJ pending his appeal of the IPFJ.  Given that the blocked assets encompassed by the Subject Writs remain blocked and that Caballero remains "RESTRAINED from dissipating, conveying, encumbering, or otherwise transferring ownership of the Fisher Island and Collins Avenue properties" (ECF No. 214 at 17), Caballero would not be able to dissipate the Subject Assets were his requested stay granted.  A bond is thus simply unnecessary under these circumstances.[20]

WHEREFORE, Caballero requests that his Motion to Stay be granted and that the Court stay the IPFJ, pending Caballero's appeal of the order and IPFJ.

---

[18] *Havana Docks Corp. v. Carnival Corp., et al.,* 2023 U.S. Dist. LEXIS 42268, at *6-7 (S.D. Fla. Mar. 14, 2023) (citing authority supporting such principle); *see also* Local Rule 62.1.

[19] *See Havana Docks Corp.,* 2023 U.S. Dist. LEXIS 42268, at *6 ("The purpose of the supersedeas bond is to secure the prevailing party against the risk that the judgment debtor will be unable to meet the obligations pending appeal and to protect the prevailing party from the costs that it incurs in foregoing execution of judgment until the appeal is decided.").

[20] To be clear, Caballero is not seeking relief under FRCP 62(b)—the title of which, "Stay by Bond *or Other Security,*" emphasis added, implies that a bond is a form of "security"—which, for the reasons discussed above, is unnecessary. To the extent this Court is inclined to require Caballero to post a bond pursuant to Chapter 56, Fla. Stat., such requirement would be inconsistent with this Court's prior Order, wherein it denied Caballero his request that the IPs be ordered to post a bond pursuant to that very same authority. *See* ECF No. 214 at 14 (agreeing with Magistrate Judge Becerra's report and recommendation, ECF No. 202 at 37: "Accordingly, Magistrate Judge Becerra found that a bond is not required where, as here, the sale of the Properties has already occurred.").

## LOCAL RULE 7.1(d)(2) EMERGENCY CERTIFICATION

After reviewing the facts and researching applicable legal principles, I certify that this motion in fact presents a true emergency (as opposed to a matter that may need only expedited treatment) and requires an immediate ruling because the Court would not be able to provide meaningful relief to a critical, non-routine issue after the expiration of seven days. I understand that an unwarranted certification may lead to sanctions.

Dated: August 28, 2023.                           Respectfully submitted,

*/s/ Leon N. Patricios*
Leon N. Patricios
Fla. Bar No. 0012777
lpatricios@zplaw.com
Joseph I. Zumpano
Fla. Bar. No. 0056091
jzumpano@zplaw.com

ZUMPANO PATRICIOS, P.A.
312 Minorca Ave.
Coral Gables, FL 33134
Tel: (305) 444-5565

*Attorneys for Plaintiff Antonio Caballero*

## LOCAL RULE 7.1(a)(3) CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 7.1(a)(3), I hereby certify that counsel for the movant conferred with counsel for the IPs on August 22, 2023, and that counsel for the IPs opposed the relief requested herein by Caballero.

*/s/ Leon N. Patricios*
Leon N. Patricios

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of August, 2023, the undersigned electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system.

*/s/ Leon N. Patricios*
Leon N. Patricios

21